**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LIGHTHOUSE RESOURCES INC.,[1]<br><br>     Debtor. | Chapter 11<br><br>Case No. 20-13056 (CTG) |
| LIGHTHOUSE RESOURCES INC.,<br><br>     Plaintiff,<br>     v.<br><br>ATLANTIC SPECIALTY INSURANCE<br>COMPANY,<br><br>     Defendant. | Adv. Proc. No. 24-50144 (CTG)<br><br><br>**Re: Adv. Docket No. 1** |

**FIRST AMENDED AND SUPPLEMENTED COMPLAINT**

Plaintiff Lighthouse Resources Inc. ("Lighthouse") brings this action for breach of contract, declaratory relief, and contempt and sanctions against Defendant Atlantic Specialty Insurance Company ("Atlantic") and in support, avers as follows:

**PRELIMINARY STATEMENT**

1. Lighthouse brings this action against Atlantic for breach of the parties' Reclamation Sinking Fund Agreement (the "Sinking Fund Agreement," attached hereto as **Exhibit A**) due to Atlantic's unjustified failure to release collateral held by Atlantic into the Reclamation Sinking Fund (the "Sinking Fund") in an amount equal to its pro rata share (the "Pro Rata Share") of the Reclamation Trust Entity Budget for 2024 and 2025 (collectively the "Budgets," attached hereto as **Exhibits B** and **C**).

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Lighthouse Resources Inc. (4713), The location of the Debtor's service address in this chapter 11 case is 10980 South Jordan Gateway, South Jordan, Utah 84095.

2.      Atlantic's failures in both 2024 and 2025 to fund its Pro Rata Share of the Sinking Fund threaten Lighthouse's ability to complete the required reclamation efforts for the East Decker mining site, and in turn threaten Lighthouse's ability to maintain its permits for such reclamation—which is required by law and the parties' agreements.

3.      Indeed, since the initial filing of its Complaint, because of Atlantic's persistent refusal to pay its contractually obligated share, Lighthouse has incurred additional damages, continued to fall behind in its reclamation efforts, and has received additional warnings and scrutiny from the relevant government permitting authorities.  Thus, Atlantic's breach of the Sinking Fund Agreement has caused and continues to cause irreparable harm to Lighthouse.

4.      Atlantic's breaches are particularly flagrant given its approval of the Budgets, including approval of Atlantic's Pro Rata Shares, by its Board proxy in the fall of 2023 and 2024. Indeed, while this action was pending, Atlantic did not even—through its Board proxy or otherwise—object to the approval of the 2025 Budget.

5.      In apparent anticipation that it would be held to account for its bad faith breach of its contractual obligations, after failing to pay the agreed upon amounts, Atlantic purported to notice the termination (the "Termination Notice," attached hereto as **Exhibit D**) of the tolling agreement (the "Tolling Agreement") executed between Atlantic and the Black Butte Coal Company ("Black Butte")—a related company under the Lighthouse debtor structure which operates a mine that also provides funds to the Sinking Fund.  Lighthouse therefore seeks a declaration that the Termination Notice is invalid due to Atlantic's prior material breach of the Sinking Fund Agreement.

**PARTIES**

6.      Lighthouse is a Delaware corporation with its principal place of business located in South Jordan, Utah.

7.      Atlantic is a New York corporation, with, upon information and belief, its principal place of business located in New York.

**JURISDICTION AND VENUE**

8.      This adversary proceeding is brought in accordance with Rule 7001 of the Federal Rules of Bankruptcy Procedure.

9.      This adversary proceeding relates to the chapter 11 case *In re Lighthouse Resources Inc., et al.*, Case No. 20-13056 (JTD).

10.      This Court may grant the requested declaratory relief pursuant to 28 U.S.C. § 2201(a), and such relief is properly sought by adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7001(2) and (9).

11.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Article VII of the Plan (as defined below), which was approved by the Confirmation Order (as defined below).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

12.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.      Pursuant to rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Lighthouse consents to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**FACTS**

**Lighthouse Reorganizes Through Chapter 11 Bankruptcy**

14. Lighthouse and its related entities are engaged in the oil and gas business, including coal mining.

15. On December 3, 2020, Lighthouse and other affiliated debtors filed voluntary petitions for Chapter 11 bankruptcy relief in the Bankruptcy Court for the District of Delaware. *See* Confirmation Order (attached hereto as **Exhibit E)**, at 1. The petitions were ultimately consolidated and styled *In re Lighthouse Resources Inc., et al.*, Case No. 20-13056 (JTD). *See id.*

16. The bankruptcy court confirmed Lighthouse's reorganization plan on March 10, 2021 (the "Plan"). Atlantic was aware of the proposed terms of the Plan and did not object to its confirmation and indeed, the Plan preserved certain indemnification rights on the part of Atlantic and the other sureties.

17. The Plan included multiple agreements regarding the post-bankruptcy funding and operations of Lighthouse, and the reclamation of multiple former mining sites. Relevant to Atlantic's misconduct that underlies the instant dispute is the reclamation of the East Decker mine and its failure to fund approved budgets relating to the same.

18. Funding for the East Decker reclamation is provided for in both the Plan and the parties' agreements.

**Coal Mining, Roles of Sureties, and Reclamation**

19. Coal mining is a heavily regulated industry at both the state and federal level.

20. Prior to being permitted by applicable governmental authorities to mine at a site, coal producers are required, among many others, to engage sureties to post a reclamation

performance bond (the "Bond") to guarantee that once a mining operation is completed, the former mining site can be returned to its permitted post-mine land use. This process is called reclamation.

21.    Mine reclamation involves the "[a]ctions taken to restore mined land as required by" the Surface Mine Control and Reclamation Act of 1978, that is administered and enforced by the United State Department of Interior, Office of Surface Mining Reclamation and Enforcement "to a post-mining land use approved by the regulatory authority."[2]

22.    As such, reclamation is a significant undertaking, requiring substantial amounts of long-term planning, budgeting, and labor.

23.    As with mining itself, reclamation also requires coordination with applicable government officials and permitting. Failure to adhere to the applicable regulations and the approved permit, including missing reclamation progress goals can result in serious consequences and penalties. Specifically, the delays caused by Atlantic's funding failures threaten Lighthouse's required permitting, including receipt of notices of deficiency. Receipt of such notices are virtually guaranteed if Atlantic continues to delay Lighthouse's reclamation progress, and receipt of three notices of deficiency will result in Lighthouse and its representatives being placed on the Applicant/Violator System ("AVS"). Appearance in the AVS is not easily unwound and will further complicate Lighthouse's and its representatives' ability to obtain mining permitting going forward. Moreover, even if a permitting violation is later vacated, the violation remains on the AVS permanently, hindering the receipt of future reclamation permitting and causing further irreparable harm.

---

[2] https://www.osmre.gov/resources/glossary#r, (last visited August 28, 2025).

**Lighthouse's Reclamation Efforts Post-Bankruptcy**

24.     Lighthouse's reclamation efforts, and the relationship between and obligations of Atlantic and Lighthouse, are detailed in multiple interrelated agreements that were incorporated in the Plan and internally reference each other.  These agreements include, among others, the Sinking Fund Agreement and the Reclamation Trust Entity and Distribution Agreement (the "Reclamation Trust Agreement," attached hereto as **Exhibit F**).

25.     Multiple pre-bankruptcy agreements also survived the chapter 11 filing and are still binding on the parties.

26.     Relevant here are the Tolling Agreement and two general indemnity agreements. *First*, the Tolling Agreement provides that the sureties, including Atlantic, "agree to toll the suit limitations period" of indemnification causes of action against Black Butte.  Ex. D, at Ex. 1, p. 7. *Second*, both the Tolling Agreement and the Plan incorporate two general indemnity agreements (the "Indemnity Agreements," attached hereto as **Exhibits G** and **H**).  Atlantic may only seek indemnification under the Indemnity Agreements if the Tolling Agreement is properly terminated. Ex. D, at Ex. 1, ¶ 8.

27.     These agreements do not exist in a vacuum.  The rights and obligations under all of these agreements, both pre- and post-enactment of the Plan, are interrelated and interact with the others, such that a breach of one agreement necessarily impacts a parties' rights to enforce rights under a separate agreement.

28.     Following its reorganization and the enactment of the Plan, Lighthouse has primarily been tasked with the reclamation of several former mining sites.  This includes East Decker, the site that is the subject of this action.

29.     Lighthouse's reclamation efforts are overseen by the Reclamation Trust Entity Board (the "Board") and Lighthouse itself, as the Reclamation Trust Entity Representative. *See generally* Ex. F.

30.     Lighthouse's reclamation operations post-bankruptcy are dependent on receiving the funding necessary to keep pace with the projected progress of the reclamation projects.

31.     Section 1.7 of the Reclamation Trust Agreement provides for the distribution of funds from the Budget to the Sinking Fund, which funds the reclamation sites. *Id.* at § 1.7.

32.     The process for these distributions, and Lighthouse's responsibilities as the Reclamation Trust Entity Representative, are detailed in Section 6.3 of the Reclamation Trust Agreement. *Id.* at § 6.3.

33.     These distributions, and Atlantic's obligations as a surety, are memorialized in the Sinking Fund Agreement.

34.     Section 2.3 of the Sinking Fund Agreement provides that the sureties, including Atlantic, "*shall* release collateral held . . . into the Reclamation Sinking Fund in an amount that correlates to the amount of the budgeted expenses *set forth in the Reclamation Trust Entity Budget*…" Ex. A, § 2.3 (emphasis added).

35.     Specifically, for the East Decker site, Atlantic is required to "release an amount equal to [its] respective Pro Rata Share of the budgeted expenses" for the site "in advance for the upcoming Funding Year" until all of Atlantic's collateral in the Sinking Fund had been used. *Id.* at § 2.3(a).

36.     The Budget for each funding year must be voted on and approved by the Board. Ex. E, §§ 1.7, 3.3(m). Atlantic, as a surety, is represented on the Board by one board member who votes and acts on behalf of all sureties. *Id.* at § 3.1; *see also* LHR000582, attached hereto as

7

**Exhibit I** (correspondence announcing the appointment of a new Board member "as the surety representative").

37.     From the inception of the Trust through July of 2022, the Board's surety representative was Danny Hall.

38.     The Board's current surety representative is Michael Ricci.  He has served in that capacity since August of 2022.

39.     Atlantic, directly or through its agents, communicated with the Board's surety representative in 2021.

40.     Atlantic, directly or through its agents, communicated with the Board's surety representative in 2022.

41.     Atlantic, directly or through its agents, communicated with the Board's surety representative in 2023.

42.     Atlantic, directly or through its agents, communicated with the Board's surety representative in 2024.

43.     Atlantic, directly or through its agents, communicated with the Board's surety representative in 2025.

44.     Atlantic's communications with the Board's surety representative evidence Atlantic's understanding that this representative acts on its behalf and, when applicable, with Atlantic's permission.

45.     For example, Mr. Ricci on at least one occasion requested permission from Atlantic to sign a Board resolution.  *See* ASIC_010261, attached hereto as **Exhibit J**.

46.     Notably, per the Reclamation Trust Agreement, no proposed budget may be approved by the Board without the consent of the sureties' representative on the Board.  Ex. F,

§ 3.3(q). Stated another way, absent the sureties' consent, the Budget could not have been approved for any of the reclamation sites, including East Decker.

47. The Budget for 2024 was unanimously approved by the Board on December 5, 2023. *See* Board Meeting Minutes (attached hereto as **Exhibit K**), at 1.

48. The unanimous approval of the Budget for 2024 included a vote in approval by the surety representative.

49. Per the 2024 Budget, the sureties were required to release approximately $14,166,000 into the Sinking Fund. *See* Ex. B, at 3. Accordingly, as provided in the Sinking Fund Agreement, Atlantic was required to release its Pro Rata Share of that total budgeted amount through from its collateral in the Sinking Fund ahead of 2024. *See* Ex. A, at § 2.3. This included the $2,458,614 due for East Decker.

50. Thus, Atlantic was responsible for releasing $2,458,614 for East Decker reclamation activities in 2024—Atlantic's Pro Rata Share—by the end of 2023.

**Atlantic Fails to Satisfy Its Obligations Under the Sinking Fund Agreement**

51. Although other sureties have complied with payment of their respective Pro Rata Shares, and the propriety of the Budget has not been challenged, Atlantic has to date failed to release its Pro Rata Share for East Decker.

52. In an attempt to allow Atlantic to remedy its unjustified breach—which threatens reclamation efforts at East Decker, including related permitting—on July 31, 2024, Lighthouse provided Atlantic with a notice of default of the Sinking Fund Agreement (the "Default Notice," attached hereto as **Exhibit L**). The Default Notice provided Atlantic with a deadline of August 9, 2024, to release its Pro Rata Share of collateral earmarked to fund the East Decker site reclamation.

9

53.     Atlantic responded to the Default Notice on August 13, 2024 (the "Response Letter," attached hereto as **Exhibit M**) with nothing more than self-serving excuses and assertions of undefined, future concerns about Lighthouse's reclamation plans—none of which permit Atlantic to avoid its funding obligation.

54.     On August 30, 2024, a representative for the East Decker site received a letter from the Montana Department of Environmental Quality (the "Montana DEQ Letter," attached hereto as **Exhibit N**) requesting a status update on the reclamation.  As noted herein, without Atlantic's required funding, certain equipment and manpower could not be obtained for the East Decker site, stifling the progress of the reclamation.  Accordingly, the Montana DEQ Letter noted that the East Decker site "does not appear to be adhering to the soiling and seeding requirements of its approved reclamation plan."  *Id.* at 1.  Thus, Atlantic's funding failure and related consequences of that funding failure including delays in hiring necessary staff and equipment, is causing negative consequences for East Decker, threatening the reclamation.

55.     In sum, as of the filing of this Complaint, Atlantic has not complied with its funding obligations for East Decker and accordingly, has breached the Sinking Fund Agreement.

**Atlantic Purports to Terminate the Tolling Agreement**

56.     While refusing to comply with its funding obligations under the Sinking Fund Agreement, and likely in anticipation of being held to account for its conduct, on July 29, 2024, Atlantic purported to terminate the Tolling Agreement between Atlantic and Black Butte.  *See* Ex. D.

57.     Atlantic's Termination Notice provides no justification for its termination of the Tolling Agreement and does not acknowledge Atlantic's ongoing failure to release its Pro Rata

Share of collateral.  Moreover, the Termination Notice makes no demand of Lighthouse and does not allege that Lighthouse is in breach of its obligations to Atlantic.

58.    The Termination Notice does, however, make clear that the Atlantic "shall [not] be deemed an admission or a waiver of any of [Atlantic]'s rights or remedies under" each of the agreements referenced herein, including the Sinking Fund Agreement.  *Id.* at 2.

**Lighthouse Suffers Additional Irreparable Harm, and the 2025 Budget is Approved and Atlantic Does Not Pay**

59.    Atlantic's failure to fund its Pro Rata Share of the 2024 Budget caused delays in Lighthouse's reclamation work at East Decker.  Forced to make do with insufficient funds to move the required truck/shovel volume, the East Decker large dragline was delayed and had to be rescheduled, resulting in inefficiencies and a reduction of backfill into currently open pits.  These delays, all of which are attributable to Atlantic's non-payment, have led to a multitude of consequences—both financially and as it relates to regulatory requirements, amendments, responses, and inquiries, among others—for Lighthouse.

60.    These delays caused by Atlantic's lack of funding from Atlantic have also increased the scrutiny and demands from the relevant governmental authorities.  Indeed, the Montana DEQ issued a Notice of Noncompliance and Order of Abatement (the "Non-Compliance Notice", attached hereto as **Exhibit O**), to Lighthouse on January 29, 2025.

61.    Receiving the Non-Compliance Notice has caused Lighthouse significant harm and addressing the Notice will require the expenditure of significant resources.  This includes, but is not limited to, Lighthouse's dedication of resources to address and respond to information requests and make appeals to the Montana DEQ and other Montana regulatory bodies, and the pursuit of required reclamation plan amendments.

11

62.    The required reclamation amendments have not only increased the scrutiny on Lighthouse by the Montana DEQ, but these amendments have also forced a substantial increase in the time and financial resources that Lighthouse must expend.  For example, the post-mining topography ("PMT") for the East Decker site must now be rescheduled and designed, an expensive and time-consuming process that will further delay the progress of the East Decker reclamation.

63.    Compounding Atlantic's ongoing breaches and bad faith conduct, Atlantic has also refused to pay its Pro Rata Share of the unanimously approved 2025 Budget as required by the Sinking Fund Agreement.

64.    The 2025 Budget was presented to the Lighthouse Board—including the sureties' representative Board member—on December 10, 2024.  *See* Meeting Minutes, attached hereto as **Exhibit P**.  Again, including the sureties' representative Board member, the Lighthouse Board unanimously approved the 2025 Budget that same day.

65.    In sum, Atlantic had the opportunity to object to the 2025 Budget, failed to do so, and now that the 2025 Budget has been approved, must release its Pro Rata Share of the funds allocated to the East Decker reclamation consistent with its obligations under the Sinking Fund Agreement and the Plan.

**Atlantic's Pro Rata Share Increases to 100%**

66.    To date, Atlantic has not paid its Pro Rata Share of the 2024 or 2025 Budgets.

67.    Accordingly, Atlantic has now refused to pay *two years* of funding that is sorely needed for the continuation of the East Decker reclamation.  Indeed, as discussed herein, the irreparable harm to Lighthouse and the East Decker reclamation has only worsened as time has passed, and Lighthouse's damages now amount to, at minimum, $1.5 million.

68.     But now, Atlantic owes even more than its originally calculated Pro Rata Share. Because Zurich American Insurance Company ("Zurich") has paid out the remainder of its collateral, Section 2.3(a) of the Sinking Fund Agreement requires that Atlantic's Pro Rata Share increase to 100%.

69.     Section 2.3(a) is not permissive. The section provides that "[i]n the event one of the Sureties has released all of the collateral held by it, the other Surety's Pro Rata Share *shall be deemed to be 100%* until it has released all of the collateral held by it into the Reclamation Sinking Fund." Ex. A, § 2.3(a) (emphasis added).

70.     Lighthouse provided Atlantic with notice that this occurred on June 25, 2025. *See* June 25 Notice, attached hereto as **Exhibit Q**.

71.     But Atlantic's response dated July 3, 2025, refused to comply with Lighthouse's demand and reasserted arguments that have already been rejected by this Court in granting Lighthouse's two motions to dismiss. *See* July 3 Response, attached hereto as **Exhibit R**.

72.     Despite the futility of Atlantic's position, Lighthouse nonetheless provided Atlantic with one final opportunity to comply with Section 2.3(a) on July 17, 2025. *See* July 17 Response, attached hereto as **Exhibit S**. Atlantic did not respond.

## COUNT I
### Breach of Contract

73.     Lighthouse incorporates the above paragraphs as if fully set forth herein.

74.     The Sinking Fund Agreement is a valid, binding, and enforceable contract, and Lighthouse has complied fully with its terms.

75.     Per the terms of the Sinking Fund Agreement, Atlantic was obligated to release its Pro Rata Share of collateral into the Sinking Fund in advance of the funding years 2024, consistent with the Board-approved Budget. Atlantic has not released any collateral into the Sinking Fund

for the funding year 2024, and Lighthouse provided Atlantic with notice that this failure breached the Sinking Fund Agreement on July 31, 2024.

76.     Lighthouse has been and continues to be damaged by Atlantic's breach of the Sinking Fund Agreement.  Specifically, Lighthouse's reclamation of the East Decker site—which is required by the Plan and applicable laws—is now jeopardized by the funding shortfall that Atlantic caused through its unjustified failure to release its Pro Rata Share.

77.     Accordingly, Lighthouse is entitled to an order for specific performance requiring Atlantic to release $2,458,614 to Lighthouse for the East Decker site.  Absent such an order, the reclamation of the East Decker site will continue to fall behind required progress benchmarks has jeopardized Lighthouse's permitting for the project—including causing permitting violations— and will likely cause future permitting issues for Lighthouse and its representatives, causing Lighthouse irreparable harm.

**COUNT II**
**Breach of Contract**

78.     Lighthouse incorporates the above paragraphs as if fully set forth herein.

79.     The Sinking Fund Agreement is a valid, binding, and enforceable contract, and Lighthouse has complied fully with its terms.

80.     Per the terms of the Sinking Fund Agreement, Atlantic was obligated to release its Pro Rata Share of collateral into the Sinking Fund in advance of the funding year 2025, consistent with the Board-approved Budget.  Atlantic has not released any collateral into the Sinking Fund for the funding year 2025.

81.     Lighthouse has been and continues to be damaged by Atlantic's breach of the Sinking Fund Agreement.  Specifically, Lighthouse's reclamation of the East Decker site—which

14

is required by the Plan and applicable laws—is now jeopardized by the funding shortfall that Atlantic caused through its unjustified failure to release its Pro Rata Share.

82.     Accordingly, Lighthouse is entitled to an order for specific performance requiring Atlantic to release $2,248,355 to Lighthouse for the East Decker site.  Absent such an order, the reclamation of the East Decker site will continue to fall behind required progress benchmarks has jeopardized Lighthouse's permitting for the project—including causing permitting violations— and will likely cause future permitting issues for Lighthouse and its representatives, causing Lighthouse irreparable harm.

**COUNT III**
**<u>Declaratory Judgment</u>**

83.     Lighthouse incorporates the above paragraphs as if fully set forth herein.

84.     Lighthouse requests a declaration that Atlantic's Termination Notice was invalid and as a result, the Tolling Agreement has not been terminated.

85.     The Tolling Agreement is one in a series of agreements executed with the consummation of Lighthouse's bankruptcy Plan.  One such related agreement is the Sinking Fund Agreement.

86.     An actual controversy between the parties exists because Atlantic is in breach of the Sinking Fund Agreement, precluding the termination of the Tolling Agreement.

87.     Because Atlantic is in material breach of the Sinking Fund Agreement, it has no right or ability to exercise any purported rights under the Tolling Agreement.

88.     Lighthouse accordingly seeks declaratory relief pursuant to 28 U.S.C. § 2201(a).

**COUNT IV**
**<u>Declaratory Judgment</u>**

89.     Lighthouse incorporates the above paragraphs as if fully set forth herein.

15

90.     Atlantic is required to release its Pro Rata Share of collateral and otherwise fund its Pro Rata Share of any approved Budget.

91.     To date, Atlantic has breached its obligations under the Sinking Fund by failing to release its Pro Rata Share of collateral or otherwise fund its Pro Rata Share of the 2024 and 2025 Budgets.

92.     Pursuant to Section 2.3(a) of the Sinking Fund Agreement, because Zurich has released all of its collateral, Atlantic's Pro Rata Share of the 2025 Budget has increased to 100%. Atlantic refuses to acknowledge this increase.

93.     Atlantic's breach has caused, and will continue to cause, delays in the East Decker reclamation process.  Such delays have caused, and will continue to cause, monetary damages to Lighthouse including but not limited to increased permitting costs and increased reclamation equipment costs.

94.     An actual controversy between the parties exists because Atlantic continues to be in breach of the Sinking Fund Agreement, which continues to cause damage to Lighthouse.

95.     Lighthouse accordingly seeks declaratory relief pursuant to 28 U.S.C. § 2201(a) that Atlantic must fund its 100% Pro Rata Share of any approved Budget for reclamation work at East Decker.

**COUNT V**
**Declaratory Judgment**

96.     Lighthouse incorporates the above paragraphs as if fully set forth herein.

97.     Lighthouse requests a declaration that Lighthouse is entitled to monetary damages arising from Atlantic's failure to release its 2024 and 2025 Pro Rata Shares of collateral for the East Decker reclamation in breach of the Sinking Fund Agreement.

16

98.     Atlantic's breaches have caused, and will continue to cause, delays in the East Decker reclamation process.  Such delays have caused, and will continue to cause, monetary damages to Lighthouse.

99.     An actual controversy between the parties exists because Atlantic continues to be in breach of the Sinking Fund Agreement and continues to refuse to comply with its obligations to fund the Sinking Fund pursuant to the 2024 and 2025 Budgets, which continues to cause damage to Lighthouse.

100.     Lighthouse accordingly seeks declaratory relief pursuant to 28 U.S.C. § 2201(a) that Atlantic has damaged Lighthouse in an amount no less than $1.5 million.

## **PRAYER FOR RELIEF**

WHEREFORE, Lighthouse respectfully requests that the Court:

1.  Enter judgment in Lighthouse's favor and against Atlantic;

2.  Order Atlantic to immediately comply with its obligation to fund the East Decker site for 2024 and 2025 per the terms of Section 2.3 of the Sinking Fund Agreement and the Plan;

3.  Award consequential and exemplary and punitive damages in an amount to be proven at trial;

4.  Declare that Atlantic's termination of the Tolling Agreement was invalid and void;

5.  Declare that Atlantic must fund its Pro Rata Share of the 2024 and 2025 Budgets;

6.  Declare that Atlantic has damaged Lighthouse in an amount no less than $6.2 million;

7.  Award Lighthouse its collection expenses, costs, and attorneys' fees; and

8.  Award Lighthouse any such other relief as the Court deems just and proper.

Dated: October 6, 2025
      Wilmington, Delaware

Respectfully submitted,

*/s/ Jesse L. Noa*

L. Katherine Good (No. 5101)
Jesse L. Noa (No. 5973)
James R. Risener III (No. 7334)
Hannah L. Paxton (No. 7096)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE  19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email:    kgood@potteranderson.com
           jnoa@potteranderson.com
           jrisener@potteranderson.com
           hpaxton@potteranderson.com

*Counsel for Lighthouse Resources Inc.*