**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LIGHTHOUSE RESOURCES INC.,[1]<br><br>     Debtor. | Chapter 11<br><br>Case No. 20-13056 (CTG) |
| LIGHTHOUSE RESOURCES INC.,<br><br>     Plaintiff,<br>  v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>     Defendant. | Adv. Proc. No. 24-50144 (CTG)<br><br>**Re: Adv. Docket No. 134** |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY**

Dated: February 4, 2026

L. Katherine Good (No. 5101)
Jesse L. Noa (No. 5973)
James R. Risener III (No. 7334)
Hannah L. Paxton (No. 7096)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE  19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: kgood@potteranderson.com
    jnoa@potteranderson.com
    jrisener@potteranderson.com
    hpaxton@potteranderson.com

*Counsel for Lighthouse Resources Inc.*

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Lighthouse Resources Inc. (4713), The location of the Debtor's service address in this chapter 11 case is 10980 South Jordan Gateway, South Jordan, Utah 84095.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ..............................................................................2

SUMMARY OF ARGUMENT ......................................................................................................3

STATEMENT OF FACTS .............................................................................................................4

    A.    Lighthouse's Reclamation Efforts and Operations Post-Bankruptcy .....................4

        1.    The Board and Sureties Representative .........................................................5

        2.    The Budget .....................................................................................................6

    B.    The Parties' Agreements ...........................................................................................6

        1.    The Reclamation Trust Agreement ...............................................................6

        2.    The Sinking Fund Agreement .......................................................................7

        3.    The General Indemnity Agreement ...............................................................8

        4.    The Bonding Agreement and Tolling Agreement .........................................9

    C.    Atlantic Fails to Fund the Sinking Fund in 2024 and 2025 and Dodges its Contractual Obligations to Lighthouse ...................................................................10

ARGUMENT .................................................................................................................................13

I.    Section 2.3 of the Sinking Fund Agreement Requires that Atlantic Release its Pro Rata Share ..............................................................................................................................14

II.    Atlantic's Termination of the Tolling Agreement was Ineffective ...................................18

III.    Atlantic's Defenses are Unavailing ..................................................................................20

    A.    Defenses 1, 2, 3, and 7 ...........................................................................................20

    B.    Defense 6 .................................................................................................................22

    C.    Defenses 4, 5, and 8 ...............................................................................................23

CONCLUSION ..............................................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alcoa, Inc. v. Alcan Rolled Products-Ravenswood LLC,*
2020 WL 1180713 (D. Del. Mar. 11, 2020) .............................................................................14

*Allergan Hldgs. Unlimited Co. v. MSN Labs. Private Ltd.,*
2024 WL 3444368 (D. Del. July 17, 2024) .............................................................................21

*In re Allied Sys. Holdings Inc,*
556 B.R. 581 (D. Del. 2016), aff'd sub nom. *In re ASHINC Corp.*, 683 F. App'x 131 (3d Cir.
2017) ........................................................................................................................................17

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).................................................................................................................13

*ARC DBPPROP001, LLC v. Easton Buffet LLC,*
2019 WL 4645133 (E.D. Pa. Sept. 24, 2019), aff'd, 842 F. App'x 772 (3d Cir. 2021) ..........15

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986).............................................................................................................. 13-14

*Citisteel USA, Inc. v. General Elec. Co.,*
78 F. App'x 832 (3d Cir. 2003) ...............................................................................................14

*Coffman v. Federal Laboratories,*
171 F.2d 94 (3d Cir. 1948).......................................................................................................13

*Datasphere, Inc. v. Computer Horizons Corp.,*
2009 WL 2132431 (D.N.J. July 13, 2009)...............................................................................21

*Franklin Mills Associates, L.P. v. Nationwide Life Ins. Co.,*
836 F. Supp. 2d 238 (E.D. Pa. 2011) .......................................................................................15

*Mack Trucks Inc. v. BorgWarner Turbo Sys., Inc.,*
508 F. App'x 180 (3d Cir. 2012) ..............................................................................................17

*Pollock v. Am. Tel. & Tel. Long Lines,*
794 F.2d 860 (3d Cir. 1986)......................................................................................................14

*Prime Victor Int'l Ltd. v. Simulacra Corp.,*
682 F. Supp. 3d 428 (D. Del. 2023), appeal dismissed sub nom. *Prime Victor Int'l Ltd. v.
Simulacra Corp.*, 2024 WL 958377 (3d Cir. Jan. 12, 2024)....................................................18

*Sun Microsystems, Inc. v. Versata Enterprises, Inc.,*
630 F. Supp. 2d 395 (D. Del. 2009)..........................................................................................21

*Tamarind Resort Assocs. v. Virgin Islands*,
138 F.3d 107 (3d Cir. 1998)..............................................................................................14

**STATUTES**

FED R. CIV. P. 56 ...........................................................................................................1, 13

FED. R. BANKR. P. 7056 .................................................................................................1, 13

Plaintiff Lighthouse Resources Inc. ("Lighthouse"),[2] by and through its undersigned counsel, hereby submits this opening brief in support of its motion for summary judgment as to liability (the "Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable hereto by Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## INTRODUCTION

Over one year after Lighthouse filed this action against Atlantic Specialty Insurance Company ("Atlantic"), both the discovery produced in this action and this Court's rulings support Lighthouse's reasoning for filing this action:  Atlantic has admittedly failed to pay its Pro Rata Share for 2024 and 2025 as required under the parties' Sinking Fund Agreement.  Each of its manufactured excuses for this failure have been rejected by this Court.  The time is therefore ripe for this Court to grant summary judgment in Lighthouse's favor as to Atlantic's liability on all of the claims asserted in Lighthouse's Complaint.

Any further litigation on these issues would yield nothing new, would only waste this Court's and the parties' resources, and cannot refute the record.  This Court has already held that the unambiguous terms of the relevant agreements obligate Atlantic to fund its Pro Rata Share into the Sinking Fund once a yearly budget is approved.  And this Court has already rejected Atlantic's justifications for withholding its Pro Rata Share *multiple times*.  Since this Court made these decisions in Lighthouse's favor, nothing new has occurred that would alter the landscape or change the unambiguous terms of the Sinking Fund Agreement.  There is no basis for Atlantic's breaches and the parties' bargain should be honored and Atlantic should be held accountable for its inexcusable breaches of the parties' agreements.  Accordingly, this Court may grant the Motion

---

[2] Capitalized terms used, but not otherwise defined herein, shall have the meaning ascribed to them in the Complaint.

and find in Lighthouse's favor as to Atlantic's liability for all of the claims asserted in the Complaint, hold that Atlantic is liable for, at minimum, its Pro Rata Shares for the 2024 and 2025 funding years, and set trial for the remaining damages caused by Atlantic's breaches.

## NATURE AND STAGE OF PROCEEDINGS

On December 3, 2020, Lighthouse and other affiliated debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.  D.I. 1.  On March 10, 2021, the Court entered an order confirming Lighthouse's plan of reorganization (the "Plan").  D.I. 435.  On October 8, 2024, the Court granted Lighthouse's motion to reopen the bankruptcy case and the following day, Lighthouse filed its Complaint against Atlantic.  D.I. 662 and Adv. D.I. 1.  In response, Atlantic filed its answer and counterclaims on November 13, 2024 (the "Initial Counterclaims").  Adv. D.I. 18.  The same day, Atlantic filed its Third-Party Complaint against non-party Black Butte Coal Company ("Black Butte").  Adv. D.I.  19.  Lighthouse subsequently moved to dismiss Atlantic's Initial Counterclaims and the Third-Party Complaint, with this Court granting Lighthouse's motions to dismiss via bench ruling on July 1, 2025.  *See* Ex. 1.[3]  An order implementing the dismissals was entered by this Court on July 22, 2025.  Adv. D.I. 97.

On August 15, 2025, Atlantic filed its Motion for Clarification, which requested that this Court amend its order implementing the dismissal of Atlantic's Initial Counterclaims to state whether the dismissal was with or without prejudice.  Adv. D.I. 101.  After the close of briefing on Atlantic's Motion for Clarification, the Court provided its Preliminary Observations whereby the Court indicated its intent to deny the motion.  Adv. D.I. 114.  In line with the Court's guidance, an order implementing the Court's Preliminary Observations and dismissing the Motion for Clarification was entered on November 7, 2025.  Adv. D.I. 125.  On October 6, 2025, Lighthouse

---

[3] Unless otherwise noted herein, citations to "Exhibit" or "Ex." shall refer to the exhibits attached to the Transmittal Declaration of Jesse L. Noa, filed contemporaneously with the Motion.

filed its Amended Complaint (the "<u>Complaint</u>").  Adv. D.I. 115.  Atlantic answered the Complaint and asserted affirmative defenses (the "<u>Defenses</u>") (Adv. D.I. 122) and filed a Motion for Leave to Amend Counterclaim (Adv. D.I. 123) on November 5, 2025.  Lighthouse opposed the Motion for Leave to Amend Counterclaim on November 19, 2025 (Adv. D.I. 126), with Atlantic filing its reply in further support on November 26, 2025 (Adv. D.I. 127).  Atlantic's Motion for Leave to Amend Counterclaim was denied by this Court on January 28, 2026.  Adv. D.I. 132-33.  The Court based its denial of Atlantic's motion on the futility of the proposed amendment, explaining that, "[a]t bottom, Atlantic Specialty's claims boil down to a complaint that Lighthouse Resources has failed to implement the reclamation plan successfully. In view of the language of the agreements, however, the amended complaint still fails to state a claim."  Adv. D.I. 132 (the "Motion to Amend Order", Ex. 2).

This is Lighthouse's opening brief in support of its Motion.

## SUMMARY OF ARGUMENT

1.  Lighthouse is entitled to summary judgment in its favor as to Atlantic's liability on all claims asserted in the Complaint because there is no credible dispute that Atlantic has not paid its Pro Rata Share pursuant to approved budgets, and this Court has already repeatedly held that the parties' unambiguous agreements do not authorize Atlantic's willful funding failures.  Because the agreements are unambiguous and are properly interpreted without consideration of extrinsic evidence, nothing produced in any future discovery in this action can alter this conclusion.  It is therefore proper for this Court to hold that Atlantic is liable for Lighthouse's claims at the summary judgment stage and is liable for Atlantic's Pro Rata Shares for 2024 and 2025.

2.  Atlantic's Defenses do not bar Lighthouse's Motion or the relief sought in the Complaint.  *First*, Defenses 1, 2, 3, and 7 do no more than reassert already-rejected arguments that

Atlantic cannot credibly rely upon. *Second*, Defense 6 is belied by Atlantic's prior material breach of the Sinking Fund Agreement, an agreement that both Lighthouse and Atlantic agree is interrelated with the Tolling Agreement. *Third*, although Defenses 4, 5, and 8 relate to Lighthouse's damages and are therefore not teed up in this Motion, this Court may nonetheless reject each Defense at this stage as facially unavailing.

**STATEMENT OF FACTS**

**A.      Lighthouse's Reclamation Efforts and Operations Post-Bankruptcy.**

Lighthouse and its related entities are engaged in the oil and gas business, including coal mining. Compl. ¶ 14.[4] On December 3, 2020, Lighthouse and other affiliated debtors filed voluntary petitions for Chapter 11 bankruptcy relief in the Bankruptcy Court for the District of Delaware. *Id.* ¶ 15. The bankruptcy court confirmed Lighthouse's reorganization Plan on March 10, 2021. *Id.* ¶ 16.

The Plan designated Lighthouse as the Reclamation Trust Entity Representative, tasking Lighthouse with oversight of the reorganized debtors and all post-bankruptcy operations. *Id.* ¶ 29. Relevant here, one such post-bankruptcy project overseen by Lighthouse and the Board is a multi-year reclamation project at the East Decker site. *Id.* ¶¶ 17-18. Significant funding is required for Lighthouse's reclamation efforts. *Id.* ¶ 22. Three sureties, including Atlantic, are to provide substantially all of the funding for Lighthouse's reclamation efforts, at East Decker and at other sites uninvolved in this action. *Id.* ¶¶ 20, 26.

---

[4] Citations to "Compl." refer to Lighthouse's First Amended and Supplemented Complaint, dated October 6, 2025. Adv. D.I. 115.

### 1. The Board and Sureties Representative.

To that end, the Plan created the Board. *Id.* ¶¶ 29, 36. One of the Board members, defined as "Member Two" of the Board in the Trust Agreement, is designated by the sureties, including Atlantic, to represent the sureties' interests and vote on their behalf. *Id.* ¶ 36; *see also, e.g.*, Trust Agreement (Ex. 3), § 3.1 ("one member appointed by the Sureties, initially Danny Hall"); D.I. 629-2, p.2. ("Member Two, appointed by the Sureties: Danny Hall"); July 22, 2022 Hall Resignation Letter (Ex. 4) ("I hereby submit my resignation *as the Sureties representative* Lighthouse Reclamation Trust Entity Board.") (emphasis added). Engraining its role as representative of the Sureties is that the Trust Agreement provide various unilateral rights regarding Member Two. This includes but is not limited to: (1) "approval of the Reclamation Trust Budget for any calendar year period"; (2) input and agreement required by Member Two as it relates to removal of independent Board members; and (3) only the Sureties, in their sole discretion, can replace the individual occupying the Member Two seat on the Board. Trust Agreement, §§ 3.1, 3.3(m), 3.3(q).

There have been two surety representatives since the inception of the Board: Danny Hall and the current surety representative, Michael Ricci. Compl. ¶¶ 37-38. Atlantic communicated with the two surety representatives during their respective tenures as Board members. *Id.* ¶¶ 39-43. Communications produced in discovery—including communications produced *by Atlantic*—demonstrate that all parties, including Atlantic, understood that the surety representative on the Board acted on behalf of the sureties, including Atlantic. *See, e.g.*, Exs. 5-17. Indeed, as demonstrated by invoices Atlantic produced in this action, Atlantic paid a portion of Michael Ricci's fees incurred for his services as a member of the "Lighthouse Reclamation Trust Entity Board". *See, e.g.*, Exs. 8; 18-19. And Atlantic's representative, Terry Dahl, explicitly requested

5

in an internal email that Mr. Ricci be paid pursuant to one such invoice. *See* Ex. 20. Avoiding any doubt, Mr. Hall referred to himself as "the Sureties representative on the Lighthouse Reclamation Trust Entity Board" when resigning from the Board. Ex. 4.

### 2. The Budget.

For each funding year, the sureties, including Atlantic, are required to release their allotment of collateral into the Reclamation Sinking Fund (the "Sinking Fund") pursuant to the applicable budget approved by the Board. Compl. ¶¶ 34-35; *see also* Ex. 21, § 2.3(a). This allotment, each entity's "Pro Rata Share", is set by a yearly budget that is presented to and approved by the Board. Compl. ¶ 35; *see also* Ex. 3, §§ 1.7, 3.3(m). As noted, this yearly budget cannot be approved without the consent of Member Two. Compl. ¶ 46; *see also* Ex. 3, § 3.3(q). Stated another way, if all members of the Board voted to approve a proposed budget, but the surety representative Board member did not consent, the proposed budget would be rejected. *See id.* For the 2024 and 2025 funding years, the Board unanimously approved each budget. Compl. ¶¶ 48, 64; *see also* Exs. 22-23.

### B.      The Parties' Agreements.

As detailed above, the parties' rights and obligations are set forth in multiple agreements. Relevant here are the Reclamation Trust Agreement, Sinking Fund Agreement, General Indemnity Agreement, Bonding Agreement, and the Tolling Agreement.

### 1.      The Reclamation Trust Agreement.

The Reclamation Trust Agreement governs Lighthouse's operations post-bankruptcy, setting forth both Lighthouse's obligations as the Reclamation Trust Entity Representative and Atlantic's obligations as a surety. *See generally* Ex. 3. Section 1.7 of the Reclamation Trust Agreement provides for the distribution of funds from the Budget to the Sinking Fund. *See id.* § 1.7(b). Once

a yearly budget has been approved, the process for distributions into the Sinking Fund is detailed in Section 6.3 of the Reclamation Trust Agreement. *See id.* § 6.3.

These provisions make clear that upon approval of the yearly budget, the sureties, including Atlantic, are ***required*** to release funds in an amount equal to each sureties' Pro Rata Share into the Sinking Fund. *See id.* §§ 1.7(b), 6.3; *see also* Ex. 1, 11:14-15 ("These provisions contemplate that once the board approves a budget, the collateral is to be released."). There are no provisions allowing for withholding of funds after approval for any reason. Nor are there any provisions requiring, as Atlantic contends, that certain benchmarks be hit with the East Decker reclamation before the sureties release collateral. *See id.* at 11:1-19; 13:7-10. And nothing in the Reclamation Trust Agreement obligates Lighthouse to secure funding from Black Butte. *See id.* at 12:7-16.

### 2.   The Sinking Fund Agreement.

The Sinking Fund Agreement details procedures for the funding of and release of distributions from the Sinking Fund. *See generally* Ex. 21. Section 2.3 of the Sinking Fund Agreement provides that Atlantic, as a surety, "***shall*** release collateral held . . . into the Reclamation Sinking Fund in an amount that correlates to the amount of the budgeted expenses ***set forth in the Reclamation Trust Entity Budget***…" *Id.* § 2.3 (emphasis added). For the East Decker site specifically, the Sinking Fund Agreement provides that Atlantic is required to "release an amount equal to [its] respective Pro Rata Share of the budgeted expenses" for the site "in advance for the upcoming Funding Year[.]" *Id.* § 2.3(a). Accordingly, as provided in the Sinking Fund Agreement, Atlantic was required to release its Pro Rata Share of that total budgeted amount through from its collateral in the Sinking Fund ahead of 2024. *See id.*

And because the other surety responsible for releasing collateral into the Sinking Fund for East Decker has already released 100% of its collateral (*see* Compl. ¶ 68), also per Section 2.3(a),

7

Atlantic is responsible for 100% of the budget for East Decker each funding year. *See id.* § 2.3(a) ("In the event one of the Sureties has released all of the collateral held by it, the other Surety's Pro Rata Share shall be deemed to be 100% until it has released all of the collateral held by it into the Reclamation Sinking Fund."). Stated another way, Atlantic's Pro Rata Share has now increased to 100%. Atlantic was notified of this change and has refused to acknowledge these new obligations. *See* Exs. 24-25.

The Sinking Fund Agreement imposes no obligations on Lighthouse that Atlantic may enforce. Indeed, the Sinking Fund Agreement imposes nothing other than general supervisory obligations on Lighthouse. *See* Ex. 1, 13:1-6. As with the Reclamation Trust Agreement, provisions allowing for withholding of funds or requiring that certain progress benchmarks be hit with the East Decker reclamation before the sureties release collateral. *See id.* at 13:7-13. And again, nothing in the Sinking Fund Agreement obligates Lighthouse to secure funding from Black Butte. *See id.*

### 3.    The General Indemnity Agreement.

The General Indemnity Agreement was executed in November of 2016. *See* Ex. 26. The agreement sets forth certain indemnification obligations on Lighthouse's part. Atlantic may not withhold collateral earmarked for the Sinking Fund based upon any provisions in the General Indemnity Agreement. Any assertion otherwise is based on a misapprehension of the agreement.

Section 3 of the General Indemnity Agreement provides that upon demand by any surety, any indemnitor (including Lighthouse), shall "deliver to the Surety collateral in the form and amounts acceptable to the Surety in its sole and absolute discretion[.]" *Id.* § 3. The section further provides that Atlantic "shall not have any obligation to release such collateral until it has received a written release and conclusive evidence of its discharge without loss in the form and substances

8

satisfactory to Atlantic…" *Id.*  The collateral referred to in Section 3 is not collateral earmarked for the Sinking Fund pursuant to an approved budget, however.  Section 3 refers to collateral that any surety may demand be provided to such surety by Lighthouse, as an indemnitor, under certain conditions.  Because the General Indemnity Agreement pre-dates the creation of the Sinking Fund and the execution of the Sinking Fund Agreement by multiple years, Atlantic cannot rely upon Section 3 as a basis to continue withholding its Pro Rata Share for 2024, 2025, and beyond.

### 4.    The Bonding Agreement and Tolling Agreement.

The Tolling Agreement, effective as of December 3, 2020, tolls the applicable limitations period for potential indemnification claims that the sureties could pursue against non-party Black Butte Coal Company ("Black Butte").  *See generally* Ex. 27.  Although the Tolling Agreement provides for termination upon written notice, such termination does not mean that Atlantic may automatically seek indemnification from Black Butte:  Section 1.3 of the Bonding Agreement must first be satisfied.

On April 7, 2021, the parties entered into the Bonding Agreement.  *See generally* Ex. 28.  The Bonding Agreement redefined the parties' relationship under the General Indemnity Agreement post-bankruptcy.  Specifically, the Bonding Agreement set forth limitations on Atlantic's (and the other sureties') ability to demand indemnification from Black Butte and Lighthouse.  *See id.* §§ 1.3, 1.5.  Atlantic and the other sureties may only pursue indemnification from Black Butte and Lighthouse if the Sureties—a defined term which includes Zurich, Atlantic, and West Chester Fire Insurance Company ("West Chester") *collectively*—determine in their "reasonable, good faith discretion" that there has been or will be a material breach of the parties' agreements or the Plan by Black Butte or Lighthouse.  *Id.*; *see also id.* at Preamble.  Accordingly, where there has been no anticipatory or actual material breach by either, there can be no action for

indemnification and any termination of the Tolling Agreement is invalid. And related to Atlantic's wrongful withholding of its Pro Rata Share for 2024 and 2025, there are no supervisory or other obligations on Lighthouse's part included in the Bonding Agreement, and no provisions regarding any sureties' ability to withhold collateral due pursuant to an approved budget.

### C.    Atlantic Fails to Fund the Sinking Fund in 2024 and 2025 and Dodges its Contractual Obligations to Lighthouse.

As with all prior funding years, the budgets for 2024 and 2025 were unanimously approved by the Lighthouse Board in late 2023 and 2024, respectively. *See* Compl. ¶¶ 47, 63-64; *see also* Exs. 22-23. Thus, per the unambiguous terms of Section 2.3(a) of the Sinking Fund Agreement, Atlantic was required to release its Pro Rata Share into the Sinking Fund for the 2024 and 2025 funding years. Although Atlantic maintains that it had a contractual right to withhold its Pro Rata Share—it does not, as discussed herein—there is no dispute that Atlantic failed to do so. *See, e.g.*, Adv. D.I. 28 (Atlantic's Opposition to Lighthouse's Motion to Dismiss Counterclaim) ("…Atlantic has ceased providing any additional funding for Lighthouse's reclamation."); Adv. D.I. 122 (Atlantic's Answer to First Amended and Supplemented Complaint, paragraph 5 of Atlantic's "Facts Common to All Affirmative Defenses") ("…Atlantic has an express, contractual right to stop releasing collateral until it receives evidence of its discharge without loss.").

To vindicate its rights, Lighthouse reopened the underlying Chapter 11 bankruptcy case and filed this action. Lighthouse's Complaint asserts five claims against Atlantic:

- **Count I, Breach of Contract** (Atlantic's failure to fund its Pro Rata Share for the 2024 Funding Year);

- **Count II, Breach of Contract** (Atlantic's failure to fund its Pro Rata Share for the 2025 Funding Year);

10

- **Count III, Declaratory Judgment** (Atlantic's purported termination of the Tolling Agreement was invalid and ineffective);

- **Count IV, Declaratory Judgment** (Atlantic must fund 100% of any approved Budget going forward); and

- **Count V, Declaratory Judgment** (Atlantic's failure to release collateral for the 2024 and 2025 funding years have caused monetary damages to Lighthouse).

Neither side disputes that Atlantic has not released its Pro Rata Share of collateral into the Sinking Fund for 2024 and 2025. *See, e.g.*, Adv. D.I. 28 (Atlantic's Opposition to Lighthouse's Motion to Dismiss Counterclaim) ("…Atlantic has ceased providing any additional funding for Lighthouse's reclamation."); Adv. D.I. 122 (Atlantic's Answer to First Amended and Supplemented Complaint, paragraph 5 of Atlantic's "Facts Common to All Affirmative Defenses") ("…Atlantic has an express, contractual right to stop releasing collateral until it receives evidence of its discharge without loss."). But nonetheless, Atlantic has consistently and wrongfully resisted its funding obligations despite lacking any justification to do so. Atlantic's refusals have deprived the East Decker reclamation of millions of dollars in funding that is required for the project to proceed as required. In addition to wrongfully withholding its Pro Rata Share of funding and therefore materially breaching the Sinking Fund Agreement, Atlantic has also purported to terminate the Tolling Agreement executed between the sureties, including Atlantic, and Black Butte. *See* Ex. 29.

Atlantic's ongoing, unjustified failure to release its collateral is a clear breach of the unambiguous terms of the Sinking Fund Agreement. Indeed, Atlantic's now-dismissed Initial Counterclaims set forth Atlantic's side of the story for why it refused and continues to refuse to honor its contractual obligations. But the Court rejected Atlantic's attempt to contort the plain

language of the parties' agreements to avoid its obligations. Following briefing and argument on Lighthouse's motion to dismiss, the Initial Counterclaims were dismissed in their entirety on July 1, 2025. *See generally* Ex. 1. The Court's ruling was clear: Atlantic's Initial Counterclaims, which mirrored their purported affirmative defenses, failed to state a claim upon which relief could be granted. In so ruling, this Court concluded that the parties' agreements are unambiguous. *See id.* at 9:25-10:10. The Court then held that *none* of Atlantic's excuses for refusing to pay its contractually obligated amounts had any basis in the unambiguous terms of the parties' agreements. *See id.* at 10:11-14, 12:4-13:13. Atlantic's obligations to Lighthouse are therefore clear. Atlantic must release its Pro Rata Share of collateral pursuant to an approved budget (*see id.* at 8:2-10, 11:14-19) and cannot withhold such collateral based upon any alleged failure to meet reclamation milestones, because such milestones do not exist (*see id.* at 11:1-7, 11:14-19).

Despite this well-reasoned ruling, Atlantic's answer filed on November 5, 2025 purported to assert eight meritless Defenses. *See* Adv. D.I. 122, ¶¶ 88-113. In sum, Atlantic's Defenses either reassert already-dismissed claims of breach of contract and fraud or argue that Lighthouse's damages sought are either inadequately pled or unavailable. *See id.* As a result, Defenses one, two, three, six, and seven, relevant to Atlantic's liability, cannot save Atlantic or defeat this Motion. Moreover, although Defenses four, five, and eight are not teed up in this Motion because each pertains to damages, this Court may nonetheless find at this stage that each Defense is meritless.

Compounding the point, this Court recently denied Atlantic's motion for leave to amend because Atlantic's proposed amendments were futile. *See* Ex. 2. This holding reiterated the Court's reasoning for granting Lighthouse's motion to dismiss Atlantic's Initial Counterclaims and rejected Atlantic's contention that certain Montana DEQ communications in any way changed the

nature of this dispute. *See id.* Specifically, this Court made clear that "there is no suggestion that the alleged technical violation of the state regulation – one that the regulators themselves described as minor – gives rise to an actionable claim by Atlantic Specialty against Lighthouse Resources for violation of the terms of the confirmed plan or other agreements." *Id.* at 14. Thus, Atlantic's purported excuses for violating its unambiguous contractual obligations have now been twice rejected by this Court.

Accordingly, because of the unambiguous terms of the parties' agreements and this Court's consistent interpretation of the same in Lighthouse's favor, Atlantic's failure to pay its 2024 and 2025 Pro Rata Shares of each funding year's budgets is a breach of the Sinking Fund Agreement and Lighthouse is entitled to summary judgment in its favor as to Atlantic's liability on Counts I, II, IV, and V. Relatedly, because of Atlantic's prior breach and because Atlantic's purported termination of the Tolling Agreement was invalid, Lighthouse is entitled to summary judgment in its favor as to Atlantic's liability on Count III.

## ARGUMENT

The purpose of summary judgment is to conserve judicial and party resources by streamlining the issues for trial. *See, e.g.*, *Coffman v. Federal Laboratories*, 171 F.2d 94, 98 n.11 (3d Cir. 1948); Fed. R. Civ. P. 56, advisory committee note of 1963. Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine dispute of material fact exists only if a reasonable trier of fact could enter a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court's role is to "determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment, the Court must construe the facts and

13

inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  When a movant's evidence demonstrates the lack of a genuine issue of material fact, the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial.  *See Celotex*, 477 U.S. at 327.

Here, interpretation of the agreements at issue are purely questions of law, and the plain, unambiguous language of the contracts provides that Atlantic was required pay its Pro Rata Share for 2024 and 2025.  Atlantic's liability for the claims in Lighthouse's Complaint therefore appropriately decided through a motion for summary judgment.  *See, e.g.*, *Alcoa, Inc. v. Alcan Rolled Products-Ravenswood LLC*, 2020 WL 1180713, at \*2 (D. Del. Mar. 11, 2020) ("It is a fundamental principle of contract law that disputes involving the interpretation of unambiguous contracts are resolvable as a matter of law, and are, therefore, appropriate cases for summary judgment") (quoting *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001)); *Tamarind Resort Assocs. v. Virgin Islands*, 138 F.3d 107, 110-11 (3d Cir. 1998); *Citisteel USA, Inc. v. General Elec. Co.*, 78 F. App'x 832, 835 (3d Cir. 2003) ("Determining whether a contract provision is ambiguous is a question of law.  Absent ambiguity, a court enforces a contract as written[.]").

As such, Lighthouse is entitled to summary judgment as to Atlantic's liability on all claims asserted in Lighthouse's Complaint.

## I.    Section 2.3 of the Sinking Fund Agreement Requires that Atlantic Release its Pro Rata Share.

Lighthouse is entitled to summary judgment as to Atlantic's liability on Counts I, II, IV, and V of the Complaint.  Section 2.3 of the Sinking Fund Agreement is unambiguous and Atlantic's obligations under Section 2.3 are uncomplicated.  Per its terms, Section 2.3(a) requires Atlantic to release its Pro Rata Share of the unanimously approved 2024 and 2025 budgets into the

14

Sinking Fund. *See* Ex. 21, § 2.3(a). Specifically, "each of Zurich and Atlantic **shall** release an amount equal to their respective Pro Rata Share of the budgeted expenses for the reclamation of East Decker in advance for the upcoming Funding Year[.]" *Id.* (emphasis added).

As noted herein, there is no dispute that the 2024 and 2025 budgets were unanimously approved ahead of each funding year. *See, e.g.*, Compl. ¶¶ 47, 63-64; *see also* Exs. 22-23. Nor is there any dispute that Atlantic failed to pay its Pro Rata Share. *See, e.g.*, Adv. D.I. 28 (Atlantic's Opposition to Lighthouse's Motion to Dismiss Counterclaim) ("…Atlantic has ceased providing any additional funding for Lighthouse's reclamation."); Adv. D.I. 122 (Atlantic's Answer to First Amended and Supplemented Complaint, paragraph 5 of Atlantic's "Facts Common to All Affirmative Defenses") ("…Atlantic has an express, contractual right to stop releasing collateral until it receives evidence of its discharge without loss."). Thus, the Court need go no further and grant summary judgment in Lighthouse's favor. *See, e.g.*, *ARC DBPPROP001, LLC v. Easton Buffet LLC*, 2019 WL 4645133 (E.D. Pa. Sept. 24, 2019), *aff'd*, 842 F. App'x 772 (3d Cir. 2021) (granting motion for summary judgment in plaintiff's favor on all claims where the court found that an enforceable contract was breached by defendant's non-payment and non-fulfillment of obligations); *Franklin Mills Associates, L.P. v. Nationwide Life Ins. Co.*, 836 F. Supp. 2d 238, 250 (E.D. Pa. 2011) (granting motion for summary judgment as to liability in plaintiff's favor where the court found that defendant was liable for paying certain amounts due to plaintiff under an enforceable agreement).

As the Court as already held, this analysis is straightforward, but Atlantic's claims of surprise and recitation of benchmarks also fails. Indeed, these unanimous approvals included the surety representative, Member Two as defined in the Sinking Fund Agreement, satisfying the requirement that *any* yearly budget be approved not just by the Board, but by the surety

representative.  *See* Ex. 3, §§ 1.7(a), 3.3(m), 3.3(q).  In fact, the Sureties, including Atlantic's representative on the Lighthouse Board, was present for and participated in each year's budget approval Board meeting as required.  *See* Ex. 22, at 1, 3 (noting Michael Ricci's attendance and the unanimous approval of the 2024 Lighthouse budget); *see also* Ex. 23, at 1, 4 (noting Michael Ricci's attendance and the unanimous approval of the 2025 Lighthouse budget).  Atlantic's breaches are laid bare by these facts alone.[5]

Moreover, in dismissing the Initial Counterclaims and denying Atlantic's motion for leave to amend, this Court has already rejected Atlantic's excuses for shirking its funding obligations.  *See* Ex. 1, 8:2-10, 10:11-14, 11:1-17, 11:14-19, 12:4-13:13; *see also* Ex. 2 at 13 ("These provisions require, on the board's approval of a budget, Atlantic Specialty to release collateral. Nothing in any of the operative agreements conditions Atlantic Specialty's obligation to release collateral on Lighthouse Resources meeting any milestone, staying within budget, or making some specified level of progress towards the completion of the reclamation project.").  And because this Court already determined that the Sinking Fund Agreement is unambiguous (*see* Ex. 1,  9:25-10:10; *see also* Ex. 2 at 10), nothing produced in discovery can alter this conclusion and a decision at the

---

[5] Because this Court has repeatedly held that the Sinking Fund Agreement unambiguously requires Atlantic to pay its Pro Rata Share once a yearly budget is approved, the Court need go no further.  But to the extent that Atlantic relies upon its contention that it was *not* represented by the surety representative on the Board, that contention is belied by documents produced in this action. *See, e.g.*, Ex. 4 (Mr. Hall writing "[a]t the request of Zurich North America, I hereby submit my resignation **as the Sureties representative** on the Lighthouse Reclamation Trust Entity Board.") (emphasis added); Ex. 6 (writing collectively on behalf of the Sureties, including Atlantic, noting that because of his resignation "Mr. Hall needs to be replaced on the Board **by a different surety representative**" and that the sureties including Atlantic, "collectively propose that Mike Ricci of RESPEC replace Mr. Hall on the Board.") (emphasis added); Ex. 8 (invoice to Atlantic for Mr. Ricci's services on the Lighthouse Board as a "principal consultant"); Ex. 11 (email from Mr. Ricci to Terry Dahl of Atlantic providing summary of Lighthouse board meeting with comments for Atlantic's consideration); Ex. 14 (Mr. Ricci noting that counsel for Atlantic provided him with approval to circulate information requests to Lighthouse executives); Ex. 16 (Mr. Ricci stating "[a]s the surety rep, I need to get a better handle on the bonding."); *see also* Exs. 7, 9; 10; 12; 13, 15, 17.  Read together, these communications mandate only one logical conclusion: that the surety representative acted on behalf of *all* sureties, including Atlantic, and any argument to the contrary is simply not credible.  Indeed, Member Two would reach out to Atlantic,  including through its agent, John Sebastian, to inform Atlantic regarding, among others, draft Board resolutions, and obtain consent on how to vote.  *See* Ex. 5.

16

summary judgment stage in Lighthouse's favor is appropriate. *See, e.g.*, *Mack Trucks Inc. v. BorgWarner Turbo Sys., Inc.*, 508 F. App'x 180, 183 (3d Cir. 2012) ("An unambiguous contract may be construed by the court as a matter of law, including on motion for summary judgment[.]"); *In re Allied Sys. Holdings Inc*, 556 B.R. 581, 595 (D. Del. 2016), *aff'd sub nom. In re ASHINC Corp.*, 683 F. App'x 131 (3d Cir. 2017) ("Because the Third Amendment is complete, clear, and unambiguous on its face and as to the dispositive issue, the bankruptcy court had no need to consider extrinsic evidence in interpreting this provision. . . . Here, no interpretive facts were in genuine issue, and it was proper for the bankruptcy court to interpret the Third Amendment as a matter of law and grant summary judgment.").

Finally, Section 2.3(a) also unambiguously provides that upon another surety's release of 100% of its collateral, the remaining surety's Pro Rata Share "shall" increase to 100% of the approved budget. Ex. 21, § 2.3(a). Atlantic has refused to acknowledge this fact, as evidenced by its July 3, 2025 correspondence to Lighthouse in response to Lighthouse's June 25, 2025 demand. *See* Ex. 24. Based on the plain, unambiguous terms of the Sinking Fund Agreement, Atlantic's Pro Rata Share of East Decker budget has increased to 100%, and Lighthouse is entitled to a declaration to that effect.

In sum, pursuant to the unambiguous terms of the Sinking Fund Agreement, Atlantic is in breach for its failure to release its Pro Rata Share of collateral for the 2024 and 2025 funding years, and Atlantic's Pro Rata Share has increased to 100%. Summary judgment in Lighthouse's favor is therefore warranted on Counts I, II, IV, and V of the Complaint, and Lighthouse's Motion should be granted.

II.    **Atlantic's Termination of the Tolling Agreement was Ineffective.**

Atlantic could not have validly terminated the Tolling Agreement.  Lighthouse is therefore entitled to judgment as a matter of law on Count III of the Complaint.  *First*, as Atlantic itself admits, the Tolling Agreement is part of the parties' interrelated agreements including the Sinking Fund Agreement.  *See, e.g.*, Adv. D.I. 122 (Atlantic's Answer to First Amended and Supplemented Complaint), ¶ 85 (admitting Lighthouse's allegation that "The Tolling Agreement is one in a series of agreements executed with the consummation of Lighthouse's bankruptcy Plan. One such related agreement is the Sinking Fund Agreement."); Adv. D.I. 57 (Atlantic's Answering Brief in Opposition to Third-Party Defendant's Motion to Dismiss Third-Party Complaint), at 12 (including the Tolling Agreement in the definition of "Operative Agreements" along with, among others, the Plan, Sinking Fund Agreement, Trust Agreement, and Bonding Agreement).  Atlantic, therefore, cannot avail itself of any purported rights under the Tolling Agreement while it is in breach of the Sinking Fund Agreement.  *See, e.g.*, *Prime Victor Int'l Ltd. v. Simulacra Corp.*, 682 F. Supp. 3d 428, 446-47 (D. Del. 2023), *appeal dismissed sub nom. Prime Victor Int'l Ltd. v. Simulacra Corp.*, 2024 WL 958377 (3d Cir. Jan. 12, 2024) ("Under Delaware law, '[a] party who first commits a material breach of a contract cannot enforce the contract going forward.' And a '[m]aterial breach acts as a termination of the contract going forward, abrogating any further obligations to perform by the non-breaching party.'") (citation omitted).  Because Atlantic was in material breach of the Sinking Fund Agreement when it purported to terminate the Tolling Agreement, that termination was ineffective.

*Second*, Atlantic's ability to terminate the Tolling Agreement and pursue an action for indemnification against Lighthouse and/or Black Butte is not automatic and is expressly contingent upon Atlantic's satisfaction of certain "limitations".  *See* Ex. 27, §§ 1.3, 1.5.  Before terminating

18

the Tolling Agreement and seeking indemnification, Atlantic must first satisfy the standard set forth in Sections 1.3 and 1.5 of the Bonding Agreement, which apply to Black Butte and Lighthouse, respectively. *See id.* These sections both state that Atlantic—and all other sureties— must "forbear any [] rights under the [] Indemnity Agreement" *unless* the sureties *collectively* determine, based on their "reasonable, good faith discretion", that Lighthouse or Black Butte have committed a "a material default, including either an actual or an anticipatory default under the Plan or other Definitive Documents[.]" *Id.* Atlantic has not satisfied this standard as to either Lighthouse or Black Butte and accordingly, the Tolling Agreement was not effectively terminated, and Lighthouse is entitled to judgment as a matter of law on Count III.

*Second*, even setting this procedural requirement aside, there have been no actionable breaches by Lighthouse *or* Black Butte falling within the ambit of Sections 1.3 and 1.5 of the Bonding Agreement. This Court has already held as such twice. *See* Ex. 1, 8:2-10, 10:11-14, 11:1-17 ("none of the provisions of the various agreements cited by Atlantic impose an affirmative obligation on Lighthouse to fund the trust, to ensure that certain budget milestones are met before collateral is released, or to secure a funding from Black Butte, nor do the agreements condition the release of collateral on adherence to budget performance"), 11:14-19 ("[n]othing in the agreements conditions the obligation to release collateral on actual progress being made towards reclamation or on Lighthouse hitting specific performance milestones"), 12:4-13:13; *see also* Ex. 2 at 13 ("Nothing in any of the operative agreements conditions Atlantic Specialty's obligation to release collateral on Lighthouse Resources meeting any milestone, staying within budget, or making some specified level of progress towards the completion of the reclamation project.") and 16 ("As explained above, however, none of these provisions imposes an obligation on Black Butte to make any distributions at all. As a result, Atlantic Specialty has not identified a specific contractual

19

provision that Black Butte is alleged to have breached. Nor has Atlantic Specialty alleged facts sufficient to trigger a right to proceed under the indemnity framework."). Crucially, nothing has changed since these Court's rulings and accordingly, Lighthouse is entitled to judgment as a matter of law on Count III.

### III.   Atlantic's Defenses are Unavailing.[6]

As demonstrated herein, no issues of material fact remain in this action and Lighthouse is entitled to judgment as a matter of law, and as a result, Lighthouse's Motion should be granted and Atlantic should be found liable for its breaches and be required to pay its Pro Rata Share for 2024 and 2025. Nonetheless, to the extent this Court takes Atlantic's Defenses into account, they have been soundly rejected by this Court twice now and are all meritless.

### A.   Defenses 1, 2, 3, and 7.

For the same reasons that the Motion should be granted as to Counts I, II, IV, and V, Defenses 1, 2, 3, and 7 are irrelevant in evaluating this Motion because each Defense has already been rejected by this Court. *See* Ex. 1, 8:2-10, 10:11-14, 11:1-17, 11:14-19, 12:4-13:13, 14:7-10; *see also* Ex. 2 at 13. In sum, each of these Defenses boils down to Atlantic's already-rejected contention that Lighthouse knowingly exited bankruptcy with an unworkable initial estimated budget and is purportedly in breach of the parties' agreements and the Plan for exceeding this initial estimated budget. *See* Defenses ¶¶ 88, 90-91, 107-110. Atlantic asserts in each case that exceeding this initial budget excused Atlantic's obligations to release its Pro Rata Shares for 2024 and 2025. *See id.* As this Court has already held in dismissing Atlantic's Initial Counterclaims and denying Atlantic's motion for leave to amend, not so. The initial budget was nothing more than an unactionable estimate, there were no required progress benchmarks or guarantees

---

[6] Atlantic's eight Defenses are asserted in paragraphs 88-113 of Adv. D.I. 122.

enshrined in any of the relevant agreements or the Plan, and Atlantic was not entitled to withhold its collateral because of either meritless grievance.

Additionally, specific to Defense 3, Atlantic cannot successfully assert the equitable affirmative defense of unclean hands and therefore, Defense 3 fails as a matter of law. *First*, as a threshold matter, unclean hands is not applicable to Lighthouse's claims, because it does not seek equitable relief, but instead enforcement of Atlantic's unambiguous contractual obligations and the accompanying legal relief. *See, e.g.*, *Sun Microsystems, Inc. v. Versata Enterprises, Inc.*, 630 F. Supp. 2d 395, 410 (D. Del. 2009) ("The inequitable conduct alleged 'must have an immediate and necessary relationship to the equity which [the plaintiff] seeks to obtain in the matter in litigation.'") (citation omitted); *Datasphere, Inc. v. Computer Horizons Corp.*, 2009 WL 2132431, at \*9 (D.N.J. July 13, 2009) ("unclean hands is available as an affirmative defense only against a party seeking to invoke the court's equitable powers."). *Second*, successfully asserting the affirmative defense of unclean hands requires that Atlantic demonstrate the existence of "fraud, deceit, unconscionability, or bad faith" by Lighthouse. *Allergan Hldgs. Unlimited Co. v. MSN Labs. Private Ltd.*, 2024 WL 3444368, at \*4 (D. Del. July 17, 2024). This Court has already rejected Atlantic's fraud claim against Lighthouse and found that Atlantic's dismissed fraud counterclaim was not pled with the requisite particularity. *See* Ex. 1, 14:1-10; *see also* Ex. 2 at 13. Nothing has changed since this Court's decision, the initial budget that Atlantic makes much of remains an unactionable estimate, and Atlantic cannot as a factual matter adequately plead fraud.

Atlantic cannot credibly assert Defenses relying upon already-rejected theories and legally insufficient Defenses. As such, Defenses 1, 2, 3, and 7 do not preclude this Court from granting Lighthouse's Motion.

21

**B.      Defense 6.**

Defense 6, which asserts that Lighthouse cannot seek a declaration relating to the Tolling Agreement because Lighthouse is not a party to that agreement, misses the point. *See* Defenses ¶¶ 104-06. When Atlantic purported to terminate the Tolling Agreement, it was already in prior material breach of the Sinking Fund Agreement by its failure to release its Pro Rata Share into the Sinking Fund for 2024. As set forth herein, there can be no dispute that (i) Atlantic has not paid its Pro Rata Share for 2024; (ii) that the Lighthouse Board approved the 2024 Budget unanimously, including Atlantic's representative's required consent; and (iii) that Atlantic's justifications for withholding its Pro Rata Share were already rejected by this Court when Lighthouse's motions to dismiss were granted. Regardless of whether Lighthouse is a party to the Tolling Agreement or not, as Atlantic has conceded in this action, the Tolling Agreement is one of many interconnected agreements that govern the parties' rights and obligations relevant to this action. *See* Atlantic's Answering Brief in Opposition to Third-Party Defendant's Motion to Dismiss Third-Party Complaint, Adv. D.I. 57 at 12 (including the Tolling Agreement in the definition of "Operative Agreements" along with, among others, the Plan, Sinking Fund Agreement, Trust Agreement, and Bonding Agreement). Bolstering the point, Atlantic's position in this action has been that either alleged breaches by Lighthouse *or* Black Butte are sufficient to terminate the Tolling Agreement and pursue indemnification.

Thus, there are multiple avenues by which this Court can conclude that Defense 6 is without merit, and accordingly, conclude that Lighthouse may seek a declaration regarding the impropriety of the Tolling Agreement.

C.      Defenses 4, 5, and 8.

Finally, although the Court need go no further because Defenses 4, 5, and 8 (*see* Defenses ¶¶ 96-103, 112-13) pertain not to Atlantic's liability, but rather, to the calculation of Lighthouse's damages, at this stage, this Court may nonetheless reject each Defense.

*First*, Atlantic's conclusory Defenses do not negate the material facts in this action. Atlantic has *not* released its Pro Rata Share into the Sinking Fund for 2024 and 2025 and has *not* acknowledged that its Pro Rata Share has now increased to 100%, breaching the Sinking Fund Agreement and damaging Lighthouse.   Moreover, precluding Defenses 4 and 5 entirely, Lighthouse's Complaint explicitly pleads the various ways in which it has been damaged by Atlantic, including dollar figures. *See* Compl. ¶¶ 77, 82, 93, 99-100.  Likewise, Defenses 4 and 5 fail because as detailed herein, there is no dispute that Atlantic has not funded its Pro Rata Share for 2024 and 2025 into the Sinking Fund as required by the Sinking Fund Agreement.  Atlantic's non-payment constitutes a breach of the Sinking Fund Agreement, and the amounts Atlantic has refused to pay are pled in Lighthouse's Complaint. *See id.* ¶¶ 77, 82.  *Second*, and Specific to Defense 8, Atlantic's conduct in this action entitles Lighthouse to punitive damages.  Indeed, as set forth herein, Atlantic's Initial Counterclaims and Atlantic's conduct in this action since the Initial Counterclaims were dismissed make plain that Atlantic has no intention of honoring its contractual obligations to Lighthouse and will continue to ignore its payment obligations.  Atlantic cannot repeatedly assert the same already-rejected excuses for not honoring its contractual obligations to Lighthouse without facing the repercussion of punitive damages.

Thus, although not related to Atlantic's liability, Defenses 4, 5, and 8 may be rejected at this stage as insufficient and do not bar Lighthouse's Motion.

## **CONCLUSION**

For the reasons stated herein, Lighthouse respectfully requests the Court enter an Order

granting Lighthouse's Motion and granting summary judgment as to liability against Atlantic.

Dated: February 4, 2026
Wilmington, Delaware

Respectfully submitted,

*/s/ Jesse L. Noa*
L. Katherine Good (No. 5101)
Jesse L. Noa (No. 5973)
James R. Risener III (No. 7334)
Hannah L. Paxton (No. 7096)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE  19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email:  kgood@potteranderson.com
        jnoa@potteranderson.com
        jrisener@potteranderson.com
        hpaxton@potteranderson.com

*Counsel for Lighthouse Resources Inc.*

24