# EXHIBIT 2

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

**CRAIG T. GOLDBLATT**
**JUDGE**



**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-3832**

January 28, 2026

**VIA CM/ECF**

Re:    *Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.*
        Adv. Proc. No. 24-50144

Dear Counsel:

Lighthouse Resources is involved in the oil and gas business, including coal mining.[1]   In 2014, Lighthouse Resources obtained surety bonds from Atlantic Specialty, which insured Lighthouse Resources' obligations to honor state and federal regulations governing the reclamation of mines, which is essentially the rehabilitation of land after coal mining activities have stopped.

In 2020, Lighthouse Resources along with various affiliates filed chapter 11 bankruptcy cases.  This Court confirmed a plan of reorganization in 2021.[2]  That plan incorporated a series of agreements under which a post-bankruptcy trust would conduct the reclamation work that needed to be done on various former coal mines.

---

[1] Lighthouse Resources Inc. is referred to as "Lighthouse Resources."  For purposes of this motion for leave to amend a counterclaim, the Court assumes the truth of the factual allegations set forth in the proposed amended counterclaim.  *See* D.I. 123-1.

[2] *In re Lighthouse Resources Inc.*, Bankr. D. Del. No. 20-13056, D.I. 435.

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.*,
Adv. Proc. No. 24-50144
January 28, 2026
Page 2 of 16

The work would be financed, in part, by the sureties (including Atlantic Specialty) releasing collateral that the   had posted to secure the bonds.

Atlantic Specialty contends that Lighthouse Resources has failed to meet its obligation to oversee the work of the reclamation trust in performing the reclamation. Atlantic Specialty contends that this may leave it facing exposure to the regulators for whose benefit it issued the surety bonds.  Atlantic Specialty therefore sent a termination notice indicating that it would not release its *pro rata* share of the collateral to the "sinking fund" that pays for the reclamation work.  Lighthouse Resources responded by initiating this adversary proceeding alleging that Atlantic Specialty breached the parties' agreements by failing to release the collateral.[3]

Atlantic Specialty counterclaimed against Lighthouse Resources and also filed a third-party complaint against Black Butte, a non-debtor affiliate of Lighthouse Resources.  The counterclaim and third-party claim asserted, among other things, claims for breach of contract and in *quantum meruit*.[4]  Lighthouse Resources and Black Butte each moved to dismiss.[5]  In July 2025, this Court granted those motions. In a bench ruling delivered on July 1, 2025, the Court explained that the language of the relevant agreements did not condition Atlantic Specialty's obligation to release collateral on Lighthouse Resources' achieving specific milestones towards the

---

[3] D.I. 1.

[4] D.I. 18, 19.  Black Butte Coal Company is referred to as "Black Butte."

[5] D.I. 24, 41.

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.*,
Adv. Proc. No. 24-50144
January 28, 2026
Page 3 of 16

completion of the reclamation work.  "Language like that would certainly have been simple enough to write, and in the absence of such language in the contract, the Court will decline Atlantic [Specialty's] invitation to have the Court imply terms that sophisticated parties, represented by very capable counsel, did not themselves include."[6]

Upon the conclusion of the Court's reading of the bench ruling counsel for Atlantic Specialty asked whether the dismissal of the counterclaim would be with or without prejudice.[7]  When a Court enters a final judgment dismissing a complaint in its entirety, it is important that the Court explain whether the dismissal is with or without prejudice.  If the order is in fact a final and appealable order, a plaintiff that does not appeal the dismissal but instead seeks leave to amend may risk missing the deadline to appeal the original dismissal.  The Third Circuit has thus made clear that when a trial court dismisses a complaint in its entirety, it should either state that the dismissal is with prejudice or else specify a period of time within which the plaintiff may move for leave to amend.[8]

That problem, however, arises only when the order in question would otherwise be a final and appealable order.  An order dismissing a counterclaim, but that leaves in place the plaintiff's claims in the original lawsuit, is not a final and

---

[6] July 1, 2025 Hr'g Tr. at 11 (minor transcription errors corrected).  *See also* D.I. 97 (order dismissing counterclaims).

[7] *Id.* at 18.

[8] *Borelli v. City of Reading*, 532 F.2d 950, 951 n.1 (3d Cir. 1976).

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.,*
Adv. Proc. No. 24-50144
January 28, 2026
Page 4 of 16

appealable order.  The issue addressed by the Third Circuit in *Borelli* therefore is not implicated.[9]  For that reason, there is no need to declare in advance whether or not a motion dismissing some but not all of the claims in a lawsuit is with or without prejudice.  Rather, if a party moves for leave to amend a counterclaim that the court otherwise dismissed, the court can see whether that motion is opposed and decide whether to grant leave to amend based on the arguments presented by the parties, rather than prejudging the question whether the dismissal is "with prejudice."

The Court sought to explain this point in response to counsel's question at the July 1 hearing, noting that the order need not indicate "whether it's with or without prejudice.  The ... [counterclaims] are dismissed and we'll deal with a motion for leave to amend if one is filed."[10]  Atlantic Specialty nevertheless sought leave to clarify the order.[11]  Following the issuance of "preliminary observations" in which the Court set out the point described above about the reasons why an order dismissing some but not all of the counts in a lawsuit need not state whether it is "with prejudice," the Court denied the motion to clarify.[12]

Atlantic Specialty now seeks leave to amend the counterclaim against Lighthouse Resources and third-party claim against Black Butte, again alleging breach of contract and now alleging a breach of the implied covenant of good faith

---

[9] *See Diaz v. FCA US LLC*, 134 F.4th 715, 720-722 (3d Cir. 2025).

[10] July 1, 2025 Hr'g Tr. at 18.

[11] D.I. 101.

[12] D.I. 114, 125.

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.*,
Adv. Proc. No. 24-50144
January 28, 2026
Page 5 of 16

and fair dealing.[13]   For the reasons set forth below, Atlantic Specialty's motion for leave to amend will be denied.

## I.    Atlantic Specialty need not file a motion to alter or amend, since a judgment has not been entered.

Lighthouse Resources argues that the motion for leave to amend should be denied because Atlantic Specialty must first ask the Court, under Bankruptcy Rule 9023, to set aside its earlier order dismissing the counterclaim.[14]   But that is incorrect.   The premise of a motion for leave to amend a complaint is that the new complaint will solve the problems identified in the Court's earlier order dismissing the complaint.   Nothing in a motion for leave to amend implies that the prior order dismissing the earlier form of complaint was incorrect or needs to be reconsidered. Perhaps unsurprisingly, the caselaw on which Lighthouse Resources relies in support of this argument did not involve Rule 15 motions for leave to amend.[15]   The Court accordingly rejects the claim that a court must reconsider a prior order dismissing a complaint before entertaining a Rule 15 motion for leave to amend.

## II.    Atlantic Specialty's motion for leave to amend will be denied as futile.

Under Federal Rule of Civil Procedure 15, leave to amend should be "freely give[n] … when justice so requires."[16] As settled caselaw makes clear, this boils down

---

[13] D.I. 123.

[14] D.I. 126 at 8-9.

[15] *See In re Catholic Diocese of Wilmington, Inc.*, 437 B.R. 488 (Bankr. D. Del. 2010); *In re Energy Future Holdings Corp.*, 575 B.R. 616 (Bankr. D. Del. 2017).

[16] Fed. R. Civ. P. 15(a)(2) (made applicable by Fed. R. Bankr. P. 7015).

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.,*
Adv. Proc. No. 24-50144
January 28, 2026
Page 6 of 16

to the point that leave to amend should generally be granted unless it is either inequitable to give the plaintiff a further chance to plead their claim, or doing so would be "futile" – which essentially means that the proposed amended complaint would not survive a motion to dismiss.[17]  More specifically, the analysis looks at four circumstances: (1) any undue delay, (2) any unfair prejudice to the nonmoving party, (3) any improper purpose, and (4) the futility of the amendment.[18]  The Court rejects Lighthouse Resources' arguments about delay, prejudice, and improper purpose.  It will deny the motion, however, on the ground that amendment would be futile.

### A.    There is no showing that Atlantic Specialty has unduly delayed the assertion of its amended complaint.

Undue delay in seeking leave to amend is grounds for denying leave.[19]  "The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue.'"[20]  In analyzing undue delay (and the related bad faith) courts in this circuit look to the movant's "motives for not amending their complaint to assert this claim earlier."[21]

---

[17] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[18] *See Grayson*, 293 F.3d at 108 (citing *Foman*, 371 U.S. at 182).

[19] *See Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

[20] *Id.*

[21] *Id.*

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.,*
Adv. Proc. No. 24-50144
January 28, 2026
Page 7 of 16

Here, Lighthouse Resources simply asserts that Atlantic Specialty "unjustifi[ably] delay[ed]" in filing the motion for leave.[22] Lighthouse Resources contends that this delay "reveals Atlantic's bad faith motive – to continue to delay this action now that Lighthouse has amended its Complaint and Atlantic realizes it no longer has the leverage of counterclaims."[23] That speculation, however, falls far short of being evidence of bad faith. Indeed, there is no serious suggestion that Atlantic Specialty did not move with reasonable diligence, after the dismissal of its counterclaim, to seek leave to amend. Accordingly, there is no ground to deny the motion for leave on account of delay.

### B.    There is no showing of unfair prejudice.

If granting leave to amend will cause "substantial or undue" prejudice to the non-moving party, the motion for leave will be denied.[24] The Third Circuit has noted certain circumstances that can counsel in favor of finding of prejudice – "additional discovery, cost, and preparation to defend against new facts or new theories."[25] But not all incremental cost will provide a basis for a finding of "prejudice." It is only when the cost or prejudice is "undue" that a motion for leave to amend should be denied on this basis.[26]

---

[22] D.I. 126 at 15.

[23] *Id.*

[24] *Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

[25] *Id.* (analyzing past cases and determining what rose to the level necessary for undue prejudice).

[26] *In re Fleming Companies, Inc.*, 323 B.R. 144, 147-148 (Bankr. D. Del. 2005).

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.*,
Adv. Proc. No. 24-50144
January 28, 2026
Page 8 of 16

Put another way, the non-moving party "is required to demonstrate that its ability to present its case would be seriously impaired were amendment allowed."[27] This has been recognized repeatedly by the Third Circuit. In *Adams v. Gould Inc.*, for example, the Court refused to find undue prejudice where no new facts or additional discovery were required.[28] On the other hand, in *Cornell & Co., Inc. v. Occupational Safety and Health Review Commission*, where the proposed amendment changed the legal and factual basis of the claim and prevented the non-moving party from presenting a defense, the court found the requisite substantial prejudice to deny leave.[29] This caselaw makes clear that not every increase in litigation costs is sufficient – there must be an *unfair* burden that materially affects the non-moving party's ability to present its case.[30]

Here, Lighthouse Resources claims that granting leave would "force Lighthouse to re-litigate issues that have already been decided in Lighthouse's favor by this Court" and would "grant Atlantic a do-over."[31] In Lighthouse Resources' view, this "substantially prejudice[s]" Lighthouse by "forc[ing]" it to "spend time and resources rehashing already-decided issues."[32]

---

[27] *Dole v. Arco Chemical Co.*, 921 F.2d 484, 488 (3d Cir. 1990).

[28] 739 F.2d 858, 868 (3d Cir. 1984)

[29] 573 F.2d 820, 821-824 (3d Cir. 1978).

[30] *Compare Adams*, 739 F.2d at 869 (finding no unfair prejudice, despite the non-moving party asserting "additional counsel fees") *with Cornell*, 573 F.2d at 823-824.

[31] D.I. 126.

[32] *Id.*

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.,*
Adv. Proc. No. 24-50144
January 28, 2026
Page 9 of 16

This argument, however, reflects the same misapprehension discussed above, in Part I, about the difference between a motion for reconsideration and a motion for leave to amend the complaint.  The point of a motion for leave to amend following the dismissal of an initial complaint is to make new factual allegations that satisfy the legal standard articulated by the court in dismissing the earlier complaint.  It is not a means to seek reconsideration of matters already decided.  Accordingly, permitting Atlantic Specialty the opportunity to amend would not unfairly prejudice Lighthouse Resources.

### C.    There is no basis for a finding of an improper purpose.

If leave is sought for an improper purpose, the motion for leave may be denied.[33]  Improper purposes include those designed "to harass, cause unnecessary delay, or needlessly increase the cost of litigation."[34]  As stated above, Lighthouse Resources contends that Atlantic Specialty has both caused an "unjustified delay" and will cause Lighthouse Resources to "spend time and resources rehashing already-decided issues."[35]  Those arguments are unpersuasive.  The Court thus rejects the contention that the motion was filed for an improper purpose.

---

[33] *See Grayson*, 293 F.3d at 108 (citing *Foman*, 371 U.S. at 182).

[34] *See* Fed. R. Bankr. P. 9011(b)(1).

[35] D.I. 126 at 14.

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.*,
Adv. Proc. No. 24-50144
January 28, 2026
Page 10 of 16

### D.     Leave to amend will be denied as futile.

If a proposed amendment would be futile, meaning that, as amended, the complaint would still fail to state a claim upon which relief can be granted, a motion for leave will be denied.[36]  The standard for evaluating futility is the same as the one courts employ in evaluating a Rule 12(b)(6) motion to dismiss.  That is, "taking all pleaded allegations as true and viewing them in a light most favorable to the [party opposing the motion to dismiss]," does the complaint "state a claim upon which relief can be granted."[37]  Where the claims before the Court are principally breach of contract claims and the contract provisions are unambiguous, the role of the Court is simply to give effect to the language of the agreements.[38]  "[I]f the relevant contract provisions are unambiguous and plaintiff has no claim under them, then the claim should be dismissed."[39]

Here, even when taking all factual allegations in the proposed amended counterclaim as true and viewing them in the light most favorable to Atlantic Specialty, the counterclaim fails to state a claim upon which relief can be granted. Atlantic Specialty asserts that the operative agreements (the trust agreement, the

---

[36] *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (citation omitted).

[37] *See Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007); Fed. R. Civ. P. 12(b)(6) (made applicable by Fed. R. Bankr. P. 7012).

[38] *Axiom Inv. Advisors, LLC by and through Gildor Management, LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 533-534 (S.D.N.Y. 2017).

[39] *Id.*

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.,*
Adv. Proc. No. 24-50144
January 28, 2026
Page 11 of 16

sinking fund agreement, and the indemnity agreement) impose obligations on Lighthouse Resources that Lighthouse Resources is alleged to have violated.[40]   At bottom, Atlantic Specialty's claims boil down to a complaint that Lighthouse Resources has failed to implement the reclamation plan successfully.   In view of the language of the agreements, however, the amended complaint still fails to state a claim.

> **1.   The breach of contract claim against Lighthouse Resources is futile.**

In asserting a claim for breach of contract, the proposed amended counterclaim makes three specific contentions regarding alleged breaches by Lighthouse Resources.   None is sufficient to state a claim under the contracts as written.

*First*, Atlantic Specialty contends that Lighthouse Resources has breached the agreements in connection with its oversight of the mine reclamation efforts.   Atlantic Specialty contends that the operative agreements "contractually bind Lighthouse to Atlantic, among others, in order for Lighthouse to successfully implement the Decker Reclamation Plan and ultimately fulfill the reclamation efforts at the Decker Mine."[41] To support this, Atlantic cites §§ 1.1, 2.2, 2.3, and 6.3 of the trust agreement, and article IV of the confirmed plan.   Atlantic Specialty is correct that these provisions contemplate that Lighthouse Resources will be responsible for the oversight of the

---

[40] D.I. 123 ¶¶ 42-73.

[41] *Id.* ¶ 42.

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.*,
Adv. Proc. No. 24-50144
January 28, 2026
Page 12 of 16

reclamation project. But as the Court noted in its bench ruling, nothing in the general language of these provisions establishes a specific, enforceable duty to take the specific actions that Atlantic Specialty alleges were required. The parties could certainly have established contractual benchmarks and imposed liability for the failure to achieve them. In view of the parties' decision not to include such obligations in their written agreement, it would be improper for the Court to impose them.

*Second*, Atlantic Specialty alleges that Lighthouse Resources "failed to acquire the necessary funding from Black Butte as set forth in the [sinking fund agreement]."[42] But nothing in the sinking fund agreement (or any of the operative agreements) requires Lighthouse to obtain funding from Black Butte. Sections 2.2(b) and 6.3(d)(2) of the trust agreement do contemplate contributions from Black Butte. They do so, however, only by stating that *if* Black Butte makes distributions to KCP (one of the reorganized debtors), a portion of that contribution must go to the sinking fund. These sections thus only regulate the use of the funds once distributed by Black Butte. They do not impose affirmative obligations on Lighthouse Resources to secure those distributions or guarantee that such distributions will occur.

*Third*, Atlantic Specialty contends that the Lighthouse Resources "knowingly emerged from bankruptcy … with a Plan that did not include over $9.3 million in necessary costs to achieve the approved reclamation plans therein."[43] Atlantic

---

[42] *Id.* ¶ 64.

[43] *Id.* ¶ 48.

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.,*
Adv. Proc. No. 24-50144
January 28, 2026
Page 13 of 16

Specialty asserts that it "detrimentally relied on Lighthouse's representations in its Plan and Initial Budget" when entering into the operative agreements.[44]  But nothing in the operative agreements condition Atlantic Specialty's obligation to release collateral on Lighthouse Resources' budget performance.  Section 6.3 of the trust agreement and § 2.3 of the sinking fund agreement state that Atlantic Specialty shall release its *pro rata* share of the reclamation board's approved budget "in advance for the upcoming year."  These provisions require, on the board's approval of a budget, Atlantic Specialty to release collateral.  Nothing in any of the operative agreements conditions Atlantic Specialty's obligation to release collateral on Lighthouse Resources meeting any milestone, staying within budget, or making some specified level of progress towards the completion of the reclamation project.

*Finally,* Atlantic Specialty contends that Lighthouse Resources has failed to comply with the law, namely the Montana Surface and Underground Mining Reclamation Act.[45]  Atlantic Specialty cites to article IV.I of the plan to contend that Lighthouse Resources was "tasked with ensuring compliance with laws pertaining to various reclamation licenses and permits required to complete reclamation efforts contemplated in the Plan."  And while this article of the plan does indeed contain a provision stating that all parties shall comply with the law, nothing in the proposed amended complaint ties the alleged violations – notice of which came six months after

---

[44] *Id.* ¶ 54.

[45] D.I. 123 ¶¶ 65-73.

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.,*
Adv. Proc. No. 24-50144
January 28, 2026
Page 14 of 16

Atlantic Specialty's termination notice – to any concrete harm allegedly suffered by

Atlantic Specialty.[46]

Moreover, the Montana Department of Environmental Quality's notice

indicates that the "nature and gravity of the violation was minor" and that there was

no "pattern of violation."[47]  The state agency therefore waived the imposition of any

civil penalty.  Accordingly, even accepting the allegations of the proposed amended

complaint as true, in the context of the applicable documents there is no suggestion

that the alleged technical violation of the state regulation – one that the regulators

themselves described as minor – gives rise to an actionable claim by Atlantic

Specialty against Lighthouse Resources for violation of the terms of the confirmed

plan or other agreements.  The proposed amended complaint thus fails to state a basis

upon which relief can be granted.

> **2.     The claim against Lighthouse Resources for violation of
> the implied duty of good faith and fair dealing is futile.**

Finally, Atlantic Specialty adds in its amended complaint a new count –

alleging that Lighthouse Resources breached the implied covenant of good faith and

fair dealing.  Delaware law is well settled on issues such as this – "it is not the proper

role of a court to rewrite or supply omitted provisions to a written agreement."[48]  As

---

[46] *Id.* ¶ 74; D.I. 126-2 (stating the notice of noncompliance was issued on January 29, 2025).

[47] D.I. 126-2. At argument on the amended motion, both parties agreed that this notice could properly be considered in connection with the present motion.

[48] *Cincinnati SMSA Ltd. Pshp. v. Cincinnati Bell Cellular Sys. Co.,* 708 A.2d 989, 992 (Del. 1998).

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.*,
Adv. Proc. No. 24-50144
January 28, 2026
Page 15 of 16

such, under the implied covenant of good faith and fair dealing, "[e]xisting contract terms control … such that implied good faith cannot be used to circumvent the parties' bargain, or to create a free-floating duty ... unattached to the underlying legal document."[49]    This implied covenant applies only in a "narrow context" and courts only impose the implied covenant in "rare" cases.[50]  The covenant applies "[o]nly when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of had they thought to negotiate with respect to that matter."[51]

Here, Atlantic Specialty asks the Court to do precisely what has been carefully warned against – rewrite or supply omitted provisions to a carefully written contract among sophisticated parties.  As the Court previously noted, language requiring Lighthouse Resources to achieve particular milestones by specified points in time would have been simple enough to include in the operative agreements.  The parties did not, however, include such language.  The Court accordingly must not rewrite the parties' agreement.  The claim fails to state a basis upon which relief can be granted.

### 3.    The claims against Black Butte are futile.

Atlantic Specialty's theory of Black Butte's breach depends on provisions – namely § 2.2(b) of the sinking fund agreement and § 6.3 of the trust

---

[49] *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (citations omitted).

[50] *Cincinnati*, 708 A.2d at 992; *Dunlap*, 878 A.2d at 441.

[51] *Dunlap*, 878 A.2d at 442 (internal quotation omitted).

*Lighthouse Resources Inc. v. Atlantic Specialty Ins. Co.,*
Adv. Proc. No. 24-50144
January 28, 2026
Page 16 of 16

agreement – describing how Black Butte *might* contribute funds and how those funds would subsequently be allocated.  As explained above, however, none of these provisions imposes an obligation on Black Butte to make any distributions at all.  As a result, Atlantic Specialty has not identified a specific contractual provision that Black Butte is alleged to have breached.  Nor has Atlantic Specialty alleged facts sufficient to trigger a right to proceed under the indemnity framework.  The claim accordingly fails to state a basis upon which relief can be granted.

## Conclusion

For the foregoing reasons, Atlantic Specialty's motion for leave to amend will be denied as futile.  The Court will issue an order so providing.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge