# EXHIBIT A



OneBeacon
S U R E T Y   G R O U P

A Member of OneBeacon Insurance Group

## INDEMNITY WORKSHEET

Account Name:          Ambre Energy

Indemnitor Name(s):    Ambre Energy North America, Inc, etc

Indemnity Type:        Standard

Modifications:         ☐ Yes        ☑ No

If Yes, list modifications below:

Execution Date        6/12/2014

Underwriter           Guglielmo, John

Region                Midwest

Today's Date          July 11, 2014



A Member of OneBeacon Insurance Group

### General Indemnity Agreement

This General Indemnity Agreement, hereinafter referred to as the "Agreement," is made and entered into by the undersigned individuals, partnerships, corporations, and/or other business entities, hereinafter referred to, individually and/or collectively, as "Indemnitors."

Whereas, the Indemnitors hereby request, have requested and/or will request OneBeacon Insurance Company, OneBeacon America Insurance Company, OneBeacon Specialty Insurance Company, Atlantic Specialty Insurance Company, any of their future direct or indirect affiliates or subsidiaries of such companies, and any company joining any such companies in executing any bonds or which may be procured by any such company to execute any Bonds, either as a direct writing company or as a co-surety or reinsurer, and/or any of the aforementioned entities' successors or assigns, hereinafter referred to, individually and/or collectively, as the "Surety," to execute or procure bonds, undertakings, guarantees, and/or contractual obligations, including renewals, endorsements, reinstatements, replacements and extensions thereof, whether before or after the date of this Agreement, hereinafter referred to, individually and/or collectively, as the "Bonds" on their behalf and/or on behalf of any of its present or future, directly or indirectly majority-owned or controlled subsidiaries or affiliates, whether alone or in joint venture with others whether or not named herein, and any corporation, partnership or person upon the written request of any of the undersigned, hereinafter referred to individually and/or collectively, as the "Principal."

Now, therefore, in consideration of the Surety executing the Bonds on behalf of the Indemnitors and/or Principal, the Indemnitors hereby jointly and severally agree to the following:

1) Premiums – The Indemnitors shall pay to the Surety, promptly upon demand, all premiums, costs and charges for any Bonds requested from and/or issued by the Surety. To terminate Bonds the Indemnitors shall deliver evidence satisfactory to the Surety of their discharge or release from the Bonds and all liability by reason thereof.

2) Indemnity – The Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs and expenses of any kind or nature, including but not limited to, court costs, attorney's fees, accounting, and any other outside consulting fees and from and against any such losses and expenses which the Surety may sustain or incur, plus interest thereon, arising out of, directly or indirectly: (1) the Surety being requested by the Indemnitors to execute or procure the execution of any Bonds; or (2) the Surety having executed or procured the execution of any Bonds on behalf of Principal; or (3) the failure of the Indemnitors to perform or comply with any of the terms and conditions of this Agreement and/or (4) the Surety enforcing any of the terms and conditions of this Agreement.

3) Collateral – The Indemnitors upon demand of the Surety, at any time and for any reason, including but not limited to Surety's receipt of a claim, shall deliver to the Surety collateral in the form and amounts acceptable to the Surety in its sole and absolute discretion. Any acceptable collateral provided to the Surety by the Indemnitors or any third party or the proceeds thereof, in whole or in part, may be held in the name of Surety and applied to any obligations of Indemnitors under this Agreement. The Surety shall not have any obligation to release such collateral until it has received a written release and conclusive evidence of its discharge without loss in the form and substance satisfactory to the Surety with respect to the Bonds and fulfillment by Indemnitors of all obligations owed under this Agreement. Indemnitors agree that their failure to immediately deposit with Surety any sums demanded under this section shall cause irreparable harm to Surety for which it has no adequate remedy at law, and Surety shall be entitled to injunctive relief for specific performance of such obligation.

4) Settlement of Claims – The Surety shall have the exclusive right to adjust, settle, or compromise any claims, demand, suit or any other proceeding against the Surety arising out of any Bonds, and the Surety's determination shall be binding and conclusive upon the Indemnitors. In the event of any payment by the Surety, an itemized statement of the amount of any such payment sworn to by any officer or authorized representative of the Surety shall be *prima facie* evidence of the fact and the amount of such payment and of the extent of the liability of the Indemnitors to the Surety, and, in the absence of actual fraud or bad faith amounting to dishonesty or malicious conduct, shall be final, conclusive and binding upon the Indemnitors.

5) Other Agreements – The rights, powers and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Indemnitors or others, whether by the terms of any agreement or by operation of law or otherwise. The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have heretofore or may hereafter accept or release any Indemnitors or other agreements of indemnity or collateral.

6) Notice, Changes and Execution – Indemnitors hereby waive notice of the execution of any Bonds, of any changes in the creditworthiness of any Indemnitors, of any release by Surety of any Indemnitors or collateral, and of any defaults. Assent by the Surety to changes in any Bonds and/or in any obligations covered by any Bonds or refusal so to assent shall not release or in any way affect the obligations of the Indemnitors to the Surety. The Surety shall have the right, at its option and sole discretion, to execute or decline any Bonds.

3548002.4

7) Termination – This Agreement can be terminated by the Indemnitors effective upon 30 days written notice sent by registered mail to the Surety at its home office, 77 Water Street, 17th Floor, New York, NY, 10005, but any such notice of termination shall not operate to modify, bar, or discharge the Indemnitors as to the Bonds executed or approved prior to the effective date of such termination, and this Agreement shall remain in full force and effect as to all such Bonds.

8) Governing Law – This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

9) Severability – If any provision of this Agreement is held unenforceable or deemed invalid for any reason, such determination shall not affect the enforceability or validity of any other provision of this Agreement, which will remain in full force and effect as though such provision, or portion thereof, were omitted.

10) Representation – The signatory to this Agreement represents and warrants he/she has full power and authority to execute this Agreement on behalf of the Indemnitors.

11) Counterparts – This Agreement may be executed in counterparts, all of which taken together shall constitute and be considered one and the same agreement, and it shall become effective when one or more of the counterparts have been signed.

12) Copies – A duplicate or facsimile copy or electronic copy of this Agreement shall have the same force and effect as the original Agreement.

13) Amendments, Entire Agreement – This Agreement may not be changed or modified orally. No change or modification shall be effective unless agreed to in writing by a duly authorized officer of the Surety as an amendment hereto. This Agreement constitutes the entire agreement among the Parties, and there are no other understandings or agreements, conditions or qualifications relative to this Agreement. Indemnitors acknowledge and warrant that no oral representations have been made to them by or on behalf of the Surety to induce them to sign this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on this __12th__ day of __June__, 20__14__.

**Ambre Energy North America, Inc.**
(Indemnitor Name)

By: _____

170 S. Main Street, Suite 700
(Indemnitor Address)

Everett King, President
(Print or Type Name and Title)

Salt Lake City, UT 84101

█████████

(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF __Utah__                          County of __Salt Lake__

On this __12th__ day of __June__, 20__14__, before me personally appeared __Everett King__, known or proven to me to be the __President__ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Alisha McNinch
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 11/18/2017
Commission # 669293

(Commission expires __11/18/2017__)

3548002.4

**Ambre Energy Limited (Australia)**
(Indemnitor Name)

By: _____

10 Eagle Street
(Indemnitor Address)

Everett King, Director
(Print or Type Name and Title)

Brisbane, Queensland 4000 Australia

_____
(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF Utah                                    County of Salt Lake

On this 12th day of June , 20 14 , before me personally appeared Everett King , known or proven to me to be the Director of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

> **Alisha McNinch**
> NOTARY PUBLIC - STATE OF UTAH
> My Comm. Exp. 11/18/2017
> Commission # 669293

_____
(Commission expires 11/18/17 )

**AE Minerals Pty Ltd**
(Indemnitor Name)

By: _____

10 Eagle Street
(Indemnitor Address)

~~Everett King, President~~ John Thomas, Secretary
(Print or Type Name and Title)

Brisbane, Queensland 4000 Australia

_____
(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF Utah                                    County of Salt Lake

On this 12th day of June , 20 14 , before me personally appeared ~~Everett King~~ John Thomas , known or proven to me to be the ~~President~~ Secretary of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

> **Alisha McNinch**
> NOTARY PUBLIC - STATE OF UTAH
> My Comm. Exp. 11/18/2017
> Commission # 669293

_____
(Commission expires 11/18/17 )

3548002.4

**AE Coal  LLC**
(Indemnitor Name)

By: _____

Everett King, President
(Print or Type Name and Title)

170 S. Main Street, Suite 700
(Indemnitor Address)

Salt Lake City, UT 84101

█████████

(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF __Utah__                                    County of __Salt Lake__

On this __12th__ day of __June__ _____, 20__14__, before me personally appeared ___Everett King___, known or proven to me to be the _____President_____ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Alisha McNinch
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 11/18/2017
Commission # 669293

(Commission expires __11/18/17__ )

---

**AE Infrastructure LLC**
(Indemnitor Name)

By: _____

Everett King, President
(Print or Type Name and Title)

170 S. Main Street, Suite 700
(Indemnitor Address)

Salt Lake City, UT 84101

█████████

(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF __Utah__                                    County of __Salt Lake__

On this __12th__ day of __June__ _____, 20__14__, before me personally appeared ___Everett King___, known or proven to me to be the _____President_____ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Alisha McNinch
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 11/18/2017
Commission # 669293

(Commission expires __11/18/17__ )

3548002.4

**AE Coal Marketing LLC**
(Indemnitor Name)

By: _____

170 S. Main Street, Suite 700
(Indemnitor Address)

Everett King, Treasurer
(Print or Type Name and Title)

Salt Lake City, UT 84101

████████

(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF ___Utah___                County of ___Salt Lake___

On this __12th__ day of __June__, 20_14_, before me personally appeared___Everett King___, known

or proven to me to be the___Treasurer___ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

**Alisha McNinch**
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 11/18/2017
Commission # 669293

(Commission expires__11/18/17__)

---

**AE Alternative Fuels LLC**
(Indemnitor Name)

By: _____

170 S. Main Street, Suite 700
(Indemnitor Address)

Everett King, President
(Print or Type Name and Title)

Salt Lake City, UT 84101

████████

(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF ___Utah___                County of ___Salt Lake___

On this __12th__ day of __June__, 20_14_, before me personally appeared___Everett King___, known

or proven to me to be the___President___ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

**Alisha McNinch**
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 11/18/2017
Commission # 669293

(Commission expires__11/18/17__)

**AE Wind River LLC**
(Indemnitor Name)

By: _____

170 S. Main Street, Suite 700
(Indemnitor Address)

Everett King, President
(Print or Type Name and Title)

Salt Lake City, UT 84101

█████████
(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF____Utah____

County of__Salt Lake__

On this 12th day of June , 20 14 , before me personally appeared____Everett King____, known

or proven to me to be the____President____ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

**Alisha McNinch**
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 11/18/2017
Commission # 669293

(Commission expires 11/18/17 )

---

**Decker Coal Company**
(Indemnitor Name)

By: _____

KCP, Inc., its Manager
170 S. Main Street, Suite 700
(Indemnitor Address)

Everett King, President – KCP, Inc.
(Print or Type Name and Title)

Salt Lake City, UT 84101

█████████
(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF____Utah____

County of__Salt Lake__

On this 12th day of June , 20 14 , before me personally appeared____Everett King____, known

or proven to me to be the__President of KCP, Inc., Manager of Decker Coal Company__ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

**Alisha McNinch**
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 11/18/2017
Commission # 669293

(Commission expires 11/18/17 )

3548002.4

**Black Butte Coal Company**
(Indemnitor Name)

By: _____

KCP, Inc., its Manager
Everett King, President – KCP, Inc.
(Print or Type Name and Title)

170 S. Main Street, Suite 700
(Indemnitor Address)

Salt Lake City, UT 84101

███████████

(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF ___Utah___                          County of ___Salt Lake___

On this __12th__ day of __June__, 20_14_, before me personally appeared ___Everett King___, known

or proven to me to be the___President of KCP, Inc., Manager of Black Butte Coal Company___ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

> **Alisha McNinch**
> NOTARY PUBLIC - STATE OF UTAH
> My Comm. Exp. 11/18/2017
> Commission # 669293

_____
(Commission expires __11/18/17__ )

---

**Rosebud Coal Company**
(Indemnitor Name)

By: _____

Everett King, President
(Print or Type Name and Title)

170 S. Main Street, Suite 700
(Indemnitor Address)

Salt Lake City, UT 84101

███████████

(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF ___Utah___                          County of ___Salt Lake___

On this __12th__ day of __June__, 20_14_, before me personally appeared ___Everett King___, known

or proven to me to be the___President___ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

> **Alisha McNinch**
> NOTARY PUBLIC - STATE OF UTAH
> My Comm. Exp. 11/18/2017
> Commission # 669293

_____
(Commission expires __11/18/17__ )

**Big Horn Coal Company**
(Indemnitor Name)

By: _____

Everett King, President
(Print or Type Name and Title)

170 S. Main Street, Suite 700
(Indemnitor Address)

Salt Lake City, UT 84101

███████████

(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF _____Utah_____                    County of _____Salt Lake_____

On this _12th_ day of _June_ , 20_14_, before me personally appeared _____Everett King_____, known or proven to me to be the_____President_____ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

**Alisha McNinch**
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 11/18/2017
Commission # 669293

_____
(Commission expires_11/18/17_____)

3548002.4

 OneBeacon
SURETY GROUP

## General Indemnity Agreement

This General Indemnity Agreement, hereinafter referred to as the "Agreement," is made and entered into by the undersigned individuals, partnerships, corporations, and/or other business entities, hereinafter referred to, individually and/or collectively, as "Indemnitors."

Whereas, the Indemnitors hereby request, have requested and/or will request OneBeacon Specialty Insurance Company, Atlantic Specialty Insurance Company, any of their future direct or indirect affiliates or subsidiaries of such companies, and any company joining any such companies in executing any bonds or which may be procured by any such company to execute any Bonds, either as a direct writing company or as a co-surety or reinsurer, and/or any of the aforementioned entities' successors or assigns, hereinafter referred to, individually and/or collectively, as the "Surety," to execute or procure bonds, undertakings, guarantees, and/or contractual obligations, including renewals, endorsements, reinstatements, replacements and extensions thereof, whether before or after the date of this Agreement, hereinafter referred to, individually and/or collectively, as the "Bonds" on their behalf and/or on behalf of any of its present or future, directly or indirectly majority-owned or controlled subsidiaries or affiliates, whether alone or in joint venture with others whether or not named herein, and any corporation, partnership or person upon the written request of any of the undersigned, hereinafter referred to individually and/or collectively, as the "Principal."

Now, therefore, in consideration of the Surety executing the Bonds on behalf of the Indemnitors and/or Principal, the Indemnitors hereby jointly and severally agree to the following:

1) Premiums – The Indemnitors shall pay to the Surety, promptly upon demand, all premiums, costs and charges for any Bonds requested from and/or issued by the Surety. To terminate Bonds the Indemnitors shall deliver evidence satisfactory to the Surety of their discharge or release from the Bonds and all liability by reason thereof.

2) Indemnity – The Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs and expenses of any kind or nature, including but not limited to, court costs, attorney's fees, accounting, and any other outside consulting fees and from and against any such losses and expenses which the Surety may sustain or incur, plus interest thereon, arising out of, directly or indirectly: (1) the Surety being requested by the Indemnitors to execute or procure the execution of any Bonds; or (2) the Surety having executed or procured the execution of any Bonds on behalf of Principal; or (3) the failure of the Indemnitors to perform or comply with any of the terms and conditions of this Agreement and/or (4) the Surety enforcing any of the terms and conditions of this Agreement.

3) Collateral – The Indemnitors upon demand of the Surety, at any time and for any reason, including but not limited to Surety's receipt of a claim, shall deliver to the Surety collateral in the form and amounts acceptable to the Surety in its sole and absolute discretion. Any acceptable collateral provided to the Surety by the Indemnitors or any third party or the proceeds thereof, in whole or in part, may be held in the name of Surety and applied to any obligations of Indemnitors under this Agreement. The Surety shall not have any obligation to release such collateral until it has received a written release and conclusive evidence of its discharge without loss in the form and substance satisfactory to the Surety with respect to the Bonds and fulfillment by Indemnitors of all obligations owed under this Agreement. Indemnitors agree that their failure to immediately deposit with Surety any sums demanded under this section shall cause irreparable harm to Surety for which it has no adequate remedy at law, and Surety shall be entitled to injunctive relief for specific performance of such obligation.

4) Settlement of Claims – The Surety shall have the exclusive right to adjust, settle, or compromise any claims, demand, suit or any other proceeding against the Surety arising out of any Bonds, and the Surety's determination shall be binding and conclusive upon the Indemnitors. In the event of any payment by the Surety, an itemized statement of the amount of any such payment sworn to by any officer or authorized representative of the Surety shall be *prima facie* evidence of the fact and the amount of such payment and of the extent of the liability of the Indemnitors to the Surety, and, in the absence of actual fraud or bad faith amounting to dishonesty or malicious conduct, shall be final, conclusive and binding upon the Indemnitors.

5) Other Agreements – The rights, powers and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Indemnitors or others, whether by the terms of any agreement or by operation of law or otherwise. The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have heretofore or may hereafter accept or release any Indemnitors or other agreements of indemnity or collateral.

6) Notice, Changes and Execution – Indemnitors hereby waive notice of the execution of any Bonds, of any changes in the creditworthiness of any Indemnitors, of any release by Surety of any Indemnitors or collateral, and of any defaults. Assent by the Surety to changes in any Bonds and/or in any obligations covered by any Bonds or refusal so to assent shall not release or in any way affect the obligations of the Indemnitors to the Surety. The Surety shall have the right, at its option and sole discretion, to execute or decline any Bonds.

3548002.4

7) Termination – This Agreement can be terminated by the Indemnitors effective upon 30 days written notice sent by registered mail to the Surety at its home office, 77 Water Street, 17th Floor, New York, NY, 10005, but any such notice of termination shall not operate to modify, bar, or discharge the Indemnitors as to the Bonds executed or approved prior to the effective date of such termination, and this Agreement shall remain in full force and effect as to all such Bonds.

8) Governing Law – This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

9) Severability – If any provision of this Agreement is held unenforceable or deemed invalid for any reason, such determination shall not affect the enforceability or validity of any other provision of this Agreement, which will remain in full force and effect as though such provision, or portion thereof, were omitted.

10) Representation – The signatory to this Agreement represents and warrants he/she has full power and authority to execute this Agreement on behalf of the Indemnitors.

11) Counterparts – This Agreement may be executed in counterparts, all of which taken together shall constitute and be considered one and the same agreement, and it shall become effective when one or more of the counterparts have been signed.

12) Copies – A duplicate or facsimile copy or electronic copy of this Agreement shall have the same force and effect as the original Agreement.

13) Amendments, Entire Agreement – This Agreement may not be changed or modified orally. No change or modification shall be effective unless agreed to in writing by a duly authorized officer of the Surety as an amendment hereto. This Agreement constitutes the entire agreement among the Parties, and there are no other understandings or agreements, conditions or qualifications relative to this Agreement. Indemnitors acknowledge and warrant that no oral representations have been made to them by or on behalf of the Surety to induce them to sign this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on this _10th_ day of _November_, 20_16_.

---

Lighthouse Resources, Inc.

By: _____

10980 South Jordan Gateway

(Indemnitor Address)

Everett King, President

(Print or Type Name and Title)

South Jordan, UT 84095

████████████

(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF _Utah_

County of _Salt Lake_

On this _10_ day of _November_, 20_16_, before me personally appeared _Everett King_, known or proven to me to be the _President_ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

MICHAEL O'ROURKE
NOTARY PUBLIC -STATE OF UTAH
My Comm. Exp 07/18/2020
Commission # 689968

(Commission expires_____)

3548002.4

_____LHR Coal, LLC_____                    By:_____

_____10980 South Jordan Gateway_____       _____Everett King, President_____
(Indemnitor Address)                            (Print or Type Name and Title)

_____South Jordan, UT 84095_____

[REDACTED]

(Federal Tax ID)


ACKNOWLEDGEMENT

STATE OF_____Utah_____                          County of _____Salt Lake_____

On this _10_ day of_____November_____, 20_16_, before me personally appeared_____Everett King_____, known

or proven to me to be the_____President_____ of the entity executing the foregoing
instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and
purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

**MICHAEL O'ROURKE**
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp 07/18/2020
Commission # 689968

_____
(Commission expires_____)


_____LHR Infrastructure, LLC_____          By:_____

_____10980 South Jordan Gateway_____       _____Everett King, President_____
(Indemnitor Address)                            (Print or Type Name and Title)

_____South Jordan, UT 84095_____

[REDACTED]

(Federal Tax ID)


ACKNOWLEDGEMENT

STATE OF_____                County of _____Salt Lake_____

On this _10_ day of_____November_____, 20_16_, before me personally appeared_____Everett King_____, known

or proven to me to be the_____President_____ of the entity executing the foregoing
instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and
purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

**MICHAEL O'ROURKE**
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp 07/18/2020
Commission # 689968

_____
(Commission expires_____)

3548002.4

_____Lighthouse Products, LLC_____          By:_____

_____10980 South Jordan Gateway_____          _____Everett King, President_____
(Indemnitor Address)          (Print or Type Name and Title)

_____South Jordan, UT 84095_____

███████████████████████

(Federal Tax ID)


ACKNOWLEDGEMENT

STATE OF____Utah____          County of ___Salt Lake___

On this _10_ day of ____November____, 20 _16_, before me personally appeared_____, known

or proven to me to be the_____President_____ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

MICHAEL O'ROURKE
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp 07/18/2020
Commission # 689968

(Commission expires_____)


_____KCP, Inc._____          By:_____

_____10980 South Jordan Gateway_____          _____Everett King, President_____
(Indemnitor Address)          (Print or Type Name and Title)

_____South Jordan, UT 84095_____

███████████████████████

(Federal Tax ID)


ACKNOWLEDGEMENT

STATE OF____Utah____          County of ___Salt Lake___

On this _10_ day of ____November____, 20 _16_, before me personally appeared _Everett King_, known

or proven to me to be the____President____ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

MICHAEL O'ROURKE
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp 07/18/2020
Commission # 689968

(Commission expires_____)

3548002.4

_____Big Horn Coal Company_____            By:_____[signature]_____

_____10980 South Jordan Gateway_____       _____Everett King, President_____
(Indemnitor Address)                          (Print or Type Name and Title)

_____South Jordan, UT 84095_____

[redacted]

(Federal Tax ID)


ACKNOWLEDGEMENT

STATE OF ___Utah___                           County of ___Salt Lake___

On this _10_ day of _November_ , 20_16_ , before me personally appeared _Everett King_ , known
or proven to me to be the ___President___ of the entity executing the foregoing
instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and
purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

[notary seal: MICHAEL O'ROURKE NOTARY PUBLIC -STATE OF UTAH My Comm. Exp 07/18/2020 Commission # 689968]

_____[signature]_____
(Commission expires_____)


_____Rosebud Coal Sales Company_____       By:_____[signature]_____

_____10980 South Jordan Gateway_____       _____Everett King, President_____
(Indemnitor Address)                          (Print or Type Name and Title)

_____South Jordan, UT 84095_____

[redacted]

(Federal Tax ID)


ACKNOWLEDGEMENT

STATE OF ___Utah___                           County of ___Salt Lake___

On this _10_ day of _November_ , 20_16_, before me personally appeared _Everett King_ , known
or proven to me to be the ___President___ of the entity executing the foregoing
instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and
purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

[notary seal: MICHAEL O'ROURKE NOTARY PUBLIC -STATE OF UTAH My Comm. Exp 07/18/2020 Commission # 689968]

_____[signature]_____
(Commission expires_____)

3548002.4

_____KCP Properties, Inc._____

_____10980 South Jordan Gateway_____
(Indemnitor Address)

_____South Jordan, UT 84095_____

_____████████████_____
(Federal Tax ID)

By:_____

_____Everett King, President_____
(Print or Type Name and Title)

ACKNOWLEDGEMENT

STATE OF_____Utah_____                    County of _____Salt Lake_____

On this _10_ day of _November_, 20 _16_, before me personally appeared _Everett King_, known or proven to me to be the_____President_____ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

MICHAEL O'ROURKE
NOTARY PUBLIC -STATE OF UTAH
My Comm. Exp 07/18/2020
Commission # 689968

_____
(Commission expires_____)

---

_____Decker Holding Co., LLC_____

_____10980 South Jordan Gateway_____
(Indemnitor Address)

_____South Jordan, UT 84095_____

_____████████████_____
(Federal Tax ID)

By:_____

_____Everett King, President_____
(Print or Type Name and Title)

ACKNOWLEDGEMENT

STATE OF_____Utah_____                    County of _____Salt Lake_____

On this _10_ day of _November_, 20 _16_, before me personally appeared _Everett King_, known or proven to me to be the_____President_____ of the entity executing the foregoing instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

MICHAEL O'ROURKE
NOTARY PUBLIC -STATE OF UTAH
My Comm. Exp 07/18/2020
Commission # 689968

_____
(Commission expires_____)

3548002.4

___Decker Coal Company, LLC___                         By: _____

___10980 South Jordan Gateway___                         ___Everett King, President___
(Indemnitor Address)                                     (Print or Type Name and Title)

___South Jordan, UT 84095___

██████████████████
(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF___Utah___                         County of ___Salt Lake___
On this __10__ day of ___November___, 20 _16_, before me personally appeared _Everett King_, known
or proven to me to be the___President___ of the entity executing the foregoing
instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and
purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

MICHAEL O'ROURKE
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp 07/18/2020
Commission # 689968

(Commission expires_____)

___Montana Royalty Holdings, LLC___                         By: _____

___10980 South Jordan Gateway___                         ___Everett King, President___
(Indemnitor Address)                                     (Print or Type Name and Title)

___South Jordan, UT 84095___

██████████████████
(Federal Tax ID)

ACKNOWLEDGEMENT

STATE OF___Utah___                         County of ___Salt Lake___
On this __10__ day of ___November___, 20 _16_, before me personally appeared _Everett King_, known
or proven to me to be the___President___ of the entity executing the foregoing
instrument ("Entity") and he/she acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and
purposes therein mentioned and he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

MICHAEL O'ROURKE
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp 07/18/2020
Commission # 689968

(Commission expires_____)

3548002.4

# EXHIBIT B

# RECLAMATION TRUST ENTITY AND DISTRIBUTION AGREEMENT

This Reclamation Trust Entity and Distribution Agreement (this "Agreement") is made this 7th day of April, 2021, by and among: (i) Lighthouse Resources Inc., a Delaware corporation ("Reorganized Lighthouse"), and each of the undersigned subsidiaries of Reorganized Lighthouse (each a "Reorganized Debtor" and, together with Reorganized Lighthouse the "Reorganized Debtors"), (ii) Resource Capital Fund V L.P., a Cayman Islands exempt limited partnership ("RCF V"), Resource Capital Fund VI L.P., a Cayman Islands exempt limited partnership ("RCF VI" and "Class A Reclamation Trust Entity Interests Agent"), and RCF V Annex Fund L.P., a Cayman Islands exempt limited partnership (together with RCF V and RCF VI, the "Senior Secured Lenders"); (iii) Zurich American Insurance Company, an Illinois corporation ("Zurich"); (iv) Atlantic Specialty Insurance Company, a New York corporation ("Atlantic"); (v) Westchester Fire Insurance Company, a Pennsylvania corporation ("Westchester" and, together with Zurich and Atlantic, the "Sureties" and each, a "Surety"); (vi) Lighthouse Resources Inc., a Delaware corporation, as trustee (the "Reclamation Trust Entity Representative"); and (vii) Delaware Trust Company, a Delaware Corporation, as trustee (the "Reclamation Trust Delaware Trustee" and together with the Reclamation Trust Entity Representative, the "Trustees" and each a "Trustee"); in connection with the Second Amended Joint Plan of Debtors under chapter 11 of the Bankruptcy Code, dated March 10, 2021 filed at Docket No. 435 in the cases jointly administered by the Debtors under chapter 11 of the Bankruptcy Code ("Chapter 11 Cases") pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") as Case No. 20-13056 (together with any amendments thereof, exhibits or other documents attached thereto or supplements thereto, the "Plan").[1]

## RECITALS

WHEREAS, on December 3, 2020, the Debtors filed the Chapter 11 Cases;

WHEREAS, on March 10, 2021, Docket No. 435, the Bankruptcy Court entered an Order confirming the Plan (the "Confirmation Order");

WHEREAS, the Effective Date of the Plan occurred on the date hereof;

WHEREAS, the Plan provides for, on the Effective Date:

     a)     the creation of a Delaware business trust ("Lighthouse Reclamation Trust") and the issuance of interests in Lighthouse Reclamation Trust (the "Reclamation Trust Entity Interests") for the benefit of holders of Class A Reclamation Trust Entity Interests and Class B

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, a copy of which is attached hereto as Exhibit A. A copy of the Confirmation Order is attached hereto as Exhibit B. A list of defined terms is attached hereto as Exhibit C.

Reclamation Trust Entity Interests (collectively, in their capacities as holders of Reclamation Trust Entity Interests, the "Beneficiaries" and, each individually, a "Beneficiary");

b)       the vesting of Lighthouse Reclamation Trust with (i) newly issued Equity Interests of Reorganized Lighthouse, representing 100% of the Equity Interests in Reorganized Lighthouse, transferred to Lighthouse Reclamation Trust by the holders of the Class A Reclamation Trust Entity Interests and Class B Reclamation Trust Entity Interests, as described below, and (ii) custody and control of the Reclamation Sinking Fund (defined below);

c)       the vesting of Reorganized Lighthouse with (i) newly issued Equity Interests of Reorganized LHR Coal (defined below), representing 100% of the Equity Interests in Reorganized LHR Coal, and (ii) newly issued Equity Interests of Reorganized LHR Infrastructure (defined below), representing 100% of the Equity Interests in Reorganized LHR Infrastructure;

d)       the vesting of Reorganized LHR Coal with newly issued Equity Interests of Reorganized KCP (defined below), Reorganized Big Horn (defined below), Reorganized Rosebud (defined below), Reorganized KCP Properties (defined below), Reorganized Decker (defined below), and Reorganized Montana Royalty (defined below), representing 100% of the Equity Interests in said companies;

e)       the vesting of Reorganized Lighthouse Infrastructure with newly issued Equity Interests of Reorganized Millennium (defined below), representing 100% of the Equity Interests in Reorganized Millennium;

f)       the vesting of Reorganized Millennium with newly issued Equity Interests of Reorganized Barlow Point (defined below) and Reorganized Columbia Land (defined below), representing 100% of the Equity Interests in said companies;

g)       the retention of all property in each of the Coal Side Debtors' respective estates, all Causes of Action, and any property acquired by any of the Coal Side Debtors under the Plan in each applicable Reorganized Coal Side Debtor (defined below), free and clear of all Liens, Claims, charges, or encumbrances (but not free and clear of any Reclamation Liabilities), except for Equity Interests in the Reorganized Coal Side Debtors and except as expressly stated in the Plan or the Confirmation Order;

h)       the vesting of Reorganized Lighthouse with (i) all real property owned by Reorganized Barlow Point and Reorganized Columbia Land, or either of them, free and clear of all Liens, Claims, charges or encumbrances, (ii) all of the other assets, including Causes of Action, remaining in the Estates, on the Effective Date, of Decker Holding Co., LLC, Gulf States Bulk Terminal, LLC, and in the Non-Debtor Subsidiaries, free and clear of all Liens, Claims, charges or encumbrances, (iii) rights and obligations with respect to the funds and reserves established pursuant hereto (other than the Reclamation Sinking Fund), and (iv) the right to prosecute, settle, withdraw or resolve in any manner approved by the Bankruptcy Court the Causes of Action that are not settled or released in accordance with the terms of the Plan (such assets and rights, the "Transferred Lighthouse Post-Effective Date Assets," along with all of the other assets and rights of the Reorganized Debtors as set forth in the Plan, collectively, the "Post-Effective Date Assets")

2

4827-5741-7690.v28

to promote the interests of the Reclamation Trust Entity Interests, the Sureties and the Reclamation Governmental Authorities, all in accordance with the terms of this Agreement; and

i)      the retention of all property owned by any of the Millennium Debtors other than Transferred Lighthouse Post-Effective Date Assets, all Causes of Action and any property acquired by any of the Millennium Debtors under the Plan, in the applicable Reorganized Millennium Debtor (defined below), free and clear of all Liens, Claims, charges, or encumbrances.

WHEREAS, the Plan contemplates that, pursuant to Treasury Regulation Section 301.7701-4(b), Lighthouse Reclamation Trust shall be created as a business trust for the purposes set forth in this Agreement;

WHEREAS, Lighthouse Reclamation Trust is intended to qualify, and shall be treated, as a partnership for U.S. federal income tax purposes and any state law income tax purposes, pursuant to Treasury Regulation Section 301.7701-2(c)(1), with the Beneficiaries to be treated as the partners of Lighthouse Reclamation Trust, and Lighthouse Reclamation Trust shall be the owner of Reorganized Lighthouse Equity Interests (subject to the rights of creditors of Lighthouse Reclamation Trust), and consequently, the transfer of the Reorganized Lighthouse Equity Interests to Lighthouse Reclamation Trust shall be treated as a transfer of those interests from the Debtors and the Estates to the Beneficiaries followed by a transfer by such Beneficiaries to Lighthouse Reclamation Trust for federal income tax purposes; and

WHEREAS, it is the intention of the parties hereto that Lighthouse Reclamation Trust created hereby constitutes a statutory trust under Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. § 3801, et seq. (the "Delaware Statutory Trust Act"), and that this document constitutes the governing instrument of Lighthouse Reclamation Trust. The Reclamation Trust Entity Representative is hereby authorized and directed to execute and file a certificate of trust with the Delaware Secretary of State in accordance with the provisions of the Delaware Statutory Trust Act.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, and mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I.
## DECLARATION OF TRUST

1.1      **Creation and Purpose of Lighthouse Reclamation Trust.** The Beneficiaries and the Reclamation Trust Entity Representative hereby create Lighthouse Reclamation Trust for the primary purpose of supervising the Reclamation Plans and in that process will, among other things: (a) issue the Reclamation Trust Entity Interests in accordance with the Plan and this Agreement and accept Reorganized Lighthouse Equity Interests as described below; (b) own (indirectly), monetize (consistent with the Reclamation Plans), and oversee the operation of the remainder of the Reorganized Coal Side Debtors' businesses and operations in a controlled, efficient and value-

3

maximizing (adjusting for risk) manner; (c) own (indirectly) or terminate the existence of and monetize any remaining assets of the Reorganized Millennium Debtors; (d) implement the Plan and make (or cause to be made) distributions in accordance with the Plan and the Agreement; (e) oversee and administer (i) the termination of certain of the Debtors' qualified 401(k) retirement plans and any related trusts and the distribution of such plans' assets to participants and for fulfilling statutory and regulatory requirements related to such plans, (ii) any statutory and regulatory requirements related to any terminated Debtor employee benefit plans, and (iii) all Employee Benefits Agreements relating to employees at Reorganized Lighthouse and non-union employees at Reorganized Decker except for Employment Agreements ("Assumed Employee Benefit Agreements"); (f) oversee: (i) the completion of the Decker Reclamation Plan; and (ii) the funding and setting aside of the costs of the Black Butte Reclamation Plan attributable to Reorganized KCP's (defined below) 50% interest in Black Butte, as funded by: (x) the Reclamation Sinking Fund, with the use of such funds subject to (1) the supervision of the Sureties as set forth in the Reclamation Sinking Fund Agreement (defined below) and (2) the consent of Bitter Creek, as provided by Sections 1.7 and 6.3 hereof; and (y) by other funds as set forth herein; (g) upon completion of the Decker Reclamation Plan, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, and of funding required for the Black Butte Reclamation Plan attributable to Reorganized KCP's 50% interest in Black Butte, hold the remaining Reclamation Trust Entity Interests and make distributions with respect to same until, with the consent of the Class A Reclamation Trust Entity Interest Agent, the sale of the Equity Interests in Reorganized KCP or other dissolution of Reorganized KCP; and (h) perform such other services as are contemplated by the Plan and this Agreement or other services or activities as authorized by the Reclamation Trust Entity Board, all as more fully described herein ("Purposes"). The Reclamation Trust Entity Representative shall (x) make continuing efforts to administer and reduce the Post-Effective Date Assets to Cash, and (y) make timely distributions and not unduly prolong the duration of Lighthouse Reclamation Trust.

1.2    **Declaration of Trust; Vesting of Equity Interests.** To declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Reorganized Debtors, the Reclamation Trust Entity Representative, and the Senior Secured Lenders have executed this Agreement and, effective on the Effective Date, the following shall be deemed to have occurred:

a)    pursuant to the Plan and the Confirmation Order, all Equity Interests in Reorganized Lighthouse have been cancelled;

b)    the (x) Senior Secured Lenders hereby exchange all outstanding secured debt and other amounts owed to them by the Debtors, including amounts due under or relating to the Senior Secured Loan Agreements, and all claims against the Debtors, and (y) in accordance with the Plan, the holders of the General Unsecured Claims have exchanged all of their Claims against the Debtors, in each case for new Equity Interests in Lighthouse Resources Inc. and Lighthouse Resources Inc. hereby issues new Equity Interests in Lighthouse Resources Inc. to the Class A Reclamation Trust Entity Interests Agent on behalf of the Senior Secured Lenders and new Equity Interests in Lighthouse Resources Inc. to the Class B Reclamation Trust Entity Interests Agent on behalf of the holders of General Unsecured Claims, representing 100% of the Equity Interests in Lighthouse Resources Inc. (upon such issuance, "Reorganized Lighthouse") (such Equity Interests, "Reorganized Lighthouse Equity Interests");

4

c)        the Class A Reclamation Trust Entity Interests Agent, on behalf of the Senior Secured Lenders, and the Class B Reclamation Trust Entity Interests Agent, on behalf of the holders of General Unsecured Claims, hereby contribute all of the newly issued Equity Interests in Reorganized Lighthouse, representing 100% of the Equity Interests in Reorganized Lighthouse, to Lighthouse Reclamation Trust, to have and to hold unto Lighthouse Reclamation Trust and its successors and assigns forever, for the benefit of the Beneficiaries and each of their successors and assigns as provided for in this Agreement;

d)        in exchange for the contribution of the newly issued Equity Interests in Reorganized Lighthouse to Lighthouse Reclamation Trust, Lighthouse Reclamation Trust hereby issues the Class A Reclamation Trust Entity Interests to the Class A Reclamation Trust Entity Interests Agent, on behalf of the Senior Secured Lenders, and the Class B Reclamation Trust Entity Interests to the Class B Reclamation Trust Entity Interests Agent on behalf of the holders of General Unsecured Claims; and

e)        (i) Reorganized Lighthouse hereby irrevocably surrenders its Equity Interests in LHR Coal, LLC and LHR Infrastructure, LLC, without recourse, and each of said companies hereby issues new Equity Interests in each said company to Reorganized Lighthouse, representing 100% of the Equity Interests in said companies (upon such issuance, respectively, "Reorganized LHR Coal" and "Reorganized LHR Infrastructure"); (ii) Reorganized LHR Coal hereby irrevocably surrenders its Equity Interests in KCP, Inc., Big Horn Coal Company, Rosebud Coal Sales Company, KCP Properties, Inc., Decker Coal Company, LLC, and Montana Royalty Holdings, LLC, without recourse, and each of said companies hereby issues new Equity Interests in each said company to Reorganized LHR Coal, representing 100% of the Equity Interests in said companies (upon such issuance, respectively, "Reorganized KCP" "Reorganized Big Horn," "Reorganized Rosebud," "Reorganized KCP Properties," "Reorganized Decker" and "Reorganized Montana Royalty"; and collectively with Reorganized LHR Coal and Reorganized Lighthouse, the "Reorganized Coal Side Debtors"); (iii) Reorganized LHR Infrastructure hereby irrevocably surrenders its Equity Interests in Millennium Bulk Terminals-Longview, LLC, without recourse, and Millennium Bulk Terminals-Longview, LLC, hereby issues new Equity Interests in Millennium Bulk Terminals-Longview, LLC to Reorganized LHR Infrastructure, representing 100% of the Equity Interests in Millennium Bulk Terminals-Longview, LLC (upon such issuance, "Reorganized Millennium"); and (iv) Reorganized Millennium hereby irrevocably surrenders its Equity Interests in Barlow Point Land Company, LLC and Columbia Land Co., LLC, without recourse, and each of said companies hereby issues new Equity Interests in each said company to Reorganized Millennium, representing 100% of the Equity Interests in said companies (upon such issuance, respectively, "Reorganized Barlow Point" and "Reorganized Columbia Land"; and collectively with Reorganized Millennium and Reorganized LHR Infrastructure, "Reorganized Millennium Debtors"); to have and to hold unto Reorganized Debtors, as applicable, and their applicable successors and assigns forever, for the benefit of the Beneficiaries and each of their successors and assigns as provided for in this Agreement. The issuance of the Equity Interests in Reorganized Lighthouse to Lighthouse Reclamation Trust shall be free and clear of all Liens, Claims, charges, encumbrances and other Equity Interests. The issuance of the Equity Interests in the Reorganized Coal Side Debtors (other than Reorganized Lighthouse) and Reorganized Millennium Debtors to Reorganized Lighthouse, Reorganized LHR Coal, Reorganized LHR Infrastructure, or Reorganized Millennium, as applicable, shall be free and clear of Liens, Claims,

5

charges, encumbrances (but not free and clear of any Reclamation Liabilities), and other Equity Interests.

1.3    **Vesting of Estate Assets.** On the Effective Date, the Transferred Lighthouse Post-Effective Date Assets shall automatically vest in Reorganized Lighthouse and, except with respect to assets specifically designated to vest in Lighthouse Reclamation Trust under the Plan or this Agreement, the assets of each Coal Side Debtor shall remain in or otherwise automatically vest in the applicable Reorganized Coal Side Debtor.  The Reorganized Debtors shall be authorized, at the direction of Lighthouse Reclamation Trust, to obtain and collect all of the Post-Effective Date Assets owned by such Reorganized Debtors in the possession of third parties, except for such assets to be released to the Reclamation Sinking Fund or otherwise retained by the Sureties. Reorganized Lighthouse shall be authorized to liquidate, sell, transfer and reduce to cash any Post-Effective Date Assets that are not necessary for the Purposes for which Lighthouse Reclamation Trust has been created and to otherwise manage and operate the Reorganized Debtors' businesses and operations. All of the Transferred Lighthouse Post-Effective Date Assets shall be delivered to Reorganized Lighthouse free and clear of all Liens, Claims, charges, or encumbrances. All other Post-Effective Date Assets of each of the Coal Side Debtors shall vest in each applicable Reorganized Coal Side Debtor, free and clear of all Liens, Claims, charges, or encumbrances (but not free and clear of any Reclamation Liabilities), except for Equity Interests in the Reorganized Coal Side Debtors.  For the avoidance of doubt, the vesting or retention of any assets or interests of the Coal Side Debtors in the Reorganized Coal Side Debtors shall not be free and clear of any exception provided in the Plan and shall be subject to all Reclamation Liabilities.  The Plan provides for the assumption of the Black Butte JV Agreement (defined below) by Reorganized KCP in accordance with Section 365 of the Bankruptcy Code.  For the avoidance of doubt, Reorganized KCP, its successors and assigns, as limited by the Black Butte JV Agreement, shall be the joint venturer that holds the 50% ownership interests in Black Butte, as further defined by the Black Butte JV Agreement.  Further for the avoidance of doubt, the vesting or retention of any assets or interests of the Millennium Debtors in the Reorganized Millennium Debtors or Reorganized Lighthouse shall not be free and clear of any exception provided in the Plan.  The Reclamation Trust Entity Representative shall be conclusively entitled to rely on the legality and validity of the transfers provided herein. Moreover, on the Effective Date, any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to Reorganized Lighthouse shall automatically vest in, and be available for assertion by, Reorganized Lighthouse and its representatives at the direction of Lighthouse Reclamation Trust. To the extent any of the foregoing does not automatically occur on the Effective Date or is not effectuated through the Plan, the Confirmation Order and/or this Agreement, the Reorganized Debtors shall, on the Effective Date or as soon thereafter as reasonably practicable, execute such other and further documents as are necessary or appropriate to effectuate or memorialize all of the foregoing at the reasonable request of the Reclamation Trust Entity Representative.  The applicable Reorganized Debtor shall have and otherwise retain the right, to the extent provided by and in accordance with non-bankruptcy law, to operate under any permits, licenses, or other inchoate rights of the applicable Debtor, including without limitation those related to Reclamation.

1.4    **Funding of Reorganized Debtors.**  Operations of Reorganized Debtors shall be funded as follows:

6

4827-5741-7690.v28

a)      On the Effective Date, with Cash on hand in accordance with the Plan (except as set forth in Section 1.10(a)(5)), accounts receivable, if any, coal inventory of the Reorganized Debtors, if any, and the Transferred Lighthouse Post-Effective Date Assets, to be deposited by the applicable Reorganized Debtors into an account held by Reorganized LHR Coal.

b)      By the Initial Working Capital Funding Amount in Cash in the amount of $3,000,000 to be released by the Sureties, other than Westchester, within ten (10) days hereof, from the Sureties', other than Westchester's, existing collateral held on behalf of the Debtors, to be deposited into an account held by Reorganized LHR Coal.

c)      Through payment of the management fee by Black Butte to Reorganized KCP ("Black Butte Management Fee") pursuant to that certain joint venture agreement for Black Butte Coal Company dated January 1, 1974, as amended ("Black Butte JV Agreement"), to be deposited by Reorganized KCP into an account held by Reorganized LHR Coal.

d)      Through payment of a $1,000,000 management fee from the Reclamation Sinking Fund ("Sinking Fund Management Fee") to an account held by Reorganized LHR Coal in the event that Reorganized LHR Coal's cash balance falls below $2,000,000 at the end of any fiscal year, subject to the terms and conditions of the Reclamation Sinking Fund Agreement.

e)      Through other distributions from the Reclamation Sinking Fund for reclamation activities of the Reorganized Coal Side Debtors as set forth in the Reclamation Sinking Fund Agreement.

For the avoidance of doubt, Cash on hand, accounts receivable, if any, coal inventory, if any, the Initial Working Capital Funding Amount, the Black Butte Management Fee, the Sinking Fund Management Fee, other distributions from the Reclamation Sinking Fund in accordance with the Reclamation Sinking Fund Agreement and proceeds from the sales of Post-Effective Date Assets in accordance with the terms of this Agreement, but excluding any funds subject to distributions provided for in Section 1.10, shall be the only sources of funding for the operations Reorganized Debtors and Lighthouse Reclamation Trust, and neither Lighthouse Reclamation Trust nor any of the Reorganized Debtors shall be entitled to enter into any loan agreement, securities or trust indenture or similar agreement as borrower or to otherwise borrow or raise funds for its own benefit in any manner, *provided,* that, for the avoidance of doubt, the foregoing shall not prevent the Reorganized Debtors or Lighthouse Reclamation Trust from obtaining additional bonding to secure any Reclamation Liabilities as required by applicable non-bankruptcy law and receiving a debt instrument or security as consideration in the sale, transfer or other disposition of any Post-Effective Date Assets as provided (but subject to the limitations set forth) in Section 2.3(c) of this Agreement.

1.5     **Acceptance by Reclamation Trust Entity Representative.** The Reclamation Trust Entity Representative hereby accepts the trust imposed upon it by this Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Agreement, the Reclamation Plans, the Plan, and the Confirmation Order, to promote the interests of the Beneficiaries, the Sureties and the Reclamation Governmental Authorities. In connection with and in furtherance of the Purposes of Lighthouse Reclamation Trust, the Reclamation Trust

4827-5741-7690.v28

Entity Representative, through Reorganized Debtors, hereby accepts the transfer of the Post-Effective Date Assets.

1.6    **Name of the Reclamation Trust Entity.** The Delaware business trust established hereby shall be known as the "<u>Lighthouse Reclamation Trust</u>."

1.7    **Reclamation Trust Entity Budget; Distributions.**

a)    By the Reclamation Agreement Date (defined below), annually thereafter, and as needed during interim periods, the Reclamation Trust Entity Board, based on the advice of its advisors, shall make a good faith determination to establish the Reclamation Trust Entity Budget, which shall include (a) the Decker Reclamation Budget which will be established by the Reclamation Trust Entity Board with the approval of the Sureties, and (b) the Black Butte Reclamation Budget which will be established by the Reclamation Trust Entity Board with the approval of the Sureties and with the good faith, reasonable consent of Bitter Creek Coal Company ("Bitter Creek"), which consent shall not be unreasonably withheld, conditioned or delayed.  Other than as set forth in this <u>Section 1.7(a)</u> and in <u>Section 1.7(c)</u>, Bitter Creek shall have no consent or approval rights with respect to the Reclamation Trust Entity Budget or operations of the Lighthouse Reclamation Trust.

b)    The Reclamation Trust Entity Budget for each annual period shall provide for the collection, expenditure, and retention of funds, and the transfer of funds to and from the Reclamation Sinking Fund (subject to the provisions of this Agreement and the Reclamation Sinking Fund Agreement), and shall, among other things, account for funds to be used to fund distributions for (i) the reconciliation of any Claims and administration of the funds and reserves established under the Plan and this Agreement, (ii) the Reclamation Sinking Fund up to the Reclamation Sinking Fund Benchmark, (iii) the management and operation of the Post-Effective Date Assets, (iv) the operation of Reorganized Debtors' businesses and operations in accordance with applicable law and agreements, (v) the distributions to be made pursuant to <u>Section 1.10</u>, and (vi) accomplishing all other objectives of Lighthouse Reclamation Trust.

c)    The Reclamation Trust Entity Board shall review the status of the Reclamation Trust Entity Budget at least quarterly; *provided,* that the Reclamation Trust Entity Board shall solicit the consent of Bitter Creek as to the Black Butte Reclamation Budget annually in accordance with <u>Section 1.7(a)</u>, which consent shall be solicited, to the extent feasible, contemporaneously with meetings of the Venturers Committee that are held pursuant to the terms of the Black Butte JV Agreement.  Should Bitter Creek fail to respond to such solicitation of consent within fourteen (14) days of receipt, Bitter Creek's consent will be deemed given.

d)    Except as set forth in <u>Section 1.10</u> and the mandatory Class A and Class B Distributions described therein, before making any distributions to the Beneficiaries in accordance with the terms of this Agreement and the Plan, the Reclamation Trust Entity Board shall make a good faith determination that Lighthouse Reclamation Trust will retain (or cause Reorganized Lighthouse or Reorganized LHR Coal to retain), after taking into account funds to be distributed, sufficient funding for the purposes enumerated in subsections (i) through (vi) above, *provided that* the amount of such retained funds following any distribution shall not (x) be less than $2,000,000

8

plus the amount of anticipated net expenditures to be made by the Lighthouse Reclamation Trust for the remaining period of the Reclamation Trust Entity Budget, and (y) exceed $3,000,000 plus the amount of anticipated net expenditures to be made by the Lighthouse Reclamation Trust for the remaining period of the Reclamation Trust Entity Budget.

1.8     **Valuation of the Post-Effective Date Assets.** As soon as practicable after the date hereof, but in no event later than 90 days after the date hereof, the Reclamation Trust Entity Board shall inform, in writing, the Reclamation Trust Entity Representative of the value of the Post-Effective Date Assets, based on the good-faith determination of the Reclamation Trust Entity Board, and the Reclamation Trust Entity Representative shall apprise, in writing, the Sureties and the Beneficiaries of such valuation. The valuation shall be used consistently by all parties (including the Reclamation Trust Entity Representative and the Beneficiaries) for all federal income tax purposes. In connection with the preparation of the valuation contemplated by this Section 1.8, the Reclamation Trust Entity Board shall take into account the sales and marketing process conducted by the Debtors prior to the date hereof, and any letter of intent, indication of interest, term sheet, purchase agreement or other binding or non-binding document received by any of the Debtors for any asset in connection with such sales and marketing process prior to the date hereof, and shall be entitled to retain such professionals and advisors as it shall determine to be appropriate or necessary, and the Reclamation Trust Entity Board shall take such other actions in connection therewith as it determines to be appropriate or necessary. Lighthouse Reclamation Trust shall bear all of the reasonable costs and expenses incurred in connection with determining such value, including the fees and expenses of any professionals retained in connection therewith, in accordance with the Reclamation Trust Entity Budget.

1.9     **Issuance of Reclamation Trust Entity Interests.** Effective as of the date hereof, Lighthouse Reclamation Trust shall issue the Class A Reclamation Trust Entity Interests to the Class A Reclamation Trust Entity Interests Agent and the Class B Reclamation Trust Entity Interests to the Class B Reclamation Trust Entity Interests Agent, on behalf of the Beneficiaries in accordance with the terms of the Plan, the Confirmation Order and this Agreement.

1.10    **Mandatory Distributions and Payments.**

a)      Subject to Section 1.10(b), Lighthouse Reclamation Trust shall make the following mandatory distributions to the Class A Reclamation Trust Entity Interests Agent on behalf of the Class A Reclamation Trust Entity Interests (such distributions along with any other distributions to the Class A Reclamation Trust Entity Interests under this Agreement, the "Class A Distributions"):

(1)      Until Phase I bond release of all bonds securing reclamation of the Decker Mine, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, (A) forty percent (40%) of all distributions from Black Butte to Reorganized KCP made pursuant to the terms of the Black Butte JV Agreement, paid by Reorganized KCP to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests, (B) eighty percent (80%) of the proceeds of the sale of any Post-Effective Date Assets *other than* (i) Reclamation Assets (defined below) and (ii) the Millennium Assets (defined below) (such Post-Effective

9

Date Assets other than the Reclamation Assets and the Millennium Assets, the "Remainder Coal Side Assets"), paid by the applicable Reorganized Debtor to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests, and (C) eighty percent (80%) of the proceeds of the sale of any Reclamation Assets, paid by the applicable Reorganized Debtor to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests.  "Reclamation Assets" means the Post-Effective Date Assets used by Reorganized Coal Side Debtors in reclamation activities set forth on Exhibit D attached hereto and made a part hereof.

(2)    After said Phase I bond release is achieved, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, when the amount in the Reclamation Sinking Fund is below the Reclamation Sinking Fund Benchmark, (A) fifty percent (50%) of all distributions from Black Butte to Reorganized KCP made pursuant to the Black Butte JV Agreement, paid by Reorganized KCP to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests; and (B) one hundred percent (100%) of the proceeds of the sale of any Remainder Coal Side Assets and eighty percent (80%) of the proceeds of the sale of any Reclamation Assets, in each case paid by the applicable Reorganized Debtor to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests.

(3)    After said Phase I bond release is achieved, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, when the amount in the Reclamation Sinking Fund is equal to the Reclamation Sinking Fund Benchmark, (A) ninety percent (90%) of all distributions from Black Butte to Reorganized KCP made pursuant to the Black Butte JV Agreement, paid by Reorganized KCP to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests, until the Allowed Priority Tax Claims have been paid in full, and, thereafter, one hundred percent (100%) of all distributions from Black Butte to Reorganized KCP made pursuant to the Black Butte JV Agreement, paid by Reorganized KCP to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests; and (B)  one hundred percent (100%) of the proceeds of the sale of any Remainder Coal Side Assets and any Reclamation Assets, paid by the applicable Reorganized Debtor to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interest.

(4)    Any funds in the Reclamation Sinking Fund in excess of the Reclamation Sinking Fund Benchmark.

(5)    Any remaining Cash subject to the Cash Collateral Order on the Effective Date remaining after (i) funding of the Allowed Claims Reserve, the Disputed Claims Reserve, and the Accrued Professional Compensation Account, after the bar date for the filing of any Fee Claims, Administrative Claims and Claims of Governmental Units and the completion of any claims estimation process initiated by the Debtors or the Reclamation Trust Entity ("Claim Estimation Date"), (ii) funding of the Allowed Claims Reserve of funds to be held for the payment of Allowed Administrative Claims, including

10

without limitation any Administrative Claims that are not yet Allowed and any of the payments authorized pursuant to Order Approving Key Employee Retention Program (Docket No. 216) and Order Approving the Debtors' Key Employee Incentive Plans (Docket No. 229), after the Claim Estimation Date, (iii) payment of U.S. Trustee fees due and owing at the time of Confirmation, and (iv) reserving the sum of $1.641 million plus the amount, if any, of any retained Reclamation Liabilities at Big Horn Coal Company, which amounts shall be comprised of accounts receivable for the sale of coal, any remaining coal inventory contracted to be purchased (valued at the sale price), and Cash.

(6)   Any proceeds of the sale of the Reorganized Millennium Debtors' Assets, including Reorganized Barlow Point and Reorganized Columbia Land (and the real property of such companies transferred to Reorganized Lighthouse as a part of the Transferred Lighthouse Post-Effective Date Assets pursuant to Section 1.3), assets ("Millennium Assets") that are sold after the Effective Date, after the amounts to be held pursuant to clauses (i) through (v) of the foregoing sub-section (5) have been fully funded, paid by the applicable Reorganized Debtors to the Reclamation Trust Entity for the benefit of the Class A Reclamation Trust Entity Interest.

b)   Lighthouse Reclamation Trust shall make the following distributions to the Class B Reclamation Trust Entity Interests Agent on behalf of the Class B Reclamation Trust Entity Interests (such distributions along with any other distributions to the Class B Reclamation Trust Entity Interests, the "Class B Distributions"):  until distributions to the Class B Reclamation Trust Entity Interests Agent equal $750,000.00 in the aggregate (the "Class B Distributions Cap"), any amounts distributable as Class A Distributions under Section 1.10(a)(1) through (4) in excess of $2,000,000 in any given calendar year.  Upon satisfaction of the Class B Distributions Cap, the Class B Reclamation Trust Entity Interests shall not be entitled to any further distributions from Lighthouse Reclamation Trust and the Class B Reclamation Trust Entity Interests shall be cancelled.

c)   The Reclamation Trust Entity Representative shall direct the following payments to the holders of the Allowed Priority Tax Claims:  after Phase I bond release of all bonds securing reclamation of the Decker Mines is achieved, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, when the amount in the Reclamation Sinking Fund is equal to the Reclamation Sinking Fund Benchmark, ten percent (10%) of all distributions from Black Butte to Reorganized KCP made pursuant to the Black Butte JV Agreement, paid by Reorganized KCP to the holders of the Allowed Priority Tax Claims, until the Allowed Priority Tax Claims have been paid in full.

d)   The distributions and payments to be made under subsections (a) through (c) of this Section 1.10 shall be made net of taxes to be paid on income to the Reorganized Debtors with respect to the amount to be distributed or paid and, in addition, with respect to distributions of proceeds from the sale of any Post-Effective Date Assets, net of payment of reasonable expenses incurred in the maintenance and marketing of such assets.

e)   No amendments or modifications to Section 1.10(a) may be made without the express written consent of the Class A Reclamation Trust Entity Interests Agent.

11

1.11    **Reclamation Trust Entity Representative.** The initial Reclamation Trust Entity Representative shall be Lighthouse Resources Inc. The Reclamation Trust Entity Representative shall have the duties and powers as provided for in Article II of this Agreement.

1.12    **Reclamation Trust Entity Board.** The Reclamation Trust Entity Board shall be created on the Effective Date. The Reclamation Trust Entity Board shall be comprised of five (5) Members as determined in accordance with Section 3.1 below. The Reclamation Trust Entity Board shall have the duties and powers as provided for in Article III of this Agreement.

1.13    **Reclamation Trust Delaware Trustee**. The initial Reclamation Trust Delaware Trustee shall be Delaware Trust Company, a Delaware Corporation, with a principal place of business of 251 Little Falls Drive, Wilmington, Delaware 19808.  The Reclamation Trust Delaware Trustee hereby accepts the trust imposed upon it by this Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Agreement solely for the purpose of satisfying the statutory requirement of the Delaware Statutory Trust Act and to perform no other functions.

## ARTICLE II.
## THE RECLAMATION TRUST ENTITY REPRESENTATIVE

2.1    **Appointment.** The Trustees have been selected by the Consenting Stakeholders in their sole discretion after consultation with the Reclamation Governmental Authorities pursuant to the provisions of the Plan and appointed as of the date hereof.  The Reclamation Trust Entity Representative may be an employee of Reorganized Coal Side Debtors, a Member of the Reclamation Trust Entity Board, or either of them. The Reclamation Trust Entity Representative may be Reorganized Lighthouse or any of the other Reorganized Coal Side Debtors.  The Reclamation Trust Delaware Trustee must be an individual or Entity meeting the requirements of the Delaware Statutory Trust Act.  The Trustees' appointments shall continue until the earlier of (a) the termination of Lighthouse Reclamation Trust or (b) each Trustee's respective resignation, termination, death, dissolution, removal, or liquidation, as applicable.

2.2    **General Powers, Duties, Obligations, Rights and Benefits.** Except as otherwise set forth in this Agreement, the Reclamation Trust Entity Representative shall have all of the powers of a Trustee under the Delaware Statutory Trust Act, *provided*, that the Reclamation Trust Entity Representative need not be a natural person unless so determined by the Consenting Stakeholders in the initial appointment of the Reclamation Trust Entity Representative or thereafter by the Reclamation Trust Entity Board. The Reclamation Trust Entity Representative, upon direction by the Reclamation Trust Entity Board and in the exercise of their collective reasonable business judgment, in accordance with the terms and procedures set forth herein, shall, in an expeditious but orderly manner, carry out the Purposes for which Lighthouse Reclamation Trust has been created. The Reclamation Trust Entity Representative shall have all duties, obligations, rights and benefits assumed by, assigned to or vested in Lighthouse Reclamation Trust under the Plan, the Confirmation Order, this Agreement and any other agreement entered into pursuant to or in connection with the Plan.  Except as otherwise provided herein, the Reclamation Trust Entity Representative may control and exercise authority over (a) the Post-Effective Date Assets, (b) the receipt, preservation, operation, management, and disposition

12

thereof, and (c) the management and conduct of Lighthouse Reclamation Trust and the Reorganized Debtors. Regarding all matters identified in Section 3.3 hereof, the Reclamation Trust Entity Representative shall follow the direction of the Reclamation Trust Entity Board; *provided, however*, the Reclamation Trust Entity Board may not direct the Reclamation Trust Entity Representative or the Members of the Reclamation Trust Entity Board to act inconsistently with their respective duties under this Agreement or the Plan. No Person dealing with Lighthouse Reclamation Trust shall be obligated to inquire into the Reclamation Trust Entity Representative's authority in connection with the receipt, preservation, operation, management, or disposition of Post-Effective Date Assets; *provided that* the Members of the Reclamation Trust Entity Board are entitled to make such inquires in connection with the exercise of their rights or powers pursuant to Section 3.3 of this Agreement. Without limiting the foregoing, the Reclamation Trust Entity Representative shall be expressly authorized to, with respect to Lighthouse Reclamation Trust, Reorganized Debtors, and the Post-Effective Date Assets:

a)    Exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken with respect to the Post-Effective Date Assets by any officer, director, shareholder, or other party acting in the name of Reorganized Debtors or their Estates with like effect as if duly authorized, exercised, and taken by action of such officers, directors, shareholders, or other party.

b)    Exercise all corporate governance power and authority of Lighthouse Reclamation Trust as the sole holder of the Equity Interests in Reorganized Lighthouse including, without limitation, to (i) authorize the sale, transfer or other disposition of any assets of Reorganized Lighthouse and its Reorganized Debtor subsidiaries, subject to applicable non-bankruptcy law, (ii) remove and replace any officers, directors or other persons acting in similar capacity with respect to such entities pursuant to the organizational documents thereof, (iii) approve and authorize any amendment, modification or waiver with respect to such organizational documents of such entities, (iv) create such funds and reserves from the proceeds of sale, transfer or other disposition of the assets of such entities as the Reclamation Trust Entity Representative deems necessary or appropriate to provide for the completion of the Decker Reclamation Plan and satisfaction of any remaining liabilities or obligations of such entities, (v) subject to Section 3.3(f) authorize and approve any dividend or distribution from any of such entities to Lighthouse Reclamation Trust for the purpose of making distributions to the Beneficiaries as contemplated by this Agreement, (vi) wind up and dissolve such entities at such time and in such manner (in accordance with applicable law) as the Reclamation Trust Entity Representative deems appropriate, and (vii) take any and all other actions necessary or appropriate in respect of such entities to carry out the intended Purposes of this Agreement and otherwise consistent with the terms of this Agreement.

c)    Open and maintain bank accounts on behalf of or in the name of Lighthouse Reclamation Trust, Reorganized Lighthouse, Reorganized LHR Coal, and, if needed, the other Reorganized Debtor subsidiaries of Reorganized Lighthouse, calculate and make distributions, and take other actions consistent with the Reclamation Plans and the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of Reorganized Lighthouse or any of the Reorganized Coal Side Debtors.

13

d)  Issue the Reclamation Trust Entity Interests and other Equity Interests as set forth in this Agreement.

e)  Receive, manage, invest, supervise, and protect the Post-Effective Date Assets subject to the limitations provided herein.

f)  Subject to the applicable provisions of the Plan, the Confirmation Order and this Agreement, control, monetize, operate, collect, liquidate, sell, transfer or otherwise hold or dispose of all Post-Effective Date Assets and supervise the operation of the remainder of the Reorganized Debtors' respective businesses and assets as expeditiously as practicable in a value-maximizing (adjusting for risk), controlled and efficient manner.

g)  Review, and where appropriate, object to, seek to estimate, or seek to subordinate, compromise or settle any and all Claims against the Debtors that have not already been Allowed as of the Effective Date, and supervise and administer the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all Disputed Claims.

h)  Subject to Article IV of this Agreement, commence, prosecute, pursue, compromise, settle, withdraw, abandon, or resolve in any manner all Causes of Action transferred to Lighthouse Reclamation Trust or Reorganized Lighthouse, or held by any of the Reorganized Debtors.

i)  (i) Prepare and file (or cause to be prepared and filed), on behalf of Lighthouse Reclamation Trust and Reorganized Debtors, all tax returns required to be filed or that the Reclamation Trust Entity Representative otherwise deems appropriate, (ii) seek a determination of any tax liability under Section 505 of the Bankruptcy Code, if applicable; (iii) file, if necessary, any and all tax and information returns required with respect to such entities; (iv) make tax elections for and on behalf of such entities; (v) pay Taxes, if any, payable for and on behalf of such entities, and (vi) wind up and dissolve Reorganized Debtors in accordance with applicable law in the most expeditious, controlled and efficient manner reasonably practicable in accordance with the Reclamation Plans and the Plan.

j)  Oversee and administer: (i) the termination of certain of the Debtors' qualified 401(k) retirement plans and any related trusts and the distribution of such plans' assets to participants and for fulfilling statutory and regulatory requirements related to such plans; (ii) any statutory and regulatory requirements related to any terminated Debtor employee benefit plans in accordance with the Reclamation Plans and the Plan; and (iii) Assumed Employee Benefit Agreements.

k)  In the event that Lighthouse Reclamation Trust's classification as a partnership for federal income tax purposes is questioned or challenged by the Internal Revenue Service, take any and all necessary actions as it shall deem appropriate to preserve the classification of Lighthouse Reclamation Trust as a partnership for federal tax purposes under Treasury Regulation Section 301.7701-3, including, if necessary, creating or converting Lighthouse Reclamation Trust into a Delaware limited liability partnership or limited liability company that is so classified.

14

l)        Incur any reasonable and necessary expenses in connection with the performance of its duties under this Agreement, including in connection with retaining professionals and/or entering into agreements as set forth herein, and pay all lawful expenses, debts, charges, Taxes, and liabilities of Lighthouse Reclamation Trust or the Reorganized Debtors.

m)        Supervise, administer and make distributions to the creditors of Lighthouse Reclamation Trust and the Reorganized Debtors, and to the Beneficiaries as provided for, or contemplated by this Agreement.

n)        Withhold from the amount distributable to any Person or Entity such amount as may be sufficient to pay any Tax or other charge which the Reclamation Trust Entity Representative has determined, based upon the advice of its agents and/or professionals, may be required to be withheld therefrom under the income tax laws of the United States, any state or political subdivision thereof or any applicable foreign jurisdiction; *provided that* Lighthouse Reclamation Trust shall not withhold or otherwise retain (or cause Reorganized Debtors to retain) more than $3,000,000, in the aggregate, at any time in accordance with applicable tax law, with said amount being calculated exclusive of any funds held in the Reclamation Sinking Fund.

o)        Consistent with the Plan, enter, or cause any of the applicable Reorganized Debtors to enter, into any agreement or execute, or cause any of the applicable Reorganized Debtors to execute, any document required by or consistent with the Reclamation Plans or the Plan and oversee the performance of all of the Reorganized Debtors' and Reclamation Trust Entity's obligations thereunder.

p)        If any of the direct or indirect Post-Effective Date Assets are situated in any state or other jurisdiction in which the Reclamation Trust Entity Representative is not qualified to act as trustee, subject to the approval of the Reclamation Trust Entity Board, (i) nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Reclamation Trust Entity Representative in its discretion; (ii) confer upon such trustee all the rights, powers, privileges, and duties of the Reclamation Trust Entity Representative hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the Reclamation Trust Entity Representative and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such trustee is acting shall prevail to the extent necessary); (iii) require such trustee to be answerable to the Reclamation Trust Entity Representative for all monies, assets, and other property that may be received in connection with the administration of all property; and (iv) remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Reclamation Trust Entity Representative of a written instrument declaring such trustee removed from office, and specifying the effective date and time of removal.

q)        Subject to Section 5.5 of this Agreement and the Reclamation Sinking Fund Agreement, purchase and carry all insurance policies and pay all insurance premiums and costs it deems reasonably necessary or advisable, including customary insurance coverage for the protection of the Reclamation Trust Entity Board, the Reclamation Trust Entity Representative,

15

4827-5741-7690.v28

and Reorganized Debtors, and payment of premiums and fees relating to bonds issued by the Sureties.

r)    Implement, enforce, or discharge all of the terms, conditions, and other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Agreement.

s)    Subject to Section 3.3(e), enter into, or cause the other Reorganized Debtor's to enter into, employment arrangements or agreements (including with former employees of the Debtors at a rate of compensation consistent with their prepetition salaries with the Debtors to the extent their services are required to assist in carrying out the Purposes of Lighthouse Reclamation Trust), and retain, or cause the other Reorganized Debtors to retain, professionals and consultants to pursue the Causes of Action and otherwise advise the Reclamation Trust Entity Representative and provide services to Lighthouse Reclamation Trust and Reorganized Debtors in connection with the matters contemplated by this Agreement.

t)    Undertake as expeditiously as possible all administrative functions remaining in the Chapter 11 Cases, including obtaining a final decree closing the Chapter 11 Cases.

u)    Invest in demand and time deposits in banks or savings institutions, or temporary investments such as short-term certificates of deposit or Treasury bills or other investments.

v)    Take all other actions required by or otherwise not inconsistent with the provisions of this Agreement that the Reclamation Trust Entity Representative deems reasonably necessary or desirable in administering Lighthouse Reclamation Trust.

2.3    **Limitations on the Reclamation Trust Entity Representative.** Notwithstanding anything under applicable law, this Agreement, the Plan or the Confirmation Order to the contrary, the Reclamation Trust Entity Representative shall not do or undertake any of the following:

a)    Take any action, or cause the Reclamation Trust Entity to take any action, that has not been previously authorized by the Reclamation Trust Entity Board regarding any of the matters identified in Section 3.3 hereof, or disregard the determinations of the Reclamation Trust Entity Board with respect to the same.

b)    Take, or fail to take, any action that would jeopardize the classification of Lighthouse Reclamation Trust as a partnership for federal income tax purposes.

c)    Receive transfers of any listed stocks or securities, any readily-marketable assets or any operating assets of a going business, except as is absolutely necessary to carry out the Purposes of Lighthouse Reclamation Trust; *provided, however*, that Lighthouse Reclamation Trust may receive readily-marketable securities as consideration in the sale, transfer or other disposition of the Post-Effective Date Assets for the purpose of maximizing the proceeds through such sales, transfers or dispositions so long as the Reclamation Trust Entity Representative causes such readily-marketable securities to be reduced to cash as soon as reasonably practicable.

16

d)      Exercise any investment power other than the power to invest in demand and time deposits in banks or savings institutions, or temporary investments such as short-term certificates of deposit or Treasury bills or other investments.

e)      Take, or fail to take, any action that would cause the Reclamation Trust Entity Budget or any portion thereof for any calendar year period to be exceeded except as authorized or approved in accordance with Section 3.3.

f)      Take, or fail to take, any action that would cause the Reclamation Sinking Fund or any amount therein to be used for any purpose other than (i) funding the costs of overseeing and completing the Decker Reclamation Plan or other reclamation obligations as provided in the Reclamation Sinking Fund Agreement, (ii) funding the costs of the Black Butte Reclamation Plan attributable to Reorganized KCP's 50% interest in Black Butte, (iii) the payment of the Sinking Fund Management Fee, or (iv) payment of obligations of the Reorganized Coal Side Debtors under the Reclamation Trust Entity Bonding Agreement, including payment of annual surety fees to the Sureties, in each case at the times and in the amounts set forth in the Decker Reclamation Plan, the Black Butte Reclamation Plan, this Agreement, or the Reclamation Trust Entity Bonding Agreement, respectively; *provided, however*, that the limitation set forth in this subsection shall apply only for so long as the Reclamation Plans have not been completed, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, or any bonds securing reclamation of the Reorganized Coal Side Debtors or Black Butte remain outstanding.

Notwithstanding any of the foregoing, the Reclamation Trust Entity Representative shall not be prohibited from engaging in any trade or business on its own account, *provided that* such activity does not interfere with the Reclamation Trust Entity Representative's administration of Lighthouse Reclamation Trust, the Reorganized Debtors, or its fiduciary duties to the Beneficiaries and *provided further that* any such activity shall not include any trade or business with any competitor, vendor or customer of any Reorganized Debtor.

2.4     **Compensation of Trustees and its Agents and Professionals.**

a)      The Trustees shall be entitled to receive compensation, if any, as determined by the Reclamation Trust Entity Board, which compensation is to be paid by Reorganized LHR Coal.

b)      No later than the fifteenth (15th) day of each month, the Trustees and each of their respective agents and professionals (unless any such agents or professionals, the Reclamation Trust Entity Representative, and the Reclamation Trust Entity Board agree to different treatment) seeking compensation or reimbursement shall serve a statement of fees and expenses on the Reclamation Trust Entity Board. The Reclamation Trust Entity Representative shall be authorized to pay such reasonable and documented fees and expenses through Reorganized LHR Coal unless the Reclamation Trust Entity Board objects to the payment of such fees and expenses within seven (7) days from the date such statement is received by the Reclamation Trust Entity Board. If an objection is made by the Reclamation Trust Entity Board to any portion of such fees and expenses, the Reclamation Trust Entity Representative shall be authorized to pay all such

17

reasonable and documented fees and expenses through Reorganized LHR Coal except for the portion of such fees and expenses to which such objection is made. The parties (including the party requesting such fees and expenses) shall work together in good faith to consensually resolve any objection of the Reclamation Trust Entity Board to any requested fees or expenses. If the Trustees or their respective agents or professionals fail to submit a statement timely, they shall be ineligible to receive payment of fees and expenses therefore as provided in this Agreement until the statement is submitted and affirmatively approved by the Reclamation Trust Entity Board.

2.5    **Replacement of the Trustees.** Each of the Trustees may resign at any time upon thirty (30) days' written notice delivered to the Reclamation Trust Entity Board, *provided that* such resignation shall only become effective upon the appointment of a permanent or interim successor Trustee, as applicable. In the event of the death, dissolution, liquidation, resignation, or removal of a Trustee, a successor Trustee shall be appointed by the Reclamation Trust Entity Board. Upon its appointment, the successor Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor, but subject to the right of the Reclamation Trust Entity Board pursuant to Section 2.4(a) above to set different compensation for the successor Trustee, and all responsibilities of the predecessor Trustee relating to Lighthouse Reclamation Trust shall be terminated. In the event a Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation, or removal, such Trustee shall be immediately compensated for all reasonable and documented fees and expenses accrued through the effective date of such termination, whether or not previously invoiced. The provisions of Article V of this Agreement shall survive the resignation or removal of any Trustee.

2.6    **Reclamation Trust Entity Continuance.** The death, dissolution, liquidation, resignation, or removal of a Trustee shall not terminate Lighthouse Reclamation Trust or revoke any existing agency or fiduciary duty of the Trustee pursuant to this Agreement or invalidate any action theretofore taken by the Trustee, and the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Trustee and all of its successors or assigns.

## ARTICLE III.
## RECLAMATION TRUST ENTITY BOARD

3.1    **Reclamation Trust Entity Board.** Lighthouse Reclamation Trust shall be governed by its governing body, which shall consist of (x) four (4) members until the Class B Reclamation Trust Entity Interests Agent is selected and notice is provided to the Reclamation Trust Entity Representative pursuant to the Plan and (y) thereafter five (5) members (the "Reclamation Trust Entity Board"), in each instance consisting of: one member appointed by the Senior Secured Lenders, initially Ross Bhappu ("Member One"); one member appointed by the Sureties, initially Danny Hall ("Member Two"); the Class B Reclamation Trust Entity Interest Agent or its designee upon such agent's selection and notice to the Reclamation Trust Entity Representative pursuant to the Plan ("Member Three"); and two (2) independent directors, initially Gilbert E. Nathan and Jeremy T. Stillings ("Independent Members," and together with Member One, Member Two, and Member Three, the "Members," and each individually a "Member"); *provided, however* that the Class B Reclamation Trust Entity Interest Agent shall only serve as Member Three until payment in full of the Class B Distributions. Upon payment in full of the Class B Distributions, the Class B Reclamation Trust Entity Interest Agent shall no longer be a

18

4827-5741-7690.v28

board member and Member Three shall be appointed by the Class A Reclamation Trust Entity Interest Agent.  Should any Member resign from, or otherwise become unable to perform his or her duties as a Member of the Reclamation Trust Entity Board, replacements shall be selected by: (a) in the case of Member One, the Class A Reclamation Trust Entity Interests Agent, in its sole discretion; (b) in the case of Member Two, the Sureties, in their sole discretion; (c) in the case of Member Three, (i) until payment in full of the Class B Distributions, the Class B Reclamation Trust Entity Interests Agent, subject to the reasonable consent of Member One and Member Two and (ii), thereafter, the Class A Reclamation Trust Entity Interest Agent; and (d) in the case either or both of the Independent Members, by mutual agreement of Member One and Member Two. Either or both of the Independent Members may be removed by mutual agreement of Member One and Member Two.  Except as provided in Section 12.1, a majority vote of the Members shall constitute an act or decision of the Reclamation Trust Entity Board, *provided, further,* that, if any Member has resigned, recuses himself or herself from a vote, or otherwise is unable to perform his or her duties as a Member but a replacement has not been selected as provided herein for any reason, in any matter then subject to approval of the Reclamation Trust Entity Board, if the remaining Members cannot agree on such matter, the Reclamation Trust Entity Representative shall be authorized to, and may, cast a tie-breaking vote to resolve the deadlock on such matter. A Person shall not be disqualified from serving as a Member as a consequence of that Person's employment or affiliation with an Entity engaged in the trading of Claims against or interests in Reorganized Debtors or Lighthouse Reclamation Trust, *provided that* an internal "ethical wall" has been created prohibiting such Person from discussing or sharing any information about Reorganized Debtors or Lighthouse Reclamation Trust with others employed by or affiliated with the Entity engaged in such trading activities. The Reclamation Trust Entity Board shall hold regularly scheduled meetings of the Members at least quarterly.

3.2    **Reports to Reclamation Trust Entity Board.** Notwithstanding any other provision of this Agreement, the Reclamation Trust Entity Representative shall report to the Reclamation Trust Entity Board on a regular basis, not less than monthly. The Reclamation Trust Entity Board shall keep all such information strictly confidential, except to the extent the Reclamation Trust Entity Board deems it reasonably necessary to disclose such information to the Beneficiaries.

3.3    **Actions Requiring Approval of the Reclamation Trust Entity Board.** The Reclamation Trust Entity Representative shall obtain the approval of a majority of the Reclamation Trust Entity Board prior to taking any action regarding any of the following matters with respect to Lighthouse Reclamation Trust, Reorganized Debtors, or the Post-Effective Date Assets:

a)    Subject to Section 4.2 of this Agreement, the commencement, prosecution, settlement, compromise, withdrawal, or other resolution of any Cause of Action by Lighthouse Reclamation Trust or Reorganized Debtors where the amount sought to be recovered in the complaint or other document initiating such Cause of Action exceeds $300,000;

b)    The sale, transfer, assignment, or other disposition of any Post-Effective Date Assets having a sale price or value (based on the valuation completed pursuant to Section 1.8) in excess of $1,000,000;

19

c)      The abandonment of any Post-Effective Date Assets having a value of at least $100,000, based on the valuation completed pursuant to Section 1.8;

d)      The prosecution of objections to Disputed Claims, or the commencement, settlement, compromise, withdrawal, or other resolution of any Disputed Claims, wherein the amount of the asserted Claim exceeds $300,000;

e)      The selection, retention, or termination of any professional Person or Entity by the Reclamation Trust Entity Representative after the Effective Date, the setting of any bonuses, on an annual basis, for performance of any employees of the Reorganized Debtors favorable to the Reclamation Trust Entity Budget, and the periodic adjustment in annual compensation of the employees of Reorganized Debtors based upon appropriate market factors;

f)      Making any distribution from the Post-Effective Date Assets in accordance with Article IX;

g)      The exercise of any right or action set forth in this Agreement that expressly requires approval of the Reclamation Trust Entity Board;

h)      Increasing the compensation payable to the Reclamation Trust Entity Representative;

i)      All investments authorized to be made by the Reclamation Trust Entity Representative under this Agreement;

j)      Any sale of Equity Interests in Reorganized KCP; provided that the proceeds from such sale shall be used to fund the Reclamation Sinking Fund to the extent necessary to fund the remaining Reclamation Liabilities of the Reorganized Coal Side Debtors, as contemplated in the Decker Reclamation Budget;

k)      Any dissolution or winding up of Reorganized KCP;

l)      Any acquisition of additional Equity Interests in Black Butte by any Reorganized Debtor;

m)      Approving any Reclamation Trust Entity Budget for any calendar year period (or any portion thereof);

n)      Taking, or affirmatively declining to take, any action that would cause the Reclamation Trust Entity Budget, or any portion thereof, for any calendar year period, to be exceeded, unless such action is necessary on an emergency basis to comply with applicable non-bankruptcy law regarding Reclamation Liabilities; provided, however, that the Reclamation Trust Entity Representative provides contemporaneous notice to the Reclamation Trust Entity Board of the action taken and the need to call a special meeting of the Reclamation Trust Entity Board to review the Reclamation Trust Entity Budget;

20

4827-5741-7690.v28

o)        Taking, or affirmatively declining to take, any action that would cause the Reclamation Sinking Fund or any amount therein to be used for any purpose other than (i) funding the costs of overseeing and completing the Decker Reclamation Plan or other reclamation obligations as provided in the Reclamation Sinking Fund Agreement, (ii) funding the costs of the Black Butte Reclamation Plan attributable to Reorganized KCP's 50% interest in Black Butte, (iii) the payment of the Sinking Fund Management Fee, or (iv) payment of obligations of Reorganized Coal Side Debtors under the Reclamation Trust Entity Bonding Agreement, including payment of annual surety fees to the Sureties, in each case at the times and in the amounts set forth in the Decker Reclamation Plan, the Black Butte Reclamation Plan, this Agreement, or the Reclamation Trust Entity Bonding Agreement, respectively; *provided, however*, that the limitation set forth in this subsection shall apply only for so long as the Reclamation Plans have not been completed, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, or any bonds obtained by the Reorganized Coal Side Debtors securing reclamation of the Reorganized Coal Side Debtors or Black Butte remain outstanding;

p)        In addition to approval of the majority of the Reclamation Trust Entity Board, consent of the Class A Reclamation Trust Entity Interest Agent shall be required prior to Lighthouse Reclamation Trust taking the actions set forth in b), j), and k) above; and

q)        Unless otherwise provided for, an approval of the majority of the Reclamation Trust Entity Board with respect to actions set forth in j), l), m), n), or o) above shall require the consent of Member Two to be a valid and binding approval of such majority of the Reclamation Trust Entity Board; *provided, however*, that if the majority of the Reclamation Trust Entity Board determines that any action described in n) is necessary to comply with applicable non-bankruptcy law regarding Reclamation Liabilities, the consent of Member Two shall not be required; *provided, further*, that any approval for j) will not be withheld by Member Two if adequate funds in the form of cash or letters of credit are in or, by no later than the closing of such sale, such funds are deposited into to the Reclamation Sinking Fund to fund the remaining Reclamation Liabilities of Reorganized Coal Side Debtors as contemplated in the Decker Reclamation Budget, or adequate provision for such funding is made into the Reclamation Sinking Fund prior to or no later than contemporaneously with the closing of such sale. Nothing contained in the Decker Reclamation Budget shall limit any Entity's responsibility for satisfying any Reclamation Liabilities, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law

3.4    **Investments and Bond.** The Reclamation Trust Entity Board (by at least a majority vote) may authorize Lighthouse Reclamation Trust to invest the Post-Effective Date Assets in prudent investments, subject to Section 2.3 above. The Reclamation Trust Entity Board may, in its sole discretion, require a fidelity bond from the Reclamation Trust Entity Representative in such reasonable amount as may be proscribed by the Reclamation Trust Entity Board.

3.5    **Compensation of Reclamation Trust Entity Board.** The Members, other than the Independent Members, shall serve on the Reclamation Trust Entity Board without compensation except for the reimbursement of reasonable out-of-pocket expenses, which expenses shall be subject to review by each other Member.  The Independent Members shall be entitled to such compensation and reimbursement of reasonable out-of-pocket expenses as determined by the

21

4827-5741-7690.v28

majority vote of Member One, Member Two and Member Three.  The Member compensation and reimbursement of expenses to be paid under this Section is to be paid by Reorganized LHR Coal.

3.6    **Removal of the Members.** Members may be removed with or without cause at any time by the Person that has the right to appoint Members as set forth in Section 3.1.

## ARTICLE IV.
## PROSECUTION AND RESOLUTION OF CAUSES OF ACTION

4.1    **Lighthouse Reclamation Trust's Exclusive Authority to Pursue, Settle, or Abandon Causes of Action.** Except as set forth in Section 4.2, and subject to Section 3.3 of this Agreement, Lighthouse Reclamation Trust, acting through the Reclamation Trust Entity Representative and Reorganized Lighthouse, shall have the absolute right to pursue or not to pursue any and all Causes of Action as it determines in the best interests of the Beneficiaries, consistent with the Purposes of Lighthouse Reclamation Trust, and shall have no liability for the outcome of its decision except for any damages caused by willful misconduct or gross negligence. The Reclamation Trust Entity Representative will prepare and make available to the Sureties and the Beneficiaries on a quarterly basis, and in accordance with Section 6.2(b), a written report detailing, among other things, the litigation status of Causes of Action transferred to Lighthouse Reclamation Trust, any settlements entered into by Lighthouse Reclamation Trust, the proceeds recovered to date from the Post-Effective Date Assets and the distributions made by Lighthouse Reclamation Trust.

4.2    **Preservation of Causes of Action.**  Each Reorganized Debtors may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action retained by such Reorganized Debtor as set forth in the Plan.

## ARTICLE V.
## LIABILITY OF THE TRUSTEES AND THE RECLAMATION TRUST ENTITY BOARD

5.1    **Standard of Care; Exculpation**. Neither Lighthouse Reclamation Trust, any Reorganized Debtors, the Trustees, the Reclamation Trust Entity Board, the Members, nor any director, officer, affiliate, employee, employer, professional, successor, assign, agent, or representative of Lighthouse Reclamation Trust, any Reorganized Debtors, any Trustees, the Reclamation Trust Entity Board or any Member (each, an "Exculpated Party" and collectively, the "Exculpated Parties") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "Losses"), whether or not in connection with litigation in which any Exculpated Party is a party, or enforcing this Agreement (including these exculpation provisions), as and when imposed on the Reclamation Trust Entity Representative, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) any Trustee's, the Reclamation Trust Entity Board's, any Reorganized Debtor's, or any Member's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties and obligations under this Agreement, the Reclamation

22

Plans, the Plan, or the Confirmation Order or as may arise by reason of any action, omission, or error of an Exculpated Party; *provided, however*, that the foregoing limitation shall not apply to any Losses suffered or incurred by any Beneficiary that are found in a Final Order by a court of competent jurisdiction to have resulted primarily and directly from the gross negligence, willful misconduct or professional malpractice of such Exculpated Party. Every act taken or omitted, power exercised, or obligation assumed by Lighthouse Reclamation Trust or any Exculpated Party pursuant to the provisions of this Agreement shall be held to be taken or omitted, exercised, or assumed, as the case may be, by Lighthouse Reclamation Trust, any Reorganized Debtor, or any Exculpated Party acting for and on behalf of Lighthouse Reclamation Trust, any Reorganized Debtors and not otherwise; *provided, however*, that none of the foregoing Entities or Persons are deemed to be responsible for any other such Entities' or Persons' actions or inactions. Except as provided in the first sentence of this Section 5.1, including the first provision thereto, every Person, firm, corporation, or other Entity contracting or otherwise dealing with or having any relationship with Lighthouse Reclamation Trust, any Reorganized Debtor, or any Exculpated Party shall have recourse only to the Post-Effective Date Assets, exclusive of funds subject to distribution under Section 1.10, for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships and Lighthouse Reclamation Trust, the Reorganized Debtors, and the Exculpated Parties shall not be individually liable therefore; *provided, further,* that no Exculpated Party shall be entitled to any limitation of liability or exculpation as against the United States, Montana, and Wyoming, including without limitation, the Montana Department of Environmental Quality and Montana Department of Natural Resources and Conservation, that is inconsistent with any applicable non-bankruptcy law. For the avoidance of doubt, no obligations arising pursuant to the terms of this Section shall be payable from the Reclamation Sinking Fund.

5.2     **Indemnification**.

a)      The Trustees, the Reclamation Trust Entity Board, the Members, and any director, officer, affiliate, employee, employer, professional, successor, assign, agent, or representative of the Trustees, the Reclamation Trust Entity Board or the Members (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall be defended, held harmless, and indemnified from time to time by Lighthouse Reclamation Trust against any and all Losses, including, without limitation, the costs for counsel or others in investigating, preparing, defending, or settling any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Agreement (including these indemnity provisions), as and when imposed on the Reclamation Trust Entity Representative, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) any Trustee's, the Reclamation Trust Entity Board's or any Member's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Agreement, the Reclamation Plans, the Plan, or the Confirmation Order or as may arise by reason of any action, omission, or error of an Indemnified Party; *provided, however*, such indemnity shall not apply to any such Losses to the extent it is found in a Final Order by a court of competent jurisdiction to have resulted primarily and directly from the gross negligence, willful misconduct or professional malpractice of such Indemnified Party. Satisfaction of any obligation of Lighthouse Reclamation Trust arising pursuant to the terms of this Section shall be payable solely from the Post-Effective Date Assets, exclusive of funds subject to Class A Distributions and Class B Distributions, and shall be entitled to a priority distribution therefrom, superior to any other rights to receive a distribution of the Post-

23

Effective Date Assets except for the Class A Distributions and Class B Distributions. For the avoidance of doubt, no obligations arising pursuant to the terms of this Section shall be payable from the Reclamation Sinking Fund.

b)        Lighthouse Reclamation Trust shall promptly pay, or cause to be paid, to the Indemnified Party, subject to the conditions set forth herein, the expenses set forth in Paragraph 5.2(a) upon submission of invoices therefore on a current basis. Each Indemnified Party hereby undertakes, and Lighthouse Reclamation Trust hereby accepts its undertaking, to repay any and all such amounts so paid by or at the direction of Lighthouse Reclamation Trust if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore under this Agreement.

5.3    **No Liability for Acts of Successor/Predecessor Trustees or Members.** Upon the appointment of a successor Trustee or Member, the predecessor Trustee or Member, and any director, officer, affiliate, employee, employer, professional, agent, or representative of the predecessor Trustee or Member, as applicable, shall have no further liability or responsibility with respect thereto. A successor Trustee or Member shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Trustee or Member shall be in any way liable for the acts or omissions of any predecessor Trustee or Member, as applicable, unless a successor Trustee or Member expressly assumes such responsibility. A predecessor Trustee or Member shall have no liability for the acts or omissions of any immediate or subsequent successor Trustee or Member, as applicable, for any events or occurrences subsequent to the cessation of its role as Trustee or Member, as applicable; *provided, however,* that no successor or predecessor referenced in this Section shall be entitled to any limitation of liability or exculpation as against the United States, Montana, and Wyoming, including without limitation, the Montana Department of Environmental Quality and Montana Department of Natural Resources and Conservation, that is inconsistent with any applicable non-bankruptcy law. For the avoidance of doubt, no obligations arising pursuant to the terms of this Section shall be payable from the Reclamation Sinking Fund.

5.4    **Reliance by Trustees and the Reclamation Trust Entity Board on Documents or Advice of Counsel.** Except as otherwise provided in this Agreement, each Trustee, the Reclamation Trust Entity Board, each Member and any director, officer, affiliate, employee, employer, professional, agent, or representative of the foregoing may rely in good faith, and shall be protected from liability for acting or not acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by any Trustee, the Reclamation Trust Entity Board or any Member to be genuine and to have been presented by an authorized party. Neither any Trustee, the Reclamation Trust Entity Board nor any Member shall be liable for any action taken or omitted or suffered by the Trustee, the Reclamation Trust Entity Board, or the Member, as applicable, in reasonable reliance upon the advice of counsel engaged by the Trustee, the Reclamation Trust Entity Board or the Member, as applicable, in accordance with this Agreement. Each of the Trustees, the Reclamation Trust Entity Board and the Members shall be fully indemnified by Lighthouse Reclamation Trust for or in respect of any action taken, suffered or omitted by it in accordance with such advice or opinion. No party referenced in this Section shall be entitled to any limitation of liability or exculpation as against the United States, Montana, and Wyoming, including without limitation, the Montana

24

Department of Environmental Quality and Montana Department of Natural Resources and Conservation, that is inconsistent with any applicable non-bankruptcy law. For the avoidance of doubt, no obligations arising pursuant to the terms of this Section shall be payable from the Reclamation Sinking Fund.

5.5     **Insurance.** The Reclamation Trust Entity Representative, upon the approval of the Reclamation Trust Entity Board, may purchase, using the Post-Effective Date Assets, and carry all insurance policies and pay all insurance costs and premiums the Reclamation Trust Entity Board and the Reclamation Trust Entity Representative deem reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any Losses it may incur, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud or willful misconduct, with respect to the implementation and administration of the Reclamation Plans, the Plan, the Confirmation Order or this Agreement.

5.6     **Survival.**   The provisions of this Article V shall survive the termination of this Agreement and the death, resignation, removal, liquidation, dissolution, or replacement of the Reclamation Trust Entity Representative or any Member, or the dissolution of the Reclamation Trust Entity Board.

## ARTICLE VI.
## GENERAL PROVISIONS CONCERNING ADMINISTRATION OF
## LIGHTHOUSE RECLAMATION TRUST

6.1     **Registers.** The Reclamation Trust Entity Representative shall maintain at all times registers of the names, distribution addresses, and the ratable interests in each Disputed Claims Reserve, each Allowed Claims Reserve, the Accrued Professional Compensation Account, the Reclamation Sinking Fund, the Professionals, holders of unpaid Administrative Claims, holders of unpaid Allowed Claims and Beneficiaries, as applicable (each, a "Register"), and shall recognize and deal with Professionals, holders of unpaid Administrative Claims, holders of unpaid Allowed Claims and Beneficiaries as reflected on the applicable Register. The initial Registers shall be delivered to the Reclamation Trust Entity Representative by the Debtors on the date hereof and shall be based on the list of holders of Claims and Reclamation Trust Entity Interests maintained by the Voting and Claims Agent as of the date hereof. All references in this Agreement to Professionals, holders of unpaid Administrative Claims, holders of unpaid Allowed Claims and Beneficiaries shall be read to mean holders of Claims for Accrued Professional Compensation, holders of unresolved Claims, holders of unpaid Allowed Claims and holders of Reclamation Trust Entity Interests of record as set forth in the applicable Register maintained by the Reclamation Trust Entity Representative and shall exclude any beneficial owner not recorded on such Register. The Reclamation Trust Entity Representative shall cause the Register to be kept at its office or at such other place or places as may be designated by the Reclamation Trust Entity Representative from time to time.

6.2     **Books and Records.**

25

4827-5741-7690.v28

a)      On the Effective Date, Decker Holding Co., LLC, Gulf States Bulk Terminal, LLC, any other Millennium Debtors dissolved as of the date hereof, and the Non-Debtor Subsidiaries shall transfer and assign to Reorganized Lighthouse full title to, and Reorganized Lighthouse shall be authorized to take possession of, all of the books and records of such Persons. Reorganized Lighthouse shall have the responsibility of storing and maintaining books and records transferred hereunder until the later of (i) five (5) years after the Reorganized Debtors' Reclamation Liabilities are satisfied, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law or (ii) all of the Chapter 11 Cases are closed, after which time such books and records may, to the extent not prohibited by applicable law, be abandoned or destroyed. For the purpose of this Section 6.2, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the said Persons maintained by or in possession of third parties and all of the claims and rights of the said Persons in and to their books and records, wherever located.

b)      The Reclamation Trust Entity Representative also shall maintain books and records relating to the Post-Effective Date Assets and any income or proceeds realized therefrom and the payment of expenses of and claims against or assumed by Lighthouse Reclamation Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Agreement, the Reclamation Plans, the Plan, or the Confirmation Order, or as may be required by applicable law (including applicable securities law), nothing in this Agreement is intended to require Lighthouse Reclamation Trust to file any accounting or seek approval of any court with respect to the administration of Lighthouse Reclamation Trust, or as a condition for making any payment or distribution out of the Post-Effective Date Assets. The Reclamation Trust Entity Board shall have the right to inspect the books and records of Lighthouse Reclamation Trust at any time upon reasonable notice to the Reclamation Trust Entity Representative. Beneficiaries and Sureties shall have the right upon five (5) days' prior written notice delivered to the Reclamation Trust Entity Representative to inspect Lighthouse Reclamation Trust's books and records, including each Register; *provided, however* that such Surety or Beneficiary shall have entered into a confidentiality agreement in form and substance reasonably satisfactory to the Reclamation Trust Entity Representative and the Reclamation Trust Entity Board. Satisfaction of the foregoing condition notwithstanding, if (a) the Reclamation Trust Entity Representative and the Reclamation Trust Entity Board determine in good faith that the inspection of Lighthouse Reclamation Trust's books and records, including any Register, by any Surety or Beneficiary would be detrimental to Lighthouse Reclamation Trust or (b) such Surety or Beneficiary is a litigation party (or potential party) in a pending (or potential) action brought by or against Lighthouse Reclamation Trust, Lighthouse Reclamation Trust may deny such request for inspection.

6.3   **Reclamation Sinking Fund.**

a)      Upon approval of the Decker Reclamation Plan as contemplated by the Plan (such date, the "Reclamation Agreement Date"), the Reclamation Trust Entity Representative shall establish a segregated account under the custody and control of Lighthouse Reclamation Trust held on behalf of the Reorganized Coal Side Debtors to fund their reclamation obligations ("Reclamation Sinking Fund"). The Sureties shall fund the Reclamation Sinking Fund with all

remaining bond collateral of the Debtors pledged or otherwise encumbered for the benefit of the Sureties in the form of cash and letters of credit, other than the amount of $1,000,000 in collateral to be retained by Zurich to secure the obligations it may have under that certain Indemnity Bond Given by Self-Insurer Under the Provisions of the Federal Coal Mine Health and Safety Act of 1969, as amended, Zurich bond No. 09093733, as follows: (i) after the Reclamation Agreement Date, $56,344,000 (plus any interest earnings thereon, if any) in collateral held by the Sureties other than Westchester; and (ii) $1,921,000 (plus any interest earnings thereon, if any) in collateral held by Westchester shall be released to the Reclamation Sinking Fund after a 60% reduction of the penal sum of Westchester bond no. K08898339 by Montana after completion of Phase I of the Decker Reclamation Plan, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, for areas bonded by Westchester. Notwithstanding anything herein to the contrary, the aggregate amount of such transfers for each of the Sureties, to include the Initial Working Capital Funding Amount, shall not exceed the current amount of collateral held by each of the Sureties (provided solely with respect to Zurich, minus $1,000,000) respectively, plus interest earnings thereon. The Sureties shall fund the Reclamation Sinking Fund in the foregoing amounts at such times and at such intervals as contemplated for each of the Sureties in the Plan, in the Reclamation Trust Entity Budget and as required for the Reclamation Plans, as more particularly set forth in the Reclamation Sinking Fund Agreement. The Reclamation Sinking Fund shall provide funding to Reorganized Coal Side Debtors, as applicable, in accordance with the Reclamation Trust Entity Budget. Lighthouse Reclamation Trust shall be the nominal holder of the Reclamation Sinking Fund to protect the account for the benefit of the Sureties and their security interest therein. Reorganized Lighthouse shall be deemed the owner of the Reclamation Sinking Fund for tax purposes only.

b)      The Reclamation Sinking Fund shall be held and managed by Lighthouse Reclamation Trust in accordance with the Reclamation Trust Entity Budget and that certain Reclamation Sinking Fund Agreement entered into contemporaneously herewith by and among the Senior Secured Lenders, the Sureties and Lighthouse Reclamation Trust held on behalf of the Reorganized Coal Side Debtors to fund their reclamation obligations ("Reclamation Sinking Fund Agreement"), for (i) the management and implementation of the Decker Reclamation Plan, (ii) funding Reorganized KCP's share of obligations related to the Black Butte Reclamation Plan, (iii) payment of the Sinking Fund Management Fee to Reorganized LHR Coal, and (iv) payment of obligations of Reorganized Coal Side Debtors under the Reclamation Trust Entity Bonding Agreement, including payment of annual surety premiums and reimbursement of fees to the Sureties.

c)      The Reclamation Sinking Fund Benchmark shall be an amount of Cash sufficient to (i) cover the Reclamation Liabilities for completion of the Decker Reclamation Plan and (ii) cover the Reclamation Liabilities for completion of Reorganized KCP's 50% share of the costs of the Black Butte Reclamation Plan; *provided that* the calculation of the Reclamation Sinking Fund Benchmark as related to Reclamation Liabilities for completion of Reorganized KCP's 50% share of the costs of the Black Butte Reclamation Plan shall include consideration of any existing collateral, cash held at Decker Coal Company, LLC and Black Butte, and the Cash on hand held by the Reclamation Trust Entity. The Senior Secured Lenders, Bitter Creek (as provided in the last three sentences of this section) and the Sureties, in consultation with the Reclamation Governmental Authorities, shall agree upon the initial amount of the Reclamation

27

Sinking Fund Benchmark on the Reclamation Agreement Date, and, thereafter, the Class A Reclamation Trust Entity Interests Agent, Bitter Creek (as provided in the last three sentences of this section) and the Sureties, in consultation with the Reclamation Governmental Authorities, shall evaluate and, if consistent with the progress made under the applicable Reclamation Plans and applicable non-bankruptcy law, work in good faith to agree upon the amount of the Reclamation Sinking Fund Benchmark annually. The component of the Reclamation Sinking Fund Benchmark consisting of the calculation of costs of the Black Butte Reclamation Plan shall be set or modified with the good faith, reasonable consent of Bitter Creek, which consent shall not be unreasonably withheld, conditioned or delayed. Should Bitter Creek fail to respond to the solicitation of such consent within fourteen (14) days of receipt, Bitter Creek's consent will be deemed given. Bitter Creek shall not have consent or approval rights as to any other component of the Reclamation Sinking Fund Benchmark.

        d)      The Reclamation Sinking Fund shall be funded with the following amounts up to the Reclamation Sinking Fund Benchmark:

        (1)      Releases of collateral held by the Sureties as contemplated in this Agreement and the Reclamation Sinking Fund Agreement.

        (2)      Until Phase I bond release of bonds securing reclamation of the Decker Mine is achieved, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, sixty percent (60%) of all distributions from Black Butte to Reorganized KCP made pursuant to the Black Butte JV Agreement, deposited by Reorganized KCP into the Reclamation Sinking Fund, and twenty percent (20%) of the proceeds of the sale of any Remainder Coal Side Assets or any Reclamation Assets, deposited by the applicable Reorganized Debtor into the Reclamation Sinking Fund; *provided, however*, the distributions to be made under this Section 6.3(d)(2) shall be made net of taxes to be paid on income to the Reorganized Debtors with respect to the amount to be distributed and, in addition, with respect to distributions of proceeds from the sale of any Remainder Coal Side Assets or Reclamation Assets, net of payment of reasonable expenses incurred in the maintenance and marketing of such assets.

        (3)      After said Phase I bond release is achieved, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, when the amount in the Reclamation Sinking Fund is below the Reclamation Sinking Fund Benchmark, fifty percent (50%) of all distributions from Black Butte to Reorganized KCP made pursuant to the Black Butte JV Agreement, deposited by Reorganized KCP into the Reclamation Sinking Fund, and twenty percent (20%) of the proceeds of the sale of any Reclamation Assets, deposited by the applicable Reorganized Debtor into the Reclamation Sinking Fund; *provided, however,* the distributions to be made under this Section 6.3(d)(3) shall be made net of taxes to be paid on income to the Reorganized Debtors with respect to the amount to be distributed and, in addition, with respect to distributions of proceeds from the sale of any Reclamation Assets, net of payment of reasonable expenses incurred in the maintenance and marketing of such assets.

28

e)        As set forth in the Reclamation Sinking Fund Agreement, the Sureties will have a superior security interest in the Reclamation Sinking Fund up to the Reclamation Sinking Fund Benchmark senior in priority to the interests of any other beneficiary of Lighthouse Reclamation Trust including the Beneficiaries until completion of the Reclamation Plans and corresponding bond release, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law.  The Sureties shall also have senior priority rights to the Initial Working Capital Funding Amount, and proceeds thereof, and the Reclamation Sinking Fund each as necessary to reclaim the right to such funds in the event of a bond forfeiture or other adverse action by the Reclamation Governmental Authorities.  In the event of a termination of this Agreement and Lighthouse Reclamation Trust prior to the completion of the Decker Reclamation Plan and the funding of Reorganized KCP's share of obligations related to the Black Butte Reclamation Plan, the Sureties shall be entitled to a return of the funds held in the Reclamation Sinking Fund up to the Reclamation Sinking Fund Benchmark and the remainder of the Initial Working Capital Funding Amount.  Upon termination of Lighthouse Reclamation Trust in accordance with Section 11.1, any funds remaining in the Reclamation Sinking Fund and the remainder of the Initial Working Capital Funding Amount shall be distributed to the Beneficiaries.

6.4    **Final Accounting of Reclamation Trust Entity Representative.** The Reclamation Trust Entity Representative (or any such successor Reclamation Trust Entity Representative) shall within ninety (90) days after the termination of Lighthouse Reclamation Trust render and deliver to the Reclamation Trust Entity Board an accounting containing the following information:

a)        A description of the Post-Effective Date Assets.

b)        A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with Lighthouse Reclamation Trust and the Post-Effective Date Assets during the Reclamation Trust Entity Representative's term of service, including their source and nature.

c)        The ending balance of all Post-Effective Date Assets (including, without limitation, all funds and reserves) as of the date of the accounting, including the Cash balance on hand and the name(s) and location(s) of the depository or depositories where the Cash is kept.

d)        All known liabilities of Lighthouse Reclamation Trust and the Reorganized Debtors.

6.5    **Filing of Accounting**. The final accounting described in Section 6.4 shall be filed with the Bankruptcy Court unless the Chapter 11 Cases have been closed.

6.6    **Reclamation Trust of Employee Benefit Plans**. Lighthouse Reclamation Trust shall oversee and administer (a) the termination of certain of the Debtors' qualified 401(k) retirement plans and any related trusts and the distribution of such plans' assets to participants and shall fulfill statutory and regulatory requirements related to such plans, (b) any statutory and regulatory requirements related to any terminated Debtor employee benefit plans, and (c) Assumed Employee Benefit Agreements.  The Lighthouse Reclamation Trust will have no liability for the

29

any claims arising under or in relation to the Employee Benefit Agreements except to the extent such claims are payable from the Allowed Claims Reserve.

## ARTICLE VII.
## BENEFICIAL INTERESTS AND BENEFICIARIES

7.1    **Trust Beneficial Interests.** Effective as of the date hereof, Lighthouse Reclamation Trust shall issue (a) the Class A Reclamation Trust Entity Interests to the Class A Reclamation Trust Entity Interests Agent as the agent of the Senior Secured Lenders, and such Class A Reclamation Trust Entity Interests shall be entitled to distributions as set forth in this Agreement, the Plan, and the Confirmation Order, and (b) the Class B Reclamation Trust Entity Interests to Class B Reclamation Trust Entity Interests Agent as agent of the holders of General Unsecured Claims against the Debtors, and such Class B Reclamation Trust Entity Interests shall be entitled to distributions as set forth in this Agreement pro rata in the amount of the General Unsecured Claims held by the holders of General Unsecured Claims, the Plan, and the Confirmation Order.

7.2    **Interest Beneficial Only**. Ownership of a Reclamation Trust Entity Interest shall not entitle any Beneficiary to any title in or to the Post-Effective Date Assets or to any right to call for a partition or division of the Post-Effective Date Assets or to require an accounting.

7.3    **Evidence of Beneficial Interest.** Ownership of a Reclamation Trust Entity Interest shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever. Lighthouse Reclamation Trust Interests shall be evidenced only in the form of a book entry on the applicable Register maintained on the books and records of Lighthouse Reclamation Trust by the Reclamation Trust Entity Representative.

7.4    **Exemption from Registration**. The parties hereto intend that Reclamation Trust Entity Interests of the Beneficiaries arising under this Agreement shall not be "securities" under applicable law. The Reclamation Trust Entity Interests shall not have consent or voting rights or otherwise confer on Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken by the Reclamation Trust Entity Board and/or the Reclamation Trust Entity Representative in connection with Lighthouse Reclamation Trust and the Post-Effective Date Assets. Neither the Reclamation Trust Entity Representative or the Reclamation Trust Entity Board shall take any action to establish or support the establishment of an active trading market with respect to the Reclamation Trust Entity Interests.

7.5    **Transfers of Beneficial Interests.** The Class B Reclamation Trust Entity Interests shall be non-transferrable except upon death of the interest holder or by operation of law. Lighthouse Reclamation Trust shall not have any obligation to recognize any transfer of the Class B Reclamation Trust Entity Interests occurring after the Record Date, and only those holders of the Class B Reclamation Trust Entity Interests of record as of the close of business on the date hereof shall be entitled to be recognized for all purposes hereunder. The Class A Reclamation Trust Entity Interests shall be fully transferrable, subject to applicable law.

7.6    **Absolute Owners.** The Reclamation Trust Entity Representative may deem and treat the Beneficiary reflected as the owner of a Reclamation Trust Entity Interest on the applicable

30

Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof, for federal and state income tax purposes and for all other purposes whatsoever.

7.7    **Change of Address.** A Beneficiary or any other creditor of Lighthouse Reclamation Trust may, after the Effective Date, select an alternative distribution address by serving a notice upon Lighthouse Reclamation Trust identifying such alternative distribution address, and the Reclamation Trust Entity Representative shall update the applicable Register upon receipt of such notice. Absent such notice, the Reclamation Trust Entity Representative shall not recognize any such change of distribution address. Such notification shall be effective only upon receipt by the Reclamation Trust Entity Representative.

7.8    **Effect of Death, Dissolution, Incapacity, or Bankruptcy of Beneficiary.** The death, dissolution, incapacity, or bankruptcy of any creditor of Lighthouse Reclamation Trust or Beneficiary during the term of Lighthouse Reclamation Trust shall not operate to terminate Lighthouse Reclamation Trust during the term of Lighthouse Reclamation Trust nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Post-Effective Date Assets or for a partition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Agreement or in Lighthouse Reclamation Trust.

7.9    **Standing.** Except as expressly provided in this Agreement, no Beneficiary shall have standing to direct the Reclamation Trust Entity Representative to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Post-Effective Date Assets.

7.10    **Class A Reclamation Trust Entity Interests Agent.** Each holder of Class A Reclamation Trust Entity Interests hereby irrevocably appoints the Class A Reclamation Trust Entity Interests Agent to act on its behalf as agent from time to time under this Agreement, and each holder of Class A Reclamation Trust Entity Interests hereby authorizes the Class A Reclamation Trust Entity Interests Agent, acting as agent, to take such actions on its behalf and to exercise such powers as are delegated to the Class A Reclamation Trust Entity Interests Agent by the terms hereof or thereof or otherwise delegated by the holders of Class A Reclamation Trust Entity Interests from time to time, together with such actions and powers as are reasonably incidental thereto. Each holder of Class A Reclamation Trust Entity Interests acknowledges that the Class A Reclamation Trust Entity Interests Agent will act as an agent on behalf of the holders of Class A Reclamation Trust Entity Interests in certain circumstances as set forth in this Agreement.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

8.1    **Incorporation of Plan Provisions.** As of the Effective Date, Lighthouse Reclamation Trust shall assume responsibility for all Claims matters established by the Plan.

8.2    **Disputed Claims Reserves and Allowed Claims Reserves**.

4827-5741-7690.v28

a)      **Establishment of Disputed Claims Reserves.** The Reclamation Trust Entity Representative, through Reorganized Lighthouse, shall establish and fund one or more Disputed Claims Reserves. The Disputed Claims Reserve shall be maintained in trust for holders of Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims that are Disputed or otherwise not yet Allowed as of the Effective Date and not paid prior to the Effective Date or as part of the distributions provided for under the Plan, but that are or become Allowed after the Effective Date, and the administration thereof. Such Claims shall be paid first from amounts in the Disputed Claims Reserve and then from the assets of Reorganized Lighthouse only if no funds remain in the Disputed Claims Reserve. For the avoidance of doubt, funds subject to Class A Distributions and Class B Distributions, funds from the Reclamation Sinking Fund, or the Initial Working Capital Funding Amount may not be used to fund the Disputed Claims Reserve. Termination of the Disputed Claims Reserve is addressed in subsection (f) below.

b)      **Establishment of Allowed Claims Reserves**. The Reclamation Trust Entity Representative, through Reorganized Lighthouse, shall establish and fund one or more Allowed Claims Reserves (together with the Disputed Claims Reserves, the "Claims Reserves") with Cash in an amount equal to the amount of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Other Secured Claims that are not otherwise paid on or prior to the Effective Date. The Allowed Claims Reserve shall be maintained in trust for holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Other Secured Claims not otherwise paid on or prior to the Effective Date. Such Claims shall be paid first from amounts in the Allowed Claims Reserve and then from the assets of Reorganized Lighthouse only if no funds remain in the Allowed Claims Reserve. For the avoidance of doubt, funds subject to Class A Distributions and Class B Distributions, funds from the Reclamation Sinking Fund, or the Initial Working Capital Funding Amount may not be used to fund the Allowed Claims Reserve. Termination of the Disputed Claims Reserve is addressed in subsection (f) below.

c)      **Amounts to Be Reserved.** The Reclamation Trust Entity Representative shall reserve the entire amount of Cash, or other property, allocated for distribution on account of each Allowed Claim not otherwise paid as of the Effective Date and on account of each Disputed or otherwise unresolved Claim based upon the full asserted amount of each such Claim or such lesser amount as may be estimated by the Bankruptcy Court in accordance with the Plan, with such amount determined after any due date for the filing of any such claim by proof of claim or otherwise. All Cash or other property allocable to such Claims hereunder shall be distributed by the Reclamation Trust Entity Representative to the relevant Claims Reserve as soon as practicable. To the extent that the property placed in a Claims Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account at a qualified institution, consistent with the terms and limitations of this Agreement.  For the avoidance of doubt, funds subject to Class A Distributions and Class B Distributions, funds from the Reclamation Sinking Fund, or the Initial Working Capital Funding Amount may not reserved for payment of Claims.

d)      **Objections to Claims**. Except insofar as a Claim is Allowed under the Plan or has already been paid by the Debtors in the ordinary course of business pursuant to an order of the Court, Lighthouse Reclamation Trust shall have exclusive authority to object to Claims.

32

4827-5741-7690.v28

Lighthouse Reclamation Trust shall be entitled to dispute and/or otherwise object to any Claim in accordance with applicable law, including Bankruptcy Code section 502.

e)      **Distribution.** (i) Each such Claim shall be paid in full in Cash from funds held in the Allowed Claims Reserve or receive such other treatment as provided in the Plan as soon as practicable after the Reclamation Trust Entity Representative believes the Allowed Claims Reserve is sufficiently funded based on the deadlines applicable to the filing of the claims that are subject to the reserve. (ii) Payments on any unresolved Claim, including a Disputed Claim that becomes an Allowed Claim, shall be distributed by the Reclamation Trust Entity Representative on the later of (a) the first distribution date after the Claim is Allowed in accordance with Article IX and (b) the Reclamation Trust Entity Representative believes the Disputed Claims Reserve is sufficiently funded based on the deadlines applicable to the filing of the claims that are subject to the reserve and any necessary estimation of such claims is completed. Distributions shall be made only to the extent of the aggregate distributions that the holder of any such Allowed Claim would have received had such Claim been Allowed as of the Effective Date (less any Taxes paid with respect to amounts held in the Claims Reserve). Distributions to each holder of a Disputed Claim that has become an Allowed Claim (and to the extent that the holder of the Disputed Claim has not received prior distributions on account of that Claim) shall be made in accordance with the provisions of the Plan and Article IX.

f)      **Termination of Claims Reserves.** When all distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and this Agreement have been made from a Claims Reserve, the remaining funds in such Claims Reserve shall transferred to the other Claims Reserves if Claims remain to be paid from such remaining Claims Reserves. Each Claims Reserve shall be closed and extinguished by the Reclamation Trust Entity Representative when all distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and this Agreement have been made. Upon closure of a Claims Reserve, all Cash and other property held in that Claims Reserve shall either (i) be distributed to the Class A Reclamation Trust Entity Interests pursuant to Section 1.10(a)(5) or (ii) revest in Reorganized Lighthouse as a part of the general Post-Effective Date Assets and such Cash and property shall be used by Lighthouse Reclamation Trust to make distributions in accordance with the terms of this Agreement.

g)      **Transmittal of Distributions and Notices.** Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan and this Agreement may be delivered by wire transfer in accordance with instructions provided to the Reclamation Trust Entity Representative by such Person or by regular mail, postage prepaid, in an envelope addressed to that Person's address listed in the applicable Register. Subject to the provisions of Article IX, property distributed in accordance with this subsection shall be deemed delivered to such Person regardless of whether such property is actually received by that Person. Notice given in accordance with this subsection shall be effective only upon receipt.

33

4827-5741-7690.v28

## ARTICLE IX.
## DISTRIBUTIONS

9.1    **Distributions From Post-Effective Date Assets.** All payments to be made by Lighthouse Reclamation Trust to any Beneficiary shall be made (a) only in accordance with the terms of this Agreement and from the Post-Effective Date Assets (or from the income and/or proceeds realized from the Post-Effective Date Assets), (b) except for the mandatory distributions set forth in Section 1.10, net of any Claims Reserve, Reclamation Sinking Fund and the Accrued Professional Compensation Account, and (c) only to the extent that Lighthouse Reclamation Trust has sufficient Post-Effective Date Assets (or income and/or proceeds realized from the Post-Effective Date Assets) to make such payments in accordance with and to the extent provided for in this Agreement. Any payment of Cash by Lighthouse Reclamation Trust shall be made by the Reclamation Trust Entity Representative via (i) a check drawn on, or (ii) wire transfer from, a domestic bank selected by Lighthouse Reclamation Trust, the option of which shall be in the sole discretion of the Reclamation Trust Entity Representative.

9.2    **Distributions; Withholding**. Except for the mandatory distributions set forth in Section 1.10, the Reclamation Trust Entity Representative shall make distributions to the Beneficiaries in accordance with the terms of the Plan and this Agreement at least once every 60 days unless such distributions would be less than $250,000 in the aggregate. Notwithstanding the foregoing, except for the mandatory distributions set forth in Section 1.10, the Reclamation Trust Entity Board may authorize the Reclamation Trust Entity Representative to retain proceeds from the Post-Effective Date Assets to fund additional costs of Lighthouse Reclamation Trust or the Non-Debtor Subsidiaries following the date hereof; *provided that* such amount shall not exceed the amount provided for in the Reclamation Trust Entity Budget. Except for the mandatory distributions set forth in Section 1.10, Lighthouse Reclamation Trust may cause Reorganized Lighthouse to withhold from amounts otherwise distributable to any Entity any and all amounts, determined in the Reclamation Trust Entity Representative's reasonable discretion but not to exceed, together with all other cash held by Reorganized Lighthouse, Reorganized LHR Coal and Lighthouse Reclamation Trust at such time (other than amounts held in the Reclamation Sinking Fund or in the funds and reserves designated hereunder), $3,000,000.00, that may be required by this Agreement, or any law, regulation, rule, ruling, directive, treaty or other governmental requirement, which amount shall be calculated excluding any amounts held in the Reclamation Sinking Fund. Any party issuing any instrument or making any distribution under the Plan or this Agreement shall comply with all applicable withholding and reporting requirements imposed by any U.S. federal, state or local tax law or tax authority, and all distributions under this Agreement shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim and each Beneficiary that is to receive a distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any Taxes imposed on such holder by any governmental unit, including income, withholding and other Tax obligations, on account of such distribution. Lighthouse Reclamation Trust has the right, but not the obligation, to not make a distribution until any such holder has made arrangements satisfactory to the Reclamation Trust Entity Representative for payment of any such Tax obligations, and, if Lighthouse Reclamation Trust fails to withhold with respect to any such holder's distribution and is later held liable for the amount of such withholding, such holder shall reimburse Lighthouse Reclamation Trust. The Reclamation Trust Entity Representative may require, as a condition to

34

4827-5741-7690.v28

the receipt of a distribution, that the applicable holder complete the appropriate Form W-8 or Form W-9, as applicable to such holder. If the holder fails to comply with such a request within 180 days, such distribution shall be deemed to be Unclaimed Property (defined below). Prior to the making of any distributions contemplated hereunder to holders of Allowed Claims or any Beneficiary, the Reclamation Trust Entity Representative shall provide the Reclamation Trust Entity Board with five (5) business days' written notice of any such distribution, which notice shall include a summary of the aggregate amounts to be distributed. Within three (3) business days of receipt of the notice of distribution, any Member may request additional information regarding the calculation of the aggregate distribution amounts and the identity of the payees in respect thereof. No Claims or Reclamation Trust Entity Interests, Allowed or otherwise (including Administrative Claims), shall be entitled, under any circumstances, to receive any interest on account of such Claim or Reclamation Trust Entity Interest.

9.3    **No Distribution Pending Allowance.** No payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, except for distributions into a Claims Reserve in accordance with the provisions of this Agreement.

9.4    **Distributions to Holders of Allowed Claims and Allowed Fee Claims**. Each Allowed Claims Reserve shall be maintained by the Reclamation Trust Entity Representative, through Reorganized Lighthouse, in trust for the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Other Secured Claims, as applicable, that are not otherwise paid as of the date hereof or as part of the distributions provided for under the Plan. Each such Claim shall be paid in full in Cash from funds held in the applicable Allowed Claims Reserve as soon as practicable after the date hereof, or otherwise in accordance with the terms of the Plan and this Agreement.

The Reclamation Trust Entity Representative does not hold the Accrued Professional Compensation Account. Allowed Fee Claims shall be paid by the holder of that account as provided in the Confirmation Order. When all Allowed Fee Claims have been paid in full, amounts remaining in the Accrued Professional Compensation Account, if any, shall be returned to Reorganized Lighthouse and shall be used by the Reorganized Lighthouse to fund the activities of Lighthouse Reclamation Trust and to make distributions to holders of Reclamation Trust Entity Interests.

9.5    **Distributions to Holders of Disputed Claims after Allowance**. Each Disputed Claims Reserve shall be maintained by the Reclamation Trust Entity Representative, through Reorganized Lighthouse, in trust for the holders of Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims as of the Effective Date. Each such Claim shall be paid in full in Cash from funds held in the applicable Disputed Claims Reserve as soon as practicable after the date on which an applicable Claim ultimately becomes an Allowed Claim, or otherwise in accordance with the terms of the Plan and this Agreement.

9.6    **Non-Cash Property**. Subject to Section 3.3 hereof, any non-Cash property of Lighthouse Reclamation Trust or the Reorganized Debtors may be sold, transferred, abandoned or otherwise disposed of by the Reclamation Trust Entity Representative. Notice of such sale,

35

transfer, abandonment or disposition shall be provided to the Beneficiaries pursuant to the reporting obligations provided in Section 6.3 of this Agreement; *provided, however,* that no property subject to Reclamation Liabilities shall be sold absent compliance with applicable non-bankruptcy law, and no property subject to Reclamation Liabilities shall be abandoned. If, in the Reclamation Trust Entity Representative's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Reclamation Trust Entity Representative believes, in good faith, such property has no value to Lighthouse Reclamation Trust, the Reclamation Trust Entity Representative shall have the right, subject to the approval of the Reclamation Trust Entity Board, to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the Reclamation Trust Entity Board in accordance with the terms of this Agreement. Except in the case of fraud, willful misconduct, or gross negligence, no party in interest shall have a cause of action against the Reclamation Trust Entity Representative, the Reclamation Trust Entity Board, any Member, or any of their directors, officers, employees, consultants, or professionals arising from or related to the disposition of non-Cash property in accordance with this Section 9.6.

9.7    **Undeliverable Distributions**. If any distribution is returned as undeliverable, the Reclamation Trust Entity Representative (or the Class B Reclamation Trust Entity Interests Agent with respect to distributions to the Class B Reclamation Trust Entity Interests) may, in its discretion, make such efforts to determine the current address of the holder of the Claim or Reclamation Trust Entity Interest with respect to which the distribution was made as the Reclamation Trust Entity Representative deems appropriate, but no distribution to a holder shall be made unless and until Lighthouse Reclamation Trust has determined the then-current address of such holder, at which time the distribution to such holder shall be made to such holder without interest. Amounts in respect of any undeliverable distributions made by Lighthouse Reclamation Trust (or the Class B Reclamation Trust Entity Interests Agent with respect to distributions to the Class B Reclamation Trust Entity Interests) shall be returned to, and held in trust by, Lighthouse Reclamation Trust or Reorganized Lighthouse, as applicable, until the distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and Article VI.B.4 or VI.B.5 of the Plan ("Unclaimed Property").

9.8    **Unclaimed Property.** Except with respect to property not distributed because it is being held in a Claims Reserve, distributions that are not claimed by the expiration of six months after delivery (or attempted delivery) shall be deemed to be Unclaimed Property and shall vest or revest in the Reorganized Lighthouse as Post-Effective Date Assets, and the Claims or Reclamation Trust Entity Interests with respect to which those distributions are made shall be automatically canceled. After the expiration of such six-month period, the claim of any Person or Entity to such distributions shall be discharged and forever barred. Nothing contained in the Plan or this Agreement shall require Lighthouse Reclamation Trust or Reorganized Lighthouse to attempt to locate any holder of any Disputed Claim that becomes an Allowed Claim or Beneficiary. All funds or other property that vests or revests in Lighthouse Reclamation Trust or Reorganized Lighthouse pursuant to Article IV.B of the Plan and this Section 9.8 shall be distributed by the Reclamation Trust Entity Representative in accordance with the provisions of this Agreement. A Claim or Reclamation Trust Entity Interest, and the Unclaimed Property distributed on account of such Claim or Reclamation Trust Entity Interest, shall not escheat to any federal, state, or local

36

government or other entity by reason of the failure of its holder to claim a distribution in respect of such Claim.

9.9 **Time Bar to Cash Payments by Check**. Checks issued by Lighthouse Reclamation Trust or Reorganized Lighthouse shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to the Plan and this Section 9.9 shall be made directly to the Reclamation Trust Entity Representative by the creditor or Beneficiary to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the six-month anniversary of the date on which the check was issued. After that date, all Claims or Reclamation Trust Entity Interests in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become property of Lighthouse Reclamation Trust or Reorganized Lighthouse, as applicable, as Unclaimed Property in accordance with Article IV.B of the Plan and this Article IX and be distributed as Unclaimed Property in accordance with Section 9.8.

9.10 **Withholding Taxes and Expenses of Distribution.** Any federal, state, or local withholding Taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Beneficiaries shall be required to provide the Reclamation Trust Entity Representative with any information necessary to effect the withholding of such Taxes. In addition, all distributions under the Plan shall be net of the actual and reasonable costs of making such distributions.

9.11 **Distributions on Non-Business Days.** Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

9.12 **No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no creditor shall receive any distribution in excess of the Allowed amount of its Claim.

9.13 **Setoff and Recoupment**. Lighthouse Reclamation Trust may, but shall not be required to, setoff against, or recoup from distribution, any claims or defenses of any nature whatsoever that Lighthouse Reclamation Trust may have against the applicable recipient of such distribution, but the failure to do so shall not constitute a waiver or release by Lighthouse Reclamation Trust of any claim, defense, right of setoff, or recoupment that it may have against such recipient.

9.14 **Fractional Dollars**. Notwithstanding anything to the contrary contained in this Agreement, the Reclamation Trust Entity Representative shall not be required to make distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Agreement would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

9.15 **De Minimis Distributions**. The Reclamation Trust Entity Representative shall have no obligation to make a distribution on account of an Allowed Claim if the amount to be distributed to the holder of such Allowed Claim on the respective distribution date has a value less

37

than $50.00. Any amount not distributed to a holder of an Allowed Claim because of the limitation set forth in this Section 9.15 shall become an asset of Lighthouse Reclamation Trust available for funding the next distribution, again subject to this limitation.

## ARTICLE X.
## TAXES

10.1    **Capital Accounts**. A separate capital account (each a "Capital Account") shall be maintained for each Beneficiary, which shall be: (a) increased by (i) the amount of such Beneficiary's cash contributions, (ii) the fair market value of the Beneficiary's capital contributions in the form of property (net of liabilities secured by such contributed property that Lighthouse Reclamation Trust is considered to assume or take subject to), and (iii) the amount of income or gain (including income and gain exempt from tax) allocated to such Beneficiary hereunder, and (b) decreased by (i) the amount of any expenses, deductions or losses allocated to such Beneficiary hereunder, (ii) the amount of Cash distributed to the Beneficiary by Lighthouse Reclamation Trust, and (iii) the fair market value of property distributed to the Beneficiary by Lighthouse Reclamation Trust (net of liabilities secured by such contributed property that such Beneficiary is considered to assume or take subject to).  Notwithstanding anything to the contrary contained herein, each Capital Account shall be determined and maintained in accordance with the provisions of Treas. Reg. § 1.704-1(b)(2)(iv) as the same may be amended or revised.

In the event any Beneficiary's Reclamation Trust Entity Interests are transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of such Beneficiary to the extent such Capital Account relates to such transferred Reclamation Trust Entity Interest.

The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treas. Reg. § 1.704-1(b), and shall be interpreted and applied in a manner consistent with such regulations. In the event the Reclamation Trust Entity Representative shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto are computed in order to comply with such regulations, it may make such modification.

10.2    **Allocations**. Allocations of Reclamation Trust Entity taxable income (other than taxable income allocable to the Disputed Claims Reserve and the Allowed Claims Reserve) among the Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed pursuant to Article IX of this agreement (were such cash permitted to be distributed at such time, and without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, Lighthouse Reclamation Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Disputed Claims Reserve and the Allowed Claims Reserve) to the Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from Lighthouse Reclamation Trust. Similarly, taxable loss of Lighthouse Reclamation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Post-Effective Date Assets. The tax book value of the Post-Effective Date Assets for the purpose of this paragraph shall equal their fair

market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code of 1986 (the "Tax Code"), the applicable Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

10.3    **Qualified Income Offset**.  In the event any Beneficiary unexpectedly receives any adjustments, allocations or distributions described in Treas. Reg. §§ 1.704-1(b)(2)(ii)(d)(4), (5) or (6), items of Reclamation Trust Entity income and gain shall be specially allocated to each such Beneficiary in an amount and manner sufficient to eliminate, to the extent required by such regulations, the Adjusted Capital Account Deficit (defined below) of such Beneficiary as quickly as possible; *provided, however,* that an allocation pursuant to this Section 10.3 shall be made only if and to the extent that such Beneficiary would have Adjusted Capital Account Deficit after all other allocations have been tentatively made as if this Section 10.3 were not in this Agreement. "Adjusted Capital Account Deficit" shall mean, with respect to any Beneficiary, the deficit balance, if any, in such Beneficiary's Capital Account as of the end of the relevant fiscal year, after giving effect to the following adjustments:  (a) credit to such Capital Account any amounts which such Beneficiary is obligated to restore pursuant to any provision of this Agreement or is deemed to be obligated to restore pursuant to the penultimate sentences of Treas. Reg. §§ 1.704-2(g)(1) and 1.704-2(i)(5); and (b) debit to such Capital Account the items described in Treas. Reg. §§ 1.704-1(b)(2)(ii)(d)(4), through 1.704-1(b)(2)(ii)(d)(6).  The foregoing definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Treas. Reg. § 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

10.4    **Tax Code § 704(c).**  If property is contributed to Lighthouse Reclamation Trust by a Beneficiary and there is a difference between the basis of such property to Lighthouse Reclamation Trust for federal income tax purposes and the fair market value at the time of its contribution, then items of income, deduction, gain and loss with respect to such property as computed for federal income tax purposes (but not for book purposes) shall be shared among the Beneficiaries so as to take account of such difference as required by Tax Code § 704(c). Furthermore, in accordance with Tax Code § 704(c) and the IRS Regulations thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of Lighthouse Reclamation Trust shall, solely for tax purposes, be allocated among the Beneficiaries so as to take account of any variation between the adjusted basis of such property to Lighthouse Reclamation Trust for federal income tax purposes and its initial fair market value using (i) the "remedial allocation method" described in Treas. Reg. § 1.704-3(d) with respect to the stock of Reorganized Lighthouse, and (ii) any method approved under Tax Code § 704(c) and the applicable Treasury Regulations as chosen by the Reclamation Trust Entity Board with respect to any other property.

10.5    **Revaluations**.  The Reclamation Trust Entity Representative may increase or decrease the Capital Accounts of the Beneficiaries to reflect a revaluation of Reclamation Trust Entity Interests or any other property held by Lighthouse Reclamation Trust on the books and records, but only in accordance with rules set forth in Treas. Reg. §1.704 1(b)(2)(iv)(f).

10.6    **No Interest on Capital Account.**  No Beneficiary shall be entitled to interest on its Capital Account.

39

4827-5741-7690.v28

10.7    **Tax Returns.** At Lighthouse Reclamation Trust's expense, the Reclamation Trust Entity Representative shall prepare, or cause to be prepared, in a timely manner after the end of each fiscal year all federal, state and local tax returns for Lighthouse Reclamation Trust for such year treating Lighthouse Reclamation Trust as a partnership for U.S. federal income tax purposes, and shall cause a copy thereof to be delivered to each of the Beneficiaries.  The Reclamation Trust Entity Representative shall also file (or cause to be filed) any other statement, return or disclosure relating to Lighthouse Reclamation Trust that is required by any governmental unit.  The valuation of the Post-Effective Date Assets prepared pursuant to Section 1.7 shall be used consistently by all parties (including the Reclamation Trust Entity Representative and the Beneficiaries) for all federal income tax purposes.  The Reclamation Trust Entity Representative shall be responsible for payment, out of the Post-Effective Date Assets, of any Taxes imposed on Lighthouse Reclamation Trust or the Post-Effective Date Assets, including the Disputed Claims Reserve and the Allowed Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve or on account of Allowed Claims in the Allowed Claims Reserve is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, such Claims, such Taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of such Claims or (b) to the extent that such Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Reclamation Trust Entity Representative as a result of the resolution of such Claims.

10.8    **Income Tax Status of Disputed Claims Reserves and Allowed Claims Reserve**. Subject to contrary definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the receipt by the Reclamation Trust Entity Representative of a private letter ruling if the Reclamation Trust Entity Representative so requests, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Reclamation Trust Entity Representative), the Reclamation Trust Entity Representative may (a) elect to treat any Disputed Claims Reserve and Allowed Claims Reserve as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9 and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. Accordingly, to the extent such election is made by the Reclamation Trust Entity Representative pursuant to this Section 10.2, any Disputed Claims Reserve and Allowed Claims Reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the Post-Effective Date Assets in such reserves, and all distributions from such reserves (which distributions will be net of the related expenses of the reserve) will be treated as received by holders in respect of such Disputed Claims or Allowed Claims as if distributed by the Debtors. All parties (including, without limitation, the Debtors, Lighthouse Reclamation Trust and the Beneficiaries) will be required to report for U.S. federal, state and local income tax purposes consistently with the foregoing if the election is made by the Reclamation Trust Entity Representative pursuant to this Section 10.5.

10.9    **Withholding of Taxes.** The Reclamation Trust Entity Representative may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the Beneficiaries. All such amounts withheld and paid to the appropriate tax authority shall be treated as amounts distributed to such Beneficiaries for all purposes of this Agreement. The Reclamation Trust Entity Representative shall be authorized to collect such tax

40

information from the Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order and this Agreement. In order to receive distributions from Lighthouse Reclamation Trust, all Beneficiaries will need to identify themselves to the Reclamation Trust Entity Representative and provide tax information and the specifics of their holdings, to the extent that the Reclamation Trust Entity Representative deems appropriate. This identification requirement may, in certain cases, extend to Beneficiaries who hold their Reclamation Trust Entity Interests in street name. The Reclamation Trust Entity Representative may refuse to make a distribution to any Beneficiaries that fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that, upon the delivery of such information by a Beneficiary, the Reclamation Trust Entity Representative shall make such distribution to which the Beneficiary is entitled, without interest; and, *provided*, *further*, that, if the Reclamation Trust Entity Representative fails to withhold in respect of amounts received and distributed with respect to any such Beneficiary and the Reclamation Trust Entity Representative is later held liable for the amount of such withholding, such Beneficiary shall reimburse the Reclamation Trust Entity Representative for such liability.

10.10   **Foreign Tax Matters.** The Reclamation Trust Entity Representative shall duly comply on a timely basis with all obligations, and satisfy all liabilities, imposed on the Reclamation Trust Entity Representative or Lighthouse Reclamation Trust under non-United States law relating to Taxes. The Reclamation Trust Entity Representative, or any other legal representative of Lighthouse Reclamation Trust, shall not distribute the Reorganized Lighthouse Equity Interests or proceeds thereof without having first obtained all certificates required to have been obtained under applicable non-United States law relating to Taxes.

10.11   **Partnership Representative.**  The Reclamation Trust Entity Representative shall serve as the "partnership representative" (the "Partnership Representative") as provided in Tax Code § 6223(a).  The Partnership Representative shall keep the Beneficiaries reasonably informed regarding any material tax issues regarding Lighthouse Reclamation Trust and shall give the Beneficiaries timely notice of, and shall furnish appropriate information to the Beneficiaries regarding, all significant audit and litigation events, including, but not limited to, the commencement of any examination or other action by a taxing authority, closing conference with the examining agent, proposed adjustments, rights of appeal, and requirements for filing a protest. The Partnership Representative is authorized and required to represent Lighthouse Reclamation Trust (at the trust's expense) in connection with all tax audits, investigations, or other proceedings, including administrative settlement and judicial review, (a "Tax Proceeding") by any federal, state, local, or foreign taxing authority, and to expend Reclamation Trust Entity funds for professional services and costs associated therewith. The Partnership Representative shall promptly notify the Beneficiaries upon the receipt of a notice of final partnership administrative adjustment or final partnership adjustment.  The Partnership Representative, in its sole discretion, shall have the right to make any and all elections and to take any actions that are available to be made or taken by the Partnership Representative or Reclamation Trust Entity regarding any audit (including any election under Tax Code § 6226(a)). If an election under Tax Code § 6226(a) is made, Lighthouse Reclamation Trust shall furnish to each Beneficiary for the reviewed year a statement of the Beneficiary's share of any adjustment set forth in the notice of final partnership adjustment, and each Beneficiary shall take such adjustment into account as required under Tax Code § 6226(b).

41

4827-5741-7690.v28

The Partnership Representative may request modifications as set forth in Tax Code § 6225(c) within forty-five (45) days of notice of final partnership adjustment, and each Beneficiary hereby agrees to cooperate with the Partnership Representative in making any such request. The Partnership Representative may also, in its sole discretion, for any fiscal year make the election out of the revised partnership audit rules under Tax Code § 6221(b), if applicable.

## ARTICLE XI.
## TERMINATION OF RECLAMATION TRUST ENTITY

11.1    **Termination of Reclamation Trust Entity.** The Reclamation Trust Entity Board and Lighthouse Reclamation Trust shall be dissolved at such time as (a) the Decker Reclamation Plan is completed as determined by the applicable Reclamation Governmental Authorities, (b) the costs of the Black Butte Reclamation Plan attributable to Reorganized KCP's 50% interest in Black Butte have been fully funded in the Reclamation Sinking Fund and set aside as approved by the Sureties and with the applicable consent of Bitter Creek as set forth in Sections 1.7(a), 1.7(c) and 6.3(c) (the "Black Butte Reclamation Funds"), (c) the holders of Class A Reclamation Trust Entity Interests consent, except to the extent that the Reclamation Trust Entity Representative determines, in consultation with the Reclamation Trust Entity Board, that the administration of any remaining Post-Effective Date Assets is not likely to yield sufficient additional Reclamation Trust Entity proceeds to justify further pursuit, (d) to the extent possible, the Reorganized Debtors have been dissolved, and (e) all distributions required to be made by Lighthouse Reclamation Trust under the Plan and this Agreement have been made.  In the event that at such time as dissolution is permitted hereunder and if the Black Butte Mine (defined below) remains in operation, then the Reorganized Lighthouse Equity Interests shall be transferred to the holders of Class A Reclamation Trust Entity Interests or their designated transferee, subject to any approval required by the Black Butte JV Agreement, and, if not already cancelled, the Class B Reclamation Trust Entity Interests shall be cancelled.  Upon dissolution of Lighthouse Reclamation Trust, the Reclamation Trust Entity Representative shall distribute any remaining proceeds (other than the Black Butte Reclamation Funds) to the holders of the Reclamation Trust Entity Interests.  The term "Black Butte Mine" means the mining operations associated with the permits set forth in the chart attached as Exhibit A to the Reclamation Sinking Fund Agreement under the mine name "Black Butte," as well as any other mining operations engaged in pursuant to the Black Butte JV Agreement.

Notwithstanding the foregoing paragraph, if, at any time after the Decker Reclamation Plan is completed as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, and the costs of the Black Butte Reclamation Plan attributable to Reorganized KCP's 50% interest in Black Butte have been fully funded and set aside in the Reclamation Sinking Fund as approved by the Sureties and with the applicable consent of Bitter Creek as set forth in Sections 1.7(a), 1.7(c) and 6.3(c), the Reclamation Trust Entity Representative determines, in reliance upon such professionals as the Reclamation Trust Entity Representative may retain and in consultation with the Reclamation Trust Entity Board, that the expense of administering Lighthouse Reclamation Trust so as to make a final distribution to the holders of Reclamation Trust Entity Interests is likely to exceed the value of the assets remaining in Lighthouse Reclamation Trust, the Reclamation Trust Entity Representative may, in accordance with its fiduciary duties, (i) reserve any amount necessary to dissolve Lighthouse Reclamation Trust, (ii) donate any balance to a charitable organization (A) described in Section 501(c)(3) of the

42

4827-5741-7690.v28

Tax Code, (B) exempt from U.S. federal income Tax under Section 501(a) of the Tax Code, (C) not a "private foundation," as defined in Section 509(a) of the Tax Code and (D) that is unrelated to Lighthouse Reclamation Trust, any Reorganized Debtor, and any insider of the Reclamation Trust Entity Representative and (iii) dissolve Lighthouse Reclamation Trust.

11.2  **Events Upon Termination.** Upon dissolution of Lighthouse Reclamation Trust, the Reclamation Trust Entity Representative shall distribute any remaining proceeds from the monetization of the Post-Effective Date Assets and any remaining amount of the Initial Working Capital Funding Amount shall be distributed in accordance with the terms of this Agreement and the Reclamation Trust Entity Representative shall file and make available to the Reclamation Trust Entity Board and the Beneficiaries the final accounting described in Section 6.4 and required to be filed and made available by Section 6.5.

11.3  **Winding Up, Discharge, and Release of the Trustees.** For the purposes of winding up the affairs of Lighthouse Reclamation Trust at the conclusion of its term, the Reclamation Trust Entity Representative shall continue to act as Reclamation Trust Entity Representative and the Reclamation Trust Delaware Trustee shall continue to act as the Reclamation Trust Delaware Trustee until its duties, as applicable, under this Agreement have been fully discharged or its role as Reclamation Trust Entity Representative or Reclamation Trust Delaware Trustee, as applicable, is otherwise terminated under this Agreement and the Plan.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

12.1  **Amendments.** The Reclamation Trust Entity Representative may, with the approval of a majority of the Members of the Reclamation Trust Entity Board, modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order; *provided, however*, no Amendment to this Agreement that is adverse to or materially affects the interests of either the holders of the Class A Reclamation Trust Entity Interests, the Class B Reclamation Trust Entity Interests, or the Sureties may be approved without the consent of the Class A Reclamation Trust Entity Interests Agent, the Class B Reclamation Trust Entity Interests Agent, or the Sureties, respectively; *provided, further*, that no Amendment to this Agreement that is adverse to or materially affects the interests of the Reclamation Governmental Authorities may be made absent prior consultation with, and the consent of, the Reclamation Governmental Authorities; *provided, further*, that no amendment to Sections 1.7(a), 1.7(c), and 6.3(c) may be approved without the consent of Bitter Creek.

12.2  **Waiver.** No failure by Lighthouse Reclamation Trust, the Reclamation Trust Entity Representative, or the Reclamation Trust Entity Board to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

12.3  **Cumulative Rights and Remedies.** The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan and the Confirmation Order.

43

12.4    **No Bond Required.** Notwithstanding any state law to the contrary, the Trustees (including any successor Trustees) shall be exempt from giving any bond or other security in any jurisdiction other than as provided under Section 3.4 of this Agreement. This Section shall not apply to any bonding obligations arising out of, under or related to Reclamation Liabilities.

12.5    **Irrevocability.** This Agreement and Lighthouse Reclamation Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Agreement.

12.6    **Relationship to the Plan.** The principal Purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and, to the extent that the provisions of this Agreement are otherwise non-determinative, is subject to the provisions of the Plan and the Confirmation Order, which are attached hereto as Exhibit A and Exhibit B, respectively. If any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control. If any provision of the Plan is found to be inconsistent with a provision of the Confirmation Order, the Confirmation Order shall control.

12.7    **Division of Reclamation Trust Entity.** Under no circumstances shall the Trustees have the right or power to divide Lighthouse Reclamation Trust.

12.8    **Applicable Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

12.9    **Retention of Jurisdiction.** Retention of jurisdiction shall be as set forth in the Plan and/or the Confirmation Order.

12.10    **Severability.** In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by any court of proper jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

12.11    **Limitation of Benefits.** Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any Person other than the parties hereto, the Reclamation Governmental Authorities, and the Beneficiaries any rights or remedies under or by reason of this Agreement. Nothing contained herein shall modify any of the Reclamation Governmental Authorities' rights under any bonds issued by the Sureties, and nothing contained herein shall limit the rights of any Reclamation Governmental Authorities with respect to the Reclamation Liabilities of any Entity. Nothing contained herein shall modify the rights of Bitter Creek, its successors and assigns, with respect to the Black Butte JV Agreement and nothing contained herein shall limit the duties and obligations of any counterparty to the Black Butte JV Agreement.

12.12    **Notices.** Except as provided in Section 12.9 of this Agreement, all notices, requests, demands, consents, and other communications hereunder shall be in writing and shall be deemed

44

to have been duly given to a person, if delivered in person or by facsimile with an electromagnetic report of delivery or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, to the following addresses:

      a)      If to the Reorganized Debtors or the Reclamation Trust Entity Representative, to:

> Lighthouse Resources Inc.
> 10980 South Jordan Gateway
> South Jordan, UT 84095
> Attention: Tay Tonozzi (t.tonozzi@lhr-inc.com)

> with a copy (which shall not constitute notice) to:

> Lighthouse Resources Inc.
> 10980 South Jordan Gateway
> South Jordan, UT 84095
> Attention: Darin Adlard (d.adlard@lhr-inc.com)

      b)      If to the Senior Secured Lenders or the Class A Reclamation Trust Entity Interests Agent, to:

> Resource Capital Funds
> 1400 Sixteenth Street, Suite 200
> Denver Colorado 80202
> Attn:     General Counsel

> With a copy (which shall not constitute notice) to:

> Davis Graham & Stubbs LLP
> 1550 17th Street, Suite 500
> Denver, Colorado  80202
> Attn:     Joel O. Benson, Esq. (joel.benson@dgslaw.com)
> Christopher L. Richardson, Esq. (chris.richardson@dgslaw.com)
>         Kyler K. Burgi, Esq. (kyler.burgi@dgslaw.com)

      c)      If to Zurich, to:

> Zurich American Insurance Company
> 600 Red Brook Blvd, Suite 600
> Owings Mills, MD 21117
> Attn:     Brian Hodges, Head of Commercial Surety
>         (brian.hodges@zurichna.com)

> With a copy (which shall not constitute notice) to:

45

4827-5741-7690.v28

Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, New Jersey  07052
Attn:    Armen Shahinian, Esq. (ashahinian@csglaw.com)
            Scott Zuber, Esq. (szuber@csglaw.com)

d)        If to Atlantic, to:

Atlantic Specialty Insurance Company
One State Street Plaza, 31st Floor
New York, NY 10004
Attn.:   Terry Dahl (TDahl@intactinsurance.com)

With a copy (which shall not constitute notice) to:

Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
10 S. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Attn.:   John E. Sebastian (jsebastian@watttieder.com)
            Lauren E. Rankins (lrankins@watttieder.com)

e)        If to Westchester, to:

Westchester Fire Insurance Company
150 Allen Road, Suite 101
Basking Ridge, New Jersey 07920
Attn:    Derek A. Popeil, Esq., Assistant Vice President,
Surety Claims Manager
            (dpopeil@chubb.com)

With a copy (which shall not constitute notice) to:

Manier & Herod, PC
1201 Demonbreun St., Suite 900
Nashville, TN  37203
Attn:    Michael E. Collins (mcollins@manierherod.com)

f)        If to the Class B Reclamation Trust Entity Interests Agent, upon selection of the Class B Reclamation Trust Entity Interests Agent and notice to the Reclamation Trust Entity Representative pursuant to the Plan, to the name, address and contact person of the Class B Reclamation Trust Entity Interests Agent provided in such notice.  The Reclamation Trust Entity Representative shall provide such information to the other parties to this Agreement upon receipt.

g)        If to a holder of any other Claim, to:

46

4827-5741-7690.v28

To the name and distribution address set forth in the applicable Register with respect to such Person or Entity.

h)    If to the Reclamation Trust Delaware Trustee, to:

Delaware Trust Company
251 Little Falls Drive
Wilmington, DE  19808
Attn:    Trust Administration

The parties and the Class B Reclamation Trust Entity Interests Agent may designate in writing from time to time other and additional places to which notices may be sent.

12.13    **Further Assurances.** From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

12.14    **Integration.** This Agreement, the Reclamation Trust Entity Bonding Agreement, the Reclamation Sinking Fund Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants, or obligations among them except as set forth herein, in the Plan and in the Confirmation Order. This Agreement, together with the Reclamation Plans, the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise provided in this Agreement, the Reclamation Trust Entity Bonding Agreement, the Reclamation Sinking Fund Agreement, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than (x) the parties hereto, (y) the Beneficiaries, and, (z), with respect to the consent rights contained in Sections 1.7(a), 1.7(c) and 6.3(c), Bitter Creek or its successors or assigns, any rights or remedies under or by reason of this Agreement.

12.15    **Interpretation.** The enumeration and Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise. Any reference to the "Reclamation Trust Entity Representative" shall be deemed to include a reference to "Lighthouse Reclamation Trust" and any reference to "Lighthouse Reclamation Trust" shall be deemed to include a reference to the "Reclamation Trust Entity Representative" except for the references in Section 5.1 and Section 5.2, and such other provisions in which the context otherwise requires.

47

12.16 **Counterparts.** This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of this Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart.

*[Remainder of Page Left Intentionally Blank]*

48

4827-5741-7690.v28

IN WITNESS WHEREOF, the parties have caused this Reclamation Trust Entity and Distribution Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

**REORGANIZED DEBTORS:**

LIGHTHOUSE RESOURCES INC.
LHR COAL, LLC
KCP, INC.
BIG HORN COAL COMPANY
ROSEBUD COAL SALES COMPANY
KCP PROPERTIES, INC.
DECKER COAL COMPANY, LLC
MONTANA ROYALTY HOLDINGS, LLC
LHR INFRASTRUCTURE, LLC
MILLENNIUM BULK TERMINALS-
LONGVIEW, LLC
BARLOW POINT LAND COMPANY, LLC
COLUMBIA LAND COMPANY, LLC

By:    LIGHTHOUSE RESOURCES INC., as the Reclamation Trust Entity Representative

By:_____

Name: Robert Novak

Title: Chief Restructuring Officer

**RECLAMATION TRUST ENTITY REPRESENTATIVE:**

LIGHTHOUSE RESOURCES INC.

By:_____

Name: Robert Novak

Title: Chief Restructuring Officer

[SIGNATURE PAGES CONTINUE ON FOLLOWING PAGE]

*Signature Page to Reclamation Trust Entity and Distribution Agreement*

**SENIOR SECURED LENDERS**:

RESOURCE CAPITAL FUND VI L.P.

By:    Resource Capital Associates VI, L.P.,
       General Partner

By:    RCA VI GP Ltd.,
       General Partner

By:    _____
       Mason Hills
       General Counsel

RCF V ANNEX FUND L.P.

By:    Resource Capital Associates V L.P.,
       General Partner

By:    RCA V GP Ltd.,
       General Partner

By:    _____
       Mason Hills
       General Counsel

RCF V ANNEX FUND L.P.,

By:    Resource Capital Associates V L.P.,
       General Partner

By:    RCA V GP Ltd.,
       General Partner

By:    _____
       Mason Hills
       General Counsel


[SIGNATURE PAGES CONTINUE ON FOLLOWING PAGE]


*Signature Page to Reclamation Trust Entity and Distribution Agreement*

**CLASS A RECLAMATION TRUST ENTITY INTERESTS AGENT:**

RESOURCE CAPITAL FUND VI L.P.

By:    Resource Capital Associates VI, L.P., General Partner

By:    RCA VI GP Ltd., General Partner

By:    _____

Mason Hills
General Counsel

[SIGNATURE PAGES CONTINUE ON FOLLOWING PAGE]

*Signature Page to Reclamation Trust Entity and Distribution Agreement*

**SURETIES:**

ZURICH AMERICAN INSURANCE COMPANY

By: _____

Name:  Michelle Randall, Esq.

Title:   Vice President – Surety Risk Solutions


ATLANTIC SPECIALTY INSURANCE
COMPANY

By:_____

Name: _____

Title: _____


WESTCHESTER FIRE INSURANCE COMPANY

By:_____

Name: Derek A. Popeil

Title:   Assistant Vice President, Surety Claims
         Manager

[SIGNATURE PAGES CONTINUE ON FOLLOWING PAGE]

*Signature Page to Reclamation Trust Entity and Distribution Agreement*

**SURETIES:**

ZURICH AMERICAN INSURANCE COMPANY

By:_____

Name: Michelle Randall, Esq.

Title:   Vice President – Surety Risk Solutions

ATLANTIC SPECIALTY INSURANCE
COMPANY

By:_____
Terry Dahl
B641E540E7C64CF...

Name: _____
Terry Dahl

Title: _____
Senior Vice President

WESTCHESTER FIRE INSURANCE COMPANY

By:_____

Name: Michael E. Collins

Title:   Legal Counsel

[SIGNATURE PAGES CONTINUE ON FOLLOWING PAGE]

*Signature Page to Reclamation Trust Entity and Distribution Agreement*

**SURETIES:**

ZURICH AMERICAN INSURANCE COMPANY

By:_____
Name: Michelle Randall, Esq.
Title:  Vice President – Surety Risk Solutions

ATLANTIC SPECIALTY INSURANCE
COMPANY

By:_____

Name: _____

Title: _____

WESTCHESTER FIRE INSURANCE COMPANY
By:_____
Name: Derek A. Popeil
Title:  Assistant Vice President, Surety Claims
Manager

[SIGNATURE PAGES CONTINUE ON FOLLOWING PAGE]

*Signature Page to Reclamation Trust Entity and Distribution Agreement*

**RECLAMATION TRUST DELAWARE TRUSTEE:**

DELAWARE TRUST COMPANY

By: _____

Name: Benjamin Hancock

Title: Assistant Vice President

*Signature Page to Reclamation Trust Entity and Distribution Agreement*

**Exhibit A**

**Plan**

See Exhibit A attached to the Confirmation Order included in this Agreement as Exhibit B.

*Exhibit A*

4827-5741-7690.v28

**Exhibit B**

**Confirmation Order**

4827-5741-7690.v28

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| LIGHTHOUSE RESOURCES INC., *et al.*,[1] | ) |
| | ) Case No. 20-13056 (JTD) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) **Re: Docket No. 413** |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE SECOND AMENDED JOINT PLAN OF DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

having:

a. commenced, on December 3, 2020 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code");

b. filed on December 11, 2021, (i) *Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 63]; (ii) *Disclosure Statement for Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 64]; and *Notice of Disclosure Statement Hearing* [Docket No. 65] (the "Disclosure Statement Hearing");

c. filed on December 22, 2020 the *Motion of Debtors for Entry of an Order (A) Approving Disclosure Statement; (B) Establishing the Solicitation and Tabulation Procedures; (C) Approving the Form of Ballots and Solicitation Materials; (D) Establishing the Plan Confirmation Schedule, and (E) Granting Related Relief* [Docket No. 107] (the "Disclosure Statement Motion");

d. filed on January 27, 2021, (i) the *First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 278, solicitation version at

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Lighthouse Resources Inc. (4713), LHR Coal, LLC (4799), KCP, Inc. (2558), Big Horn Coal Company (7087), Rosebud Coal Sales Company (9016), KCP Properties, Inc. (8372), Decker Holding Company, LLC (8881), Decker Coal Company, LLC (3731), Montana Royalty Holdings, LLC (1107), LHR Infrastructure, LLC (9619), Millennium Bulk Terminals-Longview, LLC (0354), Barlow Point Land Company, LLC (1398), Columbia Land Co., LLC (6826), and Gulf States Bulk Terminal, LLC (5870). The location of the Debtors' service address in these chapter 11 cases is 10980 South Jordan Gateway, South Jordan, Utah 84095.

4839-7978-9532

Docket No. 304] (as modified, supplemented, or otherwise amended from time to time, the "Plan"),[2] and (ii) the *Disclosure Statement for the First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 279, solicitation version at Docket No. 300] (including all exhibits thereto, the "Disclosure Statement");

e.     in accordance with the Procedures Order (defined below), the Debtors served on or about February 2, 2021 ballots for voting on the Plan (each, a "Ballot") to holders of Claims or Equity Interests entitled to vote on the Plan—holders of Claims in Classes 3, 4, and 5—in accordance with the terms of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules");

f.     filed, on February 2, 2021, the *Notice of (A) Approval of the Disclosure Statement; (B) Confirmation Hearing with Respect to Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code; and (C) Related Objection Deadline* [Docket No. 301] (the "Confirmation Hearing Notice"), which contained the date and time set for the hearing to consider Confirmation of the Plan (the "Confirmation Hearing"), and the deadline for filing objections to the Plan;

g.     published, on February 9, 2021, in *The Billing Gazette, Casper Star-Tribune*, *The Sheridan Press*, and *USA Today, as evidenced by the Affidavits of Publication of Notice of Confirmation Hearing* [Docket Nos. 324, 325, 326, and 327] (together with the Confirmation Hearing Notice Affidavit (as defined herein), the "Affidavits"), the Confirmation Hearing Notice, consistent with the Scheduling and Disclosure Statement Order (as defined below);

h.     filed, on February 16, 2021, the *Affidavit of Service* of the Confirmation Hearing Notice [Docket No. 337] (the "Confirmation Hearing Notice Affidavit");

i.     filed, on February 19, 2021, the *Notice of Filing Plan Supplement for the First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 356], which included: (i) the Reclamation Trust Entity Agreement; (ii) the identity and affiliations of the members of the Reclamation Trust Entity Board; (iii) the identity of the Reclamation Trust Entity Representative and the terms of the Reclamation Trust Entity Representative's compensation; (iv) the Reclamation Sinking Fund Agreement; (v) the Schedule of Assumed Executory Contracts and Unexpired Leases; (vi) the New Organizational Documents; (vii) the Reclamation Trust Entity Bonding Agreements; and (viii) a proposed Reclamation Trust Entity Budget (as modified, supplemented, or otherwise amended from time to time, the "Plan Supplement");

---

[2]   Capitalized terms used but not defined herein shall the meanings ascribed to them in the Plan.

2

4839-7978-9532

j.      filed, on February 23, 2021, the *Notice of Filing of First Amended Plan Supplement for the First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 360];

k.      filed, on March 1, 2021, the *Notice of Filing of Second Amended Plan Supplement of the First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 375];

l.      filed, on March 7, 2021, the *Second Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 413];

m.      filed, on March 8, 2021, the *Certification of Brian Karpuk of Stretto Regarding Solicitation of Votes and Tabulation of Ballots in Connection with the Debtors' Second Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 418] (the "Voting Certification"), which detailed the results of the Plan voting process;

n.      filed, on March 8, 2021, the *Notice of Filing of Third Amended Plan Supplement of the Second Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 417]; and

o.      filed, on March 8, 2021, (i) the *Debtors' Memorandum of Law in Support of an Order Confirming the Second Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 420] (the "Confirmation Brief") and (ii) the *Declaration of Robert Novak in Support of Confirmation of the Second Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 419] (the "Novak Declaration").

The Court having:

a.      entered, on January 29, 2021, after a hearing on same, the *Order (A) Approving Disclosure Statement; (B) Establishing the Solicitation and Tabulation Procedures; (C) Approving the Form of Ballots and Solicitation Materials; (D) Establishing the Plan Confirmation Schedule, and (E) Granting Related Relief* [Docket No. 288] ("Scheduling and Disclosure Statement Order"), approving, among other things, the Disclosure Statement and procedures for the solicitation and tabulation of votes to accept or reject the Plan;

b.      set March 10, 2021, at 11:30 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Procedures Order;

c.      reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Novak Declaration, the Voting Certification, the Confirmation Hearing Notice, the Affidavits, the Ballots, and all filed pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights;

3

4839-7978-9532

     d.      held the Confirmation Hearing on March 10, 2021, at 11:30 a.m., prevailing Eastern Time;

     e.      heard the statements and arguments made by counsel in respect of confirmation of the Plan and the objections thereto; and

     f.      considered all oral representations, affidavits, testimony (including through declaration, deposition or live), documents, filings, and other evidence admitted at the Confirmation Hearing regarding confirmation of the Plan and the objections thereto.

NOW, THEREFORE, the Court finding that (i) notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate, in accordance with Bankruptcy Rules 2002(b) and 3017(d), Rules 2002-1 and 3017-2 of the Local Rules and the Scheduling and Disclosure Statement Order, as to all parties to be affected by the Plan and the transactions contemplated thereby and (ii) the legal and factual bases for confirmation set forth in the documents filed in support of approval of confirmation of the Plan, including as set forth in the Novak Declaration, and this Confirmation Order, establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor, the Court hereby makes the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A. Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

4

4839-7978-9532

## B. Jurisdiction, Venue, and Core Proceeding.

2.      The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Bankruptcy Court has jurisdiction and authority to enter a final order with respect thereto. Venue was proper as of the Petition Date and is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## C. Eligibility for Relief.

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

## D. Commencement and Joint Administration of the Chapter 11 Cases.

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. In accordance with the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 30], the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases. No official committees have been appointed in the Chapter 11 Cases.

## E. Objections.

5.      The following objections to the Plan were filed: (i) *Objection of the Pension Benefit Guaranty Corporation to Confirmation of First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 378] ("PBGC Objection"); (ii) *Komatsu*

5

4839-7978-9532

*Financial Limited Partnership's Limited Objection to First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 381] ("Komatsu Objection"); (iii) *BNSF Railway Company's Objection to the First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Co*de [Docket No. 385] ("BNSF Objection"); (iv) *Internal Revenue Service's Limited Objection to Confirmation and Reservation of Rights* [Docket No. 396] ("IRS Objection"); (v) *Limited Objection by the United States of America to (i) Confirmation of the First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code and (ii) Proposed Assumptions of Executory Contracts and Unexpired Leases, and Released Cure Amounts* [Docket No. 397] ("BLM/ONRR Objection"); (vi) the *County of Big Horn's Limited Objection to Confirmation of First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 400] ("Big Horn Objection"); and (vii) the *United States Trustee's Objection to Confirmation of the First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 402] ("UST Objection"). In addition, and without limitation, the Debtors' received informal comments from Arch Resources, Inc., Bitter Creek Coal Co., and Navajo Transitional Energy Company, LLC. All parties have had a full and fair opportunity to litigate all issues raised, or which might have been raised, by solicitation or confirmation of the Plan. Any resolution of objections to Confirmation explained on the record at the Confirmation Hearing is hereby incorporated by reference. All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts), if any, related to the Confirmation of the Plan are overruled on the merits. All withdrawn objections, if any, are deemed withdrawn with prejudice.

6

4839-7978-9532

**F.  Burden of Proof.**

6.      The Debtors, as proponents of the Plan, have the burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence and, as set forth herein, the Debtors have met that burden.

**G.  Judicial Notice.**

7.      The Court takes judicial notice of (and deems admitted into evidence for purposes of confirmation) the docket in the Chapter 11 Cases maintained by the Clerk of Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed with, all orders entered by, and all evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

**H.  Compliance with Rule 3016.**

8.      The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b). Further, the Plan and the Notice of Confirmation Hearing describe in specific and conspicuous language all acts to be enjoined and identify the entities that are subject to the injunction, satisfying Bankruptcy Rule 3016(c) to the extent applicable.

**I.  Notice; Compliance with Rule 3017.**

9.      As evidenced by the Affidavits, the Debtors have given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d) and the Scheduling and Disclosure Statement Order. The Confirmation Hearing Notice was published in The *Billing Gazette, Casper Star-Tribune, The Sheridan Press, and USA Today,* on February 9, 2021, in compliance with the Scheduling and Disclosure Statement Order and Bankruptcy Rule 2002(l). Such notice was due, adequate, and sufficient pursuant to section 1128 of the Bankruptcy Code,

7

4839-7978-9532

Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**J. Solicitation.**

10.    The solicitation of votes on the Plan complied with the solicitation procedures approved in the Scheduling and Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

11.    <u>Transmittal and Mailing of Solicitation Materials; Notices</u>.  The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018. The Plan, the Disclosure Statement, the applicable Ballot, and the Confirmation Hearing Notice (collectively, the "<u>Solicitation Package</u>"), were transmitted and served to all holders of Claims entitled to vote on the Plan and sufficient time was prescribed for such holders to accept or reject the Plan, thereby satisfying the requirements of Bankruptcy Rule 3018. The Solicitation Package and the solicitation procedures followed comply with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Scheduling and Disclosure Statement Order, and any applicable nonbankruptcy law. Transmission and service of the Solicitation Package and the Confirmation Hearing Notice was timely, adequate, and sufficient. No further notice is required.

12.    <u>Adequacy of Solicitation Procedures</u>.  All procedures used to distribute the solicitation materials to the appropriate holder of Claims entitled to vote on the Plan and to receive and tabulate the Ballots of holders of Claims entitled to vote on the Plan, including the tabulation of opt-out elections, as set forth in the Voting Certification, were fair and properly

8

4839-7978-9532

conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling and Disclosure Statement Order, and all other applicable rules, laws and regulations. As set forth in the Voting Certification, the Solicitation Package was distributed to holders of Claims entitled to vote on the Plan that held a Claim against or Equity Interest in the Debtors, as of January 29, 2021 at 5:00 p.m. (prevailing Eastern Time) (the "Voting Record Date"). In addition, the Debtors provided Ballots pursuant to paragraph 20 of the Scheduling and Disclosure Statement Order to those claimants with whom they stipulated regarding the amount of the claim for voting purposes. No claimants filed motions for an order pursuant to Bankruptcy Rule 3018(a) pursuant to paragraph 21 of the Scheduling and Disclosure Statement Order. The establishment and notice of the Voting Record Date were approved by the Scheduling and Disclosure Statement Order.

13.    The period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for holders in the Voting Classes to make an informed decision to accept or reject the Plan, and solicitation complied with section 1126(b) of the Bankruptcy Code.

14.    Impaired Class that has Voted to Accept or Reject the Plan. Only holders of Claims in Classes 3, 4, and 5 (Senior Secured Claims, Surety Claims, and General Unsecured Claims, respectively) were eligible to vote on the Plan (the "Voting Classes"). The Ballots the Debtors used to solicit votes to accept or reject the Plan from holders in the Voting Classes adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for holders in the Voting Classes to vote to accept or reject the Plan. As evidenced by the Voting Certification, Classes 3, 4, and 5 have each voted to accept the Plan pursuant to the requirements of sections 1124, 1126, and 1129 of the Bankruptcy Code.

4839-7978-9532

15.    <u>Classes Deemed to Accept Plan</u>.  Holders of Claims in Classes 1 and 2 (Priority Non-Tax Claims and Other Secured Claims, respectively) are unimpaired under the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, the Debtors were not required to solicit votes from the holders of Claims in such class, and the holders of such unimpaired Claims are conclusively presumed to have accepted the Plan.

16.    <u>Classes Deemed to Reject the Plan</u>.  Holders of Equity Interests in Class 7 (Intercompany Interests) and Class 8 (Lighthouse Equity Interests) will not receive or retain any property interests under and are deemed to reject to the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Reclamation Trust Entity has the discretion to determine whether holders of Claims in Class 6 (Intercompany Claims) retain any property interests and thus are also deemed to reject to the Plan pursuant to section 1126(g) of the Bankruptcy Code. Pursuant to section 1126(g) of the Bankruptcy Code, the Debtors were not required to solicit votes from the holders of Claims in such class, and the holders of such Claims are conclusively presumed to have rejected the Plan.

**K. Plan Supplement.**

17.    The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents are good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law and no other or further notice is required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the Debtors' right to alter, amend, update, or modify the Plan Supplement before the Effective Date is reserved. Due, adequate, and sufficient notice of the Plan Supplement was provided. Through the Plan Supplement, the Schedule of Assumed Executory Contracts and Unexpired Leases was served on the applicable counterparties. The Debtors timely filed and served the Plan

10

4839-7978-9532

Supplement, providing due, adequate, sufficient, and ample time to review the Plan Supplement prior to the Confirmation Hearing.

### L.  Compliance with Bankruptcy Code Requirements — Section 1129(a)(1).

18.     As set forth and demonstrated below, the Plan complies with all applicable provisions of the Bankruptcy Code, the Local Rules, and the orders of this Court with respect to the Plan, thus satisfying the requirements of section 1129(a)(1) of the Bankruptcy Code.

#### (i)     Proper Classification — Sections 1122 and 1123.

19.     The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code. With the exception of Administrative Claims, Fee Claims, the Senior Secured Lenders' Superpriority Claims, Priority Tax Claims, and U.S. Trustee Fees that are addressed in Article II of the Plan and are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code: pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Equity Interests into eight Classes, based on differences in the legal nature or priority of such Claims and Equity Interests. Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Equity Interests created under the Plan, the classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Equity Interests. In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class. The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

4839-7978-9532

**(ii)    Specified Unimpaired Classes — Section 1123(a)(2).**

20.    Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired under the Plan. The Plan, therefore, satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

**(iii)   Specified Treatment of Impaired Classes — Section 1123(a)(3).**

21.    Article III of the Plan specifies the treatment of each Impaired, or potentially Impaired, Class of Claims or Equity Interests under the Plan, including Classes 3, 4, and 5. The Plan, therefore, satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

**(iv)   No Discrimination — Section 1123(a)(4).**

22.    Article III of the Plan provides the same treatment for each Claim or Equity Interest within a particular class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest. The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

**(v)    Adequate Means for Plan Implementation — Section 1123(a)(5).**

23.    The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, including without limitation: (a) the creation of the Reclamation Trust Entity to oversee the operations of the Reorganized Debtors; (b) the appointment of the Reclamation Trust Entity Representative; (c) the vesting of the Post-Effective Date Assets in the Reorganized Debtors; (d) the procedures for making distributions to holders of Allowed Claims; and (e) the cancellation of certain indebtedness, agreements, and existing securities. The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

4839-7978-9532

**(vi)    Non-Voting Equity Securities — Section 1123(a)(6).**

24.    The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code prohibiting the issuance of nonvoting equity securities. Article IV.R of the Plan provides that the New Organizational Documents of the Reorganized Debtors will prohibit the issuance of any non-voting equity securities under the Plan, to the extent required by section 1123(a)(6) of the Bankruptcy Code.

**(vii)    Officers, Directors or Trustee — Section 1123(a)(7).**

25.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Article I.A.98 of the Plan, the identities of the members of the Reclamation Trust Entity Board as of the Effective Date were identified in the Plan Supplement, and vacant positions specified therein will be filled in accordance with the Reclamation Trust Entity Agreement. In accordance with Article IV.B.5 of the Plan, the appointment of the Reclamation Trust Entity Representative was identified in the Plan Supplement, with any vacancy addressed as provided in Article IV.B.5 of the Plan. These selections are consistent with the interests of all holders of Claims and Equity Interests and public policy.

**(viii)    Payments from Earnings for Personal Services — Section 1123(a)(8)**

26.    The Debtors are not individuals. Thus, section 1123(a)(8) of the Bankruptcy Code does not apply.

**(ix)    Discretionary Plan Provisions — Section 1123(b)(1), (2), & (5).**

27.    The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code. Article III of the Plan leaves Impaired or Unimpaired, as the case may be, each Class of Claims and Equity Interests as permitted by section 1123(b)(1) of the Bankruptcy Code. Article VIII of the Plan provides as permitted by section 1123(b)(2) of the

13

4839-7978-9532

Bankruptcy Code that, on the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases shall be deemed rejected under section 365 of the Bankruptcy Code as of the Effective Date, unless such Executory Contract or Unexpired Lease: (a) was assumed or rejected previously by the Debtors; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to reject filed on or before the Effective Date; or (d) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases. The Debtors' determination regarding the assumption or rejection of Executory Contracts and Unexpired Leases is based on, and within the sound business judgment of, the Debtors, is necessary to the implementation of the Plan, and is in the best interests of the Debtors, the Estates, holders of Claims, and other parties in interest in the Chapter 11 Case. The Debtors provided sufficient notice to each non-Debtor counterparty to an Executory Contract or Unexpired Lease assumed, assumed and assigned, or rejected by the Debtors during the Chapter 11 Cases. The Plan modifies certain rights of holders of Claims and Equity Interests as permitted by section 1123(b)(5) of the Bankruptcy Code.

> **(x)      Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action — Section 1123(b)(3).**

28.      The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. Article V.E of the Plan describes certain releases granted by the Debtors (the "Debtor Release"), Article V.F of the Plan provides for the release of the Released Parties by the Releasing Parties (the "Third-Party Release"), Article V.G of the Plan provides for exculpation for the Exculpated Parties (the "Exculpation"), and Article V.H of the Plan provides for an injunction (the "Injunction"). The Bankruptcy Court has jurisdiction under sections 1334(a) and 1334(b) of the Judicial Code and authority under section 105 of the Bankruptcy Code to approve each of the

14

Debtor Release, the Third-Party Release, the Exculpation, and the Injunction. As has been established based upon the evidence presented at the Confirmation Hearing, such provisions (a) were given in exchange for good, valuable, and adequate consideration after due notice and opportunity for hearing, (b) are appropriately tailored under the facts and circumstances of the Chapter 11 Cases, (c) were integral to the agreements among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (d) reflect a critical financial contribution to the Plan by the Released Parties that confers substantial benefits on the Estates and was necessary to make the Plan feasible in exchange for the releases, (e) are fair, equitable, and reasonable, and (f) are in the best interests of the Debtors, the Estates, all holders of Claims and Equity Interests, and parties in interest. Further, the failure to implement the Debtor Release, Third-Party Release, Exculpation, and Injunction would impair the Debtors' ability to confirm and implement the Plan. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support each of the Debtor Release, Third-Party Release, Exculpation, and Injunction provisions contained in the Plan.

29.     The Debtor Release represents a valid exercise of the Debtors' business judgment, is fair and reasonable, and in the best interests of the Estate, thereby satisfying the requirements of *In re Zenith Electronics Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999). As noted above, the Released Parties provided good and valuable consideration in exchange for the releases by the Debtors—including substantial funding (including use of Cash Collateral, funding the Reclamation Sinking Fund, and allowing the Debtors' use of collateral subject to Senior Secured Claims), and the consensual reduction or waiver of significant claims, as the case may be—and otherwise facilitated the reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan.

15

4839-7978-9532

30.     [Omitted]

31.     The Third-Party Release is consensual with respect to the Released Parties and holders of Claims who (1) vote to accept the Plan or (2) abstain from voting or vote to reject the Plan and do not elect on their Ballot to opt out of the release contained in Article V.F of the Plan and holders of Equity Interests.

32.     The Exculpation appropriately affords protection to those parties who constructively participated in and contributed to the Debtors' chapter 11 process consistent with their duties under the Bankruptcy Code, and it is appropriately tailored to protect the Exculpated Parties from inappropriate litigation. The Exculpation granted under the Plan is reasonable in scope as it does not relieve any party of liability for an act or omission to the extent such act or omission is determined by final order to constitute actual fraud, willful misconduct, or gross negligence.

33.     The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, the Exculpation, and discharge provisions in Article V of the Plan. The Injunction is appropriately tailored to achieve those purposes.

34.     The record of the Confirmation Hearing is sufficient to support the Debtor Release, Third-Party Release, Exculpation, and Injunction. Accordingly, based upon the representations of the parties and the evidence proffered, adduced, or presented at the Confirmation Hearing, the Debtor Release, Third-Party Release, Exculpation, and Injunction are consistent with the Bankruptcy Code and applicable law.

4839-7978-9532

35.     The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and holders of Claims and Equity Interests.

**(xi)     Additional Plan Provisions — Section 1123(b)(6).**

36.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**(xii)     Cure of Defaults — Section 1123(d).**

37.     In accordance with section 1123(d) of the Bankruptcy Code, Article VIII.B of the Plan provides for the satisfaction of Cure Claims associated each Assumed Executory Contract and Unexpired Lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All Cure Claims will be determined in accordance with the underlying agreements and applicable nonbankruptcy law.

**M. Debtor Compliance with the Bankruptcy Code — Section 1129(a)(2).**

38.     As discussed above and except as otherwise provided for or permitted by order of the Bankruptcy Court, the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Scheduling and Disclosure Statement Order with respect to the solicitation of acceptances or rejections of the Plan, thus satisfying the requirements of section 1129(a)(2) of the Bankruptcy Code.

**N. Plan Proposed in Good Faith — Section 1129(a)(3).**

39.     The Debtors have proposed the Plan, including all documents necessary to effectuate the Plan, in good faith and not by any means forbidden by law, as evidenced, by among other things, the totality of the circumstances surrounding the formulation of the Plan and the record in the Chapter 11 Cases, thus satisfying the requirements of section 1129(a)(3) of the

17

4839-7978-9532

Bankruptcy Code. In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, the process leading to Confirmation of the Plan, and the transactions to be implemented pursuant thereto.

### O.  Payment for Services or Costs and Expenses — Section 1129(a)(4).

40.     The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

### P.  Directors, Officers, and Insiders — Section 1129(a)(5).

41.     The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. In accordance with Article I.A.98 of the Plan, the identities of the members of the Reclamation Trust Entity Board as of the Effective Date were identified in the Plan Supplement, and vacant positions specified therein will be filled in accordance with the Reclamation Trust Entity Agreement. In accordance with Article IV.B.5 of the Plan, the appointment of the Trustees, including the Reclamation Trust Entity Representative and Reclamation Trust Delaware Trustee, was identified in the Plan Supplement, with any vacancy addressed as provided in Article IV.B.5 of the Plan and the Reclamation Trust Entity Agreement. These persons selected are qualified, and the appointments to such offices is consistent with the interests of the holders of Claims and Equity Interests and with public policy.

### Q.  No Rate Changes — Section 1129(a)(6).

42.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases. There is no regulatory commission having jurisdiction after confirmation of the Plan over the rates of the Debtors and no rate change provided for in the Plan requiring approval of any such commission.

18

4839-7978-9532

### R.  Best Interest of Creditors — Section 1129(a)(7).

43.     The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code that each holder of a Claim or Equity Interest in an Impaired Class accept the Plan, or receive or retain under the Plan property having a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive on account of such Claim or Equity Interest if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. The Liquidation Analysis attached to the Disclosure Statement as **Exhibit D** and the other evidence related thereto in support of the Plan that was proffered or adduced at, or otherwise submitted in connection with, the Confirmation Hearing:  (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that each holder of an Allowed Claim or Equity Interest in each Class will recover at least as much under the Plan on account of such Claim or Equity Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

### S.  Acceptance by Certain Classes — Section 1129(a)(8).

44.     Section 1129(a)(8) of the Bankruptcy Code requires that for each Class of Claims or Equity Interests under the Plan, such Class has either accepted the Plan or is not impaired under the Plan. The Plan does not satisfy the requirements of section 1129(a)(8). Classes 1 and 2 are unimpaired and are conclusively presumed to have accepted the Plan without solicitation of acceptances or rejections in accordance with section 1126(f) of the Bankruptcy Code. The Voting Classes, Classes 3, 4, and 5 are impaired and have voted to accept the Plan. Holders of claims in Classes 6, 7, and 8 are impaired and receive no recovery pursuant to the Plan and are deemed to have rejected the Plan, meaning the requirements of section 1129(a)(8) of the

19

4839-7978-9532

Bankruptcy Code have not been met, thereby requiring the application of section 1129(b) of the Bankruptcy Code. Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**T. Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code — Section 1129(a)(9).**

45.     The treatment of Administrative Claims, Fee Claims, and Priority Tax Claims, under Article II of the Plan, and of Priority Non-Tax Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**U. Acceptance by at Least One Impaired Class — Section 1129(a)(10).**

46.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As set forth in the Voting Certification, each of Class 3 (Senior Secured Claims), Class 4 (Surety Claims), and Class 5 (General Unsecured Claims) has voted to accept the Plan by at least two-thirds in amount and one-half in number, determined without inclusion of any acceptance of the Plan by any insider, thus satisfying the requirement of 11 U.S.C. § 1129(a)(10).

**V. Feasibility — Section 1129(a)(11).**

47.     The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. On the Effective Date, the Reclamation Trust Entity will be established pursuant to the Reclamation Trust Entity Agreement to, among other things: (i) issue the Reclamation Trust Entity Interests; (ii) own (indirectly), monetize (consistent with the Reclamation Plans), and oversee the operation of the remainder of the Coal Side Debtors' businesses and operations in a controlled, efficient, and value-maximizing (adjusting for risk) manner; (iii) own (indirectly) or terminate the existence of and monetize any remaining assets of the Millennium Debtors; (iv) implement the Plan and make (or cause to be made) distributions in accordance with the Plan

20

4839-7978-9532

and Reclamation Trust Entity Agreement; (v) oversee the completion of the Decker Reclamation Plan, and (vi) perform such other services as are contemplated by the Plan and the Reclamation Trust Entity Agreement or other services or activities as authorized by the Reclamation Trust Entity Board, all as more fully described in Article IV.B.1 and 2 of the Plan and the Reclamation Trust Entity Agreement. The financial projections attached to the Disclosure Statement as **Exhibit D** and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or filed in connection with, the Confirmation Hearing:  (a) are reasonable, persuasive, and credible as of the dates such analysis or evidence was prepared, presented, or proffered; (b) have not been controverted by other evidence; (c) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as permitted by the Plan; and (d) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

### W. Payment of Statutory Fees — Section 1129(a)(12).

48.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.A of the Plan provides for the payment of all fees payable by the Debtors under section 1930(a) of the Judicial Code. In addition, Article II.E provides that the Reclamation Trust Entity shall pay, from and after the Effective Date, statutory fees due to the U.S. Trustee in accordance with 28 U.S.C. § 1930 until the closing the Chapter 11 Cases. In addition, the Reclamation Trust Entity shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Effective Date in conformance with the U.S. Trustee Guidelines.

21

4839-7978-9532

**X. Continuation of Employee Benefits — Section 1129(a)(13).**

49.     The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code. All of the Debtors' obligations for the payment of retiree benefits, as defined in section 1114 of the Bankruptcy Code,[3] have been terminated by separate order of the Court [Docket No. 398] in accordance with applicable law.

**Y. Non-Applicability of Certain Sections — Sections 1129(a)(13), (14), (15), and (16).**

50.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases. The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**Z. "Cram Down" Requirements — Section 1129(b).**

51.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code because (a) at least one Voting Class of Claims at each Debtor voted to accept the Plan and (b) the Plan does not discriminate unfairly and is fair and equitable with respect to the Claims and Equity Interests in the Classes that are deemed to reject the Plan. The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan. Holders of Equity Interests in Class 7 (Intercompany Interests) and Class 8 (Lighthouse Equity Interests) will not receive or retain any property interests under and are deemed to reject to the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Reclamation Trust Entity has the discretion to determine whether holders of Claims in Class 6 (Intercompany Claims) retain any

---

[3]     As defined in section 1114 of the Bankruptcy Code, "'retiree benefits' means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case" under the Bankruptcy Code.

4839-7978-9532

property interests under and are deemed to reject to the Plan pursuant to section 1126(g) of the Bankruptcy Code, and to the extent any such claims are retained it is solely for intercompany tax purposes and not to the detriment of any other class of creditors. The Debtors presented uncontroverted evidence that the Plan does not discriminate unfairly and is fair and equitable with respect to the treatment of Claims in Class 6 because, as required by section 1129(b)(2)(B) of the Bankruptcy Code, there are no holders of Claims junior to the Claims in Class 6 that will receive or retain under the Plan any property on account of such junior Claims. The Debtors presented uncontroverted evidence that the Plan does not discriminate unfairly and is fair and equitable with respect to the treatment of Equity Interests in Classes 7 and 8 because, as required by section 1129(b)(2)(C) of the Bankruptcy Code, there are no Holders of Equity Interests junior to the Equity Interests in Classes 7 and 8 that will receive or retain under the Plan any property on account of such junior Equity Interests. Thus, the Plan satisfied section 1129(b) of the Bankruptcy Code and may be confirmed notwithstanding its failure to satisfy section 1129(a)(8) of the Bankruptcy Code. The Plan shall be binding upon the members of Classes 6, 7, and 8 upon confirmation and the occurrence of the Effective Date.

> **AA.** **Only One Plan — Section 1129(c).**

52.     The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan, including previous versions thereof, is the only chapter 11 plan filed in each of the Chapter 11 Cases which has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code.

> **BB.** **Principal Purpose of the Plan — Section 1129(d).**

53.     The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the

23

4839-7978-9532

application of section 5 of the Securities Act, and no governmental unit has objected to the confirmation of the Plan on any such grounds.

**CC.** **Good Faith Solicitation — Section 1125(e).**

54.      Based upon the record before the Court in the Chapter 11 Cases, the Debtors, the Released Parties, the Exculpated Parties, and their respective members, officers, directors, agents, financial advisors, attorneys, and other retained professionals, (i) have acted in "good faith" within the meaning of section 1125(e) and 1129(a)(3) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling and Disclosure Statement Order and all other applicable non-bankruptcy laws, rules and regulations governing the adequacy of disclosure in connection with all of their respective activities relating to the Plan and the solicitation of acceptances to the Plan, their respective activities relating to providing all holders of Claims in Classes 3, 4 and 5 with, to the extent non-consensual release by the holders of Claims is not approved, the opportunity for holders of Claims in Class 5 to opt-out of the releases provided for in Article V.F of the Plan, and their participation in the activities described in section 1125(e) of the Bankruptcy Code; and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent applicable, the exculpation and injunctive provisions set forth in Article V of the Plan.

55.      The Debtors, the Released Parties, the Exculpated Parties, and and their respective members, officers, directors, agents, financial advisors, attorneys, and other retained professionals, as applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support of

24

4839-7978-9532

the Plan and this Confirmation Order, including the solicitation of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**DD.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

56.    Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Section IX.B of the Plan.

**EE.    No Objection to Disposition of Contracts and Leases.**

57.    Except for the BLM/ONRR Objection, no party to an Executory Contract and/or Unexpired Lease to be assumed by the Debtors pursuant to the Plan or rejected by Debtors pursuant to the Plan has objected to the assumption or rejection thereof. Each rejection of an executory contract or unexpired lease under the Plan shall be legal, valid, and binding upon the Debtors, the Reorganized Debtors, and all non-Debtor parties to such Executory Contracts and/or Unexpired Leases, all to the same extent as if the rejection had been effectuated by separate motion.

**FF.    Retention and Preservation of Causes of Action.**

58.    It is in the best interests of the Debtor's Estates, creditors, and holders of Claim and Equity Interests that Causes of Action be retained by the Reorganized Debtors, and, as applicable, transferred to Reorganized Lighthouse, which shall have the sole and exclusive right to litigate (or abandon) any such Causes of Action. The Reclamation Trust Entity Representative may pursue such Causes of Action, as appropriate, as set forth in the Reclamation Trust Entity Agreement.

**GG.    The Reclamation Trust Entity Agreements.**

59.    The terms and conditions of the Reclamation Trust Entity Agreement, the Reclamation Sinking Fund Agreement, and the Reclamation Trust Entity Bonding Agreement

4839-7978-9532

(collectively, "Plan Supplement Agreements") have been negotiated in good faith, at arm's length, are fair and reasonable and are approved. The Plan Supplement Agreements are an essential element of the Plan, and entry into and consummation of the transactions contemplated by the Plan Supplement Agreements are in the best interests of the Debtors, the Estates, and holders of Claims and Interests, and are approved. The Debtors have exercised reasonable business judgment in determining to entered into the Plan Supplement Agreements and have provided sufficient and adequate notice of the Plan Supplement Agreements. The Debtors and the Reclamation Trust Entity and Reclamation Trust Entity Representative are authorized, without further notice to, or action, order, or approval of, the Court, to execute and deliver all agreements, documents, instruments, and certificates related thereto and to perform their obligations thereunder. The Plan Supplement Agreements shall, upon execution be valid, binding, and enforceable.

**HH.   Implementation.**

60.    All documents necessary to implement the Plan and all other relevant and necessary documents, including the Definitive Documents, have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements.

**II.   Disclosure of Facts.**

61.    The Debtors have disclosed all material facts regarding the Plan, the Plan Supplement, the Definitive Documents, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors.

26

**JJ.**    **Satisfaction of Confirmation Requirements.**

62.    Based on the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with Confirmation of the Plan, and all evidence and arguments made, proffered, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for Confirmation thereof set forth in section 1129 of the Bankruptcy Code.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

63.    **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

64.    **Confirmation of the Plan.**  The Plan, attached hereto as **Exhibit A**, is confirmed, as modified by this Order, and the Debtors are authorized to enter into and execute all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereafter by the Reorganized Debtors, are hereby approved and authorized.

65.    **Objections.**  All formal or informal objections or responses, statements and comments, and all reservations of rights pertaining to Confirmation of the Plan that have not been withdrawn, waived, resolved, or settled are overruled on the merits. All withdrawn objections are deemed withdrawn with prejudice.

66.    **Notice.** Good and sufficient notice of the Confirmation Hearing and the deadline for filing and serving objections to the confirmation of the Plan has been provided, which notice is hereby approved.

27

4839-7978-9532

67.     **Deemed Acceptance of Plan as Modified.**  The Debtors modified the Plan to address concerns raised by parties in interest and made certain nonmaterial clarifications. The Plan modifications were immaterial and comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Moreover, the Debtors' key constituents affected by such modifications support these changes. Accordingly, no additional solicitation or disclosure was required on account of the modifications and all holders of Claims and Equity Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended (the "Plan Modifications"). No holder of a Claim or Equity Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

68.     **Plan Classifications Controlling.**  The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the holders of Claims in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtor except for voting purposes.

69.     **No Action Required; Corporate Action.**  No action of the respective directors, equity holders, managers, or members of the Debtors or Reorganized Debtors, as applicable, is required to authorize the Debtors or Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the

28

4839-7978-9532

provisions of the Definitive Documents, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan. To the extent applicable, all matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action required by the Debtors or the Reorganized Debtors, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable. On or, as applicable, prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, are authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the applicable Reorganized Debtors. As of the Effective Date, all Equity Interests in the Debtors are cancelled and, as applicable, new Equity Interests in the Debtors are issued, as set forth in Article III.D.7.

70.     **Means for Implementation of the Plan.** The provisions governing the means for implementation of the Plan set forth in Article IV of the Plan shall be, and hereby are, approved in their entirety. The Debtors are authorized to take all actions reasonably necessary to implement the Plan on the terms set forth in Article IV. Further, upon the Effective Date, the Debtors, Reorganized Debtors, or Reclamation Trust Entity, as applicable, are authorized to make the payments or other distributions set forth in Article II and Article III of the Plan. The Reorganized Debtors or Reclamation Trust Entity, as applicable, are authorized to take any action as may be necessary or appropriate to effectuate and further evidence the terms and

4839-7978-9532

conditions of the Plan, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court or further action by the Debtors or any other person.

71.     **Reclamation Trust Entity Transactions.**  On and after the Confirmation Date, the Debtors or the Reorganized Debtors, as applicable, shall take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan, which transactions may include, as applicable:   (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution or other certificates or documentation for other transactions as described in clause (a), pursuant to applicable state law; (d) the execution and delivery of the New Organizational Documents and any certificates or articles of incorporation, bylaws, or such other applicable formation documents (if any) of each Reorganized Debtor; (e) complete and file the Debtors' final federal, state and local tax returns, and, in the discretion of the Reclamation Trust Entity, if necessary or appropriate, pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of each Debtor or its respective Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under

30

4839-7978-9532

applicable tax laws; and (f) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan and the creation of the Reclamation Trust Entity. The filing of certificates of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders, the board of directors, members, or managers, as applicable, of the applicable Debtor and expressly without the need to pay any franchise or similar taxes in order to effectuate such dissolution. As of the Effective Date, the applicable Reorganized Debtors shall assume any outstanding responsibility of the Debtors under the Plan, except to the extent provided otherwise in the Plan.

72. **Vesting of Assets in the Reorganized Debtors.** Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), 1141(b) and (c) and other applicable provisions of the Bankruptcy Code, on the Effective Date, all property in each Debtors' Estates, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor as provided in the Plan, free and clear of all Liens, Claims, charges, or other encumbrances, except as provided in this Confirmation Order. Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable non-bankruptcy law. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Equity Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Unless a Cause of Action against any Person or Entity is

31

4839-7978-9532

expressly waived, relinquished, released compromised or settled in the Plan or any Final Order (including this Confirmation Order), the Debtors expressly reserve such Causes of Action, to be vested in or otherwise, as necessary or applicable transferred by the Debtors to the applicable Reorganized Debtors pursuant to this Plan, and, therefore, no preclusion doctrine, including, without limitation, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after entry of this Confirmation Order or the Effective Date based on the Disclosure Statement, the Plan, this Confirmation Order or any other Final Order. To the extent applicable, such vesting shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code.

73.     **The Reclamation Trust Entity and Reclamation Trust Entity Representative**. The Reclamation Trust Entity shall be established on the Effective Date in accordance with the terms of the Plan and the Reclamation Trust Entity Agreement. The Reclamation Trust Entity Agreement, in the form substantially similar to the one annexed to the Plan Supplement, all provisions therein, are hereby approved by this Confirmation Order. The designation of the Trustees as disclosed in the Plan Supplement is approved. Pending the occurrence of the Effective Date, the Debtors are authorized to take all actions as may be necessary to facilitate the creation and implementation of the Reclamation Trust Entity. The Reclamation Trust Entity and the Reclamation Trust Entity Representative are authorized and empowered to take all actions as authorized pursuant to the Plan and the Definitive Documents. Pending the occurrence of the Effective Date, the Debtors shall continue to have all power and authority as provided in the Bankruptcy Code and pursuant to the orders of this Court to take any actions as necessary with respect to pending matters in these Chapter 11 Cases, including filing motions, closing any sales of assets, or any other actions authorized by order of this Court. For the avoidance of doubt and,

32

to the extent necessary, in addition to any authorizations provided pursuant to the Plan, Definitive Documents, and this Confirmation Order, on and after the Effective Date, the Reclamation Trust Entity shall have all power and authority as necessary to complete such pending matters of the Debtors in these Chapter 11 Cases, including the conclusion of previously filed motions, closing any sales of assets, or any other actions authorized to be taken by the Debtors by order of this Court.

74.     **The Reclamation Trust Entity Board**. The appointment of the members of the Reclamation Trust Entity Board as disclosed in the Plan Supplement is approved, including the process for the future appointment of the Class B Reclamation Trust Entity Interest Agent. For the avoidance of doubt, the Senior Secured Lender's waiver of rights to distributions in Class 5 under the Plan includes the waiver of the right to be one of the three General Unsecured Creditors determined to appoint the Class B Reclamation Trust Entity Interest Agent. The Reclamation Trust Entity Board shall have the powers to act pending the appointment of the Class B Reclamation Trust Entity Interest Agent as provided in the Reclamation Trust Entity Agreement. Each of the members of the Reclamation Trust Entity Board, and their permitted successors, shall have all rights, powers, duties and protections under the Plan and Reclamation Trust Entity Agreement.

75.     **Cancellation of Existing Agreements, Notes, and Equity Interests.** On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims shall be cancelled, and the obligations of the Debtors or the Reorganized Debtors and any non-Debtor Subsidiaries thereunder or in any way related thereto shall be discharged and deemed satisfied in full; *provided*, *however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or

33

4839-7978-9532

agreement that governs the rights of the holder of a Claim or Equity Interest shall continue in effect solely for purposes of allowing holders of Allowed Claims to receive distributions under the Plan; *provided*, *further*, *however*, that the preceding proviso shall not affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable, except as expressly provided for in the Plan.

76.     **Approval of Treatment of Executory Contracts and Unexpired Leases.**  The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article VIII of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise provided in the Plan, an order of this Court, or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, each of the Executory Contracts and Unexpired Leases to which any Debtor is a party shall be deemed automatically rejected by the Debtors as of the Effective Date pursuant to this Confirmation Order, unless such contract or lease (a) previously has been assumed or rejected by the Debtors, (b) expired or terminated pursuant to its own terms, (c) is a subject of a motion to assume or reject pending before the Court as of the Confirmation Date or (d) is identified in the Plan Supplement Schedule of Assumed Executory Contracts and Unexpired Leases, as a contract to be assumed; *provided, however*, that nothing contained in the Plan shall constitute an admission by the Debtors that any such contract is an executory contract or that the Debtors or their successor and assigns have any liability thereunder. For the avoidance of doubt, no interest of the Debtors or their Estates in any policy of insurance is rejected.

77.     Any Executory Contract or Unexpired Lease that is subject to an unresolved objection to the assumption of such Executory Contract or Unexpired Lease that is pending as of

34

4839-7978-9532

the Effective Date will not be assumed until entry of an order resolving the dispute and approving the assumption of such Executory Contract or Unexpired Lease or as may be agreed upon by the Debtors or the Reorganized Debtors and the counterparty; *provided* that after the Effective Date, the Reorganized Debtors may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court; *provided*, *further*, that resolution of any pending objection to the assumption or rejection of an Executory Contract or Unexpired Lease will not delay the Effective Date.

78.     Except as otherwise provided in this Confirmation Order, the only adequate assurance of future performance of any Executory Contract or Unexpired Lease that is assumed in connection with the Plan shall be the promise of the applicable Reorganized Debtor to perform all obligations under any Executory Contract or Unexpired Lease.

79.     If the Debtors intend to modify the treatment of an Executory Contract or Unexpired Lease post-Confirmation Date but prior to the Effective Date, the Debtors shall either file a Plan Supplement to that effect and the counterparty to each Executory Contract or Unexpired Lease shall have 14 days from the filing of such Plan Supplement to object to such treatment or file a separate motion with notice to the counterparty, which motion will be set for a hearing in accordance with the Local Rules.

80.     The Executory Contracts assumed by the Debtors and to which the Reorganized Debtors shall remain a party, and to the extent necessary may be assigned to Reorganized Lighthouse, shall include the purchase agreements approved in connection with:

     a. *Order (I) Approving the Sale of the Washington Real Property Assets Free and Clear of All Interests, (II) Approving Assumption and Assignment of Executory*

4839-7978-9532

*Contracts and Unexpired Leases, and (III) Granting Related Relief* filed on March 8, 2021 [Docket No. 422];

b. *Order (I) Approving the Sales of the Wyoming Real Property Assets Free and Clear of All Interests, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* filed on March 8, 2021 [Docket No. 423]; and

c. *Order (I) Authorizing the Transfer of Millennium Bulk Terminals-Longview, LLC's Interests in Certain Tangible Personal Property in Longview, Washington Pursuant io 11 U.S.C. § 363 of the Bankruptcy Code Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (II) Granting Related Relief* filed on March 4, 2021 [Docket No. 399].

81. **Indemnification.** The indemnification obligations to directors, officers, or employees, as set forth in Article IV.O of the Plan are approved.

82. **Cure Claims.** Cure Claims shall be paid as provided in Article VIII.B of the Plan.

83. **Claims Based on Rejection of Executory Contracts and Unexpired Leases**. Claims created by the rejection of an Executory Contract or Unexpired Lease pursuant to Article VIII of the Plan must be filed with the Claims Agent as required in Article VIII of the Plan. Except as expressly provided in the Plan or this Confirmation Order, any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Article VIII for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors and their Estates. Unless otherwise ordered by the Court, all Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims under the Plan.

36

4839-7978-9532

84.   **Plan Article II.D Priority Tax Claims**. In full and final satisfaction of the Priority Tax Claims listed below, the Taxing Authorities (defined below) will receive the following treatment by agreement as authorized by Article II.D of the Plan:

a.   On the later of the Effective Date or ten business days following receipt of the funds from the sale of the Debtors' Wyoming Real Property Assets (as defined in Docket No. 114, the "Wyoming Sale Motion"), each of the Taxing Authorities shall receive a pro-rata share of the Net Proceeds (defined below) from the sale of the Debtors' Wyoming Real Property Assets up to the Taxing Authorities' Allowed Priority Tax Claims as set forth in 84.e herein;

b.   To secure the payment set forth in 84.a, on the earlier of the date of entry of the order (i) confirming the Plan or (ii) approving the Wyoming Sale Motion, each of the Taxing Authorities shall receive an automatically perfected first priority superior lien on the Wyoming Real Property Assets and any proceeds of the sale thereof without the need to record, file, or otherwise perfect such lien in accordance with applicable non-bankruptcy law; provided however, that such lien shall automatically dissolve and be of no further force of effect in the event of a disposition of these cases other than pursuant to the substantial consummation of the Plan, including, without limitation, any conversion or dismissal of the Chapter 11 Cases;

c.   As soon as practicable after the Effective Date and to the extent not already paid, the Reclamation Trust Entity shall pay (or direct the applicable Reorganized Debtor to pay) to the Taxing Authorities in advance taxes incurred from

37

4839-7978-9532

December 3, 2020 through the Effective Date, regardless of the fact that such taxes may not be due and payable until a later date; and

d. To the extent that and for so long as (i) the claims of the Taxing Authorities are not satisfied via the payments provided for in paragraph 84.a above resulting in a deficiency ("Taxing Authority Deficiency Claim") and (ii) the funds on deposit in the Reclamation Sinking Fund at the time of the distribution equal the Reclamation Sinking Fund Benchmark: Reorganized KCP, Inc. shall pay to each Taxing Authority its pro-rata share of 10% of the net distributions received from Black Butte on account of its 50% interest in Black Butte (after payment of any applicable income taxes) in excess of the Reclamation Sinking Fund Benchmark, up to each respective Taxing Authority Deficiency Claim amount on a cumulative basis. No interest shall accrue on the Taxing Authority Deficiency Claim.

e. The agreed upon amount of the Priority Tax Claims, which amounts shall be Allowed Priority Tax Claims, satisfied pursuant to these provisions in accordance with Article II.D of the Plan are as follows:

| Taxing Authority (collectively, the "Taxing Authorities") | Type of Tax | Amount of Priority Tax Claim | Period Incurred | Pro Rata Share % |
|---|---|---|---|---|
| The County of Big Horn, Montana | Gross Proceeds | $5,448,716.63 | through 12/2/20 | 51.43% |
| Montana Department of Revenue | Severance Tax | $4,431,286.85 | through 12/2/20 | 41.83% |
| Montana Department of Revenue | Resource Indemnity Trust Tax | $118,876.21 | through 12/2/20 | 1.12% |
| United States Department of the Treasury | Black Lung Tax | $429,110.55 | through 12/2/20 | 4.05% |
| United States | Federal | $165,785.48 | through | 1.56% |

38

| Office of Surface Mining Reclamation and Enforcement | Reclamation Fee | | 12/2/20 | |
|---|---|---|---|---|
| | | $10,593,775.72 | | 100% |

There are no other Priority Tax Claims owed to the Taxing Authorities or any other Person or Entity other than those set forth above.

85.     For purposes of paragraphs 84.a above, "Net Proceeds" shall be cash proceeds from the sale of the Debtors' Wyoming Real Property Assets less (i) brokers fees and commission; (ii) any outstanding property taxes; (iii) marketing expenses incurred in the sale of the property by either the debtor or the brokers and not included in the brokers fees; and (iv) any other costs and expenses authorized to be paid pursuant to the order approving the Wyoming Real Property Assets.

86.     The vesting of any of the Debtors' Wyoming Real Property Assets with the Reorganized Debtors or the Reclamation Trust Entity, if applicable, shall not be free and clear of any liens created in favor of the Taxing Authorities to secure payment of their Allowed Priority Tax Claims as set forth in paragraph 84.

87.     The Senior Secured Lenders have consented to the treatment of the Taxing Authorities' Allowed Priority Tax Claims as set forth herein; provided, however, that, in the event of a disposition of these cases other than through substantial consummation of the Plan, including, without limitation, the conversion or dismissal of these Chapter 11 Cases, such consent shall be deemed withdrawn and each of the Senior Secured Lenders and Taxing Authorities reserve all rights to pursue their respective rights and remedies without regard to any of the terms set forth in paragraphs 84, 85 and 86.

4839-7978-9532

88.     **PBGC**. Notwithstanding anything to the contrary in the Plan, any Claim arising under Title I of ERISA for breach of fiduciary duty or relating to a prohibited transaction with respect to the Decker Coal Company Pension Plan or the Big Horn Coal Company Pension Plan shall not be discharged, released, or enjoined; *provided*, *however,* that any such Claim against the Debtors shall be treated solely as a Class 5 General Unsecured Claim.

89.     **Provisions Governing Distributions.**  The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan or this Confirmation Order, the Debtors, Reorganized Debtors, or the Reclamation Trust Entity shall make all distributions required under the Plan. The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

90.     **Procedures for Resolving Disputed, Contingent, and Unliquidated Claims or Equity Interests.**  The procedures for resolving contingent, unliquidated, and disputed Claims contained in Article VI of the Plan shall be, and hereby are, approved in their entirety. If any Proof of Claim is filed in the Chapter 11 Cases, the Debtors or Reorganized Debtors, as applicable, must address such Claim and provide notice to the Court regarding whether such Claim will need to be addressed by the Court.

91.     **Plan Settlement.**  The general settlement provisions in Article V.A of the Plan, and each component thereof, is hereby approved pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019 as fair and reasonable and in the best interests of the Debtors, their Estates, and holders and Claims and Equity Interests ("Plan Settlement"). The Plan Settlement provisions are authorized and approved in all respects, subject to, and in accordance with, the terms and conditions thereof, the Plan and this Confirmation Order; and the terms of the Plan

40

4839-7978-9532

Settlement shall be binding upon all Persons, including any and all holders of Claims or Equity Interests (irrespective of whether such Claims and Equity Interests are Impaired under the Plan or whether the holders of such Claims and Equity Interests accepted, rejected or are deemed to have accepted or rejected the Plan), any and all Persons who are parties to or are subject to the settlement, compromises, releases, waivers, and injunctions described herein or in the Plan or the Plan Settlement, and their respective heirs, executors, administrators, trustees, affiliates, if any, of the foregoing.

92.     **Release of Liens.**  The provision set forth in Article V.D of the Plan for the release and discharge of all mortgages, deeds of trust, Liens, pledges, and other security interests against any property of the Debtors' Estates provision is hereby approved. The holders of mortgages, deeds of trust, Liens, pledges, or other security interests subject to release pursuant to Article V.D shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns. To the extent the Reorganized Debtors or Reclamation Trust Entity exercise the rights in Article V.D to present, file, or record this Confirmation Order as evidence of termination of such mortgages, deeds of trust, Liens, pledges and other security interests, the Confirmation Notice (defined below) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law:

> **THIS CONFIRMATION ORDER AND THE CONFIRMATION NOTICE ARE EACH HEREBY DECLARED TO BE IN RECORDABLE FORM AND SHALL BE ACCEPTED BY ANY**

4839-7978-9532

RECORDING OFFICER FOR FILING AND
RECORDING PURPOSES WITHOUT FURTHER
OR ADDITIONAL ORDERS, CERTIFICATIONS,
OR OTHER SUPPORTING DOCUMENTS.

93.     **Release, Exculpation, Discharge, and Injunction Provisions.**  The release, exculpation, discharge, injunction, and related provisions set forth in Article V of the Plan shall be, and hereby are, approved, are incorporated by reference into and are an integral part of this Confirmation Order, shall be effective in accordance with their terms, and authorized in their entirety, including, but not limited to:

a.     **Releases by the Debtors.**  The releases by the Debtors set forth in Article V.E of the Plan is hereby approved;

b.     **Releases by Holders of Claims and Equity Interests.**  The releases by the Releasing Parties set forth in Article V.F of the Plan is hereby approved;

c.     **Exculpation.**  The Exculpation set forth in Article V.G of the Plan is hereby approved;

d.     **Injunction**.  The injunction provision set forth in Article V.H of the Plan is hereby approved;

e.     **Discharge**.  The discharge provision set forth in Article V.B. of the Plan is hereby approved; and

f.     **Limitations**.  The limitations on releases, exculpations and injunction set forth in Article V.I of the Plan are hereby approved.

94.     **Accrued Professional Compensation Account.**  As soon as reasonably practicable after the Confirmation Date, and no later than the Effective Date, from the Cash remaining pursuant to the Cash Collateral Order, the Debtors shall fund the Accrued Professional Compensation Account with Cash equal to all Accrued Professional Compensation to be held by

42

4839-7978-9532

counsel for the Debtors as provided in the Plan. To the extent necessary and reasonable, the amount of Accrued Professional Compensation may include an estimate of such amount by the Professional for purposes of ensuring the Accrued Professional Compensation Account is adequately funded. The Accrued Professional Compensation Account shall be maintained in trust solely for the Professionals and for no other Entities until all Allowed Fee Claims have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Accrued Professional Compensation Account or Cash held in the Accrued Professional Compensation Account in any way. Such funds shall not be considered property of the Estates, the Debtors, or the Reorganized Debtors.

95.    The amount of Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors or the Reorganized Debtors, as applicable, from the funds held in the Accrued Professional Compensation Account as soon as reasonably practicable after such Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Fee Claims shall not be limited nor be deemed limited to funds held in the Accrued Professional Compensation Account; *provided, however,* that in no event shall the funds from the Reclamation Sinking Fund or other funds contributed by the Sureties be deposited in the Accrued Professional Compensation Account. When all Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Accrued Professional Compensation Account shall promptly be paid to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. The intent of the Plan and the Confirmation Order and the funding of the Accrued

4839-7978-9532

Professional Compensation Account is to ensure the Fee Claims are paid in full to the extent they are Allowed. The limitations of liability of the counsel for the Debtors regarding the Accrued Professional Compensation Account are approved as set forth in Article I.A.2.

96.     **Conditions to Effective Date.**   The provisions governing the conditions precedent to the Effective Date set forth in Article IX.A of the Plan shall be, and hereby are, approved in their entirety. The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms as provided in Article IX.B of the Plan. The Plan shall only become effective on the Effective Date.

97.     **Substantial Consummation**.   Substantial consummation of the Plan shall be deemed to occur on the Effective Date.

98.     **Retention of Jurisdiction.**  The provisions governing the retention of jurisdiction set forth in Article XI of the Plan shall be, and hereby are, approved in their entirety. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Court shall retain exclusive jurisdiction over the matters arising in, and under, and related to, the Chapter 11 Case and the Plan, as set forth in Article XI of the Plan. For the avoidance of doubt, the Court shall not retain exclusive jurisdiction with respect to the Reclamation Trust Entity Agreement, and notwithstanding anything to the contrary herein, the Definitive Documents shall not confer or create jurisdiction in the Bankruptcy Court over any matter as to which it would not have jurisdiction under 28 U.S.C. §§ 157 and 1334 or otherwise.

99.     **Immediate Binding Effect.**   Subject to Article X.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and

4839-7978-9532

enforceable to the fullest extent permitted under the Bankruptcy Code and applicable nonbankruptcy law.

100.    Pursuant to section 1141 of the Bankruptcy Code, effective on the Effective Date, and except as expressly provided in this Confirmation Order, the Plan and its provisions shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims and Equity Interests, whether or not such holders shall receive or retain any property or interest in property under the Plan, and their respective successors and assigns, including, but not limited to, the Reclamation Trust Entity and all other parties in interest in the Chapter 11 Cases.

101.    **Payment of Statutory Fees.**  All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid consistent with Article II.E of the Plan.

102.    **Effectiveness of All Actions.**  Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of this Court, or further action by the respective officers, directors, managers, members, or stockholders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders. Except as set forth in the Plan, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations, of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, agreements, and any amendments or modifications thereto.

45

4839-7978-9532

103.     **Effect of Conflict Between Plan and Confirmation Order.**  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, except as set forth in the Plan, to the extent that there is determined to be any inconsistency between any provision of the Plan or provision of a Definitive Document (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing) and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

104.     **Effect of Conflict Between Plan and Other Definitive Documents.**  The provisions of the Plan and the Definitive Documents (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing) shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, except as set forth in the Plan, to the extent that there is determined to be any inconsistency between any provision of a Definitive Document and any provision of the Plan that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Plan shall govern.

105.     **Nonseverability of Plan Provisions and Confirmation Order.**  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent. Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

4839-7978-9532

106.    **Omission of Reference to Particular Plan Provisions.**    The terms and provisions of the Plan are incorporated by reference into and are an integral part of this Confirmation Order. Each term and provision of the Plan is valid, binding, and enforceable as though fully set forth herein. The failure specifically to include or to refer to any particular article, section, or provision of the Plan or the Plan Supplement in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provisions, it being the intent of the Court that the Plan and any related documents be confirmed and approved in their entirety.

107.    **Failure of Consummation.**    If the Effective Date does not occur and the Debtors file a notice withdrawing the Plan, then: (a) the Plan and this Confirmation Order will be null and void in all respects; (b) any settlement or compromise embodied in the Plan or this Confirmation Order, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (c) nothing contained in the Plan or this Confirmation Order shall (i) constitute a waiver or release of any Claims, Equity Interests, or Causes of Action, (ii) prejudice in any manner the rights of any Debtor or any other Person or Entity, or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Person or Entity, and all parties shall revert to the status quo as if this Confirmation Order had not been entered.

108.    **Terms of Injunctions or Stays.**    Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions

47

4839-7978-9532

or stays contained in the Plan or this Confirmation Order (including the Injunction) shall remain in full force and effect in accordance with their terms.

109.  **Modifications or Amendments.**  The provisions governing the modification, revocation, or withdrawal of the Plan set forth in Article IX of the Plan shall be, and hereby are, approved in their entirety. Without need for further order or authorization of the Court, the Debtors, the Reorganized Debtors, or the Reclamation Trust Entity, as applicable, with the reasonable consent of the Consenting Stakeholders, are authorized and empowered to make any and all appropriate modifications and technical adjustments to any and all documents that are necessary to effectuate the Plan as may be necessary to carry out the purposes and effects of the Plan that do not materially and adversely affect the treatment of holders of Allowed Claims or Equity Interests and that are consistent with the Plan and this Confirmation Order. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the consent rights and limitations in the Definitive Documents, the Debtors and the Reorganized Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan or this Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article IX.E of the Plan.

110.  **Certain Governmental Matters.**  Notwithstanding any other provision in the Plan, Plan Supplement, Confirmation Order, or related plan documents, nothing in the Plan, the

48

Plan Supplement, the Confirmation Order, or related plan documents shall (a) affect or impair any Governmental Unit's police or regulatory powers against the Debtors, the Reorganized Debtors, or any non-debtor; (b) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (c) relieve any party from compliance with Governmental Leases and Licenses or State Law Permits or any counterparts issued under applicable state law in accordance with non-bankruptcy law. Nothing contained in the Plan or Confirmation Order shall affect any valid setoff or recoupment rights of any Governmental Unit against any of the Debtors or any successor Entities, and such rights are expressly preserved.

111.   **Federal Communications Commission.** Notwithstanding any other provision in the Plan, the Plan Supplement, the Confirmation Order, or related plan documents, nothing relieves the Debtors or the Reorganized Debtors from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations, and orders promulgated thereunder by the FCC. No transfer of any FCC license or authorization held by the Debtors or transfer of control of the Debtors or transfer of control of an FCC licensee controlled by the Debtors shall take place prior to the issuance of FCC regulatory approval for such transfer pursuant to applicable FCC regulations. The FCC's rights and powers to take any action pursuant to its regulatory authority including, but not limited to, imposing any regulatory conditions on any of the above-described transfers, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.

112.   **Internal Revenue Service**. Nothing contained in the Plan or Confirmation Order shall be deemed: (a) to determine the tax liability of any Entity, including, but not limited to, the Debtors and the Reclamation Trust Entity: (b) to be binding on the Internal Revenue Service

49

4839-7978-9532

("IRS") with regard to the federal tax liabilities, tax status, or tax filing and withholding obligations of any Entity, including, but not limited to, the Debtors and the Reclamation Trust Entity; (c) to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability except as provided under Section 505 of the Bankruptcy Code; (d) to release, satisfy, or discharge any claim of the IRS against any Entity except as permitted by 11 U.S.C. § 1141(d); and (5) to grant any relief to any Entity that the Bankruptcy Court is prohibited from granting by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a). For the avoidance of doubt, nothing in the Plan or Confirmation Order shall bar the IRS from exercising its nonbankruptcy rights to offset any request for a tax refund for a tax year ending prior to the Petition Date against any prepetition claims of the United States government against any of the Debtors.

113. **Return of Utilities Deposits.** On the Effective Date, all deposits in the escrow account established to provide utilities with adequate assurance of performance under Bankruptcy Code section 366 during the Chapter 11 Cases shall be promptly released and returned to the Reorganized LHR Coal, LLC.

114. **Waiver of Filings.** Any requirement under Bankruptcy Code section 521 or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

115. **Exemption from Registration**. The Reclamation Trust Entity Interests arising under the Reclamation Trust Entity Agreement shall not be "securities" under applicable law. The Reclamation Trust Entity Interests shall not have consent or voting rights or otherwise confer on the holders of the Reclamation Trust Entity Interests any rights similar to the rights of

a shareholder of a corporation in respect of any actions taken or to be taken by the Reclamation Trust Entity Board and/or the Reclamation Trust Entity Representative in connection with the Reclamation Trust Entity and the Post-Effective Date Assets. Neither the Reclamation Trust Entity Representative nor the Reclamation Trust Entity Board shall take any action to establish or support the establishment of an active trading market with respect to the Reclamation Trust Entity Interests.

116.    **Provisions Resolving Specific Matters.**

a.    **Ramaco.** Notwithstanding anything to the contrary contained in this Confirmation Order or the Plan, (i) any vesting in the Reorganized Debtors of the portion of the Wyoming Real Property Assets that is presently owned by Big Horn as a result of the conveyance from Sheridan-Wyoming Coal Company, Inc. ("SWCC") to Big Horn pursuant to the June 28, 1954 Warranty Deed (the "Big Horn 1954 Property") shall be subject to, and not free and clear of, any interest and rights in such real property of Ramaco Wyoming Coal Co., LLC ("RW Coal") and Brook Mining Company, LLC ("Brook") pursuant to (a) the June 28, 1954 Warranty Deed between SWCC and Big Horn (Office of the County Clerk of Sheridan County, Wyoming Deed Book ("WY DB") 98, Pages 127–129), (b) the 1983 Release Agreement (WY DB 278, Pages 237–252), (c) the 2011 Deed (WY DB 527, Pages 246–252), (d) the 2014 Deed (WY DB 546, Pages 192-199), (e) the 2015 Deed (WY DB 554, Pages 532-534), (f) the 2015 Correction Mineral Deed (WY DB 554, Pages 535-541), and (g) the Lease and Sublease Agreement dated October 29, 2014 entered into between RW Coal and Brook as evidenced by that certain Memorandum of Lease Agreement (WY DB 549, Pages 784-793 (collectively, the "Ramaco Instruments"); (ii) nothing in this Confirmation Order or the Plan affects

51

4839-7978-9532

any real property rights and interests of RW Coal and Brook pursuant to the Ramaco Instruments provided under the law of the State of Wyoming and other applicable non-bankruptcy law; (iii) nothing in this Confirmation Order or the Plan shall affect or alter any rights Brook has under the Brook Mining Permit No. PT0841 (the "Brook Mining Permit") issued by the Wyoming Department of Environmental Quality and the November 17, 2016 Findings Of Fact, Conclusions Of Law, And Order (often referred to as "Order In Lieu of Consent") that was issued by the State of Wyoming Environmental Quality Council (EQC Docket 16-1601) provided under the law of the State of Wyoming and other applicable non-bankruptcy law; and (iv) nothing in this Confirmation Order or the Plan shall constitute a determination of Brook's or RW Coal's rights and interests pursuant to the Ramaco Instruments and the Brook Mining Permit under Wyoming law or other non-bankruptcy law with respect to the Big Horn 1954 Property. Nothing in this section shall affect that certain Order (I) Authorizing Rejection of The Ground Lease And Certain Related Contracts Effective As Of December 30, 2020 And (II) Granting Related Relief [Docket No. 208] entered January 13, 2021 by the Court which provides, inter alia, that the Road Relocation Agreement between SWCC and Big Horn dated August 7, 1981, is deemed rejected as of December 30, 2020.]

b.      Nothing contained in this Confirmation Order, the Plan, or the Disclosure Statement is intended to be or shall be construed as releasing Northwest Alloys, Inc. or any of its heirs, affiliates, predecessors, successors, or assigns (collectively, "NWA") from any liability that it may owe to Arch Resources, Inc. or any of its heirs, affiliates, predecessors, successors, or assigns (collectively, "Arch"). All of Arch's and NWA's respective rights, claims, and defenses as against each are reserved.

52

c.     **Holmes Family Limited Partnership.** As permitted by Article III.D.2 of the Plan, Debtor, Montana Royalty Holdings, LLC ("Montana Royalty"), is surrendering the real property ("1977 Property") subject to the July 12, 1977 Mortgage between Montana Royalty and Holmes Family Limited Partnership ("Holmes Family"), as assignee of George and Dixie Holmes, via Deed in Lieu of Foreclosure in full and final satisfaction of the Holmes Family's Other Secured Claim, including without limitation the Proof of Claim filed as Claim No. 53. Montana Royalty retains a right of entry in favor of the Reorganized Coal Side Debtors to access such portions of the 1977 Property as is necessary for Reclamation.

d.     **BLM/ONRR.** The Debtors agree that the total of the cure amounts for the assumed leases with the BLM on the Schedule of Assumed Executory Contracts and Unexpired Leases is $28,917.51 as reflected by the updated cure amounts in Exhibit G to the *Third Amended Plan Supplement of the First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code*. Notwithstanding anything to the contrary in the Plan or in any cure notices contemplated by, or associated with, the Definitive Documents, any amounts owing under any Federal Lease shall be promptly paid when due in the ordinary course subject to applicable non-bankruptcy laws, regulations and administrative procedures. If the Debtors or the Reorganized Debtors, as applicable, do not timely pay amounts owing on account of the Federal Lease when due in the ordinary course pursuant to applicable non-bankruptcy laws, regulations and administrative procedures, the Debtors and/or the Reorganized Debtors, as applicable, will pay late payment charges on the untimely payment at the rate established in 30 C.F.R. § 1218.54 to the fullest extent permitted by applicable non-bankruptcy laws and regulations. *For the avoidance of any*

53

4839-7978-9532

*doubt*, and notwithstanding anything to the contrary in the Definitive Documents, the assumption of any the Debtors' interests in the Federal Lease shall not release any monetary or non-monetary obligations that are owing by either the Debtors and/or the Reorganized Debtors, as applicable, under applicable laws and regulations on account of such Federal Lease.

  e.  **Komatsu.** Komatsu shall have an allowed secured claim with respect to the Komatsu Retained Collateral in the amount of $12,743,397.88 (the "Komatsu Claim"). The Komatsu Claim is secured by a lien on the Komatsu Retained Collateral. Komatsu will retain its lien on the Komatsu Retained Collateral and shall receive the full amount due under the contracts relating to the Komatsu Retained Collateral (the "Komatsu Contracts"). On the first day of the month on or following the effective date of the Plan, Decker Coal Company, LLC shall resume monthly payments in accordance with the Komatsu Contracts. Komatsu and Decker Coal Company, LLC agree to modify the Komatsu Contracts solely to extent that any principal payments due during the cases and not paid prior to the effective date of the Plan shall be added to the end of the terms of the Komatsu Contracts. For the avoidance of doubt, Decker Coal Company, LLC shall continue to make adequate protection payments pursuant to the *Order Approving Stipulation By and Between Debtor Decker Coal Company LLC, Komatsu America Corp. and Komatsu Financial Limited Partnership* [Docket No. 367] until the effective date of the Plan or further order of the Court.

  f.  **BNSF.** Released Parties as that term is used in the Plan and this Confirmation Order shall not include the Non-Debtor Subsidiaries or the Non-Debtor Subsidiaries' current and former officers, directors, managers, members, professionals,

4839-7978-9532

advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives (each solely in their capacity as such). The Non-Debtor Subsidiaries shall not be Releasing Parties as that term is used in the Plan and this Confirmation Order.

g.    **NTEC**. Notwithstanding anything to the contrary contained in this Confirmation Order or the Plan, including Section IV(B)(3) of the Plan, any property in each of the Coal Side Debtors' Estates and any property acquired by any of the Coal Side Debtors under the Plan, which remains vested in each applicable Reorganized Coal Side Debtor, shall be subject to, and not free and clear of, any and all rights, interests, or privileges in favor of Navajo Transitional Energy Company, LLC with respect to real property owned by Debtors, as defined pursuant to that *Stipulation Between Navajo Transitional Energy Company, LLC and Debtors Lighthouse Resources Inc., et al.* ("NTEC Stipulation")*,* dated March 9, 2021, approved by this Court by its Order dated March 10, 2021 entered at Docket No. 430 (the "NTEC RP Rights"). For the avoidance of doubt, the preservation of the NTEC RP Rights shall constitute an express exception to the vesting of assets in the Reorganized Coal Side Debtors "free and clear" of such interests and such NTEC RP Rights shall continue to run with the land as a burden thereupon and shall be binding on and inure to the benefit of NTEC and the Debtors and their respective successors and assigns, including any direct or indirect transferee of such land, notwithstanding such transfer; provided, that there shall be no prohibition on transfer of Debtor Real Property, provided such transfer remains subject to the foregoing burdens, in each case, pursuant to the NTEC Stipulation.

4839-7978-9532

117.     **Notice of Confirmation and Effective Date.**   In accordance with Bankruptcy Rules 2002 and 3020(c), within 10 business days of the Effective Date, the Reorganized Debtors shall serve notice of the entry of this Confirmation Order and the occurrence of the Effective Date (the "Confirmation Notice"), substantially in the form attached hereto as **Exhibit B**, which form is hereby approved, to be served by United States mail, first class postage prepaid, by hand, or by overnight courier service on all Creditors and parties in interest in the Chapter 11 Cases; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors or Reorganized Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. Mailing of the Confirmation Notice in the time and manner set forth in this paragraph shall be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c) and no further notice is necessary.

118.     The Confirmation Notice shall constitute sufficient notice of the entry of this Confirmation Order to any federal, state, provincial, or local agency or department filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law.

119.     **Termination of the Restructuring Support Agreement.** On the Effective Date, the Restructuring Support Agreement will terminate.

120.     **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated in any document, the laws of the State of Delaware, without giving effect to the principles of

4839-7978-9532

conflicts of laws shall govern the rights, obligations, construction and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan, unless otherwise specified.

121.   **Post-Effective Date Notice Pursuant to Bankruptcy Rule 2002**.   After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all Creditors and other parties in interest (except those listed in the following sentence) must file a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reclamation Trust Entity Representative is authorized to limit the list of parties in interest receiving notice of documents pursuant to Bankruptcy Rule 2002 to the Office of the United States Trustee and those parties in interest who have filed such renewed requests; *provided, however*, that the Reclamation Trust Entity Representative also shall serve parties directly affected by or having a direct interest in, the particular filing in accordance with Local Rule 2002-1(b). Notice given in accordance with the foregoing procedures shall be deemed adequate pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

122.   **Final Decree; Dissolution**. As soon as reasonably practical and possible following the effective date, the Reclamation Trust Entity Representative shall request that the Court enter an order closing all of the Chapter 11 Cases, except for the case of Lighthouse Resources Inc., Case No. 20-13056, pursuant to section 350(a) of the Bankruptcy Code. After completion of all distributions and conclusion of any and objections to Claims to made pursuant to Articles II, III, and VI of the Plan and the vesting of the Post-Effective Date Assets in the Reorganized Debtors, the Reclamation Trust Entity shall, to the extent not already done and to the extent no other matters remain to be determined by the Court in the discretion of the

4839-7978-9532

Reclamation Trust Entity, request that the Court enter an order closing the case of Lighthouse Resources Inc. pursuant to section 350(a) of the Bankruptcy Code.

123.    **Applicable Nonbankruptcy Law.**    Pursuant to 11 U.S.C. §§ 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

124.    **Reversal**.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of the Court or any other court, in the absence of a stay of this Confirmation Order, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken in good faith under or in connection with the Plan prior to the Debtors', the Reorganized Debtors, or the Reclamation Trust Entity's receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, in the absence of a stay of this Confirmation Order, any such act or obligation incurred or undertaken in good faith pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

125.    **Final Order.**    The Court finds that there is no reason for delay in the implementation of this Confirmation Order, and notwithstanding anything to the contrary in the Plan, the Bankruptcy Rules, including Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, this Confirmation Order shall become immediately effective and enforceable upon its entry and the period within which an appeal must be filed commences upon the entry hereof.

**Dated: March 10th, 2021 Wilmington, Delaware**

JOHN T. DORSEY UNITED STATES
BANKRUPTCY JUDGE

58

4839-7978-9532

**Exhibit A**

**The Plan**

4839-7978-9532

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| LIGHTHOUSE RESOURCES INC., *et al.*,[1] | ) | Case No. 20-13056 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## SECOND AMENDED JOINT PLAN OF DEBTORS
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

<div style="display:flex">

**JACKSON KELLY PLLC**
Mary Elisabeth Naumann (KY# 88328)
(admitted *pro hac vice*)
Chacey Malhouitre (KY# 91019)
(admitted *pro hac vice*)
JACKSON KELLY PLLC
100 West Main Street, Suite 700
Lexington, KY 40507
Telephone: 859.255.9500
Email:  mnaumann@jacksonkelly.com
          chacey.malhouitre@jacksonkelly.com

Elizabeth Amandus Baker
(admitted *pro hac vice*)
500 Lee Street East, Suite 1600
Charleston, WV 25301
Telephone: 304.340.1000
Email: elizabeth.baker@jacksonkelly.com

*Co-counsel to the Debtors and Debtors in Possession*

Dated: March 10, 2021

**POTTER ANDERSON & CORROON LLP**
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
1313 N. Market Street, 6th Floor
Wilmington, DE 19801-6108
Telephone: 302.984.6000
Facsimile: 302.658.1192
Email:  kgood@potteranderson.com
          astulman@potteranderson.com

</div>

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Lighthouse Resources Inc. (4713), LHR Coal, LLC (4799), KCP, Inc. (2558), Big Horn Coal Company (7087), Rosebud Coal Sales Company (9016), KCP Properties, Inc. (8372), Decker Holding Company, LLC (8881), Decker Coal Company, LLC (3731), Montana Royalty Holdings, LLC (1107), LHR Infrastructure, LLC (9619), Millennium Bulk Terminals-Longview, LLC (0354), Barlow Point Land Company, LLC (1398), Columbia Land Co., LLC (6826), and Gulf States Bulk Terminal, LLC (5870). The location of the Debtors' service address in these chapter 11 cases is 10980 South Jordan Gateway, South Jordan, Utah 84095.

4853-0731-7214

**TABLE OF CONTENTS**

**ARTICLE I. DEFINITIONS AND CONSTRUCTION OF TERMS** ......................................**4**

    A. Definitions. ...................................................................................................................... 4

    B. Interpretation, Application of Definitions, and Rules of Construction. ........................... 20

    C. Computation of Time. ...................................................................................................... 20

**ARTICLE II. ADMINISTRATIVE CLAIMS, FEE CLAIMS, AND PRIORITY CLAIMS** ...........**20**

    A. Administrative Claims (Other Than Fee Claims). ............................................................ 20

    B. Fee Claims. ....................................................................................................................... 21

    C. Senior Secured Lenders' Superpriority Claims. ............................................................... 22

    D. Priority Tax Claims. ......................................................................................................... 22

    E. U.S. Trustee Fees. ............................................................................................................ 23

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS** ................................................................................................................................**23**

    A. Classification of Claims and Equity Interests. ................................................................ 23

    B. Record Date. ..................................................................................................................... 23

    C. Summary of Classification and Class Identification. ....................................................... 23

    D. Treatment of Classified Claims and Equity Interests. ...................................................... 24

    E. Special Provision Regarding Unimpaired and Reinstated Claims. ................................... 31

    F. Voting of Classes. ............................................................................................................. 31

    G. Nonconsensual Confirmation. ......................................................................................... 31

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** .............................................**31**

    A. Operations Between the Confirmation Date and Effective Date. ..................................... 31

    B. Reclamation Trust Entity. ................................................................................................. 32

    C. Preservation of Causes of Action. .................................................................................... 43

    D. Corporate Action. ............................................................................................................. 44

    E. Cancellation of Certain Indebtedness, Agreements, and Existing Securities. ................. 44

    F. Separate Plans. .................................................................................................................. 45

    G. Section 1145 Exemption. ................................................................................................. 45

    H. Effectuating Documents; Further Transactions. ............................................................... 45

    I. No Further Approvals. ....................................................................................................... 46

    J. Pre-Effective Date Injunctions or Stays. .......................................................................... 47

    K. [Reserved]. ....................................................................................................................... 47

    L. Claims By/Against Non-Debtor Subsidiaries. ................................................................. 47

    M. [Reserved]. ....................................................................................................................... 47

4853-0731-7214

N. Severance and Incentive Plan; Employment Agreements.................................................................47

O. Indemnification of Directors, Officers, and Employees. ...............................................................48

P. [Reserved].......................................................................................................................................48

Q. Cessation of the Conduct of Business of the Debtors & Professionals...........................................48

R. Articles of Incorporation and By-laws. ..........................................................................................49

S. Compensation and Benefit Programs. ............................................................................................49

**ARTICLE V. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS .........50**

A. General Settlement of Claims and Equity Interests. .....................................................................50

B. Discharge of Claims. .....................................................................................................................51

C. Subordination of Claims.................................................................................................................51

D. Release of Liens. ...........................................................................................................................52

E. Releases by the Debtors..................................................................................................................52

F. Releases by Holders of Claims and Equity Interests. ....................................................................53

G. Exculpation. ..................................................................................................................................54

H. Injunction. .....................................................................................................................................54

I. Limitations on Releases, Exculpations and Injunction....................................................................55

J. Preservation of Insurance. ..............................................................................................................56

K. Preservation of Sureties' Rights and Obligations. .........................................................................56

**ARTICLE VI. DISTRIBUTIONS UNDER THE PLAN.........................................................................57**

A. Procedures for Treating Disputed Claims. .....................................................................................57

B. Allowed Claims and Equity Interests. ...........................................................................................57

C. Allocation of Consideration. .........................................................................................................59

D. Estimation. ....................................................................................................................................59

E. Insured Claims. ..............................................................................................................................60

**ARTICLE VII. RETENTION OF JURISDICTION..............................................................................60**

**ARTICLE VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES...................................61**

A. Assumption and Rejection of Executory Contracts and Unexpired Leases.....................................61

B. Cure Claims....................................................................................................................................62

C. Rejection and Repudiation of Executory Contracts and Unexpired Leases.....................................63

D. Rejection Damage Claims...............................................................................................................64

E. Reservation of Rights. ....................................................................................................................64

F. Assignment. ....................................................................................................................................64

G. Insurance Policies. .........................................................................................................................65

H. Postpetition Contracts and Leases...................................................................................................65

I. Governmental Units.........................................................................................................................65

4853-0731-7214

**ARTICLE IX. EFFECTIVENESS OF THE PLAN** .......................................................................... **66**

    A. Conditions Precedent to Effectiveness. ................................................................................. 66

    B. Waiver of Conditions Precedent to Effectiveness. ................................................................ 67

    C. Effect of Failure of Conditions. ........................................................................................... 67

    D. Vacatur of Confirmation Order. ........................................................................................... 67

    E. Modification of the Plan. ...................................................................................................... 67

    F. Revocation, Withdrawal, or Non-Consummation. ............................................................... 68

**ARTICLE X. MISCELLANEOUS PROVISIONS** ..........................................................................**68**

    A. Immediate Binding Effect. ................................................................................................... 68

    B. Governing Law. .................................................................................................................... 69

    C. [Reserved] ............................................................................................................................ 69

    D. Filing or Execution of Additional Documents. .................................................................... 69

    E. Term of Injunctions or Stays. ............................................................................................... 69

    F. Withholding and Reporting Requirements. .......................................................................... 69

    G. Exemption from Transfer Taxes. ......................................................................................... 70

    H. Plan Supplement. ................................................................................................................. 70

    I. Notices. .................................................................................................................................. 70

    J. Conflicts. ............................................................................................................................... 71

4853-0731-7214

**INTRODUCTION**

Lighthouse Resources Inc. and each of its affiliated Debtors jointly propose the following chapter 11 plan under Bankruptcy Code section 1121(a). The Plan addresses the Coal Side Debtors and the Millennium Debtors. The Debtors seek to substantially consummate the transactions contemplated hereby on the Effective Date of the Plan. Each of the Debtors is a proponent of the Plan within the meaning of Bankruptcy Code section 1129.

Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, results of operations, and projections for future operations and risk factors, together with a summary and analysis of the Plan.

The Plan provides for the creation of a trust whose primary purpose is to complete the shutdown, remediation, and reclamation of the Coal Side Debtors' operations at the Decker Mine, Big Horn Coal Company, and KCP, Inc.'s obligations related to its 50% interests in the Black Butte Mine at the end of its operations, and in that process, the trust will also administer all remaining assets of the Debtors, including the Millennium Debtors' assets, if any. The Plan also provides for distributions to certain holders of administrative claims and priority claims and the funding of the trust.

THE PLAN SHOULD BE CONSIDERED ONLY IN CONJUNCTION WITH THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED HEREWITH. THE DISCLOSURE STATEMENT IS INTENDED TO PROVIDE YOU WITH INFORMATION YOU NEED TO MAKE AN INFORMED JUDGMENT ON WHETHER TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINITIONS AND CONSTRUCTION OF TERMS**

**A.     Definitions.**

Unless otherwise defined herein, the following terms shall have the respective meanings set forth below:

1.     *Accrued Professional Compensation*: means, at any given time, and regardless of whether such amounts are billed or unbilled, all accrued, contingent, and/or unpaid fees and expenses (including success fees) for legal, financial advisory, accounting, and other services, and reimbursement of expenses by any Professional accrued as of the later of the Effective Date or the conclusion of services as provided pursuant to section 327 of the Bankruptcy Code and that the Court has not  denied by Final Order (i) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (ii) after applying the remaining balance of any retainer that has been provided by a Debtor to such Professional. To the extent necessary for purposes of any Reserves as provided in the Plan, a Professional may determine its Accrued Professional Compensation based upon reasonable estimates, which such estimates shall be provided contemporaneously to the Senior Secured Lenders, noting any variance from the Approved Budget under the Cash

4853-0731-7214

Collateral Order. To the extent the Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2.    *Accrued Professional Compensation Account*: means an interest-bearing account, which shall be funded by the Debtors on the Effective Date with Cash in an amount equal to all Accrued Professional Compensation as of the Effective Date and which shall be held and maintained by counsel for the Debtors in its client trust account in trust for the Professionals subject to applicable rules governing such accounts. The funds in the Accrued Professional Compensation Account shall be disbursed as provided in this Plan. In addition and as not a replacement for any releases or exculpations provided in the Plan, counsel for the Debtors shall be liable only to accept, hold, and deliver the Accrued Professional Compensation in accordance with the provisions of this Plan, provided, however, that counsel for the Debtors otherwise shall not incur any liability so long as its actions are taken in good faith.

3.    *Administrative Claim*: means a Claim for any cost or expense of administration during the Chapter 11 Cases pursuant to Bankruptcy Code sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2), or 1114(e)(2), including, but not limited to, (i) any actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of (a) preserving the Estates, and (b) operating and/or winding down the Debtors' businesses, (ii) any indebtedness or obligations assumed by the Debtors in connection with the conduct and/or the wind down of their businesses, (iii) all Fee Claims, (iv) any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code, and (v) any Claim for goods delivered to the Debtors within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to Bankruptcy Code section 503(b)(9). For the avoidance of doubt, and without deciding whether and when Reclamation Liabilities are or are not Administrative Claims, Reclamation Liabilities shall not be considered Administrative Claims for purposes of this Plan.

4.    *Allowed*: means, (i) with respect to any Claim, (a) following the Claims Objection Deadline, any Claim that is not Disputed or as to which no objection or request for estimation has been filed prior to the Claims Objection Deadline, (b) a Claim that has been expressly allowed by Final Order, (c) a Claim as to which the Debtors with the consent of the Consenting Stakeholders (which consent shall not be unreasonably withheld) or the Reclamation Trust Entity agree to the amount and/or priority thereof in writing, (d) a Claim that is expressly allowed pursuant to the terms of the Plan, or (e) a Claim that is listed in the Schedules (to the extent the Debtors file Schedules in the Chapter 11 Cases) as liquidated, non-contingent, and undisputed and as to which no objection has been filed and (ii) with respect to any Equity Interest, such Equity Interest which is reflected as outstanding in the stock transfer ledger or similar register of any of the Debtors on the Record Date and is not subject to any objection or challenge. If a Claim or Equity Interest is Allowed only in part, any provisions in the Plan with respect to Allowed Claims or Allowed Equity Interests are applicable solely to the Allowed portion of such Claim or Equity Interest. For the avoidance of doubt, (a) there is no requirement to file a proof of Claim (or move the Court for allowance) to be an Allowed Claim under the Plan (provided that holders of (i) Fee Claims shall be required to file applications for allowance and payment of their Fee Claims in accordance with Article II.B hereof and (ii) holders of Rejection Damage Claims shall be required to file proofs of Claim in accordance with Article VIII.D hereof) and (b) Unimpaired Claims for which there is no requirement to file a proof of Claim shall be Allowed to the same extent such

2

Claims would be Allowed under applicable non-bankruptcy law. Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Commencement Date. The Senior Secured Claim, Senior Secured Lenders' Unsecured Deficiency Claims, and the Surety Claims are Allowed.

5.     *Allowed Claims Reserve*: means an interest-bearing account, held and maintained by the Reclamation Trust Entity solely for the purpose of paying Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Other Secured Claims not otherwise paid on the Effective Date, which account is funded by Cash pursuant to the Cash Collateral Order.

6.     *Avoidance Actions*: means any and all claims and Causes of Action which any of the Debtors, the Debtors in Possession, the Estates or any other appropriate party has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

7.     *Ballots*: means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject the Plan on which is to be indicated the acceptance or rejection of the Plan.

8.     *Bankruptcy Code*: means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect with respect to the Chapter 11 Cases.

9.     *Bankruptcy Rules*: means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and local rules of the Court, as the context may require, as in effect with respect to the Chapter 11 Cases.

10.     *Bar Date*: means a bar date for filing proofs of Claim in the Chapter 11 Cases on or before (i) February 15, 2021 at 5:00 p.m. EST for holders of Claims other than Governmental Units or (ii) June 1, 2021 for holders of Claims by Governmental Units, as established by the Court pursuant to the Bar Date Order.

11.     *Bar Date Order*: means an order of the Court entered in the Chapter 11 Cases on January 4, 2021 at Docket No. 148, pursuant to Bankruptcy Rule 3003(c), (i) establishing a bar date for filing proofs of Claim in the Chapter 11 Cases; (ii) establishing ramifications for failure to comply therewith; (iii) approving a proof of Claim form and notice of the Bar Date; and (iv) approving notice procedures.

12.     *Black Butte*: means Black Butte Coal Company, a joint venture owned 50% by Coal Side Debtor KCP, Inc. and 50% by unrelated non-Debtor third party Bitter Creek Coal Company, which is a subsidiary of Anadarko Petroleum Corporation (a subsidiary of Occidental Petroleum), pursuant to that certain Black Butte Coal Company Agreement dated January 1, 1974,

3

4853-0731-7214

as amended from time to time. Black Butte operates an open cut (surface) mine in the Green River Basin, located in Sweetwater County, Wyoming.

13.     *Black Butte Interest*: means the 50% joint venture interest held in Black Butte Coal Company by Coal Side Debtor KCP, Inc.

14.     *Black Butte Reclamation Budget*: means the budget for the completion of Reorganized KCP, Inc.'s 50% responsibility for the Black Butte Reclamation Plan, which budget is approved by the Reclamation Trust Entity Board and the Sureties.

15.     *Black Butte Reclamation Plan*: means the Reclamation Plan for Black Butte, to be completed when Black Butte ceases active mining operations.

16.     *Business Day*: means any day on which commercial banks are open for business, and not authorized to close, in New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a).

17.     *Cash*: means legal tender of the United States of America.

18.     *Cash Collateral Order*: means the interim and final orders authorizing the Debtors to use cash collateral, and granting adequate protection to the Senior Secured Lenders or otherwise in form and substance reasonably acceptable to the Debtors and the Consenting Stakeholders, as such may be amended or modified from time to time in accordance with the terms thereof or by stipulation among the Debtors and the Consenting Stakeholders and approval thereof by the Bankruptcy Court, including the interim order entered in the Chapter 11 Cases at Docket No. 39, the final order entered at Docket No. 152, and Stipulation entered at Docket No. 215.

19.     *Causes of Action*: means any and all claims, causes of actions, cross-claims, counterclaims, third-party claims, indemnity claims, reimbursement claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, liens, indemnities, guarantees, suits, obligations, liabilities, accounts, offsets, recoupments, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on, or after the Petition Date, including through the Effective Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, the term "Causes of Action" shall include: (i) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or in equity; (ii) the right to object to Claims; (iii) all claims pursuant to Bankruptcy Code sections 362, 510, 542, 543, 544 through 550, 552, or 553; (iv) all claims and defenses, including fraud, mistake, duress, and usury and any other defenses set forth in Bankruptcy Code section 558; and (v) any state law fraudulent transfer claims.

20.     *Chapter 11 Cases*: means the cases commenced by the Debtors under chapter 11 of the Bankruptcy Code.

21.     *Claim*: means a "claim" against any Debtor, as such term is defined in Bankruptcy Code section 101(5).

4

4853-0731-7214

22.     *Claims Objection Deadline*: means the first Business Day that is the later of (i) one-hundred eighty (180) days after the Effective Date or (ii) such other later date the Court may establish upon a motion by the Debtors or the Reclamation Trust Entity.

23.     *Class*: means a category of Claims or Equity Interests classified under Article III of the Plan pursuant to Bankruptcy Code section 1122.

24.     *Class A Reclamation Trust Entity Interests*: means interests in the Reclamation Trust Entity issued to the Senior Secured Lenders as beneficiaries, with RCF VI as agent, in exchange for the share of the Reorganized Lighthouse Equity Interests held by the Senior Secured Lenders, which Reorganized Lighthouse Equity Interests are received as part of the full and final satisfaction of their claims against all of the Debtors. The Class A Reclamation Trust Entity Interests shall be fully transferrable.

25.     *Class B Reclamation Trust Entity Interests*: means interests in the Reclamation Trust Entity issued to the Class B Reclamation Trust Entity Interests Agent as the beneficiary on behalf of the holders of the General Unsecured Claims of all of the Debtors in exchange for such holders' share of Reorganized Lighthouse Equity Interests received in full and final satisfaction of such creditors' Claims.

26.     *Class B Reclamation Trust Entity Interests Agent*: means a Person appointed by the majority agreement of representatives from the three holders of General Unsecured Claims with the largest Allowed Claims against the Debtors and pursuant to the terms of the Reclamation Trust Entity Agreement, which Person shall be responsible for holding the Class B Reclamation Trust Entity Interests and for making pro rata distributions to the holders of General Unsecured Claims on behalf of their Allowed Claims.

27.     *Coal Act*: means The Coal Industry Retiree Health Benefit Act of 1992 codified at 26 U.S.C. § 9701, et. seq., as it may be amended from time to time.

28.     *Coal Side Debtors*: means, collectively, each of the following: Lighthouse, LHR Coal, LLC, KCP, Inc., Big Horn Coal Company, Rosebud Coal Sales Company, KCP Properties, Inc., Decker Holding Company, LLC, Decker Coal Company, LLC, and Montana Royalty Holdings, LLC.

29.     *Committee*: means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, if any.

30.     *Confirmation*: means the entry, within the meaning of Bankruptcy Rules 5003 and 9021, of the Confirmation Order on the docket of the Chapter 11 Cases by the Court.

31.     *Confirmation Date*: means the date upon which Confirmation occurs.

32.     *Confirmation Hearing*: means the hearing held by the Court pursuant to Bankruptcy Rule 3020(b)(2) and Bankruptcy Code section 1128, including any adjournments thereof, at which the Court will consider confirmation of the Plan, the adequacy of information in the Disclosure Statement and other related matters.

4853-0731-7214

33.     *Confirmation Order*: means the order entered by the Court confirming the Plan pursuant to Bankruptcy Code section 1129, which order shall be substantially consistent in all respects with the terms and conditions of the Restructuring Support Agreement and Reclamation Trust Entity Agreement, and otherwise in form and substance reasonably acceptable to the Debtors and the Consenting Stakeholders.

34.     *Consenting Stakeholders*: means the Prepetition Secured Lenders and the Sureties.

35.     *Court*: means (i) the United States Bankruptcy Court for the District of Delaware, (ii) if there is no reference pursuant to section 157 of title 28 of the United States Code, the United States District Court for the District of Delaware, and (iii) any other court having jurisdiction over the Chapter 11 Cases or proceedings arising therein.

36.     *CWA*: means the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, as amended.

37.     *Debtors*: means, collectively, each of the filing debtors in these Chapter 11 Cases, including the Coal Side Debtors and the Millennium Debtors.

38.     *Decker Mine*: means the approximately 12,000 acres of surface estate located in the northwestern section of the Powder River Basin in Big Horn County, Montana, adjacent to the border of Wyoming, permitted and operated as a surface coal mine that is owned and operated by Coal Side Debtors Decker Coal Company, LLC and Montana Royalty Holdings, LLC.

39.     *Decker Reclamation Budget*: means the budget, which shall not be in excess of the Reclamation Sinking Fund Benchmark, for the completion of the Decker Reclamation Plan, which budget is approved by the Reclamation Trust Entity Board and the Sureties.

40.     *Decker Reclamation Plan*: means the Reclamation Plan for the Decker Mine and includes any remaining reclamation related to the former operations of Coal Side Debtor Big Horn Coal Company.

41.     *Definitive Documents*: means, pursuant to the Restructuring Support Agreement: (i) the Restructuring Support Agreement; (ii) the Disclosure Statement and its exhibits, including procedures for Solicitation, and the motion seeking approval of the same; (iii) the Disclosure Statement Order and its exhibits, including the other Solicitation Package; (iv) the Plan; (v) the Confirmation Order and pleadings in support of its entry; (vi) the Plan Supplement; (vii) the first-day pleadings that the Debtors file contemporaneously with the commencement of the Chapter 11 Cases and all orders sought pursuant thereto; (viii) the Cash Collateral Orders; (ix) the Reclamation Trust Entity Agreement; (x) the Reclamation Sinking Fund Agreement; (xi) the New Organizational Documents; and (xii) the Reclamation Trust Entity Bonding Agreement.

42.     *Disclosure Statement*: means the Disclosure Statement for the First Amended Joint Plan of Debtors under Chapter 11 of the Bankruptcy Code, dated January 27, 2021, filed contemporaneously herewith.

6

4853-0731-7214

43.     *Disputed*: means, with respect to any Claim or Equity Interest, other than a Claim or Equity Interest that has been Allowed pursuant to the Plan or a Final Order, a Claim or Equity Interest (i) that is listed in the Schedules (to the extent the Debtors file Schedules in the Chapter 11 Cases) as unliquidated, contingent, or disputed, and as to which no request for payment or proof of Claim or Equity Interest has been filed, (ii) as to which a proper request for payment or proof of Claim or Equity Interest has been filed, but with respect to which an objection or request for estimation has been filed and has not been withdrawn or determined by a Final Order, (iii) that is disputed in accordance with the provisions of the Plan, or (iv) that is otherwise subject to a dispute that is being adjudicated, determined, or resolved in accordance with applicable law, pursuant to Article VI.A of the Plan.

44.     *Disputed Claims Reserve*: means one or more interest-bearing accounts, held and maintained by the Reclamation Trust Entity, containing Cash in an amount or amounts reasonably acceptable to the Debtors and the Consenting Stakeholders and approved by the Court, solely for the purpose of paying Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims that are Disputed or not yet Allowed as of the Effective Date and not paid prior to the Effective Date or as part of the distributions provided for under the Plan, but that are or become Allowed after the Effective Date, and the administration thereof.

45.     *Effective Date*: means the date which is the first Business Day selected by the Debtors, upon consultation with the Consenting Stakeholders, on which (a) all of the conditions to the occurrence of the Effective Date specified in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan and (b) no stay of the Confirmation Order is in effect.

46.     *Employee Benefits Agreement*: means each and collectively all employment, retirement, severance, indemnification, and similar or related agreements, arrangements, plans and policies with the members of the Debtors' management team or directors as of the Petition Date, other than such benefits for former employees of MBTL and Retirees.

47.     *Employment Agreements*: means any employment agreement or similar benefits agreement between any executive, contractor, or other employee of any of the Debtors.

48.     *Entity*: means an "entity" as such term is defined in Bankruptcy Code section 101(15).

49.     *Equity Interest*: means any "equity security" (as such term is defined in Bankruptcy Code section 101(16)) in any of the Debtors, including any issued and outstanding or authorized but unissued share of common stock, preferred stock, membership interest in a limited liability company, or other instrument evidencing an ownership interest in one of the Debtors, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interest in any of the Debtors (including any stock-based performance award, incentive stock option, restricted stock, restricted stock unit, stock appreciation right, dividend equivalent, or other stock based award) that existed immediately prior to the Effective Date, and any Claim against any of the Debtors subordinated pursuant to Bankruptcy Code section 510(b).

7

4853-0731-7214

50.     *Estate*: means the estate of any Debtor created in the applicable Debtor's chapter 11 case pursuant to Bankruptcy Code section 541.

51.     *Exchange Act*: means the Securities Exchange Act of 1934, as amended.

52.     *Exculpated Parties*: means (i) each Debtor, (ii) each Debtor's officers, directors, managers, principals and members who served as such between the Petition Date and Plan Effective Date and (iii) the Debtors' professionals retained during the chapter 11 case.   .

53.     *Executory Contract*: means a contract to which one or more Debtors is a party that is subject to assumption or rejection under Bankruptcy Code section 365, including, but not limited to, each Existing Benefits Agreement.

54.     *Existing Indemnity Agreements*: means the existing indemnity agreements between the Debtors, the Sureties, and other third parties, to secure the Reclamation of the Decker Mine, the Black Butte Mine, and operations at Coal Side Debtor Big Horn Coal Company, including without limitation (i) that certain Agreement of Indemnity dated June 11, 2014 by and between Westchester, as Surety, and Ambre Energy Limited, Ambre Energy North America, Inc. (n/k/a Lighthouse Resources Inc.), Decker Coal Company, Black Butte Coal Company, and KCP, Inc., and any amendments thereto; (ii) that certain Amended and Restated General Agreement of Indemnity dated September 18, 2015 by and between Zurich, as Surety, and Lighthouse Resources Inc., LHR Coal, LLC, LHR Infrastructure, LLC, LHR Coal Marketing, LLC, Decker Coal Company, LLC, Black Butte Coal Company, Rosebud Coal Company, Big Horn Coal Company, KCP, Inc., KCP Properties, Inc., and Decker Holding Co. LLC as Continuing Indemnitors and New Indemnitors, and any amendments thereto; and (iii) that certain General Indemnity Agreement dated June 12, 2014 by and between Atlantic, as surety, and Ambre Energy North America, Inc., Ambre Energy Limited (Australia), AE Minerals Pty Ltd, AE Coal LLC, AE Infrastructure LLC, AE Coal Marketing LLC, AE Alternative Fuels LLC, AE Wind River LLC, Decker Coal Company, Black Butte Coal Company, Rosebud Coal Sales Company, and Big Horn Coal Company, and any amendments thereto, and that certain General Indemnity Agreement dated November 10, 2016 by and between Atlantic, as surety, and Lighthouse Resources Inc., LHR Coal, LLC, LHR Infrastructure, LLC, Lighthouse Products, LLC, KCP, Inc., Big Horn Coal Company, Rosebud Coal Sales Company, KCP Properties, Inc., Decker Holding Co., LLC, Decker Coal Company, LLC, and Montana Royalty Holdings, LLC, and any amendments thereto.

55.     *Fee Claim*: means a Claim for Accrued Professional Compensation.

56.     *Final Order*: means an order or judgment of the Court or any other court or adjudicative body of competent jurisdiction that has not been modified, amended, reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have

8

4853-0731-7214

expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, Bankruptcy Rule 9024 or Bankruptcy Code Section 502(j), or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

57.     *General Unsecured Claim*: means any Claim against any of the Debtors that is not Secured or entitled to priority under the Bankruptcy Code or an order of the Court, including any Rejection Damage Claim, other than (i) an Intercompany Claim or (ii) any Claim against any of the Debtors subordinated pursuant to Bankruptcy Code section 510(b). For the avoidance of doubt, and without deciding whether and when Reclamation Liabilities are or are not Claims, Reclamation Liabilities shall not be considered General Unsecured Claims for purposes of this Plan.

58.     *Governmental Unit*: has the meaning set forth in Bankruptcy Code section 101(27).

59.     *Initial Working Capital Funding Amount*: means Three Million Dollars ($3,000,000) Cash released by the Sureties, other than Westchester, to Reorganized LHR Coal, LLC within ten (10) days after the Effective Date from the Sureties', other than Westchester's, existing collateral held on behalf of the Debtors as provided in the Restructuring Support Agreement and the Reclamation Trust Entity Agreement.

60.     *Insured Claim*: means any Claim or portion of a Claim that is, or may be, insured under any of the Debtors' insurance policies.

61.     *Intercompany Claim*: means any Claim held by any Debtor against any other Debtor.

62.     *Intercompany Interests*: means an Equity Interest in any Debtor, or a direct subsidiary of any Debtor, other than an Equity Interest in Lighthouse.

63.     *Impaired*: means, when used with respect to Claims or Equity Interests, Claims or Equity Interests that are "impaired" within the meaning of Bankruptcy Code section 1124.

64.     *Lien* or *liens*: means, with respect to any asset or property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages or hypothecation to secure payment of a debt or performance of an obligation, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of holders of General Unsecured Claims; provided, however, that a lien that has or may be avoided pursuant to any Causes of Action shall not constitute a lien hereunder.

9

4853-0731-7214

65. *Lighthouse*: means Debtor Lighthouse Resources Inc.

66. *Millennium Debtors*: means LHR Infrastructure, LLC ("*LHR Infrastructure*"), Millennium Bulk Terminals-Longview, LLC ("*MBTL*"), Barlow Point Land Company, LLC ("*Barlow Point*"), Columbia Land Co., LLC ("*Columbia Land*"), Gulf States Bulk Terminal, LLC.

67. *Montana*: means the State of Montana, together with any divisions, departments, or agencies thereof.

68. *New Organizational Documents*: means each of the operating agreements or other constitutional documents contemplated by the Plan and the Reclamation Trust Entity Agreement for the Reorganized Debtors, as applicable.

69. *Non-Debtor Subsidiaries*: means Lighthouse Products, LLC.

70. *Other Secured Claim*: means any Claim that is Secured, other than a Senior Secured Claim.

71. *Person*: means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other Entity.

72. *Petition Date*: means December 3, 2020, the date on which the Debtors commenced the Chapter 11 Cases.

73. *Plan*: means this second amended chapter 11 plan, together with all addenda, exhibits, schedules, or other attachments, if any, including the Plan Supplement, each of which is incorporated herein by reference, and as the same may be amended, modified, or supplemented from time to time in accordance with the terms hereof.

74. *Plan-Related Action*: means any act taken or omitted to be taken in connection with, or arising from or relating in any way to, the Chapter 11 Cases or the management, operation, and reorganization of the Debtors' businesses and operations, including but not limited to, (a) negotiation, formulation and preparation of the Restructuring Support Agreement; (b) the management and operation of the Debtors' businesses and the discharge of their duties under the Bankruptcy Code during the pendency of the Chapter 11 Cases; (c) implementation of any of the transactions provided for, or contemplated in, the Plan or the Plan Supplement; (d) any action taken in the negotiation, formulation, development, proposal, solicitation, disclosure, Confirmation, or implementation of the Plan or Plan Supplement; (e) formulating, negotiating, preparing, disseminating, implementing, administering, confirming, and/or effecting the Reclamation Trust Entity Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the issuance of Reclamation Trust Entity Interests in connection with the Plan, and any related contract, instrument, release or other agreement or document created or entered into in connection therewith (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan); (f) the administration of the Plan or the assets and property to be distributed pursuant to the Plan; (g) any other prepetition or

10

4853-0731-7214

postpetition act taken or omitted to be taken in connection with or in contemplation of the bankruptcy of the Debtors; and (h) the preparation and filing of the Chapter 11 Cases.

75. *Plan Scheduling Motion*: means the motion filed by the Debtors in the Chapter 11 Cases on December 22, 2020 at Docket No. 107, seeking entry of an order (a) scheduling the Confirmation Hearing, (b) approving the form and notice of the Confirmation Hearing, (c) establishing procedures for objections to the Solicitation Procedures, the Disclosure Statement, and the Plan, (d) approving Solicitation Procedures, and (e) granting related relief.

76. *Plan Scheduling Order*: means the order granting the Plan Scheduling Motion entered by the Court in the Chapter 11 Cases at Docket No. 288.

77. *Plan Supplement*: means the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be filed with the Court on notice to parties in-interest, including, but not limited to, the following, each of which must be substantially consistent in all respects with the terms and conditions of the Restructuring Support Agreement and otherwise in form and substance reasonably acceptable to the Debtors and to the Consenting Stakeholders: (i) the Reclamation Trust Entity Agreement; (ii) the identity and affiliations of the members of the Reclamation Trust Entity Board; (iii) the identity of the Reclamation Trust Entity Representative and the terms of the Reclamation Trust Entity Representative's compensation; (iv) the Reclamation Sinking Fund Agreement; (v) the Schedule of Assumed Executory Contracts and Unexpired Leases; (vi) the New Organizational Documents; (vii) the Reclamation Trust Entity Bonding Agreements; and (viii) a proposed Reclamation Trust Entity Budget. The Debtors shall file forms of the materials comprising the Plan Supplement no later than the Plan Supplement Filing Date.

78. *Plan Supplement Filing Date*: means the date that is ten (10) days prior to the Voting Deadline.

79. *Post-Effective Date Assets*: shall have the meaning set forth in Article IV.B.3 hereof.

80. *Priority Non-Tax Claims*: means any Claim other than an Administrative Claim or a Priority Tax Claim that is entitled to priority in payment as specified in Bankruptcy Code section 507(a).

81. *Priority Tax Claim*: means any Secured or unsecured Claim of the kind entitled to priority in payment as specified in Bankruptcy Code sections 502(i) and 507(a)(8).

82. *Professional*: means any professional employed or retained in the Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 363, or 1103.

83. *Pro Rata*: means, means proportionally so that with respect to any Allowed Claim, the ratio of: (i) (A) the amount of property distributed on account of such Allowed Claim to (B) the amount of such Allowed Claim, is the same as the ratio of (ii) (A) the amount of property distributed on account of all Allowed Claims of the same priority or Class in which such Allowed Claim is included to (B) the amount of all Allowed Claims of that priority or in that class.

11

4853-0731-7214

84.     *RCF $55MM Loan Agreement*: means that Third Amended and Restated Loan Agreement dated December 22, 2014 between Lighthouse (f/k/a Ambre Energy North America, Inc.) as borrower and RCF V (as amended, modified, supplemented, or restated from time to time), pursuant to which RCF V made loans to Lighthouse in the principal amount of Fifty-Five Million Dollars ($55,000,000) ("*$55MM Loan*").

85.     *RCF $80MM Loan Agreement*: means the Loan Agreement dated December 22, 2014 between Lighthouse (f/k/a Ambre Energy North America, Inc.) as borrower and RCF VI (as amended, modified, supplemented, or restated from time to time), pursuant to which RCF VI agreed to make loans to Lighthouse up to the principal amount of Eighty Million Dollars ($80,000,000) ("*$80MM Loan*").

86.     *RCF $60MM Reimbursement Agreement*: means the Amended and Restated Reimbursement Agreement dated December 22, 2014, between Lighthouse (f/k/a Ambre Energy North America, Inc.) as borrower and RCF VI (as amended, modified, supplemented, or restated from time to time), pursuant to which RCF VI agreed to make available letters of credit up to the aggregate amount of Sixty Million Dollars ($60,000,000) ("*$60MM Facility*"). The debt under the $60MM Facility is secured by the security documents related to the $137.5MM Loan. The aggregate amount of letters of credit supported by RCF VI pursuant to the $60MM Reimbursement Agreement is $22,000,000. On or around September 24, 2020, Atlantic, as surety, drew on its letter of credit in the amount of $13,125,000, the amount of which became a "Reimbursement Loan" as that term is defined in the $60MM Reimbursement Agreement.

87.     *RCF $137.5MM Loan Agreement*: means the Agreement dated May 24, 2016, which was amended and restated on June 28, 2019, between Lighthouse (as borrower) and RCF VI and RCF Annex (as amended, modified, supplemented, extended or restated from time to time) (the loans pursuant to the RCF $137.5 Loan Agreement, the "*$137.5MM Loan*"), whereby RCF VI and RCF Annex loaned to Lighthouse an aggregate of One Hundred Million Dollars ($100,000,000) (the "$100MM Loan"), and RCF VI, through the June 28, 2019 amendment and restatement of the Loan Agreement and several amendments thereto, agreed to lend Lighthouse up to the principal amount of Thirty Seven Million Five Hundred Thousand Dollars ($37,500,000) (the *"$37.5MM Loan"*).

88.     *Reclamation*: means reclamation, remediation, revegetation, recontouring, abatement, restoration, mitigation, monitoring, water treatment, mine drainage, and control or prevention of adverse effects of mining activities required pursuant to any applicable law, including SMCRA, the Montana Surface and Underground Mining Reclamation Act, licenses, leases, permits or the Clean Water Act.

89.     *Reclamation Governmental Authorities*: means any government or governmental or regulatory body thereof, or political subdivision thereof, or any agency, authority, department, commission, board, bureau, official or instrumentality of such body, whether foreign, federal, state, or local, or any agency, instrumentality, or authority thereof, that regulate or are otherwise involved in the regulation, administration, or any other governance of Reclamation.

90.     *Reclamation Liabilities*: means all liabilities to Reclamation Governmental Authorities for Reclamation arising out of or related to any legal obligation or duty of any of the

12

4853-0731-7214

Coal Side Debtors to perform or complete Reclamation with respect to any property owned, leased, used, or impacted by any of them in the course of their operations, other than Reclamation Taxes. Exhibit F to the Disclosure Statement sets forth all bonds, letters of credit, guarantees, or collateral that have been posted, pledged, or deposited by or on behalf of the Debtors in connection with the Reclamation Liabilities. The failure to schedule any such bonds, letters of credit, guarantees or collateral shall not be deemed to be a release or waiver of any rights thereunder. For the avoidance of doubt, Reclamation Liabilities shall not include any penalties, fines, fees, or other rights to payment relating to Reclamation (other than any costs of performance of Reclamation by any Reclamation Governmental Authorities) arising from prepetition conduct.

91.     *Reclamation Plans*: means the plans consistent with applicable non-bankruptcy law to fulfill the Debtors' obligations under SMCRA, CWA, the Montana Surface and Underground Mining Reclamation Act, or similar state law for the Reclamation, and approved by the applicable Reclamation Governmental Authorities (including without limitation, Montana), with respect to any property owned, leased, used or impacted by (i) Coal Side Debtors Decker Holding Company, LLC, Decker Coal Company, LLC, and Montana Royalty Holdings, LLC in the course of their operations of the Decker Mine, or otherwise; (ii) Coal Side Debtor Big Horn Coal Company; and (iii) Black Butte. The Consenting Stakeholders must approve (i) any Reclamation Plans submitted by the Reorganized Debtors to Reclamation Governmental Authorities, and (ii) the acceptance by the Reorganized Debtors of any changes to the Reclamation Plans that may be required by the Reclamation Governmental Authorities. Nothing in this paragraph shall be construed to limit any right of a Governmental Unit against any Entity regarding the Reclamation or the Reclamation Plans.

92.     *Reclamation Sinking Fund Agreement*: means the agreement among the Senior Secured Lenders, the Sureties, and the Reclamation Trust Entity required by the terms of the Restructuring Support Agreement and Reclamation Trust Entity Agreement governing the holding and management of the Reclamation Sinking Fund.

93.     *Reclamation Sinking Fund*: means Cash maintained in a segregated account by the Reclamation Trust Entity held on behalf of the Reorganized Debtors as security for their reclamation obligations as provided in the Restructuring Support Agreement and the Reclamation Trust Entity Agreement in an amount not to exceed the Reclamation Sinking Fund Benchmark that may be used by the Reclamation Entity Trust Representative to pay for the costs of performing and completing the Decker Reclamation Plan, reclamation expenditures under the Black Butte Reclamation Plan, payment of obligations under applicable indemnity agreements, and payment of annual fees to the Sureties, which fund will be comprised of (i) $56,344,000 (plus any interest earnings thereon, if any) in collateral held by the Sureties, other than Westchester, released to the Reclamation Sinking Fund after approval of the Decker Reclamation Plan as provided in the Reclamation Trust Entity Agreement, which amount shall be exclusive of $1,000,000 in collateral to be retained by Zurich to secure the obligations it may have under that certain Indemnity Bond Given by Self-Insurer Under the Provisions of the Federal Coal Mine Health and Safety Act of 1969, as amended, Zurich bond No. 09093733 (the "*Black Lung Bond*"); (ii) $1,921,000 (plus any interest earnings thereon, if any) in collateral held by Westchester released to the Reclamation Sinking Fund after a 60% reduction of the penal sum of Westchester bond no. K08898339 by Montana after completion of phase I of the Decker Reclamation Plan for areas bonded by Westchester; (iii) contributions by KCP, Inc., of a percentage of net after-tax distributions to KCP,

13

Inc. from Black Butte as provided in the Reclamation Trust Entity Agreement; and (iv) contributions by the applicable Reorganized Debtors of a percentage of Cash received from the sale of any of the Coal Side Debtors' Assets, with such contributions as provided in the Reclamation Trust Entity Agreement in a manner consistent with the terms of the Restructuring Support Agreement and the Reclamation Trust Entity Agreement.

94.     *Reclamation Sinking Fund Benchmark*: means an amount of Cash sufficient to (i) cover the Reclamation Liabilities for completion of the Decker Reclamation Plan and (ii) cover the Reclamation Liabilities for completion of KCP, Inc.'s 50% share of the costs of the Black Butte Reclamation Plan; provided that the calculation of the Reclamation Sinking Fund Benchmark as related to Reclamation Liabilities for completion of the Black Butte Reclamation Plan shall include consideration of any existing collateral, cash held at Decker Coal Company, LLC and Black Butte, and any contributions required and due from the other joint venture interest owners of Black Butte, less the Cash on hand held by the Reclamation Trust Entity as provided in the Reclamation Trust Entity Agreement.

95.     *Reclamation Taxes*: means any taxes imposed upon the Debtors or the Reclamation Trust Entity as a result of the application of section 468(a)(4) or (5) of the Internal Revenue Code or the regulations thereunder, or any successor provisions or similar provisions of any state or local tax laws.

96.     *Reclamation Trust Entity*: means the trust or other legal Entity (as determined by the Debtors and the Consenting Stakeholders in their reasonable discretion in accordance with the terms of the Restructuring Support Agreement and Reclamation Trust Entity Agreement) established on the Effective Date to, among other things: (i) take transfer of, and issue, the Reclamation Trust Entity Interests in accordance with the Plan; (ii) own, monetize, and oversee the operation of the remainder of the Coal Side Debtors' businesses and operations in a controlled, efficient and value-maximizing manner; (iii) own or terminate the existence of and monetize any remaining assets of the Millennium Debtors; (iv) make distributions in accordance with the Plan and Reclamation Trust Entity Agreement; (v) oversee and administer (a) the termination of the Debtors' qualified 401(k) retirement plans and any related trusts and the distribution of such plans' assets to participants and for fulfilling statutory and regulatory requirements related to such plans and (b) any statutory and regulatory requirements related to any terminated Debtor employee benefit plans; (vi) oversee the completion of the Decker Reclamation Plan, and (vii) perform such other services as are contemplated by the Plan and the Reclamation Trust Entity Agreement, all as more fully described in Article IV.B.1 and 2.

97.     *Reclamation Trust Entity Agreement*: means the organizational or governance documents setting forth the terms and conditions governing the Reclamation Trust Entity, including distributions to the Reclamation Trust Entity Interests, which shall be substantially consistent in all respects with the terms and conditions of the Restructuring Support Agreement and the Plan and otherwise reasonably acceptable to the Debtors and the Consenting Stakeholders, after consultation with the Reclamation Governmental Authorities.

98.     *Reclamation Trust Entity Board*: means the governing body of the Reclamation Trust Entity, as initially comprised as set forth in the Plan Supplement and as comprised thereafter in accordance with the terms of the Reclamation Trust Entity Agreement.

14

The initial members of the Reclamation Trust Entity Board shall be identified in the Plan Supplement, after consultation with the Reclamation Governmental Authorities, and designated in accordance with the terms of the Reclamation Trust Entity Agreement and the Plan.

99.    *Reclamation Trust Entity Bonding Agreement*: means (a) the Existing Indemnity Agreements between the Debtors, the Sureties, and other third parties, which are being assumed by the Debtors and shall remain in full force and effect and unimpaired under the Plan with respect to the Debtor parties thereto, Zurich and Atlantic expressly agreeing to release LHR Infrastructure from any obligations under the Existing Indemnity Agreements, and (b) an indemnity agreement and other agreements pursuant to which the Reorganized Coal Side Debtors each agree, on a joint and several basis, to indemnify the Sureties for, among other things, any losses incurred as a consequence of issuing the bonds pursuant to the Existing Indemnity Agreements, which, among other things, will provide that such agreements will not impact, modify or otherwise alter the Sureties' rights under the Existing Indemnity Agreements, which rights shall be preserved, unimpaired, and unmodified; provided, however, the Sureties agree that they will not pursue any such rights under the indemnity agreements against Black Butte unless and until there is a material anticipatory default, to be determined in the reasonable, good faith discretion of the Sureties or a default under the Plan or other Definitive Documents, and any statutes of limitations with respect to such rights shall be tolled.

100.    *Reclamation Trust Entity Budget*: means the budget, which includes the Decker Reclamation Budget and the Black Butte Reclamation Budget, for funding (i) the completion of the Decker Reclamation Plan, (ii) KCP, Inc.'s 50% share of the obligations related to the Black Butte Reclamation Plan, but which Reclamation is implemented by Black Butte, not the Reclamation Trust Entity, (iii) the management and operations of the Debtors' businesses and operations, and (iv) accomplishing all other objectives of the Reclamation Trust Entity. It is contemplated that the Reclamation Trust Budget shall, over time, be updated by the Reclamation Trust Entity Board as contemplated by the Reclamation Trust Entity Agreement.

101.    *Reclamation Trust Entity Interests*: means collectively the Class A Reclamation Trust Entity Interests and the Class B Reclamation Trust Entity Interests.

102.    *Reclamation Trust Entity Representative*: means the Person or firm, which may be a trustee, to be appointed by Consenting Stakeholders in their sole discretion, after consultation with the Reclamation Governmental Authorities, to manage the day-to-day operations of Reclamation Trust Entity pursuant to the Plan and the Reclamation Trust Entity Agreement. The Reclamation Trust Entity Representative may be an employee of Reorganized Lighthouse or any of the other Reorganized Coal Side Debtors, a member of the Reclamation Trust Entity Board, or either of them. The Reclamation Trust Entity Representative may be Reorganized Lighthouse or any of the other Reorganized Coal Side Debtors.

103.    *Record Date*: means, for purposes of making distributions under the Plan on the Effective Date, (i) the Confirmation Date, for holders of Claims or (ii) the Effective Date, for holders of Equity Interests.

104.    *Reinstated*: means, with respect to a Claim, (a) in accordance with Bankruptcy Code section 1124(1), being treated such that the legal, equitable, and contractual

15

4853-0731-7214

rights to which such Claim entitles its holder are left unaltered, or (b) if applicable under Bankruptcy Code section 1124: (i) having all prepetition and postpetition defaults with respect thereto other than defaults relating to the insolvency or financial condition of the Debtors or their status as debtors under the Bankruptcy Code cured, (ii) having its maturity date reinstated, (iii) compensating the holder of such Claim for damages incurred as a result of its reasonable reliance on a provision allowing the Claim's acceleration, and (iv) not otherwise altering the legal, equitable and contractual rights to which the Claim entitles the holder thereof.

105.   *Rejection Damage Claims*: means Claims for damages arising from the rejection of Executory Contracts or Unexpired Leases.

106.   *Released Parties*: means each of: (a) the Debtors, (b) the Reclamation Trust Entity; (c) each of the Sureties; (d) each of the Senior Secured Lenders in their capacities as lender to Lighthouse and beneficiaries of guarantees of the Debtors (other than Lighthouse); (e) each of the Senior Secured Lenders in their capacities as shareholders of Lighthouse; and (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entity's predecessors, successors and assigns, current and former affiliates, subsidiaries, funds, portfolio companies, and management companies; and (g) with respect to each of the foregoing Persons in clauses (a) through (f), each of their respective current and former officers, directors, managers, members, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives (each solely in their capacity as such).

107.   *Releasing Parties*: means each of: (a) the Debtors, (b) the Reclamation Trust Entity; (c) each of the Sureties; (d) each of the Senior Secured Lenders; (e) all holders of Claims who (1) vote to accept the Plan or (2) abstain from voting or vote to reject the Plan and do not elect on their Ballot to opt out of the release contained in Article V.F and holders of Equity Interests; (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entity's predecessors, successors and assigns, current and former affiliates, subsidiaries, funds, portfolio companies, and management companies; and (g) with respect to each of the foregoing Persons in clauses (a) through (f), each of their respective current and former officers, directors, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents and other representatives (each solely in their capacity as such), provided, however, a Governmental Unit shall not be a Releasing Party under Article V.F.

108.   *Reorganized Coal Side Debtors*: means each of the Coal Side Debtors (except for Decker Holding Company, LLC) following cancellation of their existing Equity Interests in same pursuant to the Plan and after issuance of new Equity Interests in same pursuant to the Plan and execution of the New Organizational Documents. The use of the term "*Reorganized*" before the name of any of the individual Coal Side Debtors shall mean such entity is a Reorganized Coal Side Debtor, that is, Reorganized Lighthouse, Reorganized LHR Coal, LLC, Reorganized KCP, Inc., Reorganized Big Horn Coal Company, Reorganized Rosebud Coal Sales Company, Reorganized KCP Properties, Inc., Reorganized Decker Coal Company, LLC, and Reorganized Montana Royalty Holdings, LLC. Except with respect to assets specifically designated to vest in the Reclamation Trust Entity under the Plan or Reclamation Trust Entity Agreement, the assets of each Coal Side Debtor shall remain in or otherwise automatically vest in the applicable Reorganized Coal Side Debtor.

16

4853-0731-7214

109.  *Reorganized Debtors*: means each of the Reorganized Coal Side Debtors and Reorganized Millennium Debtors.

110.  *Reorganized Millennium Debtors*: means each of the Millennium Debtors (except for Gulf States Bulk Terminal, LLC) following cancellation of their existing Equity Interests in same pursuant to the Plan and after issuance of new Equity Interests in same pursuant to the Plan and execution of the New Organizational Documents, if such issuance of new Equity Interests occurs as permitted by this Plan. The use of the term "*Reorganized*" before the name of any of the individual Millennium Debtors shall mean such entity is a Reorganized Millennium Debtor, that is Reorganized LHR Infrastructure, LLC, Reorganized Millennium Bulk Terminals-Longview, LLC, Reorganized Barlow Point Land Company, LLC, and Reorganized Columbia Land Co., LLC. The assets of any of the Millennium Debtors shall vest as specifically provided in the Plan or, if not so addressed and except with respect to assets specifically designated to vest in the Reclamation Trust Entity under the Plan or Reclamation Trust Entity Agreement, the assets of each Millennium Debtor shall remain in or otherwise automatically vest in the applicable Reorganized Millennium Debtor.

111.  *Reserves*: means, collectively, the Accrued Professional Compensation Account, the Allowed Claims Reserve, and the Disputed Claims Reserve.

112.  *Restructuring Support Agreement*: means the agreement, including all exhibits and supplements annexed thereto (as it may be amended, supplemented, or otherwise modified from time to time) among the Debtors, the Senior Secured Lenders, and the Sureties, a copy of which is attached as Exhibit B to the Disclosure Statement.

113.  *Retiree Benefits*: means all employment, retirement, and similar or related agreements, arrangement, plans, and policies offered to Retirees, including but not limited to the Big Horn Coal Company Pension Plan (Amended and Restated as of January 1, 2007), the Big Horn Medical Plan as amended January 1, 2020, and the Decker Coal Company Pension Plan.

114.  *Retirees*: means retired employees of Decker Coal Company, LLC and Big Horn Coal Company and their spouses and dependents who are eligible to receive Retiree Benefits.

115.  *Schedule of Assumed Executory Contracts and Unexpired Leases*: means the schedule of Executory Contracts and/or Unexpired Leases to be assumed by the Debtors pursuant to the Plan in the form filed as part of the Plan Supplement (as the same may be amended, modified, or supplemented from time to time), which shall be in form and substance reasonably acceptable to the Debtors and the Consenting Stakeholders.

116.  *Schedules*: means the schedules of assets and liabilities, statements of financial affairs, filed with the Court by the Debtors, including any amendments or supplements thereto.

117.  *Secured*: means when referring to a Claim: (a) secured by a Lien on property in which any of the Estates has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined

17

4853-0731-7214

pursuant to Bankruptcy Code section 506(a) or (b) otherwise Allowed pursuant to the Plan as a Claim that is Secured.

118. *Securities Act*: means the Securities Act of 1933, as amended.

119. *Senior Secured Claims*: means any and all Claims of the Senior Secured Lenders against any of the Debtors arising under or relating to the Senior Secured Loan Agreements that the Senior Secured Lenders allege are secured by or encumber assets of the Debtors or any of them, which Claim amount is Allowed in the amount of the lesser of (i) $256,023,552.89 as of December 1, 2020 or (ii) the sum of (x) the reasonable value of the Class A Reclamation Trust Entity Interests, (y) the proceeds from the sale of the Millennium Debtors' assets, and (z) value of any replacement lien granted under the Cash Collateral Order, with any deficiency classified and Allowed as a General Unsecured Claim.

120. *Senior Secured Lenders*: means collectively Resource Capital Fund V L.P. ("*RCF V*"), Resource Capital Fund VI L.P. ("*RCF VI*"), and RCF V Annex Fund L.P. ("*RCF V Annex*") in their capacity or capacities as lender, collateral agent, or administrative agent.

121. *Senior Secured Lenders' Superpriority Claims*: means the superpriority claims granted to the Senior Secured Lenders against the Debtors pursuant to the Cash Collateral Order.

122. *Senior Secured Lenders' Unsecured Deficiency Claims*: means any and all Claims of RCF against any of the Debtors arising under or relating to the RCF Loan Agreements in excess of the amount of the Senior Secured Claims.

123. *Senior Secured Loan Agreements*: collectively means the RCF $137.5MM Loan Agreement, the RCF $55MM Loan Agreement, the RCF $80MM Loan Agreement, and the RCF $60MM Reimbursement Agreement.

124. *SMCRA*: means the Surface Mining Control and Reclamation Act of 1977.

125. *Solicitation*: means the solicitation of votes to accept or reject the Plan pursuant to the Bankruptcy Code.

126. *Solicitation Package*: means all solicitation materials in respect of the Plan, including the Disclosure Statement and related Ballots.

127. *Solicitation Procedures*: means the procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan as described in the Plan Scheduling Motion, which shall be substantially consistent in all respects with the terms and conditions of the Restructuring Support Agreement and otherwise in form and substance reasonably acceptable to the Debtors and the Consenting Stakeholders.

128. *Substantial Consummation*: has the meaning set forth in 11 U.S.C. § 1101(2) and shall be deemed to occur on the Effective Date.

4853-0731-7214

129. *Sureties*: collectively means the following entities who, as applicable, satisfied the Debtors' obligations (i) under SMCRA or similar state law to provide collateral or otherwise backstop the future performance of reclamation or performance of remediation with respect to any property owned, leased, used or impacted by any of the Coal Side Debtors in the course of their operations and (ii) to provide collateral or post a bond under the Federal Coal Mine Health and Safety Act of 1969, as amended: Zurich American Insurance Company ("*Zurich*"), Atlantic Specialty Insurance Company ("*Atlantic*"), and Westchester Fire Insurance Company ("*Westchester*"). Exhibit F to the Disclosure Statement sets forth all Sureties and any bonds, letters of credit, guarantees or collateral that have been posted, pledged, or deposited by any Surety in connection with the Reclamation Liabilities. The failure to schedule any such bonds, letters of credit, guarantees or collateral shall not be deemed to be a release or waiver of any rights thereunder.

130. *Surety Claims*: means any Claim against the Debtors or the Non-Debtor Entities held or assertible by the Sureties or any of them.

131. *Tax Authority*: means a federal, state, local or foreign government or agency, instrumentality, or employee thereof, or a court or other body charged with the administration of any law relating to Taxes.

132. *Tax Code*: means the Internal Revenue Code of 1986, as amended.

133. *Taxes*: means all (i) federal, state, local or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, capital, value-added, franchise, profits, and estimated taxes and (ii) interest, penalties, fines, additions to tax or additional amounts imposed by any Tax Authority or paid in connection with any item described in clause (i) hereof.

134. *Unexpired Lease*: means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

135. *Unimpaired*: means any Class of Claims or Equity Interests that is not Impaired under the Plan within the meaning of Bankruptcy Code section 1124.

136. *U.S. Trustee*: means the United States Trustee for the District of Delaware.

137. *Voting and Claims Agent*: means Bankruptcy Management Solutions, Inc. d/b/a Stretto, employed by the Debtors as the official claims, noticing and balloting agent in the Chapter 11 Cases pursuant to an order of the Court.

138. *Voting Deadline*: means, March 2, 2021 at 4:00 p.m. (ET) for holders of Claims entitled to vote on the Plan submitting Ballots to either accept or reject the Plan in accordance with Bankruptcy Code section 1126 under the Solicitation Procedures.

139. *Voting Record Date*: means January 29, 2021.

140. *Wyoming*: means the State of Wyoming, together with any divisions, departments, or agencies thereof.

19

4853-0731-7214

**B.** **Interpretation, Application of Definitions, and Rules of Construction.**

Except as expressly provided herein, each capitalized term used in the Plan shall have either (i) the meaning ascribed to such term in Article I of the Plan or (b) if such term is not defined in Article I of the Plan, but such term is defined in the Bankruptcy Code or Bankruptcy Rules, the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Meanings of capitalized terms shall be equally applicable to both the singular and plural forms of such terms. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole (and, for the avoidance of doubt, the Plan Supplement) and not to any particular section or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize, or limit the generality of the class within which such things are included. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of the Plan, and shall not be used to interpret the Plan. The rules of construction set forth in Bankruptcy Code section 102 shall apply to the Plan.

**C.** **Computation of Time.**

Except as otherwise specifically provided in the Plan, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS, FEE CLAIMS, AND PRIORITY CLAIMS**

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Fee Claims, and Priority Tax Claims, each as described below, have not been classified and thus are excluded from the classes of Claims and Equity Interests set forth in Article III of the Plan.

**A.** **Administrative Claims (Other Than Fee Claims).**

1. *Time for Filing Administrative Claims.*

The holder of an Administrative Claim, other than (i) a Fee Claim, (ii) a liability incurred and payable in the ordinary course of business by a Debtor (and not past due), or (iii) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Court and serve on the Reclamation Trust Entity Representative and its counsel notice of such Administrative Claim within thirty (30) days after service of notice of the Effective Date. Such notice must include at a minimum (i) the name of the Debtor(s) purported to be liable for the Administrative Claim, (ii) the name of the holder of the Administrative Claim, (iii) the amount of the Administrative Claim, and (iv) the basis for the Administrative Claim. Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred. Notwithstanding this provision, the United States, Montana, and Wyoming shall not be required to file an Administrative Claim in order to receive payment for any liability described in sections 503(b)(1)(B) and (C) pursuant to section 503(b)(1)(D) of the Bankruptcy Code with respect to any such Administrative Claim arising in the ordinary course of business.

20

2. *Payment of Allowed Administrative Claims.*

From the Cash remaining pursuant to the Cash Collateral Order, in full and final satisfaction, settlement, release, and discharge and in exchange for, its Allowed Administrative Claim, on or as soon as reasonably practicable after the later of the Effective Date, if such Administrative Claim is then an Allowed Claim, or if not Allowed on the Effective Date, a date that is as soon as reasonably practicable after the date such Administrative Claim becomes an Allowed Administrative Claim, each holder of an Allowed Administrative Claim (other than an Administrative Claim that is a Fee Claim) shall (i) receive Cash in an amount equal to the amount of such Allowed Administrative Claim, (ii) be paid in the ordinary course of business, or (iii) receive such other less favorable terms as may otherwise be agreed to by the holder of such Administrative Claim and the Debtors, in consultation with the Consenting Stakeholders, or the Reclamation Trust Entity Representative. To the extent that Administrative Claims are or become Allowed after the Effective Date, such Allowed Administrative Claims shall be paid (i) from the Allowed Claims Reserve, or (ii) if the Allowed Claims Reserve is insufficient to pay all Allowed Administrative Claims in full, by the Reclamation Trust Entity; provided, however, that in no event shall the funds from the Reclamation Sinking Fund or other funds contributed by the Sureties be used to satisfy any Administrative Claims.

B. **Fee Claims.**

1. *Final Fee Applications*.

The Court shall determine the Allowed amounts of Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code. The Reclamation Trust Entity shall pay Fee Claims in Cash in the amount Allowed by the Court. All requests for compensation or reimbursement of Fee Claims shall be filed and served on the Debtors, counsel to the Debtors, the Reclamation Trust Entity, counsel to the Reclamation Trust Entity, the U.S. Trustee, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Court, no later than forty-five (45) days after the Effective Date. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, the Reclamation Trust Entity, or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Debtors, counsel to the Debtors, the Reclamation Trust Entity, counsel to the Reclamation Trust Entity and the requesting party no later than thirty (30) days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the party requesting compensation of a Fee Claim).

From the Cash remaining pursuant to the Cash Collateral Order, on the Effective Date, the Debtors and/or the Reclamation Trust Entity shall deposit in the Accrued Professional Compensation Account an amount equal to all Accrued Professional Compensation; provided, however, that in no event shall the funds from the Reclamation Sinking Fund or other funds contributed by the Sureties be deposited in the Accrued Professional Compensation Account. The Accrued Professional Compensation Account shall be maintained in trust for the Professionals.

21

4853-0731-7214

Each Allowed Fee Claim shall be paid in full in Cash from funds held in the Accrued Professional Compensation Account as soon as practicable after the date on which an applicable Fee Claim becomes an Allowed Fee Claim. When all Allowed Fee Claims have been paid in full, amounts remaining in the Accrued Professional Compensation Account, if any, shall be returned to the Reclamation Trust Entity and shall be used to fund the activities of the Reclamation Trust Entity and to make distributions as provided in the Reclamation Trust Entity Agreement and this Plan.

2. *Post-Effective Date Fees and Expenses.*

Subject to the terms of the Reclamation Trust Entity Agreement, the Reclamation Trust Entity shall pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Reorganized Debtors' and the Reclamation Trust Entity's professionals on and after the Effective Date, in the ordinary course of business, and without any further notice to or action, order, or approval of the Court. Upon the Effective Date, any requirement that professionals comply with Bankruptcy Code sections 327 through 331 in seeking retention or compensation for services rendered after such date shall terminate, and professionals may be employed and paid in the ordinary course of business by the Reclamation Trust Entity without any further notice to, or action, order, or approval of, the Court.

## C. Senior Secured Lenders' Superpriority Claims.

The Senior Secured Lenders' Superpriority Claims shall, at the election of the Senior Secured Lender, be (i) waived and discharged in consideration for the releases and settlements embodied in the Plan or (ii) in full and final satisfaction, settlement, release, and discharge and in exchange for the Senior Secured Lenders' Superpriority Claims, the Senior Secured Lenders shall receive the Class A Reclamation Trust Entity Interests and payments in an amount equal to and authorized and provided for in the Reclamation Trust Entity Agreement and the Reclamation Trust Entity Budget.

## D. Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, as determined by the applicable Debtor, in full and final satisfaction, settlement, release, and discharge and in exchange for, such Priority Tax Claim either (i) payment or other treatment as may be agreed upon by such holder and the Debtors, with the consent of the Consenting Stakeholders, which consent shall not be unreasonably withheld, or the Reclamation Trust Entity or as otherwise determined upon a Final Order of the Court or (ii) except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date and pursuant to section 1129(a)(9)(C), payment in full, in Cash, through quarterly installment payments made by the Reclamation Trust Entity Representative beginning on June 30, 2021 and ending on the earlier of payment in full of the Allowed Priority Tax Claim or five years after the date of the order for relief under section 301, 302, or 303 of the Bankruptcy Code.

22

4853-0731-7214

**E.    U.S. Trustee Fees.**

Notwithstanding anything to the contrary contained herein, on the Effective Date, the Debtors shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation. On and after the Effective Date, the Reclamation Trust Entity shall be responsible for filing required post-confirmation reports and paying quarterly fees due following the effective date of the Plan, regardless of what period those quarterly fees relate to, to the U.S. Trustee until the entry of a final decree in the Chapter 11 Cases.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.    Classification of Claims and Equity Interests.**

Except for those Claims addressed in Article II of the Plan, all Claims and Equity Interests are placed in the Classes set forth below. A Claim or Equity Interest is placed in a particular Class solely to the extent that the Claim or Equity Interest falls within the description of that Class, and the portion of a Claim or Equity Interest which does not fall within such description shall be classified in another Class or Classes to the extent that such portion falls within the description of such other Class or Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan solely to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled before the Effective Date.

Solely for purposes of (i) describing treatment under this Plan, (ii) tabulating votes for each applicable Class and confirmation of this Plan, and (iii) making distributions in respect of such Classes, this Plan groups the Coal Side Debtors and the Millennium Debtors together. Such grouping shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets. Except as otherwise provided by or permitted under this Plan, all Debtors (and after the Effective Date of the Plan, all Reorganized Debtors) shall continue to exist as separate legal entities.

**B.    Record Date.**

As of the close of business on the Record Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. The Debtors and the Reclamation Trust Entity shall have no obligation to recognize any transfer of any Claims occurring after the Record Date. The Reclamation Trust Entity shall be entitled to recognize and deal for purposes under the Plan with only those record holders stated on the claims register as of the close of business on the Record Date.

**C.    Summary of Classification and Class Identification.**

Below is a chart identifying Classes of Claims and Equity Interests, a description of whether each Class is Impaired, and each Class's voting rights with respect to the Plan.

23

4853-0731-7214

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Senior Secured Claims | Impaired | Entitled to Vote |
| 4 | Surety Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Deemed to Reject |
| 7 | Intercompany Interests | Impaired | Deemed to Reject |
| 8 | Lighthouse Equity Interests | Impaired | Deemed to Reject |

The Debtors will request that the Court confirm the Plan pursuant to Bankruptcy Code section 1129(b) with respect to any rejecting Class of Equity Interests.

**D.      Treatment of Classified Claims and Equity Interests.**

      1.      *Class 1 - Priority Non-Tax Claims*.

      (a)      *Classification*: Class 1 consists of Priority Non-Tax Claims.

      (b)      *Treatment*: Each holder of an Allowed Priority Non-Tax Claim due and payable on or before the Effective Date shall receive, as determined by the applicable Debtor, in full and final satisfaction, settlement, release, and discharge, and in exchange for, such Priority Non-Tax Claim payment in full in Cash or such other treatment as may be agreed upon by such holder and the Debtors, with the consent of the Consenting Stakeholders, which consent shall not be unreasonably withheld, or the Reclamation Trust Entity or as otherwise determined upon a Final Order of the Court.

      (c)      *Voting*: Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f). Therefore, holders of Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

      2.      *Class 2 - Other Secured Claims*.

      (a)      *Classification*: Class 2 consists of Other Secured Claims.

      (b)      *Treatment*: Except to the extent that a holder of an Allowed Other Secured Claim and the Debtors, with the consent of the Consenting Stakeholders, which shall not be unreasonably withheld, or the Reclamation Trust Entity agree in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge and in exchange for such Other Secured Claim, on or as soon as practicable after the Effective Date, all Other Secured Claims Allowed as of the Effective Date, if not previously paid, shall, at the option of the Debtors and with the consent of the Consenting Stakeholders (which consent shall not be unreasonably withheld) be satisfied by either (i) payment in full in Cash, (ii) reinstatement pursuant to Bankruptcy Code section 1124, (iii) return of the applicable collateral in full satisfaction of the Allowed Other Secured Claim; provided, however, that the Allowed amount of an Other Secured Claim shall be limited to the value of the holder's interest in the collateral securing such claim

24

after taking into consideration other prior liens on the same collateral, if any, or (iv) such other recovery as may be necessary to render such Allowed Other Secured Claim unimpaired in satisfaction of Bankruptcy Code section 1129.

(c)    *Voting*: Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f). Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.    *Class 3 – Senior Secured Claims*.

(a)    *Classification*: Class 3 consists of Senior Secured Claims.

(b)    *Allowance*: Class 3 Senior Secured Claims shall be Allowed as set forth above.

(c)    *Treatment*: Except to the extent that a holder of an Allowed Senior Secured Claim and the Debtors agree in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge and in exchange for, each Senior Secured Claim, on or as soon as practicable after the Effective Date, each holder of an Allowed Senior Secured Claim shall receive

(i)    Reorganized Lighthouse Equity Interests which they will contribute to the Reclamation Trust Entity in exchange for the Class A Reclamation Trust Entity Interests;

(ii)    any remaining Cash subject to the Cash Collateral Order on the Effective Date after (A) funding of the Allowed Claims Reserve, the Disputed Claims Reserve, and the Accrued Professional Compensation Account and for the completion of any claims estimation process initiated by the Debtors or the Reclamation Trust Entity ("Claim Estimation Date"), (B) funding or reserving funding for payment of Claims of Governmental Units, (C) payment of or reserves held for the payment of Allowed Administrative Claims, including without limitation any Administrative Claims that are not yet Allowed and any of the payments authorized pursuant to Order Approving Key Employee Retention Program (Docket No. 216) and Order Approving the Debtors' Key Employee Incentive Plans (Docket No. 229), after the Claim Estimation Date, (D) payment of U.S. Trustee fees due and owing at the time of the Effective Date, and (E) reserving the sum of $1.641 million plus the amount, if any, of any retained Reclamation Liabilities at Big Horn Coal Company, which amounts shall be comprised of accounts receivable for the sale of coal, any remaining coal inventory contracted to be purchased (valued at the sale price), and Cash; and

25

4853-0731-7214

(iii)     any proceeds of the sale of the Millennium Debtors', including Barlow Point and Columbia Land, assets that are sold after the Effective Date, less payment of reasonable expenses incurred in the maintenance and marketing of such assets, after the amounts to be held pursuant to clauses (A) through (E) of the foregoing clause (ii) have been fully funded, paid by the applicable Reorganized Debtors to the Senior Secured Lender.

As set forth in and subject to the terms of the Reclamation Trust Entity Agreement, the Reclamation Trust Entity shall make distributions to the holders of the agent for the Class A Reclamation Trust Entity Interests as follows:

(i)     until Phase I bond release of bonds securing reclamation of the Decker Mine (as described in the Decker Reclamation Plan), 40% of all net after-tax distributions from Black Butte to Reorganized KCP, Inc., paid by Reorganized KCP, Inc. to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests, and 80% of the proceeds of the sale of certain assets of the Reorganized Debtors net of payment of reasonable expenses incurred in the maintenance and marketing of such assets, paid by the applicable Reorganized Debtors to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests;

(ii)     after Phase I bond release is achieved under the Decker Reclamation Plan, when the amount in the Reclamation Sinking Fund is below the Reclamation Sinking Fund Benchmark, 50% of all net after-tax distributions from Black Butte to Reorganized KCP, Inc., paid by Reorganized KCP, Inc. to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests and 100% of the proceeds of the sale of certain assets of the Reorganized Debtors net of payment of reasonable expenses incurred in the maintenance and marketing of such assets, paid by the applicable Reorganized Debtor to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests; and

(iii)     after Phase I bond release is achieved and when the amount in the Reclamation Sinking Fund is equal to the Reclamation Sinking Fund Benchmark, (A) 90% of all net after-tax distributions from Black Butte to Reorganized KCP, Inc., paid by Reorganized KCP, Inc. to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests, until the Allowed Priority Tax Claims are

26

paid in full and, thereafter, 100% of all net after-tax distributions from Black Butte to Reorganized KCP, Inc., paid by Reorganized KCP, Inc. to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests and (B) 100% of the proceeds of the sale of certain assets of the Reorganized Debtors net of payment of reasonable expenses incurred in the maintenance and marketing of such assets, paid by the applicable Reorganized Debtors to the Reclamation Trust Entity for the benefit of the applicable Reclamation Trust Entity Interests; provided however, that in each instance the above distributions are subject to amounts to be distributed to Class 5 as and if applicable.

(d) *Voting*: Class 3 is Impaired. Holders of Class 3 Senior Secured Claims are entitled to vote to accept or reject the Plan.

4. *Class 4 – Surety Claims*.

(a) *Classification*: Class 4 consists of the Surety Claims.

(b) *Allowance*: Class 4 Surety Claims shall be Allowed Surety Claims pursuant to the Plan in an amount equal to $62,264,847 held as follows: Zurich, $47,218,740; Atlantic, $13,125,000, and Westchester, $1,921,107.

(c) *Treatment*: Except to the extent that a holder of an Allowed Surety Claim and the Debtors agree in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge and in exchange for, each Allowed Surety Claim, on or as soon as practicable after the Effective Date, each holder of an Allowed Surety Claim (i) shall retain its liens on any and all collateral, including cash and letters of credit, until such time as the collateral is released into the Reclamation Sinking Fund as provided in the Plan, the uses of which Reclamation Sinking Fund are limited to payment for the costs of the Decker Reclamation Plan, funding KCP, Inc.'s 50% share of obligations related to the Black Butte Reclamation Plan, and replenishing the Initial Working Capital Funding Amount, and any other permissible uses, all as governed by the Reclamation Sinking Fund Agreement and the Reclamation Trust Entity Agreement; (ii) until such time as the Decker Reclamation Plan and the Black Butte Reclamation Plan are completed, as determined by the relevant Reclamation Governmental Authorities, shall retain a superior interest in the Reclamation Sinking Fund senior in priority to the interests of any other beneficiary of the Reclamation Trust Entity; (iii) shall obtain the benefits of the Reclamation Trust Entity Bonding Agreement which includes reinstatement of certain rights pursuant to Bankruptcy Code section 1124; (iv) shall benefit from the obligations of the Reclamation Trust Entity to complete the Reclamation Plans; and (v) shall benefit from contributions to the Reclamation Sinking Fund by Coal Side Debtor KCP, Inc. for the use in completing the Reclamation Plans in conjunction with the collateral contributed by the Sureties to the Reclamation Sinking Fund, decreasing the Sureties' exposure for potential liability obligations related to for Reclamation Liabilities. The Sureties shall also have senior priority rights to the Initial Working Capital Funding Amount, and proceeds thereof, and the Reclamation Sinking Fund as set forth in

27

the Reclamation Trust Entity Agreement each as necessary to reclaim the right to such funds in the event of a bond forfeiture or other adverse action by the Reclamation Governmental Authorities. Releases of bonds posted by the Sureties shall be in accordance with applicable laws in connection with the progress under the Reclamation Plans.

(d)  *Voting*: Class 4 is Impaired. Holders of Class 4 Surety Claims are entitled to vote to accept or reject the Plan.

5.  *Class 5 – General Unsecured Claims*.

(a)  *Classification*: Class 5 consists of General Unsecured Claims.

(b)  *Allowance*: Each General Unsecured Claim in Class 5 shall be Allowed unless such Claim is Disputed.

(c)  *Treatment*: In full and final satisfaction, settlement, release, and discharge and in exchange for, each Allowed General Unsecured Claim, each holder of an Allowed General Unsecured claim shall, to the extent such holder's Claim has not been previously paid in the ordinary course of business pursuant to an order of the Court, or otherwise, receive a pro rata share of the Reorganized Lighthouse Equity Interests which they will contribute to the Reclamation Trust Entity in exchange for Class B Reclamation Trust Entity Interests which is equal to the percentage of the amount of such creditor's Allowed General Unsecured Claim of the total amount of all of the Debtors' Allowed General Unsecured Claims. As soon as practicable after the three holders of General Unsecured Claims with the largest Allowed Claims against the Debtors is determined, such holders shall name the Class B Reclamation Trust Entity Interests Agent and provide the name, address and contact person for purposes of notice under the Reclamation Trust Entity Agreement of the Class B Reclamation Trust Entity Interests Agent to the Reclamation Trust Entity Representative. The Reclamation Trust Entity Representative shall provide such information to the other parties to the Reclamation Trust Entity. As set forth in and subject to the terms of the Reclamation Trust Entity Agreement, the Reclamation Trust Entity shall make distributions to the holders of the Class B Reclamation Trust Entity Interests Agent on behalf of the Class B Reclamation Trust Entity Interests until distributions to the Class B Reclamation Trust Entity Interests Agent equal $750,000.00 in the aggregate, with such distributions coming from amounts distributable to holders of Class A Reclamation Trust Entity Interests in excess of $2,000,000 in any given calendar year. After distributions aggregating $750,000.00, the Class B Reclamation Trust Entity Interests shall not be entitled to any further distributions from the Reclamation Trust Entity and the Class B Reclamation Trust Entity Interests shall be cancelled. As provided in and subject to the terms of the Reclamation Trust Entity Agreement, the sources of the funds for distribution to the holders of the Class B Reclamation Trust Equity Interests are distributions from Black Butte to Reorganized KCP, Inc. proceeds from the sale of assets of the Reorganized Debtors, and funds remaining in the Reclamation Sinking Fund in excess of the Reclamation Sinking Fund Benchmark.

In exchange for the consideration provided for in the Plan, the Senior Secured Lenders agree to forgo any right to distributions in Class 5 on account of the Allowed General Unsecured Claim arising from the Senior Secured Claims.

28

4853-0731-7214

For the avoidance of doubt, notwithstanding the foregoing, the terms of the Cash Collateral Order shall govern with respect to the releases, discharge, waivers, settlements, compromises, and agreements with respect to any claims against or of the Senior Secured Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors provided for in the Cash Collateral Order in connection with any Debtors' Stipulation (as defined in paragraph 10(a) of the Cash Collateral Order), and as a result of the failure of any holder of a General Unsecured Claim to assert any such claims prior to the expiration of the Challenge Period (as defined in paragraph 10(c) of the Cash Collateral Order), no holder of a General Unsecured Claim shall be entitled to assert any such claims against the Senior Secured Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors.

(d)     *Voting*: Class 5 is Impaired. Holders of Class 5 General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.     Class 6 – *Intercompany Claims.*

(a)     *Classification*: Class 6 consists of all Intercompany Claims.

(b)     *Treatment*: In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Intercompany Claim, on the Effective Date, shall be paid, adjusted, continued, settled, reinstated, eliminated or discharged to the extent determined by the Reclamation Trust Entity.

(c)     *Voting*: Class 6 is Impaired. Holders of Class 6 Intercompany Claims are conclusively presumed to have rejected the Plan pursuant to Bankruptcy Code section 1126(f). Therefore, holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.     Class 7 – *Intercompany Interests*.

(a)     *Classification*: Class 7 consists of all Intercompany Interests.

(b)     *Treatment*: On the Effective Date, all Class 7 Intercompany Interests:

(i)     of Lighthouse in LHR Coal, LLC shall be cancelled, and Lighthouse shall not receive or retain any distribution on account of its Class 7 Intercompany Interests in and new Equity Interests in Reorganized LHR Coal, LLC shall be issued to Reorganized Lighthouse in accordance with the Plan;

(ii)     of KCP, Inc., Big Horn Coal Company, Rosebud Coal Sales Company, KCP Properties, Inc., Decker Coal Company, LLC, Montana Royalty Holdings and Decker Coal Holding Company, LLC shall be cancelled, and LHR Coal, LLC and Decker Coal Holding Company, LLC shall not receive or

29

4853-0731-7214

retain any distribution on account of their Class 7 Intercompany Interests, and new Equity Interests in Reorganized KCP, Inc., Reorganized Big Horn Coal Company, Reorganized Rosebud Coal Sales Company, Reorganized KCP Properties, Inc., Reorganized Decker Coal Company, LLC, and Reorganized Montana Royalty Holdings, LLC shall be issued to Reorganized LHR Coal, LLC in accordance with the Plan;

(iii) of LHR Infrastructure in Gulf States Bulk Terminal, LLC shall be cancelled, and Lighthouse shall not receive or retain any distribution on account of its Class 7 Intercompany Interests in Gulf States Bulk Terminal, LLC, which entity shall be dissolved;

(iv) of Lighthouse in LHR Infrastructure shall be cancelled, and Lighthouse shall not receive or retain any distribution on account of its Class 7 Intercompany Interests in LHR Infrastructure;

(v) in the discretion of the Reclamation Trust Entity Representative and to obtain the most beneficial structure for the Company, the Reclamation Trust Entity Representative may elect either that (x) each of the remaining Millennium Debtors be dissolved or (y) new Equity Interests in LHR Infrastructure shall be issued to Reorganized Lighthouse and new Equity Interests in Reorganized Millennium Bulk Terminals-Longview, LLC, Reorganized Barlow Point Land Company, LLC, and Reorganized Columbia Land Co., LLC shall be issued to its Reorganized predecessor parent entity in accordance with the Plan; and

(vi) of Lighthouse in Lighthouse Products, LLC shall be cancelled, and Lighthouse shall not retain any interest in or receive or retain any distribution on account of its Class 7 Intercompany Interests in Lighthouse Products, LLC.

(c) *Voting*: Class 7 is Impaired. Holders of Class 7 Intercompany Interests are conclusively presumed to have rejected the Plan pursuant to Bankruptcy Code section 1126(f). Therefore, holders of Class 7 Intercompany Interests are not entitled to vote to accept or reject the Plan.

8. Class 8 – *Lighthouse Equity Interests*.

(a) *Classification*: Class 8 consists of Lighthouse Equity Interests.

(b) *Treatment*: On the Effective Date, Lighthouse Equity Interests shall be discharged, cancelled, released, and extinguished and of no further force and effect, whether

4853-0731-7214

surrendered for cancellation or otherwise and the holders thereof shall not receive or retain any distribution on account of their Other Equity Interests, and new Equity Interests in Reorganized Lighthouse shall be issued to the Reclamation Trust Entity following the contribution of such new Equity Interest by the holders of Allowed Senior Secured Claims and holders of Allowed General Unsecured Claims to the Reclamation Trust Entity in accordance with the Plan.

(c)     *Voting*: Class 8 is Impaired. Holders of Class 8 Lighthouse Equity Interests are conclusively presumed to have rejected the Plan pursuant to Bankruptcy Code section 1126(f). Therefore, holders of Class 8 Lighthouse Equity Interests are not entitled to vote to accept or reject the Plan.

**E.     Special Provision Regarding Unimpaired and Reinstated Claims.**

Except as otherwise specifically provided in the Plan, nothing herein shall be deemed to affect, diminish, or impair the Debtors' or the Reclamation Trust Entity's rights and defenses, both legal and equitable, with respect to any Reinstated Claim or Unimpaired Claim, including, but not limited to, legal and equitable defenses to setoffs or recoupment against Reinstated Claims or Unimpaired Claims. Except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date against, or with respect to, any Claim left Unimpaired by the Plan.

**F.     Voting of Classes.**

Each holder of a Class 3, 4, and 5 Claim as of the Voting Record Date shall be entitled to vote to accept or reject the Plan. The instructions for completion of the Ballots are set forth in the instructions accompanying each Ballot. The Debtors will seek approval of the Solicitation Procedures in the Plan Scheduling Motion. The Solicitation Procedures are described in the Disclosure Statement.

**G.     Nonconsensual Confirmation.**

The Debtors intend to request confirmation of the Plan under Bankruptcy Code section 1129(b) with respect to any Impaired Class that has not accepted or is deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.     Operations Between the Confirmation Date and Effective Date.**

During the period from the Confirmation Date through and until the Effective Date, the Debtors may continue to operate their businesses as debtors in possession, subject to all applicable orders of the Court, including the Cash Collateral Order, and any limitations set forth in the Restructuring Support Agreement.

31

4853-0731-7214

**B.** **Reclamation Trust Entity.**

1. *Generally.* On the Effective Date, the Reclamation Trust Entity shall be established to promote the interests of (i) the holders of the Reclamation Trust Entity Interests, (ii) the Sureties, and (iii) the Reclamation Governmental Authorities as otherwise contained in this Plan. The powers, authority, responsibilities, and duties of the Reclamation Trust Entity, the Reclamation Trust Entity Representative, and Reclamation Trust Entity Board are set forth in and shall be governed by the Plan, the Plan Supplement, and the Reclamation Trust Entity Agreement. The responsibilities and duties of the Reclamation Trust Entity shall include (i) overseeing the completion of the Decker Reclamation Plan as funded by the Reclamation Sinking Fund, with the use of such funds subject to the supervision of the Sureties, and by other funds, all as provided for the Reclamation Trust Entity Agreement; (ii) overseeing the operation of the remainder of the Reorganized Coal Side Debtors' businesses and operations in a controlled, efficient, and value-maximizing (adjusting for risk) manner, including monetizing any assets of the Reorganized Coal Side Debtors that can be monetized consistent with the Reclamation Plans; (iii) accepting Reorganized Lighthouse Equity Interests and issuing the Reclamation Trust Entity Interests in accordance with the Plan; (iv) making or causing to be made distributions in accordance with the Plan; (v) maintaining the Reclamation Sinking Fund, (vi) overseeing and administering (a) the termination of certain of the Debtors' qualified 401(k) retirement plans and any related trusts and the distribution of such plans' assets to participants and for fulfilling statutory and regulatory requirements related to such plans and (b) any statutory and regulatory requirements related to any terminated Debtor employee benefit plans; and (vii) upon completion of the Decker Reclamation Plan and of funding required for the Black Butte Reclamation Plan, holding the remaining Reclamation Trust Entity Interests and making distributions with respect to same until the sale of the Equity Interests in Reorganized KCP, Inc. or other dissolution of Reorganized KCP, Inc.; (viii) owning or terminating the existence of and monetizing any remaining assets of the Reorganized Millennium Debtors; and (ix) performing such other services as are contemplated by the Plan and the Reclamation Trust Entity Agreement or other services or activities as authorized by the Reclamation Trust Entity Board. The Reclamation Trust Entity Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, without limitation, any and all provisions necessary to ensure the most efficient or preferred treatment for federal income tax purposes. To the extent not already transferred pursuant to another provision of this Plan, the Equity Interests in Reorganized Lighthouse shall be transferred, without recourse, to the Reclamation Trust Entity upon the Effective Date. The Sureties, other than Westchester, shall release to Reorganized LHR Coal, LLC the Initial Working Capital Funding Amount. The holders of the Lighthouse Equity Interests will have no reversionary or further interest in or with respect to the Lighthouse Equity Interests, the Reclamation Trust Entity, or any amounts in the Reclamation Sinking Fund upon contribution in accordance with the Reclamation Plans.

The Reclamation Sinking Fund is dedicated and to be used for Reclamation purposes in accordance with the Reclamation Plans, the Decker Reclamation Budget, and the Black Butte Reclamation Budget. It may also be used (i) to replenish operating funds of the Reclamation Trust Entity (through Reorganized LHR Coal, LLC) if such operating funds drop below $2,000,000 and (ii) to pay the annual surety fees in connection with the Reclamation Trust Entity Bonding Agreement. The Reclamation Sinking Fund will not be used for distributions to the Reclamation Trust Entity Equity Interests unless and until the (a) Decker Reclamation Plan is completed and (b) the costs of the Black Butte Reclamation Plan attributable to Reorganized KCP,

32

Inc.'s 50% interest in Black Butte have been fully funded and set aside. The net after-tax distributions Reorganized KCP, Inc. receives from Black Butte will be divided to fund the Reclamation Sinking Fund, and be distributed to the Reclamation Trust Entity Equity Interests or paid to the holders of the Allowed Priority Tax Claims as follows: (i) until the Reclamation Sinking Fund Benchmark is achieved, (A) a percentage to the Reclamation Sinking Fund, and (B) the remaining percentage to the Class A Reclamation Trust Entity Equity Interests (subject to the following sentence), and (ii) after the Reclamation Sinking Fund Benchmark is achieved, (A) a percentage to the Class A Reclamation Trust Entity Equity Interests (subject to the following sentence), and (B) a percentage to the holders of the Allowed Priority Tax Claims. If the amount of (i)(B) or (ii)(A) exceeds $2,000,000 in any one year, the Class B Reclamation Trust Entity Equity Interests receive the excess distribution amount up to an aggregate cap of $750,000. The foregoing provisions are intended as a general description only, and will be more particularly set forth in the Reclamation Trust Entity Agreement, which terms will govern.

2.     *Purposes and Establishment of the Reclamation Trust Entity; Reclamation Liabilities*. (i) The Reclamation Trust Entity shall be established pursuant to the Reclamation Trust Entity Agreement for the purposes of overseeing the completing Reclamation Liabilities including the oversight of the Decker Reclamation Plan, fund certain amounts as required for the Black Butte Reclamation Plan, administering any remaining assets of the Reorganized Debtors, making distributions to the holders of the Reclamation Trust Entity Interests, and maintaining the Reclamation Sinking Fund. The Reclamation Trust Entity shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Reclamation Trust Entity Agreement. The Debtors have set forth all Sureties and any bonds, letters of credit, guarantees or collateral that have been posted, pledged, or deposited by any Surety in connection with the Reclamation Liabilities on Exhibit F to the Disclosure Statement. On the Effective Date, the Reclamation Trust Entity Representative, on behalf of the Debtors, shall execute the Reclamation Trust Entity Agreement and shall take all other steps necessary to establish the Reclamation Trust Entity pursuant to the Reclamation Trust Entity Agreement and consistent with the Plan.

(ii)     Notwithstanding anything to the contrary in the Definitive Documents, the injunctions, releases, discharges, and caps set forth in the Definitive Documents shall not release, compromise, discharge, enjoin, cap, or impair the Reclamation Liabilities of any Coal Side Debtor, any Reorganized Coal Side Debtor, or any non-debtor, and such Reclamation Liabilities shall not be released, compromised, discharged, enjoined, capped, or impaired, and shall survive the Chapter 11 Case as if it had not been commenced, and may be determined or adjudicated before any court or administrative agency having jurisdiction. For the avoidance of doubt, all bonding issued by the Sureties will remain in place for the benefit of the Reclamation Governmental Authorities which are obligees thereunder. Bonding obligations may only be reduced in accordance with applicable non-bankruptcy law and will not be reduced on account of the Reclamation Sinking Fund Benchmark or the Reclamation Trust Entity Budget.

3.     *Post-Effective Date Vesting of Assets*. On the Effective Date, and in accordance with Bankruptcy Code sections 1123 and 1141 and pursuant to the terms of the Plan, (i) all real property owned by Barlow Point and Columbia Land, or either of them, shall vest in Reorganized Lighthouse free and clear of all Liens, Claims, charges, or encumbrances; (ii) all remaining property owned by any of the Millennium Debtors, and all Causes of Action and any

33

property acquired by any of the Millennium Debtors under the Plan, shall vest in either Reorganized Lighthouse or remain vested in the applicable Reorganized Millennium Debtor, as determined by the Reclamation Trust Entity Representative in its discretion, free and clear of all Liens, Claims, charges, or encumbrances; (iii) all property in each of the Coal Side Debtors' Estates, all Causes of Action, and any property acquired by any of the Coal Side Debtors under the Plan shall remain vested in each applicable Reorganized Coal Side Debtor, free and clear of all Liens, Claims, charges, or encumbrances (but not free and clear of any Reclamation Liabilities), except for Equity Interests in the Reorganized Coal Side Debtors; (iv) all Equity Interests in the applicable Reorganized Debtors (other than Reorganized Lighthouse) shall vest as provided in Article III.D.7.b, free and clear of all Liens, Claims, charges, encumbrances, and other Equity Interests; and (v) all of the Reorganized Lighthouse Equity Interests shall automatically vest in the Reclamation Trust Entity upon their contribution as contemplated in Article III.D.3.c and III.D.5.c, free and clear of all Liens, Claims, charges, encumbrances, and other Equity Interests ((i) through (v), collectively, the "*Post-Effective Date Assets*") to promote the interests of the Reclamation Trust Entity Interests, the Sureties, and the Reclamation Governmental Authorities. For the avoidance of doubt, the vesting or retention of any assets or interests of the Coal Side Debtors in the Reorganized Coal Side Debtors shall not be free and clear of any exception provided in the Plan and shall be subject to all Reclamation Liabilities. Further for the avoidance of doubt, the vesting or retention of any assets or interests of the Millennium Debtors in the Reorganized Millennium Debtors or Reorganized Lighthouse shall not be free and clear of any exception provided in the Plan. Notwithstanding the foregoing, for purposes of Bankruptcy Code section 553, any transfer of the Post-Effective Date Assets shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer. Any transfer of the Post-Effective Date Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to Bankruptcy Code section 1146(a). In connection with any transfer of the Post-Effective Date Assets, any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred shall vest in the applicable owner and its representatives, and the Debtors and the Reclamation Trust Entity Representative are directed to take all necessary actions, if any, to effectuate the transfer of such privileges. The Reclamation Trust Entity Representative shall agree, on behalf of the Reclamation Trust Entity, to accept and hold the Reorganized Lighthouse Equity Interests in the Reclamation Trust Entity for the benefit of the Reclamation Trust Entity Interests. The applicable Reorganized Debtor shall have and otherwise retain the right, to the extent provided by and in accordance with non-bankruptcy law, to operate under any permits, licenses, or other inchoate rights of the applicable Debtor, including without limitation those related to Reclamation. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise, or settle any Claims, Equity Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Debtors, the Reclamation Trust Entity Representative, and any party under the control of such parties will execute any documents or other instruments and shall take all other steps as necessary to implement the provisions of the preceding paragraph.

4. *Valuation of Trust Assets*. As soon as possible after the establishment of the Reclamation Trust Entity, but in no event later than 90 days thereafter, the Reclamation Trust

34

4853-0731-7214

Entity Board shall inform, in writing, the Reclamation Trust Entity Representative of the value of the assets transferred to the Reclamation Trust Entity, based on the good-faith best estimate by the Reclamation Trust Entity Board of the fair market value of the assets transferred to the Reclamation Trust Entity (based on, among other things, third party appraisals and/or indications of value received by the Debtors or the Reclamation Trust Entity), and the Reclamation Trust Entity Representative shall apprise, in writing, the holders of the Reclamation Trust Entity Interests of such valuation. The valuation shall be used consistently by all parties (including the Reclamation Trust Entity Representative and the holders of the Reclamation Trust Entity Interests) for all federal income tax purposes.

In connection with the preparation of the valuation contemplated by the Plan and the Reclamation Trust Entity Agreement, the Reclamation Trust Entity Representative shall be entitled to retain such professionals and advisors as the Reclamation Trust Entity shall determine to be appropriate or necessary, and the Reclamation Trust Entity Board shall take such other actions in connection therewith as it determines to be appropriate or necessary. The Reclamation Trust Entity shall bear all of the reasonable costs and expenses incurred in connection with determining such value, including the fees and expenses of any professionals retained in connection therewith.

5.      *Reclamation Trust Entity Representative and Reclamation Trust Entity Board*. On the Effective Date and in compliance with the provisions of the Plan, the Restructuring Support Agreement, and the Reclamation Trust Entity Agreement, the Consenting Stakeholders shall appoint a Person or firm as Reclamation Trust Entity Representative. The identity of the Reclamation Trust Entity Representative and the Reclamation Trust Entity Representative's compensation shall be included in the Plan Supplement. Additionally, the Plan Supplement shall set forth the identity of the initial members of the Reclamation Trust Entity Board.

In the event the Reclamation Trust Entity Representative dies, is terminated or resigns for any reason, the Reclamation Trust Entity Board shall designate a successor by majority vote. The Reclamation Trust Entity Representative shall serve at the direction of the Reclamation Trust Entity Board; provided, however, that the Reclamation Trust Entity Board may not direct the Reclamation Trust Entity Representative or the members of the Reclamation Trust Entity Board to act inconsistently with their duties under the Reclamation Trust Entity Agreement and/or the Plan.

The salient terms of the Reclamation Trust Entity Representative's employment, including the Reclamation Trust Entity Representative's duties and compensation, to the extent not set forth in the Plan, shall be set forth in the Reclamation Trust Entity Agreement or the Confirmation Order. Membership, duties, responsibilities, and powers of the Reclamation Trust Entity Board shall be as set forth in the Reclamation Trust Entity Agreement.

6.      *Duties and Powers of Reclamation Trust Entity Representative*.

a.      *Authority*. The duties and powers of the Reclamation Trust Entity Representative shall include all powers necessary to implement the Plan with respect to all Debtors and to administer the Reorganized Lighthouse Equity Interests, including, without limitation, by administering and managing the business of the Reorganized Debtors, overseeing the completion of the Decker Reclamation Plan, monetizing any assets owned by the Reorganized Debtors as is

35

consistent with the Reclamation Plans, and any other of the duties and powers listed herein and in the Reclamation Trust Entity Agreement. The Reclamation Trust Entity Representative will administer the Reclamation Trust Entity in accordance with the Reclamation Trust Entity Agreement. The Reclamation Trust Entity Representative, upon direction by the Reclamation Trust Entity Board and in the exercise of their collective reasonable business judgment, in accordance with such terms and procedures as set forth in the Reclamation Trust Entity Agreement, shall, in an expeditious but orderly manner, administer and convert to Cash the assets of the Reclamation Trust Entity, make timely distributions and not unduly prolong the duration of the Reclamation Trust Entity.

b. *Claims and Causes of Action*. The Reclamation Trust Entity Representative may object to, seek to estimate, seek to subordinate, compromise, or settle any and all Claims against the Debtors that have not already been Allowed as of the Effective Date, and may pursue all Causes of Action transferred to the Reclamation Trust Entity. The Reclamation Trust Entity Representative, upon direction by the Reclamation Trust Entity Board, shall have the absolute right to pursue or not to pursue any and all Causes of Action as it determines in the best interests of the Reclamation Trust Entity Interests, and consistent with the purposes of the Reclamation Trust Entity, shall have no liability for the outcome of its decision except for any damages caused by willful misconduct or gross negligence. The Reclamation Trust Entity Representative will prepare and make available to the Sureties and the holders of the Reclamation Trust Entity Interests, on a quarterly basis, a written report detailing, among other things, the status of Reclamation obligations that are the subject of the Reclamation Plans and the Reclamation Trust Entity Agreement and any proceeds recovered to date from the assets of the Reorganized Debtors and the distributions, if any, made by the Reclamation Trust Entity.

c. *Retention of Professionals*. The Reclamation Trust Entity Representative may enter into employment agreements and retain professionals to pursue the Causes of Action and otherwise advise the Reclamation Trust Entity Representative and provide services to the Reclamation Trust Entity in connection with the matters contemplated by the Plan, the Confirmation Order, and the Reclamation Trust Entity Agreement without further order of the Court. The terms of such employment agreements shall be acceptable to the Reclamation Trust Entity Board.

d. *Agreements*. The Reclamation Trust Entity Representative may enter into any agreement or execute any document required by or consistent with the Plan and perform all of the Debtors' and Reclamation Trust Entity's obligations thereunder.

e. *Reasonable Fees and Expenses*. The Reclamation Trust Entity Representative may incur any reasonable and necessary expenses in connection with the performance of its duties under the Plan, including in connection with retaining professionals and/or entering into agreements pursuant to subsections c and d above. If the Reclamation Trust Entity Representative is also an employee of any of the Reorganized Coal Side Debtors, a member of the Reclamation Trust Entity Board, or either of them, payment in that capacity shall include any payment for work as the Reclamation Trust Entity Representative. A Reclamation Trust Entity Representative that is not paid pursuant to the foregoing sentence shall be paid by the Reclamation Trust Entity as provided for in the Reclamation Trust Entity Budget.

4853-0731-7214

f.      *Other Actions*. The Reclamation Trust Entity may take all other actions not inconsistent with the provisions of the Plan and the Reclamation Trust Entity Agreement that the Reclamation Trust Entity Representative deems reasonably necessary or desirable with respect to administering the Plan.

7.      *Funding of the Reclamation Trust Entity & Subsidiaries*. On the Effective Date, the Reorganized Debtors shall remit to the Senior Secured Lenders such amounts of Cash subject to the Cash Collateral Order to be distributed to the Allowed Senior Secured Claims pursuant to as set forth in Article III.D.3.c. In addition, the Sureties, other than Westchester, within ten (10) days of the Effective Date, shall release to Reorganized LHR Coal, LLC the Initial Working Capital Funding Amount. Upon approval of the Decker Reclamation Plan, the Sureties shall fund the Reclamation Sinking Fund in such amounts, at such times, and at such intervals as contemplated for each of the Sureties in this Plan, in the Decker Reclamation Budget and the Black Butte Reclamation Budget and as required for the Reclamation Plans. Said funding shall be consummated by transfers to the Reclamation Sinking Fund of collateral held by the Sureties; provided, however, that notwithstanding anything to the contrary in this Plan, Zurich shall be entitled to retain $1,000,000 of collateral held by Zurich to secure any obligations it may have under the Black Lung Bond. The total amount to be transferred to the Reclamation Sinking Fund by all of the Sureties is expected to total approximately $58,265,000 plus interest thereon, if any; provided however, that the aggregate amount of such transfers for each of the Sureties, to include the Initial Working Capital Funding Amount, shall not exceed the current amount of collateral held by each of the Sureties (provided solely with respect to Zurich, minus $1,000,000) respectively, plus interest earnings thereon. The Reclamation Trust Entity shall have custody and control of the Reclamation Sinking Fund subject to the terms of the Reclamation Trust Entity Agreement and the Reclamation Sinking Fund Agreement. For the avoidance of doubt, (i) the Sureties' release of their collateral and their funding of the Reclamation Sinking Fund shall not, in and of itself, reduce the penal sum of any bonds issued by the Sureties, and the penal sums of any such bonds may only be reduced in accordance with applicable non-bankruptcy law, and (ii) Governmental Units shall retain their rights to forfeit, call or otherwise draw upon any bonds issued by the Sureties in accordance with the terms of the applicable bond and with applicable non-bankruptcy law, and the Sureties shall retain all rights and defenses under the applicable bond and non-bankruptcy law with respect to any such forfeit, call, or draw. To the extent there are any costs or expenses of the Reclamation Trust Entity that are incurred in connection with and as provided in the Reclamation Trust Entity Budget, those costs shall be paid for by Reorganized LHR Coal, LLC.

8.      *Reclamation Trust Entity Budget*. Following the Effective Date, the Reclamation Trust Entity Board, in accordance with its fiduciary duties and based on the advice of its advisors, and the terms of the Restructuring Support Agreement and the Reclamation Trust Entity Agreement, shall establish the Reclamation Trust Entity Budget. A preliminary form of such Reclamation Trust Entity Budget shall be provided with the Plan Supplement in order to support confirmation of the Plan.

Subject to the terms of the Reclamation Trust Entity Agreement, before making any distributions to the holders of the Reclamation Trust Entity Interests, the Reclamation Trust Entity Board shall make a good faith determination that it shall be retaining, after taking into account funds to be distributed, sufficient funding for (i) the Reclamation Plan, the Reclamation Sinking Fund up to the Reclamation Sinking Fund Benchmark, and the monetization of the assets

37

of the Reorganized Debtors, (ii) the operation of the Reorganized Debtors' businesses and operations and (iii) accomplishing all other objectives of the Reclamation Trust Entity.

9.    *Reclamation Trust Entity Representative's Tax Power*. Following the Effective Date, the Reclamation Trust Entity Representative shall prepare and file (or cause to be prepared and filed), on behalf of the Debtors, all tax returns required to be filed or that the Reclamation Trust Entity Representative otherwise deems appropriate. The Reclamation Trust Entity Representative shall take any and all necessary actions as it shall deem appropriate to have the Reclamation Trust Entity classified as a partnership for federal tax purposes under Treasury Regulation section 301.7701-3.

10.    *Distributions to the Senior Secured Lender*. Specifically, with respect to the distributions to be made to the Senior Secured Lender pursuant to the terms of the Confirmation Order and the Reclamation Trust Entity Agreement, the Reclamation Trust Entity shall make distributions to the Senior Secured Lender without reference to a fixed maturity date or the granting of remedies for non-payment (other than the ability to assert a claim against the Reclamation Trust Entity for breach of the organizational and/or trust documents, as applicable, governing the Reclamation Trust Entity).

11.    *Reclamation Trust Entity Interests*. Except as provided in the Reclamation Trust Entity Budget and Reclamation Trust Entity Agreement, no distributions shall be made by the Reclamation Trust Entity on account of the Reclamation Trust Entity Interests.

12.    *Distributions; Withholding*. The Reclamation Trust Entity Representative shall make distributions to the holders of the Reclamation Trust Entity Interests in accordance with the terms of the Reclamation Trust Entity Agreement and the Plan.

The Reclamation Trust Entity may withhold from amounts otherwise distributable to any Entity any and all amounts, determined in the Reclamation Trust Entity Representative's reasonable discretion, required by the Reclamation Trust Entity Agreement, or any law, regulation, rule, ruling, directive, treaty or other governmental requirement. Any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any U.S. federal, state or local tax law or tax authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any Taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations, and, if any party issuing any instrument or making any distribution under the Plan fails to withhold with respect to any such holder's distribution and is later held liable for the amount of such withholding, the holder shall reimburse such party. The Reclamation Trust Entity Representative or other distribution agent, as applicable, may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder. If the holder fails to comply with such a request within 180 days, such

38

4853-0731-7214

distribution shall be deemed an unclaimed distribution and treated in accordance with Articles VI.B.4 and/or VI.B.5 of the Plan.

13.    *Insurance*. The Reclamation Trust Entity Representative will maintain customary insurance coverage for the protection of the Reclamation Trust Entity Board and the Reclamation Trust Entity Representative on and after the Effective Date.

14.    *Exculpation; Indemnification*. The Reclamation Trust Entity Representative, the Reclamation Trust Entity, the Reclamation Trust Entity Board, the professionals of the Reclamation Trust Entity and their representatives will be exculpated and indemnified pursuant to the terms of the Reclamation Trust Entity Agreement. The indemnification described in the Reclamation Trust Entity Agreement will exclude willful misconduct, gross negligence, and professional malpractice. Any indemnification claim of the Reclamation Trust Entity Representative or the other individuals entitled to indemnification under this subsection shall be satisfied solely from insurance proceeds and/or the assets and funds managed by the Reclamation Trust Entity and shall be entitled to a priority distribution therefrom, ahead of any other claim to or interest in such assets. The Reclamation Trust Entity Representative, the members of the Reclamation Trust Entity Board and their representatives (as applicable) shall be entitled to rely, in good faith, on the advice of their retained professionals. Notwithstanding anything to the contrary contained in the Definitive Documents, the Reclamation Trust Entity Representative, the Reclamation Trust Entity, the Reclamation Trust Entity Board, the professionals of the Reclamation Trust Entity and their representatives shall not be entitled to any limitations of liability or exculpation for their conduct as against the United States, Montana, and Wyoming, including without limitation, the Montana Department of Environmental Quality and Montana Department of Natural Resources and Conservation, that is inconsistent with any applicable non-bankruptcy law.

15.    *Transferability of the Reclamation Trust Entity Interests*. The Class A Reclamation Trust Entity Interests shall be freely transferable. The Class B Reclamation Trust Entity Interests shall not be transferable. The Reclamation Trust Entity Interests shall not be certificated and otherwise shall be structured in accordance with applicable non-bankruptcy law such that such Reclamation Trust Entity Interests shall not be deemed to be "securities" under U.S. securities law; provided, however, that, following the Effective Date, the Reclamation Trust Entity Board shall have the discretion to take such steps as necessary to render some or all of the Reclamation Trust Entity Interests transferrable in accordance with all applicable law, including U.S. securities law.

16.    *Registry of the Reclamation Trust Entity Interests*. The Reclamation Trust Entity Representative shall maintain a registry of the holders of the Reclamation Trust Entity Interests, with the Class B Reclamation Trust Entity Interests Agent as the registrant on behalf of the Class B Reclamation Trust Entity Interests. The Class B Reclamation Trust Entity Interests Agent shall maintain a registry of the holders of the Class B Reclamation Trust Entity Interests.

17.    *Federal Income Tax Treatment of Reclamation Trust Entity*.

a.    *Reorganized Lighthouse Equity Interests Treated as Owned by the Reclamation Trust Entity*. For all U.S. federal income tax purposes, all parties (including, without

39

4853-0731-7214

limitation, the Debtors, the Reclamation Trust Entity Representative and the holders of the Reclamation Trust Entity Interests) shall treat the transfer of the Reorganized Lighthouse Equity Interests to the Reclamation Trust Entity as a contribution by the holders of the Reclamation Trust Entity Interests of their share of the Reorganized Lighthouse Equity Interests to the Reclamation Trust Entity in exchange for beneficial interests in the Reclamation Trust Entity. Accordingly, the holders of the Reclamation Trust Entity Interests shall be treated for U.S. federal income tax purposes as the partners in the Reclamation Trust Entity, which shall be treated as a partnership for U.S. federal income tax purposes. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

b.      *Tax Reporting*. The Reclamation Trust Entity Representative shall file tax returns for the Reclamation Trust Entity treating the Reclamation Trust Entity as a partnership for U.S. federal income tax purposes. The Reclamation Trust Entity Representative shall also file (or cause to be filed) any other statement, return or disclosure relating to the Reclamation Trust Entity that is required by any governmental unit.

The valuation of the Reorganized Lighthouse Equity Interests prepared pursuant to Article IV.B.4 of the Plan shall be used consistently by all parties (including the Reclamation Trust Entity Representative and the holders of the Reclamation Trust Entity Interests) for all U.S. federal income tax purposes, and to the extent permitted by applicable law, for state and local income tax purposes.

Allocations of Reclamation Trust Entity taxable income among the holders of the Reclamation Trust Entity Interests (other than taxable income allocable to the Disputed Claims Reserve and the Allowed Claims Reserve) shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time, and without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Reclamation Trust Entity had distributed all its assets (valued at their tax book value, and other than assets allocable to the Disputed Claims Reserve and the Allowed Claims Reserve) to the holders of the Reclamation Trust Entity Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Reclamation Trust Entity. Similarly, taxable loss of the Reclamation Trust Entity shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Reorganized Lighthouse Equity Interests. The tax book value of the Reorganized Lighthouse Equity Interests for the purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

The holders of the Reclamation Trust Entity Interests shall be responsible of the payment of any Taxes imposed upon the income or loss allocated to such holder pursuant to the preceding paragraph. To the extent the Reclamation Trust Entity is directly responsible for any Taxes imposed upon the Reclamation Trust Entity or the Reorganized Lighthouse Equity Interests, the Reclamation Trust Entity Representative shall be responsible for payment, out of the proceeds from or generated by the Reorganized Lighthouse Equity Interests, of any Taxes imposed on the Reclamation Trust Entity or the Reorganized Lighthouse Equity Interests, including the Disputed

4853-0731-7214

Claims Reserve and the Allowed Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve or on account of Allowed Claims in the Allowed Claims Reserve is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims or Allowed Claims, as applicable, such Taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims or Allowed Claims or (ii) to the extent that such Disputed Claims or Allowed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Reclamation Trust Entity Representative as a result of the resolution of such Disputed Claims or Allowed Claims, as applicable.

To the extent such request is available at such time, the Reclamation Trust Entity Representative may request an expedited determination of Taxes of the Reclamation Trust Entity, including the Disputed Claims Reserve, or the Debtors under section 505(b) of the Bankruptcy Code, for all tax returns filed for, or on behalf of, the Reclamation Trust Entity or the Debtors for all taxable periods through the dissolution of the Reclamation Trust Entity.

c.    *Tax Withholding*. The Reclamation Trust Entity Representative may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state, or local tax law with respect to any payment or distribution to the holders of the Reclamation Trust Entity Interests. All such amounts withheld and paid to the appropriate tax authority shall be treated as amounts distributed to such holders of the Reclamation Trust Entity Interests for all purposes of the Reclamation Trust Entity Agreement. The Reclamation Trust Entity Representative shall be authorized to collect such tax information from the holders of the Reclamation Trust Entity Interests (including, without limitation, social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order and the Reclamation Trust Entity Agreement. In order to receive distributions from the Reclamation Trust Entity, all holders of the Reclamation Trust Entity Interests will need to identify themselves to the Reclamation Trust Entity Representative and provide tax information and the specifics of their holdings, to the extent that the Reclamation Trust Entity Representative deems appropriate. This identification requirement may, in certain cases, extend to holders who hold their securities in street name. The Reclamation Trust Entity Representative may refuse to make a distribution to any holder of the Reclamation Trust Entity Interests that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that, upon the delivery of such information by a holder of the Reclamation Trust Entity Interests, the Reclamation Trust Entity Representative shall make such distribution to which the holder of Reclamation Trust Entity Interests is entitled, without interest; and, provided, further, that, if the Reclamation Trust Entity Representative fails to withhold in respect of amounts received or distributable with respect to any such holder and the Reclamation Trust Entity Representative is later held liable for the amount of such withholding, such holder shall reimburse the Reclamation Trust Entity Representative for such liability.

d.    *Foreign Tax Matters*. The Reclamation Trust Entity Representative shall duly comply on a timely basis with all obligations, and satisfy all liabilities, imposed on the Reclamation Trust Entity Representative or the Reclamation Trust Entity under non-United States law relating to Taxes. The Reclamation Trust Entity Representative, or any other legal representative of the Reclamation Trust Entity, shall not distribute the Reorganized Lighthouse

41

4853-0731-7214

Equity Interests or proceeds thereof without having first obtained all certificates required to have been obtained under applicable non-United States law relating to Taxes.

e.     *Dissolution*. The Reclamation Trust Entity Board and the Reclamation Trust Entity shall be dissolved at such time as (i) the Decker Reclamation Plan is completed as determined by the Reclamation Governmental Authorities, (ii) the remaining assets of the Reorganized Debtors, including amounts in the Reclamation Sinking Fund set aside to fund costs of the Black Butte Reclamation Plan attributable to KCP, Inc.'s 50% interest in Black Butte, have been distributed pursuant to the Plan and the Reclamation Trust Entity Agreement, (iii) the holders of Class A Reclamation Trust Entity Interests consent, except to the extent that the Reclamation Trust Entity Representative determines, in consultation with the Reclamation Trust Entity Board, that the administration of any remaining assets of the Reorganized Debtors is not likely to yield sufficient additional Reclamation Trust Entity proceeds to justify further pursuit, (iv) to the extent possible, the Reorganized Debtors have been dissolved, and (v) all distributions required to be made by the Reclamation Trust Entity Representative under the Plan and the Reclamation Trust Entity Agreement have been made. In the event that at such time as dissolution is permitted hereunder and if the Black Butte Mine remains in operation, then the Reorganized Lighthouse Equity Interests shall be transferred to the Senior Secured Lenders or their designated transferee and, if not already cancelled, the Class B Reclamation Trust Interests shall be cancelled.

Upon dissolution of the Reclamation Trust Entity, the Reclamation Trust Entity Representative shall distribute any remaining proceeds to the holders of the Reclamation Trust Entity Interests and distribute any remaining Cash in the Reclamation Sinking Fund in accordance with the Reclamation Trust Entity Agreement.

Notwithstanding the foregoing paragraph, if, at any time, the Reclamation Trust Entity Representative determines, in reliance upon such professionals as the Reclamation Trust Entity Representative may retain and in consultation with the Reclamation Trust Entity Board, that the expense of administering the Reclamation Trust Entity so as to make a final distribution is likely to exceed the value of the assets remaining in the Reclamation Trust Entity, the Reclamation Trust Entity Representative may apply to the Court for authority to (i) reserve any amount necessary to dissolve the Reclamation Trust Entity, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the Tax Code, (B) exempt from U.S. federal income tax under section 501(a) of the Tax Code, (C) not a "private foundation," as defined in section 509(a) of the Tax Code and (D) that is unrelated to the Debtors, the Reclamation Trust Entity and any insider of the Reclamation Trust Entity Representative and (iii) dissolve the Reclamation Trust Entity.

18.     *Disputed Claims Reserve*. On the Effective Date, the Reclamation Trust Entity shall establish and fund the Disputed Claims Reserve with Cash in an amount approved by the Court. The Disputed Claims Reserve shall be maintained in trust for holders of Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims not yet Allowed as of the Effective Date and not paid prior to the Effective Date or as part of the distributions provided for under the Plan. Each such Claim shall be paid in full in Cash from funds held in the Disputed Claims Reserve as soon as practicable after the date on which such Claim becomes an Allowed Claim. Such Claims shall be paid first from amounts in the Disputed Claims Reserve and then from the assets of the Reclamation Trust Entity only if no funds remain in the Disputed Claims Reserve. When all such

42

4853-0731-7214

Claims have been paid in full, amounts remaining in the Disputed Claims Reserve, if any, shall be returned to the Reclamation Trust Entity for use in accordance with the Reclamation Entity Trust Budget.

19. *Allowed Claims Reserve.* On the Effective Date, the Reclamation Trust Entity shall establish and fund the Allowed Claims Reserve with Cash from the Debtors in an amount equal to the amount of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Other Secured Claims that are not otherwise paid on or prior to the Effective Date; provided, however, that in no event shall the funds from the Reclamation Sinking Fund or other funds contributed by the Sureties be deposited in the Allowed Claims Reserve. The Allowed Claims Reserve shall be maintained in trust for holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Other Secured Claims not otherwise paid on or prior to the Effective Date. Each such Claim that is payable from the Allowed Claims Reserve shall be paid first from amounts in the Allowed Claims Reserve and then from the assets of the Reclamation Trust Entity only if no funds remain in the Allowed Claims Reserve; provided, however, that in no event shall the funds from the Reclamation Sinking Fund or other funds contributed by the Sureties be used to satisfy any Claims that are payable from the Allowed Claims Reserve. When all such Claims have been paid in full, amounts remaining in the Allowed Claims Reserve, if any, shall be returned to the Reclamation Trust Entity for use in accordance with the Reclamation Entity Trust Budget.

## C.    **Preservation of Causes of Action.**

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with Bankruptcy Code section 1123(b), all rights to commence, prosecute or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, shall vest in the Reorganized Debtor or Reclamation Trust Entity, as the case may be, pursuant to the terms of the Plan and the Reclamation Trust Entity Agreement. The Reorganized Debtor or Reclamation Trust Entity, as the case may be, may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's or Reclamation Trust Entity's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor or the Reclamation Trust Entity, as the case may be, may pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Reorganized Debtor or Reclamation Trust Entity deems appropriate, including on a contingency fee basis. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, a Reorganized Debtor, or the Reclamation Trust Entity will not pursue any and all available Causes of Action against them. The Debtors, the Reorganized Debtors, and the Reclamation Trust Entity expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtors or the Reclamation Trust Entity, as the case may be, expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a

43

consequence of the Confirmation or Consummation. The Reorganized Debtors or the Reclamation Trust Entity, as the case may be, reserves and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Reorganized Debtors or the Reclamation Trust Entity, as the case may be, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Court.

### D.    Corporate Action.

Upon the Effective Date, the terms of all directors and officers of all Debtors shall be deemed to have expired, all such directors and officers shall be released of their duties, and all actions in furtherance of the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by the Debtors, holders of Claims or Equity Interests, directors, managers, or officers of the Debtors, or any other Entity or Person, including any applicable dissolution or winding up of certain Debtor entities as provided for in the Plan. The directors and officers of the Debtors and the Reclamation Trust Entity, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, release, and other agreements or documents and take such other actions as they may deem in their sole discretion necessary or appropriate to effectuate and implement the provisions of the Plan. The authorizations and approvals contemplated by Article IV.D of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

### E.    Cancellation of Certain Indebtedness, Agreements, and Existing Securities.

The Senior Secured Lender shall have released any and all liens and Claims on the assets of Lighthouse and the Debtors other than those rights provided pursuant to this Plan, the Restructuring Support Agreement, and the Reclamation Trust Entity Agreement. On the Effective Date, except as otherwise specifically provided for in the Plan, the obligations of the Debtors under the Restructuring Support Agreement, the Senior Secured Loan Agreements, and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in any of the Debtors giving rise to any Claim or Equity Interest or any option, warrant, or right, contractual or otherwise, to acquire an Equity Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of any Debtors that are specifically reinstated pursuant to the Plan), shall be cancelled as to any such Debtors, and the Reclamation Trust Entity and the Reorganized Debtors shall not have any continuing obligations thereunder; and, except as otherwise specifically provided for in the Plan, the obligations of any of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, by-laws, or certificate or articles of incorporation or similar documents governing the Restructuring Support Agreement, the Senior Secured Loan Agreements, and any other shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of any of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of any Debtors that are specifically reinstated pursuant to the Plan or assumed by any such Debtors) shall be released and discharged; provided, however, that, notwithstanding the occurrence of the

44

Confirmation Date or the Effective Date, any such agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of (a) allowing holders of such Claims to receive distributions under the Plan as provided herein, (b) resolving disputes with respect to the allowance of any Claim, (c) allowing the Reclamation Trust Entity Representative to make distributions under the Plan as provided herein, and deduct therefrom such reasonable compensation, fees, and expenses due thereunder or incurred in making such distributions, to the extent not paid by the Debtors and authorized under such agreement, and (d) allowing the Reclamation Trust Entity Representative to seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan. For the avoidance of doubt, nothing in this section shall (i) affect the discharge of or result in any obligation, liability, or expense of the Debtors or the Reclamation Trust Entity, (ii) affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or (iii) result in any additional obligation, expense, or liability of the Debtors, the Reorganized Debtors, or the Reclamation Trust Entity.

## F.    Separate Plans.

Notwithstanding the combination of separate plans of reorganization for the Debtors set forth in this Plan for purposes of economy and efficiency, this Plan constitutes a separate chapter 11 plan for each Debtor. Accordingly, if the Bankruptcy Court does not confirm this Plan with respect to one or more Debtors, it may still confirm this Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code. To the extent practicable, the Reorganized Debtors will be structured so as to obtain the most beneficial structure for the Reclamation Trust Entity and the Reclamation Trust Entity Interests, given the totality of the circumstances, as determined by the Reclamation Trust Entity Representative in its business judgment and reasonably acceptable to the Reclamation Trust Entity Board.

## G.    Section 1145 Exemption.

The offering, issuance, and distribution of the Reclamation Trust Entity Interests, to the extent such interests constitute or may be deemed to constitute securities under applicable U.S. securities law, shall be exempt from the registration and prospectus delivery requirements of the Securities Act and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution, or sale of securities pursuant to Bankruptcy Code section 1145.

## H.    Effectuating Documents; Further Transactions.

On and after the Effective Date, the Reclamation Trust Entity and the Reclamation Trust Entity Board, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the Reclamation Trust Entity Interests issued pursuant to the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

4853-0731-7214

## I.    No Further Approvals.

The transactions contemplated by the Plan shall be approved and effective as of the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors, the Reclamation Trust Entity, or any entity created to effectuate the provisions of the Plan. Provided, however, that no sale, assignment, and/or transfer of any interests in contracts, leases, licenses, covenants, operating rights agreements, rights-of-use and easements, rights-of-way or other agreements with (i) the United States or with any of its agencies (collectively, the "*Federal Leases and Licenses*"), if any, may occur absent the consent of the U.S. Department of the Interior ("*DOI*"), the Federal Communications Commission ("*FCC*"), the Federal Aviation Administration ("*FAA*"), and/or any other United States Entity party to the Federal Leases and Licenses, including any of their components, as provided for by applicable non-bankruptcy law, including any applicable statutes and regulations or (ii) Montana or any of its agencies, departments, or divisions (collectively, the "*Montana Leases and Licenses*" and, together with the Federal Leases and Licenses, the "*Governmental Leases and Licenses*") may occur absent the consent of the Montana Department of Environmental Quality (the "*DEQ*"), Montana Department of Natural Resources and Conservation (the "*DNRC*") and/or any other Montana Entities party to the Montana Leases and Licenses including any of their components, as provided for by applicable non-bankruptcy law, including any applicable statutes and regulations.

For the avoidance of doubt, Debtors must meet the requirements of section 365 of the Bankruptcy Code before any assumption, sale, assignment, and/or transfer of any Governmental Leases and Licenses that are either executory contracts or unexpired leases subject to such section; *provided further*, Debtors must pay any and all outstanding amounts due to the United States or Montana, as applicable, under the Governmental Leases and Licenses prior to the assumption, sale, assignment, and/or transfer of the Governmental Leases and Licenses.

For the avoidance of doubt, any assignment and/or transfer of any interests in the Governmental Leases and Licenses will be ineffective absent the consent of the DOI, the FCC, the FAA, and/or any other United States Entity party, the DEQ, the DNRC, and/or any other Montana Entity party, as applicable to the extent required by the Governmental Leases and Licenses, or applicable non-bankruptcy law. Nothing in the Definitive Documents shall be interpreted to set cure amounts or to require the United States or Montana to novate, approve or consent to the sale, assignment, and/or transfer of the Governmental Leases and Licenses except pursuant to existing regulatory requirements and applicable law.

Notwithstanding anything to the contrary in this Plan, the Debtors, Reorganized Debtors, and/or any assignee(s) or transferee(s) shall comply with all applicable bankruptcy and non-bankruptcy law, including any applicable statutes and regulations with respect to the Governmental Leases and Licenses or any permits or licenses issued under applicable state law related to Reclamation ("*State Law Permits*"), and nothing in this Plan shall otherwise affect, impair, release, or extinguish the decommissioning, reclamation, and financial assurance obligations of the Debtors, Reorganized Debtors, and/or the assignee(s) or transferee(s), as applicable, under the Governmental Leases and Licenses or State Law Permits or any counterparts issued under applicable state law and under non-bankruptcy law, including any applicable federal and state statutes and regulations.

46

4853-0731-7214

Notwithstanding the foregoing and anything to the contrary in the Definitive Documents, nothing obviates the need for any regulatory or other governmental consent, approval, license or permit from the United States or Montana or any of their agencies, divisions or departments, including, without limitation, the DOI, the FCC, the FAA, and/or any other United States Entity party, the DEQ, the DNRC, and/or any other Montana Entity party, as applicable, under any applicable law, rule or regulation with respect to the transactions contemplated by the Definitive Documents.

Specifically, for the avoidance of doubt, no provision in the Definitive Documents relieves the Debtors or the Reorganized Debtors from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated thereunder by the FCC. No transfer of any FCC license or authorization held by the Debtors or transfer of control of a Debtor holding an FCC license or authorization, or transfer of control of an FCC licensee controlled by the Debtors shall take place prior to the issuance of FCC regulatory approval for such transfer pursuant to applicable FCC regulations. The FCC's rights and powers to take any action pursuant to its regulatory authority including, but not limited to, imposing any regulatory conditions on any of the above described transfers, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.

## J.    Pre-Effective Date Injunctions or Stays.

All injunctions or stays, whether by operation of law or by order of the Court, provided for in the Chapter 11 Cases pursuant to Bankruptcy Code sections 105 or 362 or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

## K.    [Reserved].

## L.    Claims By/Against Non-Debtor Subsidiaries.

Any Claim, Cause of Action, or remedy asserted by any Debtor against any Non-Debtor Subsidiary or any Non-Debtor Subsidiary against any Debtor shall be, as of the Effective Date, reinstated, adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid, continued, cancelled, or discharged to the extent determined appropriate by the applicable Debtor or the Reclamation Trust Entity and applicable Non-Debtor Subsidiary, as applicable, subject to the consent of the Consenting Stakeholders, which consent shall not be unreasonably withheld. Any such transaction may be effectuated prior to, on or subsequent to the Effective Date without any further action by the Court or by the holders of Reclamation Trust Entity Interests.

## M.    [Reserved].

## N.    Severance and Incentive Plan; Employment Agreements.

Any Employment Agreement shall, unless otherwise agreed among the Debtors and the Consenting Stakeholders, be rejected immediately prior to the Effective Date of the Plan unless otherwise agreed among such executive, contractor, or other employee and the Consenting Stakeholders.

47

4853-0731-7214

## O.    **Indemnification of Directors, Officers, and Employees.**

Notwithstanding any other provisions of the Plan, from and after the Effective Date, indemnification obligations owed by the Debtors to directors, officers, or employees of the Debtors who served or were employed by the Debtors before, on or after the Petition Date, to the extent provided in the articles or certificates of incorporation, bylaws or similar constituent documents, by statute or by written agreement, policies or procedures of the Debtors, will be deemed to be, and treated as though they are, Executory Contracts that are assumed pursuant to the Plan and section 365 of the Bankruptcy Code. To the extent such obligations are covered by insurance, all such indemnification obligations shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before, on, or after the Petition Date. Except as expressly provided herein, all other indemnities and guaranties by the Debtors are extinguished as of the Effective Date.

Director and officer insurance will continue in place for the directors and officers of all of the Debtors during the Chapter 11 Cases on existing terms. After the Effective Date, the Reclamation Trust Entity shall not terminate or otherwise reduce the coverage under any director and officer insurance policies (including any "tail policy") then in effect. Directors and officers shall be indemnified by the Reclamation Trust Entity to the extent of such insurance. Any modifications, amendments, or the procuring of director and officer insurance shall require the reasonable consent by the Consenting Stakeholders.

## P.    **[Reserved].**

## Q.    **Cessation of the Conduct of Business of the Debtors & Professionals.**

Upon the Effective Date and the appointment of the Reclamation Trust Entity Representative, the Reclamation Trust Entity Representative will have full and complete power to act on behalf of the Debtors, the Debtors in Possession, and the Estates in a manner consistent with the provisions of the Plan. The Confirmation Order will constitute an Order of the Bankruptcy Court pursuant to section 1107(a) of the Bankruptcy Code limiting the rights, powers and duties of the officers, directors, employees, agents, or other representatives of the Debtors as provided herein and the Reclamation Trust Entity Agreement. Professionals retained by the Debtors will be deemed to have withdrawn and will be relieved of all the duties and responsibilities as "case attorneys" in the Chapter 11 Cases pursuant to the Local Bankruptcy Rules of the Bankruptcy Court. The Confirmation Order will constitute an Order authorizing the withdrawal of all Professionals employed by the Debtors as of the Effective Date. Other than timely filing their applications for final compensation as provided herein, and except to the extent such Professionals may be employed by the Reclamation Trust Entity, Professionals employed by the Debtors will have no further obligations or responsibilities to the Estates or the Debtors from and after the Effective Date and all fees and expenses awarded on a final basis by the Bankruptcy Court with respect to such Professionals shall not be subject to disgorgement.

48

### R.    Articles of Incorporation and By-laws.

The articles of incorporation and by-laws of each of the Debtors shall be amended to contain provisions necessary (i) to comply with the requirements of section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such articles of incorporation and by-laws as permitted by applicable law and (ii) to effectuate the provisions of the Plan.

### S.    Compensation and Benefit Programs.

Except as such benefits may be otherwise treated by the Debtors in a manner permissible under applicable law or ordered by the Court during the pendency of the Chapter 11 Cases or in connection with Confirmation or this Plan, all Employee Benefits Agreements relating to employees at Lighthouse and non-union employees at Decker Coal Company, LLC except for Employment Agreements shall be deemed assumed immediately prior to the Effective Date or as otherwise may be agreed by the Debtors and the other parties thereto.

Except as otherwise provided in the Plan, all savings plans, retirement plans, deferred compensation or non-qualified plans, health care (including vision, dental and prescription drug benefits) plans, performance-based incentive or bonus plans, severance benefits, retention plans, workers' compensation programs, benefits in the event of sickness, accident, disability or death, disability, and other plans, policies, benefits or programs, pertaining to employees of MBTL or Retirees, whether or not insured, are, on the Effective Date, (i) terminated to the extent that the Debtors have expressly reserved the right to amend or terminate these compensation and benefit programs, including, but not limited to, retiree medical benefits or (ii) treated as executory contracts under the Plan and deemed rejected by the Debtors in accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

To the extent any of the foregoing arise in connection with a collective bargaining agreement, the Debtors have filed a motion with the Bankruptcy Court requesting relief under section 1113 of the Bankruptcy Code. On February 17, 2021, the Court entered the *Agreed Order Approving Debtors' Entry into Collective Bargaining Agreement* (Docket No. 345), which was agreed to by the United Mine Workers of America (the "Union") and authorized Decker Coal to enter into a modified collective bargaining agreement with the Union that will govern the terms of employment for Union employees at Decker Coal after the Effective Date of this Plan, and authorized Decker Coal to terminate the Decker Coal Pension Plan upon approval by the Pension Benefit Guaranty Corporation ("PBGC").

Pursuant to the Bankruptcy Court's order dated March 4, 2021 approving a stipulation (the "PBGC Stipulation") by and between the Debtors and the PBGC (Docket No. 398), the Decker Coal Company Pension Plan and the Big Horn Coal Company Pension Plan (collectively, the "Pension Plans") shall be terminated effective as of February 28, 2021 by the PBGC pursuant to 29 U.S.C. § 1342(c), and the PBGC shall become the trustee of the Pension Plans. Pursuant to the PBGC Stipulation, the PBGC's claims shall receive the following treatment under this Plan: (a) claims held by the PBGC against the Debtors for unfunded benefit liabilities relating to the Pension Plans pursuant to 29 U.S.C. §§ 1362, 1368 shall be considered Class 5 General Unsecured Claims, and (b) claims for termination premiums pursuant to 29 U.S.C. § 1306(a)(7), which claims arise after the Debtors' discharge and are claims held by the PBGC

49

against the Reclamation Trust Entity, shall be treated *pari passu* with Class 5 General Unsecured Claims.

The Debtors have provided no Retiree Benefits subject to Section 1114 to Retirees of Decker Coal Company, LLC or to Retirees of Big Horn Coal Company. While the Debtors have provided benefits to Retirees of Big Horn Coal Company, such as medical benefits, the Debtors have no contractual obligation to do so due to the expiration of the Big Horn Coal Company wage agreement; consequently, these benefits are not "retiree benefits" pursuant to section 1114 of the Bankruptcy Code and will be terminated upon the Effective Date and upon thirty (30) days' advance notice to such Retirees.

Notwithstanding any otherwise applicable non-bankruptcy law to the contrary, the Debtors may refuse the payment of vacation and other non-cash benefits otherwise due upon termination of an employee that is to be re-hired by the Reclamation Trust Entity or the Reorganized Debtors, to the extent such benefits are expressly assumed by the Reclamation Trust Entity or the Reorganized Debtors.

## ARTICLE V.
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### A.   General Settlement of Claims and Equity Interests.

Pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim.

Without limiting the foregoing, the provisions of the Plan shall, upon entry of the Confirmation Order, constitute a good faith compromise and settlement, pursuant to Bankruptcy Rule 9019 and Bankruptcy Code section 1123, among the Debtors, the Senior Secured Lenders, and the Sureties of any and all disputes among the parties or any Causes of Action of the Debtors, the Estates or the Non-Debtor Subsidiaries against the Senior Secured Lenders and the Sureties in any capacity and the consideration therefor shall consist of the receipt by the Senior Secured Lender and the Sureties of the releases contemplated by Article V of the Plan in exchange for their agreement to compromise their Claims as set forth herein, and as a result of the inclusion of the holders of the Class B Reclamation Trust Entity Interests and benefits provided thereto, the Senior Secured Lenders will not be paid in full on the Senior Secured Lenders' Superpriority Claims, Senior Secured Claims or the Senior Secured Lenders' Unsecured Deficiency Claim as a result of its agreements and are consenting to a distribution to Class B Reclamation Trust Entity Interests out of their Collateral. In the event that, for any reason, the Confirmation Order is not entered or the Effective Date does not occur, the Debtors, the Non-Debtor Subsidiaries, the Senior Secured Lenders, and the Sureties reserve all of their respective rights with respect to any and all disputes that would have been resolved and settled under the Plan had the Effective Date occurred.

4853-0731-7214

The entry of the Confirmation Order shall constitute the Court's approval of each of the compromises and settlements embodied in the Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates, creditors, that the releases were in exchange for critical financial contributions to the Plan and substantial benefits to other parties-in-interest, and are fair, equitable, and within the range of reasonableness. The Plan and the Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for, or resolved pursuant to, the Plan and/or the Confirmation Order, including, without limitation, the release, injunction, exculpation, and compromise provisions contained in the Plan and/or the Confirmation Order. The provisions of the Plan, including, without limitation, its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.

## B.   Discharge of Claims.

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan (in each case which are not discharged hereunder), or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt, right, or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of such a Claim or Equity Interest has accepted the Plan or voted to reject the Plan. Any default by the Debtors with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan (in each case which are not discharged hereunder).

## C.   Subordination of Claims.

The allowance, classification and treatment of all Allowed Claims and Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 501(b) of the Bankruptcy Code, or otherwise. However, pursuant to Section 510 of the Bankruptcy Code, the Debtors reserve the

51

4853-0731-7214

right to reclassify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim or Equity Interest.

## D.    Release of Liens.

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, and other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, and other security interests shall revert to the Reclamation Trust Entity and each of their successors and assigns. Any holder of such mortgages, deeds of trust, Liens, pledges, and other security interests (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Reclamation Trust Entity Representative to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases, and the Debtors and their successors and assigns shall be authorized to file and record such terminations or releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, and other security interests. For the avoidance of doubt, notwithstanding the releases provided in this paragraph, the Sureties shall retain their liens on all collateral held, including cash, and all interests in all existing letters of credit.

## E.    Releases by the Debtors.

Pursuant to Section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service and contributions of the Released Parties to facilitate the Reclamation Plans and the implementation of the transactions contemplated by the Restructuring Support Agreement and the Plan and the compromises contained herein, the adequacy of which is hereby confirmed, on and after the Effective Date, the Released Parties are hereby released and discharged by the Debtors, the Reclamation Trust Entity, and the Estates, including any successor to the Debtors or any Estate representative from all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including, those that any of the Debtors, the Reclamation Trust Entity or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the businesses of the Debtors, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the resolution or payment of Claims and Equity Interests prior to or during the

52

4853-0731-7214

Chapter 11 Cases, the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Reclamation Trust Entity Agreement, or, in each case, related agreements, instruments or other documents, any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, affiliate or responsible party, or any transaction entered into or affecting, a Non-Debtor Subsidiary, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct.

**F.      Releases by Holders of Claims and Equity Interests.**

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service and contributions of the Released Parties to facilitate the Reclamation Plans and the implementation of the transactions contemplated by the Restructuring Support Agreement or the Plan, and the compromises contained herein, the adequacy of which is hereby confirmed, on and after the Effective Date, to the fullest extent permitted by applicable law, the Releasing Parties shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including: any derivative claims asserted or assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including, those that any of the Debtors, the Reclamation Trust Entity or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the businesses of the Debtors, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors or the Reclamation Trust Entity, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the resolution or payment of Claims and Equity Interests prior to or during the Chapter 11 Cases, the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Reclamation Trust Entity Agreement, or, in each case, related agreements, instruments or other documents, any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, affiliate or responsible party, or any transaction entered into or affecting, a Non-Debtor Subsidiary, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct.

Each Person providing releases under the Plan, including the Debtors, the Reclamation Trust Entity, the Estates and the Releasing Parties, shall be deemed to have granted the releases set forth in those sections notwithstanding that such Person may hereafter discover

53

4853-0731-7214

facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those claims or Causes of Action actually known or suspected to exist at the time of execution of such release.

### G.     Exculpation.

Effective as of the Effective Date, notwithstanding anything herein to the contrary, and to the extent permitted by applicable law, the Exculpated Parties shall neither have nor incur any liability to any Entity for any Cause of Action, arising during the period commencing on the Petition Date through the Effective Date, related to any act or omission derived from, based upon, related to or arising from (a) the Chapter 11 Cases; (b) the formulation, preparation, dissemination, or negotiation of any document in connection with the Chapter 11 Cases or any of the Definitive Documents; (c) any contract, instrument, release, and/or other agreement or document created or entered into in connection with the subjection (a) and (b); and/or (d) the filing, administration and/or implementation of the Chapter 11 Cases, the Plan, or the distribution of property in connection therewith or thereunder; provided that nothing in the foregoing "Exculpation" shall exculpate any Entity from any liability resulting from any act or omission that is determined by Final Order to have constituted fraud, willful misconduct, gross negligence, or criminal conduct; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel to the extent permitted by law concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

Notwithstanding anything herein to the contrary, as of the Effective Date, pursuant to Bankruptcy Code section 1125(e), each of the proponents of the Plan, upon appropriate findings of the Court, will be deemed to have solicited acceptance of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan of a Reclamation Trust Entity, and shall not be liable to any Entity on account of such solicitation or participation.

In addition to the protections afforded in Article V.G of the Plan to the Exculpated Parties, and not in any way reducing or limiting the application of such protections, the Court retains exclusive jurisdiction over any and all Causes of Action for any Plan-Related Action that are not otherwise exculpated or enjoined by the Plan.

### H.     Injunction.

EFFECTIVE AS OF THE EFFECTIVE DATE, PURSUANT TO SECTION 524(a) OF THE BANKRUPTCY CODE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR EQUITY INTERESTS THAT HAVE BEEN RELEASED OR DISCHARGED PURSUANT TO THE PLAN OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE V OF THE PLAN ARE PERMANENTLY ENJOINED, FROM AND

4853-0731-7214

AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE RECLAMATION TRUST ENTITY, ANY OF THE REORGANIZED DEBTORS OR THE RELEASED PARTIES (COLLECTIVELY THE "RELEASED PARTIES" FOR PURPOSES OF THIS PARAGRAPH): (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH RELEASED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH RELEASED PARTIES OR AGAINST THE PROPERTY OR ESTATES OF SUCH RELEASED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM ANY OF THE DEBTORS, RECLAMATION TRUST ENTITY, THE REORGANIZED DEBTORS, OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF ANY OF THE DEBTORS, OR THE RECLAMATION TRUST ENTITY, OR THE REORGANIZED DEBTORS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN OR CONFIRMATION ORDER.

## I.    Limitations on Releases, Exculpations and Injunction.

1.    *General*. Notwithstanding anything contained herein to the contrary, the releases, and exculpation contained herein do not release any obligations of any party arising under the Plan or any document, instrument, or agreement (including those set forth in the Reclamation Trust Entity Agreement and the Plan Supplement) executed to implement the Plan.

2.    *Carve Out for Governmental Units*. Notwithstanding anything contained herein to the contrary, nothing in the Definitive Documents shall discharge, release, impair, enjoin, exculpate or otherwise preclude or diminish: (a) any liability to any Governmental Unit that is not a Claim; (b) any liability to any Governmental Unit arising on or after the Confirmation Date; (c) any liability to or obligation to a Governmental Unit under police or regulatory law or environmental law to which any Entity or Person is subject as the owner, lessor, lessee, permittee, controller, or operator of real property, a mine, or other facility after the Effective Date (whether or not such liability or obligation is based in whole or in part on acts or omissions prior to the Effective Date), including, but not limited to, liability for Reclamation; restoration; water treatment; stream and wetland mitigation; underground injection control; contamination; pollution; hazardous or toxic substances; mine drainage; water supply protection; mine subsidence remediation; protection of the environment; and impacts on human health, safety, and welfare; or (d) any liability to any Governmental Unit of any non-debtor. Nothing in the Plan shall impair any setoff or recoupment rights of any Governmental Unit. Nor shall anything in the Plan: (a) enjoin

55

4853-0731-7214

or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability or obligation described in this paragraph above or (b) divest any court, commission, or tribunal of jurisdiction from adjudicating any matters relating to the liabilities and/or claims set forth above in this paragraph under police or regulatory law or environmental law, or (c) release, nullify, preclude, or enjoin the enforcement of any police or regulatory power, or (d) authorize the sale, transfer, or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization, (v) certification, or (vi) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under police and regulatory law and non-bankruptcy laws, regulations, and rules.

For the avoidance of doubt, the United States and the states of Washington, Montana, and Wyoming, including any administrative agencies under each of the foregoing Governmental Units, are not subject to the terms of the Releases described in Article V(F) of the Plan.

The applicable provisions of this Plan govern the treatment and any discharge of any tax Claims, including without limitation any Reclamation Taxes, Allowed Priority Tax Claims, or Allowed Priority Non-Tax Claims.

3. *Carve Out for Breach of Fiduciary Duty and Prohibited Transaction Liability Under ERISA.* Notwithstanding anything to the contrary contained in this Plan, any claim arising under Title I of ERISA for breach of fiduciary duty or relating to a prohibited transaction with respect to the Pension Plans shall not be discharged, released, or enjoined; *provided however*, that any such claim against the Debtors shall be treated solely as a Class 5 General Unsecured Claim.

## J.   <u>Preservation of Insurance.</u>

Nothing in the Plan shall diminish or impair the enforceability of any insurance policy that may provide coverage for claims against the Debtors, the Reclamation Trust Entity, their current and former directors and officers, or any other Person. All of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as executory contracts under the Plan. Notwithstanding the foregoing, Distributions under the Plan to any holder of an Insured Claim shall be in accordance with the treatment provided under Article VIII.G of the Plan. Nothing contained herein shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any entity, including, without limitation, the insurer under any of the Debtors' policies of insurance.

## K.   <u>Preservation of Sureties' Rights and Obligations.</u>

Nothing in this Plan shall diminish or impair any applicable Sureties' indemnification rights against the Debtors or the Reorganized Debtors, or other indemnitors, subject to the limitations with respect to Black Butte as provided in the Plan and Reclamation Trust Entity Bonding Agreement. Notwithstanding any other provision of the Definitive Documents, or other agreements between the Debtors and third parties, nothing shall be deemed or interpreted to alter or diminish any of the Sureties' obligations with respect to any bonds issued by the Sureties or any rights of obligees under such bonds.

4853-0731-7214

## ARTICLE VI.
## DISTRIBUTIONS UNDER THE PLAN

**A.**    **Procedures for Treating Disputed Claims.**

1.    *Filing Proofs of Claim*. In the event that a holder of a Claim files a proof of Claim with the Court, it will be deemed to have consented to the exclusive jurisdiction of the Court for all purposes with respect to the determination, liquidation, allowance, or disallowance of such Claim, except as otherwise ordered by the Court or provided herein.

2.    *Disputed Claims*. If the Debtors or Reclamation Trust Entity dispute any Claim as to which no proof of Claim has been filed, such dispute shall be determined, resolved, or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced, provided, however, that the Debtors or the Reclamation Trust Entity may elect to object under Bankruptcy Code section 502 to any proof of Claim filed by or on behalf of a holder of a Claim.

3.    *Objections to Claims*. Except insofar as a Claim is Allowed under the Plan or has already been paid by the Debtors in the ordinary course of business pursuant to an order of the Court, after the Confirmation Date to the Effective Date, the Debtors and, after the Effective Date, the Reclamation Trust Entity, shall have exclusive authority to object to Claims. The Debtors and the Reclamation Trust Entity shall retain all defenses, counterclaims, rights to setoff, and rights to recoupment as to claims in Classes 2 and 6. Notwithstanding the foregoing, the Debtors and the Reclamation Trust Entity shall be entitled to dispute and/or otherwise object to any Claim in accordance with applicable law, including Bankruptcy Code section 502. From and after the Effective Date, the Reclamation Trust Entity may settle or compromise any Disputed Claims without any further notice to or action, order or approval of the Court or any other party, and the Reclamation Trust Entity Representative shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice or action, order, or approval of the Court. In any action or proceeding to determine the existence, validity, or amount of any Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such Claim are preserved as if the Chapter 11 Cases had not been filed.

**B.**    **Allowed Claims and Equity Interests.**

1.    *Delivery of Distributions in General*. Except as otherwise provided herein, distributions under the Plan shall be made by the Debtors, the Reorganized Debtors, or the Reclamation Trust Entity (or their agents or designees) to the holders of Allowed Claims and holders of the Reclamation Trust Entity Interests for which a distribution is provided in the Plan at the addresses set forth on the Schedules (if filed) or in the Debtors' books and records, as applicable, unless such addresses are superseded by proofs of Claim or Equity Interests or transfers of Claim filed pursuant to Bankruptcy Rule 3001 by the Record Date (or at the last known addresses of such holders if the Debtors or the Reclamation Trust Entity have been notified in writing of a change of address). Neither the Debtors nor the Reclamation Trust Entity shall be required to, but may in its sole and absolute discretion, make any payment on account of any Claim

4853-0731-7214

or Equity Interest in the event that the costs of making such payment exceeds the amount of such payment.

2. *Delivery of Distributions to Reclamation Trust Entity Interest Holders.* Distributions to holders of Reclamation Trust Entity Interests shall be made in accordance with the Reclamation Trust Entity Agreement, which distributions to Class 3, Senior Secured Claims, and Class 5, General Unsecured Claims are generally described in Article III above.

3. *Distribution of Cash*. Any payment of Cash by the Debtors or the Reclamation Trust Entity pursuant to the Plan shall be made at the option and in the sole discretion of the Debtors or the Reclamation Trust Entity by (i) a check drawn on, or (ii) wire transfer from, a domestic bank selected by the Debtors or the Reclamation Trust Entity.

4. *Unclaimed Distributions of Cash*. Any distribution of Cash under the Plan that is unclaimed after six (6) months after it has been delivered (or attempted to be delivered) shall, pursuant to Bankruptcy Code section 347(b), become the property of the Reclamation Trust Entity notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder of such unclaimed Allowed Claim or Allowed Equity Interest to such distribution or any subsequent distribution on account of such Allowed Claim or Allowed Equity Interest shall be extinguished and forever barred.

5. *Unclaimed Distributions of Reclamation Trust Entity Interests*. Any notice of Reclamation Trust Entity Interests under the Plan that is returned to either the Reclamation Trust Entity or the Class B Reclamation Trust Entity Interests Agent and thereafter unclaimed after six (6) months after it has been delivered (or attempted to be delivered) shall be retained by either the Reclamation Trust Entity or the Class B Reclamation Trust Entity Interests Liquidation Agent, as applicable, and then cancelled, notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder of such holder shall be extinguished and forever barred.

6. *Saturdays, Sundays, or Legal Holidays*. If any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

7. [Reserved]

8. *Distributions to Holders of Claims*:

(a) *Initial Distribution to Claims Allowed as of the Effective Date*. On or as soon as reasonably practicable after the Effective Date, or as otherwise expressly set forth in the Plan, the Debtors, or the Reclamation Trust Entity (or their agents or designees) shall distribute Cash or other consideration to the holders of Allowed Claims as contemplated herein.

(b) *Claims Allowed after the Effective Date*. Each holder of a Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive the distribution to which such holder of an Allowed Claim is entitled as set forth in Article III of the Plan, and distributions to such holder shall be made in accordance with the provisions of the Plan. As soon as practicable after the date that the Claim becomes an Allowed Claim, the Reclamation Trust Entity shall

58

4853-0731-7214

provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

9.      *Special Rules for Distributions to Holders of Disputed Claims*. Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. Distributions made on account of any Disputed Claim that becomes an Allowed Claim shall be made from the Disputed Claims Reserve until it is exhausted.

10.      *Interest on Claims and Equity Interests*. Except as specifically provided for in the Plan, no Claims or Equity Interests, Allowed or otherwise (including Administrative Claims), shall be entitled, under any circumstances, to receive any interest on a Claim or Equity Interests. Notwithstanding this provision, Administrative Claims of the United States and Montana for any liability described in sections 503(b)(1)(B) and (C) shall accrue and be paid interest in accordance with section 511 of the Bankruptcy Code.

## C.      **Allocation of Consideration.**

The aggregate consideration to be distributed to the holders of Allowed Claims in each Class under the Plan shall be treated as first satisfying an amount equal to the principal amount of the Allowed Claim for such holders, and any remaining consideration as satisfying accrued, but unpaid interest, as applicable.

## D.      **Estimation.**

Prior to or after the Effective Date, the Debtors or the Reclamation Trust Entity, as applicable, may (but are not required to), at any time, request that the Court estimate (i) any Disputed Claim pursuant to Bankruptcy Code section 502(c) or (ii) any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), for any reason, regardless of whether the Debtors have or the Reclamation Trust Entity has previously objected to such Claim or whether the Court has ruled on any such objection. The Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim. In the event that the Court estimates any Claim, such estimated amount shall constitute either (i) the Allowed amount of such Claim, (ii) the amount on which a reserve is to be calculated for purposes of any reserve requirement under the Plan or (iii) a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes the maximum limitation on such Claim, the Debtors or the Reclamation Trust Entity, as the case may be, may elect to object to any ultimate allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Notwithstanding anything contained herein to the contrary, nothing in this Plan or the Confirmation Order shall modify the scope of section 502 of the Bankruptcy Code with respect to Claims of the United States and Montana, including but not limited to, the provisions of section 502 of the Bankruptcy Code pertaining to the estimation of claims.

**E.    Insured Claims.**

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies. To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Court.

## ARTICLE VII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, except as otherwise set forth in the Plan, the Court shall retain, to the extent permitted by applicable law, exclusive jurisdiction and otherwise, non-exclusive jurisdiction, over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to Bankruptcy Code sections 105(a) and 1142, including jurisdiction:

(i)    to resolve any matters related to (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which one or more of the Debtors or the Reclamation Trust Entity is party or with respect to which the Debtors or the Reclamation Trust Entity may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to Bankruptcy Code section 365; and (b) any dispute regarding whether a contract or lease is or was executory or expired;

(ii)    to determine, adjudicate, or decide any other applications, adversary proceedings, contested matters, and any other matters pending on the Effective Date;

(iii)    to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(iv)    to resolve disputes as to the ownership of any Claim;

(v)    to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

(vi)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, reversed, modified, or vacated;

(vii)    to issue such orders in aid of execution of the Plan, to the extent authorized by Bankruptcy Code section 1142;

(viii)    to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order;

60

4853-0731-7214

(ix)    to hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code sections 330, 331, and 503(b) and any disputes arising in connection with adequate protection payments in respect of professional fees for prepetition secured parties;

(x)    to hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of the Definitive Documents;

(xi)    to hear and determine any issue for which the Plan requires a Final Order of the Court;

(xii)    to hear and determine matters concerning state, local, and federal Taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(xiii)    to hear and determine any Causes of Action preserved under the Plan;

(xiv)    to hear and determine any matter, case, controversy, suit, dispute, or Cause of Action (if any) (i) regarding the existence, nature, and scope of the discharge, releases, injunctions, and exculpation provided under the Plan, and (ii) enter such orders as may be necessary or appropriate to implement such discharge, releases, injunctions, exculpations, and other provisions;

(xv)    to enter a final decree closing the Chapter 11 Cases;

(xvi)    to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with Consummation or enforcement of the Plan;

(xvii)    to enforce all orders previously entered by the Court; and

(xviii)    to hear any other matter not inconsistent with the Bankruptcy Code.

For the avoidance of doubt, the Court shall not retain exclusive jurisdiction with respect to the Reclamation Trust Entity Agreement, and notwithstanding anything to the contrary herein, the Definitive Documents shall not confer or create jurisdiction in the Bankruptcy Court over any matter as to which it would not have jurisdiction under 28 U.S.C. §§ 157 and 1334 or otherwise.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption and Rejection of Executory Contracts and Unexpired Leases.

Except for Executory Contracts and Unexpired Leases specifically designated as assumed on the Schedule of Assumed Executory Contracts and Unexpired Leases, each Executory Contract and Unexpired Lease shall be deemed rejected as of the Effective Date under Bankruptcy Code section 365. The Confirmation Order, if not by a separate order entered by the Bankruptcy Court, will constitute an order of the Court approving the assumption or rejection of Executory

61

Contracts and Unexpired Leases pursuant to Bankruptcy Code sections 365 and 1123 as of the Effective Date.

The assumption of any Executory Contracts and Unexpired Leases in the Chapter 11 Cases or otherwise through the Confirmation Order (or other order by the Bankruptcy Court) may include the assignment of certain of such contracts to the Reclamation Trust Entity, which shall be deemed to have provided adequate assurance of future performance pursuant to section 365(b) of the Bankruptcy Code in accordance with the terms of this Plan. Except as otherwise provided herein or agreed to by the Debtors (with the consent of the Consenting Stakeholders, which consent shall not be unreasonably withheld) and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

## B.    Cure Claims.

At the election of the Debtors (with the reasonable consent of the Consenting Stakeholders) or the Reclamation Trust Entity, as applicable, any monetary defaults under each Executory Contract and Unexpired Lease to be assumed and assigned under the Plan shall be satisfied pursuant to Bankruptcy Code section 365(b)(1) in one of the following ways: (i) payment of the Cure Claim in Cash on or as soon as reasonably practicable following the occurrence of (A) thirty (30) days after the determination of the Cure Claim, and (B) the Effective Date or such other date as may be set by the Court; or (ii) on such other terms as agreed to by the Debtors (with the reasonable consent of the Consenting Stakeholders) or the Reclamation Trust Entity and the non-Debtor counterparty to such Executory Contract or Unexpired Lease.

In the event of a dispute pertaining to assumption or assignment, the Cure Claim payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. No later than the Plan Supplement Filing Date, to the extent not previously filed with the Court and served on affected counterparties, the Debtors shall provide for notices (in form and substance reasonably acceptable to the Consenting Stakeholders) of proposed assumption and proposed cure amounts to be sent to applicable contract and lease counterparties, together with procedures for objecting thereto and resolution of disputes by the Court (in form and substance reasonably acceptable to the Consenting Stakeholders). Any objection by a contract or lease counterparty to a proposed assumption or related cure amount must be filed, served, and actually received by the Debtors and counsel to the Senior Secured Lenders, counsel to any committee formed in this case, and the Office of the United States Trustee by the date on which objections to Confirmation are due (or such other date as may be provided in the applicable assumption notice). Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

4853-0731-7214

The only adequate assurance of future performance of any executory contract or unexpired lease that is assumed in connection with the Plan shall be the promise of the Reclamation Trust Entity or applicable Non-Debtor Subsidiary to perform all obligations under any executory contract or unexpired lease under the Plan.

ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE ANY OF THE DEBTORS OR THE RECLAMATION TRUST ENTITY ASSUMES SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE COURT.

Obligations arising under insurance policies assumed by any of the Debtors before the Effective Date shall be adequately protected in accordance with any order authorizing such assumption.

## C.    Rejection and Repudiation of Executory Contracts and Unexpired Leases.

On the Effective Date, each Executory Contract and Unexpired Lease, including all Employment Agreements and retirement, severance, indemnification, and similar or related agreements, arrangements, plans and policies with former employees of MBTL and Retirees, shall be deemed rejected or repudiated pursuant to Bankruptcy Code section 365 and as set forth in this Plan. Each contract or lease not listed on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be rejected only to the extent that such contract or lease constitutes an Executory Contract or Unexpired Lease. Until the Effective Date, the Debtors expressly reserve their right to amend the Schedule of Assumed Executory Contracts and Unexpired Leases to delete any Executory Contract or Unexpired Lease therefrom or to add any Executory Contract or Unexpired Lease thereto. Listing a contract or lease on the Schedule of Assumed Executory Contracts and Unexpired Leases shall not constitute an admission by the Debtors or the Reclamation Trust Entity that such contract or lease is an Executory Contract or Unexpired Lease or that such Debtor or the Reclamation Trust Entity, as applicable, has any liability thereunder. The Debtors or the Reclamation Trust Entity, as applicable, may abandon any personal property that may be located at any premises that are subject to any rejected Unexpired Lease. For the avoidance of doubt, notwithstanding the reservation of rights set forth in this paragraph, the Debtors and the Reclamation Trust Entity acknowledge and agree that the Reclamation Trust Entity Bonding Agreements to be assumed pursuant to the treatment of Class 4 under the Plan are executory contracts and that the Debtors and the Reclamation Trust Entity shall forever be estopped from arguing that the Reclamation Trust Entity Bonding Agreements were not properly assumed under the Plan.

63

4853-0731-7214

D.    **Rejection Damage Claims.**

If the rejection or repudiation of an Executory Contract or Unexpired Lease prior to the Confirmation Date results in a Rejection Damage Claim, then such Rejection Damage Claim shall be forever barred and shall not be enforceable against the Debtors or the Reclamation Trust Entity or their properties, or any of their interests in properties as agent, successor or assign, unless a proof of Claim is filed with the Voting and Claims Agent and served upon counsel to the Debtors or the Reclamation Trust Entity, as applicable, in accordance with the order of the Court approving the rejection or repudiation of such Executory Contract or Unexpired Lease.

If the rejection or repudiation of an Executory Contract or Unexpired Lease pursuant to the Plan results in a Rejection Damage Claim, then such Rejection Damage Claim shall be forever barred and shall not be enforceable against the Debtors or the Reclamation Trust Entity or their properties, or any of their interests in properties as agent, successor or assign, unless a proof of Claim is filed with the Voting and Claims Agent and an injunction is served upon counsel to the Debtors or the Reclamation Trust Entity, as applicable, within thirty (30) days after the later of (i) service of the Confirmation Order and (ii) service of notice of the effective date of rejection or repudiation of the Executory Contract or Unexpired Lease, and any such Rejection Damages Claim shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article V.H of the Plan, notwithstanding anything in a Proof of Claim to the contrary. The Debtors shall give notice of the bar date established by Article VIII.D of the Plan to the non-Debtor counterparties to the Executory Contracts, including any Existing Benefits Agreements, and Unexpired Leases that are not identified in the Schedule of Assumed Executory Contracts and Unexpired Leases by service of the Plan, the Confirmation Order, or otherwise. Unless otherwise provided herein, the Reclamation Trust Entity shall object to such Rejection Damage Claims by the Claims Objection Deadline.

E.    **Reservation of Rights.**

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reclamation Trust Entity has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors (with the reasonable consent of the Consenting Stakeholders) or the Reclamation Trust Entity, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, in which case the deemed assumptions and rejections provided for in the Plan shall not apply to such contract or lease.

F.    **Assignment.**

Any Executory Contract or Unexpired Lease to be held by any of the Debtors and assumed hereunder or otherwise in the Chapter 11 Cases, if not expressly assigned to a third party previously in the Chapter 11 Cases, will be deemed assigned to the Reclamation Trust Entity pursuant to Bankruptcy Code section 365. If an objection to a proposed assumption, assumption and assignment, or Cure Claim is not resolved in favor of the Debtors before the Effective Date, the applicable Executory Contract or Unexpired Lease may be designated by the Debtors (with the reasonable consent of the Consenting Stakeholders) or the Reclamation Trust Entity for rejection

64

within five (5) Business Days of the entry of the order of the Court resolving the matter against the Debtors. Such rejection shall be deemed effective as of the Effective Date.

### G.    Insurance Policies.

Notwithstanding anything in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

### H.    Postpetition Contracts and Leases.

All contracts, agreements, and leases that were entered into by one or more of the Debtors or assumed by any of the Debtors after the Petition Date shall be deemed assigned by the applicable Debtor(s) to the Reclamation Trust Entity on the Effective Date.

### I.    Governmental Units.

Notwithstanding anything to the contrary herein, no assumption, sale, assignment, and/or transfer of the Governmental Leases and Licenses may occur absent the consent of the DOI, FCC, FAA, and/or any other United States Entity party, the DEQ, the DNRC, and/or any other Montana Entity party, as applicable, to the Governmental Leases and Licenses, including any of their components, as provided for by applicable non-bankruptcy law, including any applicable statutes and regulations. For the avoidance of doubt, Debtors must meet the requirements of section 365 of the Bankruptcy Code before any assumption, sale, assignment, and/or transfer of any Governmental Leases and Licenses that are either executory contracts or unexpired leases subject to such section; provided further, that Debtors must pay any and all outstanding amounts due to the United States or Montana, as applicable, under the Governmental Leases and Licenses prior to the assumption, sale, assignment, and/or transfer of the Governmental Leases and Licenses that are either executory contracts or unexpired leases subject to section 365 of the Bankruptcy Code.

Additionally, for the avoidance of doubt, any assumption, assignment and/or transfer of any interests in the Governmental Leases and Licenses will be ineffective absent the consent of the DOI, the FCC, the FAA, and/or any other United States Entity party, the DEQ, the DNRC, and/or any other Montana Entity party, as applicable, to the extent required by the Governmental Leases and Licenses, or applicable non-bankruptcy law. Nothing in the Plan, the Confirmation Order or any other Definitive Document shall be interpreted to set cure amounts or to require the United States or Montana to novate, approve or consent to the sale, assignment, and/or transfer of the Governmental Leases and Licenses except pursuant to existing regulatory requirements and applicable law. Notwithstanding anything to the contrary in the Definitive Documents, the Debtors, Reorganized Debtors, and/or any assignee(s) or transferee(s) shall comply with all applicable bankruptcy and non-bankruptcy law, including any applicable federal or state statutes and regulations with respect to the Governmental Leases and Licenses or State Law Permits, and nothing in the Definitive Documents shall otherwise affect, impair, release, or extinguish the decommissioning, reclamation, and financial assurance obligations of the Debtors, Reorganized Debtors, and/or the assignee(s) or transferee(s), as applicable, under the

65

4853-0731-7214

Governmental Leases and Licenses or State Law Permits and under non-bankruptcy law, including any applicable statutes and regulations.

Notwithstanding anything to the contrary in any Definitive Document, the DOI, the FCC, the FAA, and/or any other United States Entity party, the DEQ, the DNRC, and/or any other Montana Entity party, as applicable, including any of their components, will retain and have the right to audit and/or perform any compliance review and collect from the Debtor(s), Reorganized Debtor(s), and/or the transferee(s) or assignee(s), as applicable, in full any additional monies owed by the Debtor prior to the assumption and/or assignment of the Governmental Leases and Licenses without those rights being adversely affected by these bankruptcy proceedings. Such rights shall be preserved in full as if this bankruptcy had not occurred. The Debtors, Reorganized Debtors, and/or the transferee(s) or assignee(s), as applicable, will retain all defenses and/or rights, other than defenses and/or rights arising from these bankruptcy proceedings, to challenge any such determination: provided, however, that any such challenge, including any challenge associated with these bankruptcy cases, must be raised in the United States' or Montana's administrative review process leading to a final agency determination by the DOI, the FCC, the FAA, and/or any other United States Entity party, the DEQ, the DNRC, and/or any other Montana Entity party, as applicable, including any of their components.

For the avoidance of doubt, nothing in the Definitive Documents requires the payment of any cure amount pursuant to section 365 of the Bankruptcy Code to a Governmental Unit or Reclamation Governmental Authority on account of any Governmental Leases or Licenses except to the extent that any such Governmental Leases or Licenses are executory contracts or unexpired leases subject to the provisions of section 365 of the Bankruptcy Code and are assumed by the Debtors or assumed and assigned by the Debtors pursuant to section 365 of the Bankruptcy Code.

## ARTICLE IX.
## EFFECTIVENESS OF THE PLAN

### A.    Conditions Precedent to Effectiveness.

The Plan shall not become effective unless and until the Confirmation Date has occurred and the following conditions have been satisfied in full or waived in accordance with Article IX.B of the Plan:

a)    Each of the Plan, the Disclosure Statement, and the Plan Supplement (including any amendments, modifications, supplements, exhibits or schedules related to any of the foregoing) and any other Definitive Documents shall be substantially consistent in all respects with the terms and conditions of the Restructuring Support Agreement and otherwise in form and substance reasonably acceptable to the Debtors and the Consenting Stakeholders.

b)    The Confirmation Order shall be a Final Order that is not stayed and shall have been entered in a form that is substantially consistent in all respects with the

66

4853-0731-7214

terms and conditions of the Restructuring Support Agreement and otherwise reasonably acceptable to the Debtors and the Consenting Stakeholders.

c)      The Restructuring Support Agreement shall not have been terminated in accordance with its terms.

d)      Unless waived by the Sureties, the Sureties have received a tolling agreement from Black Butte in a form acceptable to the Sureties tolling all applicable limitations periods for indemnity claims against Black Butte.

e)      All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Government Units in accordance with applicable law.

## B.      Waiver of Conditions Precedent to Effectiveness.

The Debtors, with the written consent of all of the Consenting Stakeholders, may waive conditions set forth in Article IX.A of the Plan, other than the Confirmation Order having been entered, at any time without leave of or order of the Court and without any formal action.

## C.      Effect of Failure of Conditions.

In the event that the Effective Date does not occur on or before April 7, 2021, as may be extended by the Consenting Stakeholders pursuant to the terms of the Restructuring Support Agreement, upon notification submitted by the Consenting Stakeholders to the Debtors and the Court: (i) the Confirmation Order may be vacated; (ii) no distributions under the Plan shall be made; (iii) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver, release, or discharge of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors unless extended by Court order.

## D.      Vacatur of Confirmation Order.

If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (i) constitute a waiver, release, or discharge of any Claims or Equity Interests; (ii) prejudice in any manner the rights of the holder of any Claim or Equity Interest; (iii) prejudice in any manner any right, remedy, or claim of the Debtors or the Non-Debtor Subsidiaries; or (iv) be deemed an admission against interest by the Debtors or the Non-Debtor Subsidiaries.

## E.      Modification of the Plan.

Subject to the limitations contained in the Plan, and subject to the terms of the Restructuring Support Agreement, (i) the Debtors reserve the right, in accordance with the

4853-0731-7214

Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy Bankruptcy Code section 1129(b), and (ii) after entry of the Confirmation Order, the Debtors or the Reclamation Trust Entity, as the case may be, may, upon order of the Court, amend or modify the Plan, in accordance with Bankruptcy Code section 1127(b). Notwithstanding the foregoing, the Confirmation Order shall authorize the Debtors (with the reasonable consent of the Consenting Stakeholders) or the Reclamation Trust Entity, as the case may be, to make appropriate technical adjustments, remedy any defect or omission, or reconcile any inconsistencies in the Plan, the documents included in the Plan Supplement, any and all exhibits to the Plan, and/or the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided, however, that such action does not materially and adversely affect the treatment of holders of Allowed Claims or Equity Interests pursuant to the Plan.

**F.    Revocation, Withdrawal, or Non-Consummation.**

1.    *Right to Revoke or Withdraw*. The Debtors reserve the right to revoke or withdraw the Plan at any time before the Effective Date, subject to the terms of the Restructuring Support Agreement.

2.    *Effect of Withdrawal, Revocation, or Non-Consummation*. If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), the assumption or rejection of Executory Contracts, Unexpired Leases or benefit plans effected by the Plan, any release, exculpation, or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void. In such event, nothing contained herein, and no acts taken in preparation for Consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or Equity Interests in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

### ARTICLE X.
### MISCELLANEOUS PROVISIONS

**A.    Immediate Binding Effect.**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reclamation Trust Entity, and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any of the Debtors. The rights, benefits, and obligations of any Entity named or

68

4853-0731-7214

referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## B.    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), or any other agreement expressly provides otherwise, the laws of the State of Delaware (without reference to the conflicts of laws provisions thereof that would require or permit the application of the law of another jurisdiction) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

## C.    [Reserved]

## D.    Filing or Execution of Additional Documents.

On or before the Effective Date or as soon thereafter as is practicable, the Debtors or the Reclamation Trust Entity shall (on terms materially consistent with the Plan) file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which agreements and documents shall be substantially consistent in all respects with the terms and conditions of the Restructuring Support Agreement and otherwise in from and substance reasonably acceptable to the Debtors and the Consenting Stakeholders.

## E.    Term of Injunctions or Stays.

Except as otherwise set forth in the Plan, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## F.    Withholding and Reporting Requirements.

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Debtors and the Reclamation Trust Entity shall comply with all withholding and reporting requirements imposed by any U.S. federal, state, local, or non-U.S. taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reclamation Trust Entity shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding Taxes, withholding distribution pending receipt of information necessary or appropriate to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

4853-0731-7214

## G.   Exemption from Transfer Taxes.

Pursuant to, and to the fullest extent permitted by, Bankruptcy Code section 1146(a), all transfers of property pursuant hereto, including (i) the transfer of the Reorganized Lighthouse Equity Interests to the Reclamation Trust Entity, (ii) the issuance, transfer, or exchange under the Plan of Reclamation Trust Entity Interests and the security interests in favor of the Reclamation Trust Entity, (iii) the making or assignment of any lease or sublease, or (iv) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan, shall not be subject to any stamp, conveyance, mortgage, sales or use, real estate transfer, recording, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

## H.   Plan Supplement.

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. The documents contained in the Plan Supplement shall be available online at www.pacer.gov and https://cases.stretto.com/lighthouseresources. Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to counsel to the Debtors. The Debtors reserve the right, in accordance with the terms hereof, and subject to the terms of the Restructuring Support Agreement, to modify, amend, supplement, restate, or withdraw any part of the Plan Supplement after they are filed and shall promptly make such changes available online at www.pacer.gov and https://cases.stretto.com/lighthouseresources.

## I.   Notices.

All notices, requests, and demands hereunder to be effective shall be made in writing or by e-mail, and unless otherwise expressly provided herein, shall be deemed to have been duly given when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed. Each of such notices shall be addressed as follows:

1.   *To the Debtors*:

Jackson Kelly PLLC
100 West Main Street, Suite 700
Lexington, Kentucky 40507
Telephone: 859.255.9500
Attn:   Mary Elisabeth Naumann (mnaumann@jacksonkelly.com)
        Beth Baker (elizabeth.baker@jacksonkelly.com)
        Chacey Malhouitre (chacey.malhouitre@jacksonkelly.com)

Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
Wilmington, DE 19801-6108

70

4853-0731-7214

Telephone: 302.984.6049
Facsimile: 302.658.1192
Attn:  L. Katherine Good (kgood@potteranderson.com)
         Aaron H. Stulman (astulman@potteranderson.com)

2.    *To the U.S. Trustee*:

Office of The United States Trustee
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
Tel.: (302) 573-6491
Fax: (302) 573-6497.

## J.    Conflicts.

The terms of the Plan shall govern in the event of any inconsistency between the Plan and the Disclosure Statement. In the event of any inconsistency with the Plan and the Confirmation Order, the Confirmation Order shall govern with respect to such inconsistency.

Dated: March 10, 2021

**LIGHTHOUSE RESOURCES INC.**
**on behalf of itself and all other Debtors**


By:  */s/ Robert Novak*
Name: Robert Novak
Title: Chief Restructuring Officer

71

**<u>Exhibit B</u>**

**Form of Confirmation Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIGHTHOUSE RESOURCES INC., *et al.*,[1] | ) Case No. 20-13056 (JTD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE SECOND AMENDED JOINT PLAN OF DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OCCURRENCE OF EFFECTIVE DATE

**PLEASE TAKE NOTICE** that on March [__], 2021, the Honorable John T. Dorsey, United States Bankruptcy Judge for the United States Bankruptcy Court for the District of Delaware (the "Court"), entered an order [Docket No. [__] (the "Confirmation Order") confirming the *Second Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 413] (the "Plan")[2] of the above-captioned debtors and debtors in possession (the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on [_____], 2021. Each of the conditions precedent to consummation of the Plan enumerated in Article IX of the Plan have been satisfied or waived in accordance with the Plan and the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Confirmation Order, the release, injunction, and exculpation provisions in Article V of the Plan are now in full force and effect.

**PLEASE TAKE FURTHER NOTICE** that notices for payment of Administrative Claims must be filed and service on the Debtors or Reorganized Debtors by **[●]**, 2021, which is the date 30 days after the Effective Date.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Lighthouse Resources Inc. (4713), LHR Coal, LLC (4799), KCP, Inc. (2558), Big Horn Coal Company (7087), Rosebud Coal Sales Company (9016), KCP Properties, Inc. (8372), Decker Holding Company, LLC (8881), Decker Coal Company, LLC (3731), Montana Royalty Holdings, LLC (1107), LHR Infrastructure, LLC (9619), Millennium Bulk Terminals-Longview, LLC (0354), Barlow Point Land Company, LLC (1398), Columbia Land Co., LLC (6826), and Gulf States Bulk Terminal, LLC (5870). The location of the Debtors' service address in these chapter 11 cases is 10980 South Jordan Gateway, South Jordan, Utah 84095.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

4839-7978-9532

**PLEASE TAKE FURTHER NOTICE** that requests for payment of Fee Claims must be filed and served on the Debtors or Reorganized Debtors by **[●]**, 2021, which is the date 45 days after the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that if you would like copies of the documents included in the Plan, the Plan Supplement, the Confirmation Order, the Disclosure Statement, or any other document filed in these chapter 11 cases, you may (i) visit the Debtors' restructuring website, https://cases.stretto.com/lighthouseresources; (ii) call the Voting and Claims Agent at (855) 622-9227 or, if calling from outside the United States or Canada, at (949) 266-6321; or (iii) email TeamLighthouse@stretto.com. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: www.pacer.gov.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and the Confirmation Order in their entirety.

**PLEASE TAKE FURTHER NOTICE** that Article V.D of the Plan, as approved by the Confirmation Order, provides for the release and discharge of all mortgages, deeds of trust, Liens, pledges, and other security interests against any property of the Debtors' Estates. The Reorganized Debtors or Reclamation Trust Entity may present, file, or record this Confirmation Notice as evidence of termination of such mortgages, deeds of trust, Liens, pledges and other security interests, and this Confirmation Notice shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law:

> **THIS CONFIRMATION NOTICE IS IN RECORDABLE FORM AND SHALL BE ACCEPTED BY ANY RECORDING OFFICER FOR FILING AND RECORDING PURPOSES WITHOUT FURTHER OR ADDITIONAL ORDERS, CERTIFICATIONS, OR OTHER SUPPORTING DOCUMENTS.**

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

4839-7978-9532

Dated: [_____], 2021
        Wilmington, Delaware

/s/ DRAFT
_____
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE 19801-6108
Telephone: 302.984.6000
Facsimile: 302.658.1192
Email: kgood@potteranderson.com
        astulman@potteranderson.com

*Counsel to the Debtors and Debtors in Possession*

Mary Elisabeth Naumann (KY# 88328)
(admitted *pro hac vice*)
Chacey Malhouitre (KY# 91019)
(admitted *pro hac vice*)
**JACKSON KELLY PLLC**
100 West Main Street, Suite 700
Lexington, KY 40507
Telephone: 859.255.9500
Email: mnaumann@jacksonkelly.com
chacey.malhouitre@jacksonkelly.com

-and-

Elizabeth Amandus Baker (WV# 11062)
(admitted *pro hac vice*)
**JACKSON KELLY PLLC**
500 Lee Street East, Suite 1600
Charleston, WV 25301
Telephone: 304.340.1000
Email: elizabeth.baker@jacksonkelly.com

*Counsel to the Debtors and Debtors in Possession*

4839-7978-9532
IMPAC - 7111473v.2  03/10/2021 11:06 AM

**Exhibit C**

**Table of Defined Terms**

For purposes of this Agreement, the following terms have the meanings set forth in the section of this Agreement indicated below or are defined in the document identified below:

| Term | Document or Section of this Agreement in which Term is Defined |
|---|---|
| Accrued Professional Compensation | Plan |
| Accrued Professional Compensation Account | Plan |
| Adjusted Capital Account Deficit | Section 10.3 |
| Administrative Claim(s) | Plan |
| Agreement | Preamble |
| Allowed | Plan |
| Allowed Claims Reserve | Plan |
| Assumed Employee Benefit Agreements | Section 1.1 |
| Atlantic | Preamble |
| Bankruptcy Court | Preamble |
| Beneficiary(ies) | Recital |
| Bitter Creek | Section 1.7(a) |
| Black Butte | Plan |
| Black Butte JV Agreement | Section 1.4 |
| Black Butte Management Fee | Section 1.4 |
| Black Butte Mine | Section 11.1 |
| Black Butte Reclamation Budget | Plan |
| Black Butte Reclamation Funds | Section 11.1 |
| Black Butte Reclamation Plan | Plan |
| Business Day | Plan |
| Capital Account(s) | Section 10.1 |
| Cash | Plan |
| Cash Collateral Order | Plan |
| Cause(s) of Action | Plan |
| Chapter 11 Cases | Preamble |
| Claim(s) | Plan |
| Claim Estimation Date | Section 1.10(a)(5) |
| Claims Reserve(s) | Section 8.2 |
| Class A Distributions | Section 1.10 |
| Class A Reclamation Trust Entity Interests | Plan |
| Class A Reclamation Trust Entity Interests Agent | Preamble |
| Class B Distributions | Section 1.10 |
| Class B Distributions Cap | Section 1.10 |

*Exhibit C – Page 1*

4827-5741-7690.v28

| | |
|---|---|
| Class B Reclamation Trust Entity Interests | Plan |
| Class B Reclamation Trust Entity Interests Agent | Preamble |
| Coal Side Debtors | Plan |
| Confirmation | Plan |
| Confirmation Order | Recitals |
| Consenting Stakeholders | Plan |
| Court | Plan |
| Debtor(s) | Plan |
| Decker Mine | Plan |
| Decker Reclamation Budget | Plan |
| Decker Reclamation Plan | Plan |
| Delaware Statutory Trust Act | Recitals |
| Disputed | Plan |
| Disputed Claims Reserve | Plan |
| Effective Date | Plan |
| Employee Benefits Agreement(s) | Plan |
| Entity(ies) | Plan |
| Equity Interest(s) | Plan |
| Estate(s) | Plan |
| Exculpated Parties | Section 5.1 |
| Exculpated Party | Section 5.1 |
| Fee Claim(s) | Plan |
| Final Order | Plan |
| General Unsecured Claim(s) | Plan |
| Governmental Unit(s) | Plan |
| Indemnified Parties | Section 5.2 |
| Indemnified Party | Section 5.2 |
| Independent Members | Section 3.1 |
| Initial Working Capital Funding Amount | Plan |
| Lien(s) | Plan |
| Lighthouse Reclamation Trust | Recitals; Section 1.6; Section 12.15 |
| Losses | Section 5.1 |
| Member | Section 3.1 |
| Member One | Section 3.1 |
| Member Two | Section 3.1 |
| Member Three | Section 3.1 |
| Members | Section 3.1 |
| Millennium Assets | Section 1.10 |
| Millennium Debtors | Plan |
| Montana | Plan |
| Non-Debtor Subsidiaries | Plan |
| Other Secured Claim(s) | Plan |
| Partnership Representative | Section 10.10 |

*Exhibit C – Page 2*

4827-5741-7690.v28

| Person(s) | Plan |
|---|---|
| Plan | Preamble |
| Post-Effective Date Assets | Recitals |
| Priority Non-Tax Claim(s) | Plan |
| Priority Tax Claim(s) | Plan |
| Professional(s) | Plan |
| Purpose(s) | Section 1.1 |
| RCF V | Preamble |
| RCF VI | Preamble |
| Reclamation | Plan |
| Reclamation Agreement Date | Section 6.3 |
| Reclamation Assets | Section 1.10 |
| Reclamation Governmental Authorities | Plan |
| Reclamation Liabilities | Plan |
| Reclamation Plans | Plan |
| Reclamation Sinking Fund | Section 6.3 |
| Reclamation Sinking Fund Agreement | Section 6.3 |
| Reclamation Sinking Fund Benchmark | Plan |
| Reclamation Trust Delaware Trustee | Preamble |
| Reclamation Trust Entity Board | Section 3.1 |
| Reclamation Trust Entity Bonding Agreement | Plan |
| Reclamation Trust Entity Budget | Plan |
| Reclamation Trust Entity Interest(s) | Recitals |
| Reclamation Trust Entity Representative | Preamble; Section 12.15 |
| Record Date | Plan |
| Register(s) | Section 6.1 |
| Remainder Coal Side Assets | Section 1.10 |
| Reorganized Barlow Point | Section 1.2 |
| Reorganized Big Horn | Section 1.2 |
| Reorganized Coal Side Debtors | Section 1.2 |
| Reorganized Columbia Land | Section 1.2 |
| Reorganized Debtor(s) | Preamble |
| Reorganized Decker | Section 1.2 |
| Reorganized KCP | Section 1.2 |
| Reorganized KCP Properties | Section 1.2 |
| Reorganized LHR Coal | Section 1.2 |
| Reorganized LHR Infrastructure | Section 1.2 |
| Reorganized Lighthouse | Preamble; Section 1.2 |
| Reorganized Lighthouse Equity Interests | Section 1.2 |
| Reorganized Millennium | Section 1.2 |
| Reorganized Millennium Debtor(s) | Section 1.2 |
| Reorganized Montana Royalty | Section 1.2 |
| Reorganized Rosebud | Section 1.2 |
| Senior Secured Lender(s) | Preamble |

*Exhibit C – Page 3*

| | |
|---|---|
| Senior Secured Loan Agreements | Plan |
| Sinking Fund Management Fee | Section 1.4 |
| Surety(ies) | Preamble |
| Tax Code | Section 10.2 |
| Tax Proceeding | Section 10.10 |
| Tax(es) | Plan |
| Transferred Lighthouse Post-Effective Date Assets | Recitals |
| Trustees | Preamble |
| U.S. Trustee | Plan |
| Unclaimed Property | Section 9.7 |
| Voting and Claims Agent | Plan |
| Westchester | Preamble |
| Zurich | Preamble |

*Exhibit C – Page 4*

4827-5741-7690.v28

**Exhibit D**

**Reclamation Assets**

The assets of the Reorganized Coal Side Debtors used by the Reorganized Coal Side Debtors in reclamation activities, including, without limitation:

 5 Komatsu 830 trucks
 1 Komatsu 785 truck
 1 Komatsu PC-5500
 1 Bucyrus Erie 1570 Dragline

*Exhibit D*

4827-5741-7690.v28

# EXHIBIT C

## RECLAMATION SINKING FUND AGREEMENT

This Reclamation Sinking Fund Agreement (this "Agreement") is made this 7th day of April, 2021, by and among: (i) Lighthouse Reclamation Trust, a Delaware business trust ("Lighthouse Reclamation Trust"), (ii) Resource Capital Fund V L.P., a Cayman Islands exempt limited partnership ("RCF V"), Resource Capital Fund VI L.P., a Cayman Islands exempt limited partnership ("RCF VI"), and RCF V Annex Fund L.P., a Cayman Islands exempt limited partnership (together with RCF V and RCF VI, the "Senior Secured Lenders"); (iii) Zurich American Insurance Company, an Illinois corporation ("Zurich"); (iv) Atlantic Specialty Insurance Company, a New York corporation ("Atlantic"); and (v) Westchester Fire Insurance Company, a Pennsylvania corporation ("Westchester" and, together with Zurich and Atlantic, the "Sureties"); in connection with the Second Amended Joint Plan of Debtors under chapter 11 of the Bankruptcy Code, dated March 10, 2021 filed at Docket No. 435 in the cases jointly administered by the Debtors under chapter 11 of the Bankruptcy Code pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") as Case No. 20-13056 (together with any amendments thereof, exhibits or other documents attached thereto or supplements thereto, the "Plan").

## RECITALS

WHEREAS, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in that certain Reclamation Trust Entity and Distribution Agreement ("Reclamation Trust Agreement") dated April 1, 2021, by and among the parties hereto, Lighthouse Resources Inc. ("Reorganized Lighthouse"), certain subsidiaries of Reorganized Lighthouse, and certain other parties named therein; and

WHEREAS, pursuant to the Reclamation Trust Agreement and the Plan, the Reclamation Trust Entity Representative is to establish a segregated account under the custody and control of Lighthouse Reclamation Trust held on behalf of the Reorganized Coal Side Debtors and the parties hereto are to enter into this Agreement to govern the terms and conditions related to said account.

NOW, THEREFORE, pursuant to the Reclamation Trust Agreement, the Plan and the Confirmation Order, in consideration of the promises, and mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## CREATION OF RECLAMATION SINKING FUND

**1.1    Creation of Fund.** There is hereby created a segregated account under the custody and control of Lighthouse Reclamation Trust held on behalf of the Reorganized Coal Side Debtors ("Reclamation Sinking Fund").  The money and securities in the Reclamation Sinking Fund shall be held in trust and applied as hereinafter provided, and, pending such application, the money and securities in said fund shall be subject to a lien and charge in favor of the Sureties as set forth in Article IV.

4827-4060-7707.v15

**ARTICLE II**
**DEFINITIONS; DEPOSITS INTO THE RECLAMATION SINKING FUND**

**2.1**    Defined Terms.  For purposes of this Agreement, the following terms have the meanings set forth below:

"Big Horn" means the mining operations associated with the permits set forth in the chart attached hereto as Exhibit A under the mine name "Big Horn."

"Bitter Creek" means Bitter Creek Coal Company, its successors and assigns.

"Black Butte" means Black Butte Coal Company, the joint venture created by the Black Butte JV Agreement (defined *infra*).

"Black Butte JV Agreement" means that certain joint venture agreement establishing Black Butte Coal Company, dated January 1, 1974, as amended from time to time thereafter.

"Black Butte Mine" means the mining operations associated with the permits set forth in the chart attached hereto as Exhibit A under the mine name "Black Butte," as well as any other mining operations engaged in pursuant to the Black Butte JV Agreement.

"Decker Mine" means East Decker, West Decker and Decker Opencut Mine.

"Decker Opencut Mine" means the mining operations associated with the permits set forth in the chart attached hereto as Exhibit A under the mine name "Decker Opencut Mine."

"East Decker" means the mining operations associated with the permits set forth in the chart attached hereto as Exhibit A under the mine name "East Decker."

"Funding Date" means the date on which a Surety is required to release collateral held by it into the Reclamation Sinking Fund in accordance with this Agreement.

"Funding Year" means each year commencing on the Reclamation Agreement Date or anniversary of the Reclamation Agreement Date and ending one year thereafter.

"Mining Complex" means Big Horn, Black Butte Mine, Decker Opencut Mine, East Decker or West Decker, as applicable.

"Pro Rata Share" means with respect to a Surety on a Funding Date, the application of a fraction where (a) the numerator is equal to the amount of the bonds issued by such Surety with respect to a Mining Complex on the applicable Funding Date, and (b) the denominator is the total amount of the bonds issued by all Sureties with respect to said Mining Complex on the applicable Funding Date.

2

4827-4060-7707.v15

"West Decker" means the mining operations associated with the permits set forth in the chart attached hereto as Exhibit A under the mine name "West Decker."

"West Decker Phase I Bond Release" means a 60% reduction of the penal sum of Westchester bond no. K08898339 by Montana after completion of Phase I bond release, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, of the areas covered by Permit No. C1987001C.

**2.2    Releases and Deposits into Fund.**    The Reclamation Sinking Fund shall be funded with the following amounts up to the Reclamation Sinking Fund Benchmark, which shall be set in accordance with the Plan and the Reclamation Trust Agreement:

a)    Releases of collateral held by the Sureties as set forth in Sections 2.3, 2.4 and 2.5.

b)    Until Phase I bond release of bonds securing reclamation of the Decker Mine is achieved, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, sixty percent (60%) of all distributions from Black Butte to Reorganized KCP made pursuant to the Black Butte JV Agreement, deposited by Reorganized KCP into the Reclamation Sinking Fund, and twenty percent (20%) of the proceeds of the sale of any Coal Side Assets or any Reclamation Assets, deposited by the applicable Reorganized Debtor into the Reclamation Sinking Fund.

c)    After said Phase I bond release is achieved, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, when the amount in the Reclamation Sinking Fund is below the Reclamation Sinking Fund Benchmark, fifty percent (50%) of all distributions from Black Butte to Reorganized KCP made pursuant to the Black Butte JV Agreement, deposited by Reorganized KCP into the Reclamation Sinking Fund, and twenty percent (20%) of the proceeds of the sale and any Reclamation Assets, deposited by the applicable Reorganized Debtor into the Reclamation Sinking Fund.

**2.3    Releases by Sureties for Reclamation.**    The Sureties shall release collateral held by them into the Reclamation Sinking Fund in an amount that correlates to the amount of the budgeted expenses set forth in the Reclamation Trust Entity Budget for the Reclamation Plans as follows:

a)    East Decker.    From time to time, at such times consistent with the Reclamation Trust Entity Budget, but no less frequently than on an annual basis, each of Zurich and Atlantic shall release an amount equal to their respective Pro Rata Share of the budgeted expenses for the reclamation of East Decker in advance for the upcoming Funding Year until such Surety, as applicable, has released all of the collateral held by it into the Reclamation Sinking Fund.  In the event one of the Sureties has released all of the collateral held by it, the other Surety's Pro Rata Share shall be deemed to be 100% until it has released all of the collateral held by it into the Reclamation Sinking Fund.

3

b)  West Decker.  From time to time, at such times consistent with the Reclamation Trust Entity Budget, but no less frequently than on an annual basis, until the Funding Year in which West Decker Phase I Bond Release is expected to be obtained, Zurich shall release an amount equal to 100% of the budgeted expenses for the reclamation of West Decker for the applicable upcoming Funding Year.  For the Funding Year in which the West Decker Phase I Bond Release is expected to occur, Zurich shall release an amount equal to 100% of said budgeted expenses for the reclamation of West Decker in advance up to the expected date of the West Decker Phase I Bond Release and monthly in advance thereafter until the month in which West Decker Phase I Bond Release is obtained, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law.  Within 30 days following the West Decker Phase I Bond Release, Westchester shall release 100% of said budgeted expenses for the reclamation of West Decker in advance for the remainder of the Funding Year in which West Decker Phase I Bond Release is obtained, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law and, thereafter, at the start of each Funding Year after West Decker Phase I Bond Release is obtained, as determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law, Westchester shall release an amount equal to 100% of the budgeted expenses for the reclamation of West Decker in advance until full bond release is obtained for West Decker, upon which Westchester shall release all remaining collateral held by it into the Reclamation Sinking Fund; *provided, however,* that in no event shall Westchester be required to release into the Reclamation Sinking Fund any amount in excess of the collateral held by Westchester to secure the reclamation liabilities associated with West Decker.  In the event that Westchester has released all collateral held by it prior to obtaining full bond release for West Decker, Zurich shall resume releasing 100% of the budgeted expenses until it has released all of the collateral held by it into the Reclamation Sinking Fund.

c)  Decker Opencut Mine.  From time to time, at such times consistent with the Reclamation Trust Entity Budget, but no less frequently than on an annual basis, Zurich shall release an amount equal to 100% of the budgeted expenses for the reclamation of Decker Opencut Mine in advance until it has released all of the collateral held by it into the Reclamation Sinking Fund.

d)  Big Horn.  From time to time, at such times consistent with the Reclamation Trust Entity Budget, but no less frequently than on an annual basis, Zurich shall release an amount equal to 100% of the budgeted expenses for the reclamation of Big Horn in advance for the upcoming Funding Year until it has released all of the collateral held by it into the Reclamation Sinking Fund.

e)  Remaining Collateral.  In the event all of the bonds issued by a Surety have been released and such Surety continues to hold any collateral related thereto, such Surety shall release all remaining collateral held by it into the Reclamation Sinking Fund.

**2.4  Releases of Sinking Fund Management Fee.**  At the end of each Funding Year, upon notice from the Reclamation Trust Entity Representative that Reorganized LHR Coal's cash balance has fallen below $2,000,000, Zurich and Atlantic shall release collateral held by them into the Reclamation Sinking Fund in the amount of the Sinking Fund Management Fee.  Each of

4

Zurich and Atlantic shall contribute to such amount in proportion to the application of a fraction where (a) the numerator is equal to the amount of the bonds issued by such Surety with respect to all Mining Complexes on the applicable Funding Date, and (b) the denominator is the total amount of the bonds issued by Zurich and Atlantic with respect to all Mining Complex on the applicable Funding Date ("Zurich/Atlantic Pro Rata Share"). In the event one of the Sureties has released all of the collateral held by it, the other Surety's Zurich/Atlantic Pro Rata Share shall be deemed to be 100% until it has released all of the collateral held by it into the Reclamation Sinking Fund.

**2.5    Releases Related to Reclamation Entity Trust Bonding Agreement.**  On an annual basis beginning on the Reclamation Agreement Date and on the anniversary of each Funding Year thereafter, Zurich and Atlantic shall release collateral held by them into the Reclamation Sinking Fund an amount that correlates to the amount of the budged expenses set forth in the Reclamation Trust Entity Budget for payment of obligations of Reorganized Coal Side Debtors under the Reclamation Trust Entity Bonding Agreement, including payment of annual surety fees to the Sureties in advance for the upcoming Funding Year ("Bonding Obligation Amounts").  The release of collateral of each of Zurich and Atlantic shall be in the amount in proportion to their respective Zurich/Atlantic Pro Rata Share.  In the event one of the Sureties has released all of the collateral held by it, the other Surety's Zurich/Atlantic Pro Rata Share shall be deemed to be 100% until it has released all of the collateral held by it into the Reclamation Sinking Fund.

## ARTICLE III
## RELEASES FROM THE RECLAMATION SINKING FUND

**3.1    Releases from the Fund.**  The Reclamation Trust Entity Representative shall release from the Reclamation Sinking Fund to Reorganized LHR Coal on a monthly basis in advance the amount of the budgeted expenses of the Reorganized Coal Side Debtors set forth in the Reclamation Trust Entity Budget for reclamation expenses and Bonding Obligation Amounts. Upon deposit of the Sinking Fund Management Fee in the Reclamation Sinking Fund pursuant to Section 2.4, the Reclamation Trust Entity Representative shall immediately release such amount from the Reclamation Sinking Fund to Reorganized LHR Coal.

## ARTICLE IV
## SECURITY INTEREST IN RECLAMATION SINKING FUND; TERMINATION

**4.1    Grant of Security Interest**.    Lighthouse Reclamation Trust hereby grants the Sureties a superior security interest in the Reclamation Sinking Fund and all funds and financial assets from time to time credited thereto (including all cash equivalent investments) up to the Reclamation Sinking Fund Benchmark.  Such security interest shall be senior in priority to the interests of any other beneficiary of Lighthouse Reclamation Trust including the Beneficiaries. Lighthouse Reclamation Trust shall from time to time, and in any event promptly upon request of any of the Sureties, give, execute, deliver, file, record authorize and obtain all such financing statements, continuation statements, notices, instruments, documents, agreements or other papers as may be necessary or appropriate in the reasonable judgement of the Sureties to create, preserve, perfect, maintain the perfection of or validate the security interest granted pursuant hereto or to enable the Sureties to exercise and enforce their rights hereunder with the respect such security interest. The Sureties, in their sole discretion, may take any steps necessary or appropriate to

5

perfect, reperfect or continue in effect the perfection and priority of the security interest granted herein. The Lighthouse Reclamation Trust represents and warrants that no entities have a senior security interest in the Reclamation Sinking Fund.  Further, the Lighthouse Reclamation Trust shall not grant any interest in the Reclamation Sinking Fund that is senior to the interests of the Sureties without the express written consent of the Sureties.

**4.2    Bond Forfeiture.**  In the event that a claim is made on one or more of the Bonds by a Bond obligee and this Agreement is terminated pursuant to Section 4.4(b) below,  (a) each Surety shall have the rights and remedies with respect to the Reclamation Sinking Fund of a secured party under the Delaware Uniform Commercial Code and such additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies under this section may be asserted, except to the extent limited by any intercreditor agreement entered into by the Sureties governing such rights and remedies and (b) the Lighthouse Reclamation Trust shall distribute to the Sureties all funds remaining in the Reclamation Sinking Fund to hold as collateral to secure the obligations under the Existing Indemnity Agreements, with allocation of such amount amongst the Sureties to be as agreed by the Sureties in writing at such time (to be determined based on the amounts contributed by each Surety to the Reclamation Sinking Fund and the amount of reclamation completed as of that date with respect to each Surety).

**4.3    Termination of Security Interest.**  The security interest granted herein shall automatically terminate as to each applicable Surety upon completion of the Reclamation Plans and the corresponding bond release of all of the bonds issued by such Surety.  Upon such termination, each applicable Surety shall execute and deliver to Lighthouse Reclamation Trust such Uniform Commercial Code termination statements and such other documentation as shall be reasonably requested by the Reclamation Trust Entity Representative to effect the termination and release of such Surety's liens on the Reclamation Sinking Fund.

**4.4    Termination of Agreement.**  This Agreement shall terminate upon the earlier to occur of (a) such time as both (i) the Decker Reclamation Plan is completed as determined by the Reclamation Governmental Authorities, and (ii) the costs of the Black Butte Reclamation Plan attributable to Reorganized KCP's 50% interest in Black Butte have been fully funded in the Reclamation Sinking Fund and set aside, or (b) a claim is made on a Bond by any Bond obligee unless the Sureties agree to waive the termination event in this clause (b) in whole or in part within ninety (90) days of the date such claim is made after consultation and negotiation in good faith with the applicable Reclamation Governmental Authorities.  In the event this Agreement is terminated pursuant to the preceding clause (a), upon release of the Bonds issued by the Sureties by the respective bond obligees, the Sureties shall release any remaining collateral held by them into the Reclamation Sinking Fund and the funds in the Reclamation Sinking Fund shall be distributed pursuant to Reclamation Trust Agreement.

**4.5    Survival**.  Any of the provisions of this Agreement which by their nature are to be performed after the termination of this Agreement shall survive such termination.

6

4827-4060-7707.v15

## ARTICLE V
## MISCELLANEOUS PROVISIONS

**5.1    Amendments.** No amendment of any provision of this Agreement is to be valid and binding unless it is in writing and signed by the parties or, in the case of a waiver, by the party against whom the waiver is to be effective.

**5.2    Waiver.** No failure of any party to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**5.3    Cumulative Rights and Remedies.** The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan and the Confirmation Order.

**5.4    Relationship to the Plan.** The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and, to the extent that the provisions of this Agreement are otherwise non-determinative, is subject to the provisions of the Plan and the Confirmation Order, which are attached as Exhibit A and Exhibit B, respectively, to the Reclamation Trust Agreement.  If any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.  If any provision of the Plan is found to be inconsistent with a provision of the Confirmation Order, the Confirmation Order shall control.

**5.5    Applicable Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

**5.6    Retention of Jurisdiction.**  Retention of jurisdiction shall be as set forth in the Plan and/or the Confirmation Order.

**5.7    Severability.** In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by any court of proper jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

**5.8    Limitation of Benefits.** Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any Person other than the parties hereto, the Reclamation Government Authorities, and the Beneficiaries any rights or remedies under or by reason of this Agreement. Nothing contained herein shall modify any of the Reclamation Governmental Authorities' or Sureties' rights under any bonds issued by the Sureties, and nothing contained herein shall limit the rights of any Reclamation Governmental Authorities with respect to the Reclamation

7

Liabilities of any Entity.  Nothing contained herein shall modify the rights of Bitter Creek, its successors and assigns, under the Black Butte JV Agreement.

       **5.9**    **Notices.** Except as provided in <u>Section 5.6</u> of this Agreement, all notices, requests, demands, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or by facsimile with an electromagnetic report of delivery or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, to the following addresses:

        a)      If to the Reorganized Debtors or Lighthouse Reclamation Trust, to:

Lighthouse Resources Inc.
10980 South Jordan Gateway
South Jordan, UT 84095
Attention:  Tay Tonozzi (t.tonozzi@lhr-inc.com)

with a copy (which shall not constitute notice) to:

Lighthouse Resources Inc.
10980 South Jordan Gateway
South Jordan, UT 84095
Attention:  Darin Adlard (d.adlard@lhr-inc.com)

        b)      If to the Senior Secured Lenders, to:

Resource Capital Funds
1400 Sixteenth Street, Suite 200
Denver Colorado 80202
Attn:    General Counsel

With a copy (which shall not constitute notice) to:

Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, Colorado  80202
Attn:    Joel O. Benson, Esq. (joel.benson@dgslaw.com)
         Christopher L. Richardson, Esq. (chris.richardson@dgslaw.com)
         Kyler K. Burgi, Esq. (kyler.burgi@dgslaw.com)

        c)      If to Zurich, to:

Zurich American Insurance Company
600 Red Brook Blvd, Suite 600
Owings Mills, MD 21117
Attn:    Brian Hodges, Head of Commercial Surety
         (brian.hodges@zurichna.com)

8

4827-4060-7707.v15

With a copy (which shall not constitute notice) to:

Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, New Jersey  07052
Attn:    Armen Shahinian, Esq. (ashahinian@csglaw.com)
            Scott Zuber, Esq. (szuber@csglaw.com)

d)        If to Atlantic, to:

Atlantic Specialty Insurance Company
One State Street Plaza, 31st Floor
New York, NY 10004
Attn.:   Terry Dahl (TDahl@intactinsurance.com)

With a copy (which shall not constitute notice) to:

Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
10 S. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Attn.:   John E. Sebastian (jsebastian@watttieder.com)
            Lauren E. Rankins (lrankins@watttieder.com)

e)        If to Westchester, to:

Westchester Fire Insurance Company
150 Allen Road, Suite 101
Basking Ridge, New Jersey 07920
Attn:    Derek A. Popeil, Esq., Assistant Vice President,
            Surety Claims Manager
            (dpopeil@chubb.com)

With a copy (which shall not constitute notice) to:

Manier & Herod, PC
1201 Demonbreun St., Suite 900
Nashville, TN  37203
Attn:    Michael E. Collins (mcollins@manierherod.com)

The parties may designate in writing from time to time other and additional places to which notices may be sent.

**5.10    Further Assurances.** From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

9

4827-4060-7707.v15

**5.11    Integration.** This Agreement, the Reclamation Trust Entity Bonding Agreement, the Reclamation Trust Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants, or obligations among them except as set forth herein, in the Plan and in the Confirmation Order.  This Agreement, together with the Reclamation Plans, the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise provided in this Agreement, the Reclamation Trust Entity Bonding Agreement, the Reclamation Trust Agreement, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.

**5.12    Interpretation.** The enumeration and Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations.  The words herein, hereby, and hereunder and words with similar import, refer to this Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise.

**5.13    Counterparts.** This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of this Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart.

*[Remainder of Page Left Intentionally Blank]*

10

4827-4060-7707.v15

IN WITNESS WHEREOF, the parties have caused this Reclamation Sinking Fund Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

LIGHTHOUSE RECLAMATION TRUST

By:     LIGHTHOUSE RESOURCES INC., as the Reclamation Trust Entity Representative

By: _____

Name: Robert Novak

Title: Chief Restructuring Officer

[SIGNATURE PAGES CONTINUE ON FOLLOWING PAGE]

*Signature Page to Reclamation Sinking Fund Agreement*

**SENIOR SECURED LENDERS**:

RESOURCE CAPITAL FUND VI L.P.

By:    Resource Capital Associates VI, L.P.,
       General Partner

By:    RCA VI GP Ltd.,
       General Partner

By:    _____
       Mason Hills
       General Counsel

RCF V ANNEX FUND L.P.

By:    Resource Capital Associates V L.P.,
       General Partner

By:    RCA V GP Ltd.,
       General Partner

By:    _____
       Mason Hills
       General Counsel

RCF V ANNEX FUND L.P.,

By:    Resource Capital Associates V L.P.,
       General Partner

By:    RCA V GP Ltd.,
       General Partner

By:    _____
       Mason Hills
       General Counsel

[SIGNATURE PAGES CONTINUE ON FOLLOWING PAGE]

*Signature Page to Reclamation Sinking Fund Agreement*

**SURETIES:**

ZURICH AMERICAN INSURANCE COMPANY

By:_____

Name: Michelle Randall, Esq.

Title:   Vice President – Surety Risk Solutions


ATLANTIC SPECIALTY INSURANCE
COMPANY

By:_____

Name:  _____

Title:  _____


WESTCHESTER FIRE INSURANCE COMPANY

By:_____

Name: Derek A. Popeil

Title:   Assistant Vice President, Surety Claims
         Manager

**SURETIES:**

ZURICH AMERICAN INSURANCE COMPANY

By:_____

Name: Michelle Randall, Esq.

Title:   Vice President – Surety Risk Solutions


ATLANTIC SPECIALTY INSURANCE
COMPANY

By:_____
Terry Dahl
B641E540E7C64CF...

Name: _____
Terry Dahl

Title: _____
Senior Vice President


WESTCHESTER FIRE INSURANCE COMPANY

By:_____

Name: Michael E. Collins

Title:   Legal Counsel

*Signature Page to Reclamation Sinking Fund Agreement*

**SURETIES:**

ZURICH AMERICAN INSURANCE COMPANY

By:_____
Name: Michelle Randall, Esq.
Title:   Vice President – Surety Risk Solutions


ATLANTIC SPECIALTY INSURANCE
COMPANY

By:_____

Name: _____

Title: _____


WESTCHESTER FIRE INSURANCE COMPANY

By:_____
Name: Derek A. Popeil
Title:   Assistant Vice President, Surety Claims
         Manager

*Signature Page to Reclamation Sinking Fund Agreement*

## Exhibit A

| Bond Number | Principal | Obligee* | Description | Bond Amount | Mine Name | Surety |
|---|---|---|---|---|---|---|
| **BIG HORN** | | | | | | |
| 09062356 | Big Horn Coal Company | State of Wyoming, Department of Environmental Quality, Land Quality Division and the United States - Office of Surface Mining | Reclamation Coal Bond / Permit No. 213-T7 | $760,000.00 | Big Horn | Zurich |
| **BLACK BUTTE** | | | | | | |
| 800041084 | Black Butte Coal Company | United States Department of the Interior: Bureau of Land Management, Wyoming State Office | Bond Under License to Explore for Coal Deposits / Serial Numbers: WYW186226 | $15,000.00 | Black Butte | Atlantic |
| 09062366 | Black Butte Coal Company | State of Wyoming, Department of Environmental Quality, Land Quality Division and the United States - Office of Surface Mining | Reclamation Coal Bond / Permit No. 96CN | $13,050.00 | Black Butte | Zurich |
| 09062354 | Black Butte Coal Company | State of Wyoming, Department of Environmental Quality, Land Quality Division and the United States - Office of Surface Mining | Reclamation Coal Bond / Permit No. 520-T8 | $2,292,500.00 | Black Butte | Zurich |
| 09062351 | Black Butte Coal Company, a joint venture of KCP, Inc. and Bitter Creek Coal Company | State of Wyoming, Department of Environmental Quality, Land Quality Division | Reclamation Coal Bond / Permit No. 467-T7 | $49,698,463.50 | Black Butte | Zurich |
| 09062375 | Black Butte Coal Company | United States Department of the Interior: Bureau of Land Management, Wyoming State Office | Reclamation Coal Lease Bond / Permit No. WYW 160394 | $83,800.00 | Black Butte | Zurich |
| 09062362 | Black Butte Coal Company | United States Department of the Interior: Bureau of Land Management, Wyoming State Office | Reclamation Coal Lease Bond / Permit No. WYW006266 | $491,000.00 | Black Butte | Zurich |
| 09062363 | Rosebud Coal Sales Company | United States Department of the Interior: Bureau of Land Management, Wyoming State Office | Reclamation Coal Lease Bond / Permit No. WYW23411 | $5,000.00 | Black Butte | Zurich |
| 9277283 | Black Butte Coal Company | United States Department of the Interior: Bureau of Land Management, Wyoming State Office | Bond Under Lease for Mining Deposits / Serial Numbers: WYW6266, WYW23411 & WYW160394 | $347,600.00 | Black Butte | Zurich |
| **DECKER OPENCUT PERMIT** | | | | | | |
| 09062368 | Decker Coal Company | State of Montana Department of Environmental Quality Opencut Mining Program | Opencut Mining Permit Bond / Permit No. 23 | $7,470.00 | Decker Opencut Mine | Zurich |
| **EAST DECKER** | | | | | | |
| 800034462 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality, and the United States of America, acting through the Department of the Interior, Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1983007 | $15,000,000.00 | East Decker | Atlantic |
| 800010582 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1983007 | $15,000,000.00 | East Decker | Atlantic |
| 9235841 | Decker Coal Company, LLC | State of Montana, Department of Natural Resources and Conservation | Reclamation Coal Lease Bond / Permit No. C-1096-17 | $10,000.00 | East Decker | Zurich |
| 9235840 | Decker Coal Company, LLC | State of Montana, Department of Natural Resources and Conservation | Reclamation Coal Lease Bond / Permit No. C-1095-17 | $10,000.00 | East Decker | Zurich |
| 9215080 | Decker Coal Company, LLC | State of Montana, Department of Natural Resources and Conservation | Coal Mining Lease C-1089-16 | $10,000.00 | East Decker | Zurich |
| 9215079 | Decker Coal Company, LLC | State of Montana, Department of Natural Resources and Conservation | Coal Mining Lease C-1090-16 | $10,000.00 | East Decker | Zurich |
| 9261707 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1983007 | $16,026,609.00 | East Decker | Zurich |

*Exhibit A – Page 1*

4827-4060-7707.v15

| | | | | | | |
|---|---|---|---|---|---|---|
| 09062353 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1983007 | $34,273,391.00 | East Decker | Zurich |
| 09174860 | Decker Coal Company | State of Montana, Department of Natural Resources and Conservation | Reclamation Bond - Coal Mining Lease C-1086-15 | $10,000.00 | East Decker | Zurich |
| 09174861 | Decker Coal Company | State of Montana, Department of Natural Resources and Conservation | Reclamation Bond - Coal Mining Lease C-1087-15 | $10,000.00 | East Decker | Zurich |
| 09062373 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101101 | $5,000.00 | West Decker | Zurich |
| **WEST DECKER** | | | | | | |
| 09062373 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101101 | $5,000.00 | West Decker | Zurich |
| 09062371 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101099 | $5,000.00 | West Decker | Zurich |
| K08898297 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. LMU MTM-83088 | $456,500.00 | West Decker | Westchester |
| K08898339 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1987001C | $3,719,818.50 | West Decker | Westchester |
| 09145459 | Decker Coal Company | United States Department of Labor: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Lease No. MTM 107327 | $5,000.00 | West Decker | Zurich |
| 09122204 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Coal and Uranium Reclamation Bond - Permit No. X2013340 | $44,824.00 | West Decker | Zurich |
| 9261706 | Decker Coal Company LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1987001C | $5,433,754.00 | West Decker | Zurich |
| 9261709 | Decker Coal Company LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1987001C | $5,000,000.00 | West Decker | Zurich |
| 09062357 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Bond / Permit No. LMU MTM-83088 | $299,535.00 | West Decker | Zurich |
| 09062370 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101098 | $5,000.00 | West Decker | Zurich |
| 09062372 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101100 | $5,000.00 | West Decker | Zurich |
| 09062387 | Decker Coal Company | State of Montana, Department of Natural Resources and Conservation | Reclamation Coal Lease Bond / Permit No. C-1079-11 | $1,600.00 | West Decker | Zurich |
| 09062352 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1987001C | $31,946,427.50 | West Decker | Zurich |
| 09062377 | Decker Coal Company, LLC | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. M 54716 | $5,000.00 | West Decker | Zurich |
| 09062378 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. 06770 | $5,000.00 | West Decker | Zurich |
| 09062369 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101097 | $5,000.00 | West Decker | Zurich |
| 09093715 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Lease No. 105019 | $5,000.00 | West Decker | Zurich |

*Exhibit A – Page 2*

4827-4060-7707.v15

| 09200571 | Decker Coal Company, LLC | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM107885 | $5,000.00 | West Decker | Zurich |

*This column is not intended to be substantive and is solely for descriptive purposes and does not limit the identification of the actual "obligees" under any of the Bonds.

*Exhibit A – Page 3*

# EXHIBIT D

## RECLAMATION TRUST ENTITY BONDING AGREEMENT

This Reclamation Trust Entity Bonding Agreement (this "Agreement") is made this 7th day of April, 2021, by and among: (i) Lighthouse Resources Inc., a Delaware corporation ("Reorganized Lighthouse"), and each of the undersigned subsidiaries of Reorganized Lighthouse (each a "Reorganized Coal Side Debtor" and, together with Reorganized Lighthouse the "Reorganized Coal Side Debtors"), (ii) Zurich American Insurance Company, an Illinois corporation ("Zurich"); (iii) Atlantic Specialty Insurance Company, a New York corporation ("Atlantic"); (iv) Westchester Fire Insurance Company, a Pennsylvania corporation ("Westchester" and, together with Zurich and Atlantic, the "Sureties" and each, a "Surety"); and (v) Lighthouse Reclamation Trust, a Delaware business trust (the "Lighthouse Reclamation Trust," and together with the Reorganized Coal Side Debtors, the "Lighthouse Entities"); in connection with the Second Amended Joint Plan of Debtors under chapter 11 of the Bankruptcy Code, dated March 10, 2021 filed at Docket No. 435 in the cases jointly administered by the Debtors under chapter 11 of the Bankruptcy Code ("Chapter 11 Cases") pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") as Case No. 20-13056 (together with any amendments thereof, exhibits or other documents attached thereto or supplements thereto, the "Plan").

## RECITALS

WHEREAS, on December 3, 2020, the Debtors filed the Chapter 11 Cases;

WHEREAS, on March 10, 2021, Docket No. 435, the Bankruptcy Court entered an Order confirming the Plan (the "Confirmation Order");

WHEREAS, the Effective Date of the Plan occurred on the date hereof;

WHEREAS, the Sureties, as applicable, and the Reorganized Coal Side Debtors along with certain other entities are a party to those certain indemnity agreements set forth on Exhibit A attached hereto and made a part hereof ("Existing Indemnity Agreements") pursuant to which certain coal reclamation bonds have been issued by the Sureties as more particularly set forth on Exhibit B attached hereto and made a part hereof ("Bonds"); and

WHEREAS, the Plan provides for, on the Effective Date, the parties hereto to enter into this Agreement acknowledging the assumption of the Existing Indemnity Agreements and amending said Existing Indemnity Agreements as more particularly set forth herein.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, and mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I.
## DEFINED TERMS; ASSUMPTION OF EXISTING INDEMNITY AGREEMENTS

1.1     **Defined Terms.**  The parties hereto, along with certain other parties, are a party to that certain Reclamation Trust Entity and Distribution Agreement of even date herewith

("Reclamation Trust Agreement").  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in said Reclamation Trust Agreement.

1.2     **Assumption of Existing Indemnity Agreements.**  The parties acknowledge that the Existing Indemnity Agreements have been assumed by the Reorganized Coal Side Debtors pursuant to the Plan and Confirmation Order.  All terms, covenants and conditions set forth in the Existing Indemnity Agreements (a) remain valid, effective and in full force and effect, (b) are hereby ratified and affirmed, and (c) continue unimpaired under the Plan with respect to the Reorganized Coal Side Debtors.  If any provision of this Agreement is found to be inconsistent with a provision of the Existing Indemnity Agreements, except as set forth in Article II, the provisions of the Existing Indemnity Agreements shall control subject only to the provisions for forbearance of the Sureties' enforcement of the Existing Indemnity Agreements as set forth herein.

1.3     **Black Butte.**  All rights of the Sureties under the Existing Indemnity Agreements are preserved, unimpaired and unmodified; *provided, however,* that each of the Sureties agrees that it will forbear from pursuing any such rights under the Existing Indemnity Agreements, as applicable, against Black Butte unless and until (a) there is a material  default, including either an actual or an anticipatory default, to be determined in the reasonable, good faith discretion of the Sureties or a default under the Plan or other Definitive Documents, or (b) Black Butte does not agree to execute a tolling agreement with the Sureties tolling all applicable statutes of limitation.

1.4     **Representations Regarding Existing Indemnity Agreements.**  Westchester represents and warrants to the Lighthouse Entities that the Westchester Indemnity Agreement (as defined in Exhibit A) is a true, correct and complete list of all of the indemnity agreements to which it is a party with any of the Lighthouse Entities.  Zurich represents and warrants to the Lighthouse Entities that the Zurich Indemnity Agreement (as defined in Exhibit A) is a true, correct and complete list of all of the indemnity agreements to which it is a party with any of the Lighthouse Entities.  Atlantic represents and warrants to the Lighthouse Entities that the Atlantic Indemnity Agreement (as defined in Exhibit A) is a true, correct and complete list of all of the indemnity agreements to which it is a party with any of the Lighthouse Entities.  The failure to identify additional indemnity agreements that may be in effect shall not impact the enforceability of the indemnity agreements identified on Exhibit A.

1.5     **Indemnification.**  Except with respect to costs and expenses set forth in Section 4.3, and in addition to any obligations under the Existing Indemnity Agreements, the Reorganized Coal Side Debtors agree, on a joint and several basis, to indemnify each of the Sureties from and against any and all liability, loss, costs, damages, attorneys' fees and expenses, of whatever kind or nature, hereafter sustained or incurred by such Surety by reason, or in consequence of such Surety executing the Bond or Bonds as surety or co-surety, or procuring the execution thereof, in making any investigation on account of any such Bond or Bonds, in defending or prosecuting any action, suit or other proceeding which may be brought in connection therewith, in enforcing any of the agreements herein contained, and in obtaining a release from liability under any such Bond or Bonds; and to indemnify such Surety to the full amount of liability, loss, costs, damages, attorney's fees and expenses as aforesaid, regardless of any reinsurance that may be carried on any such Bonds.  The Sureties agree to forbear from enforcing the indemnity obligations of the Reorganized Coal Side Debtors under this Agreement and, as applicable, under the Existing Indemnity Agreements unless and until (a) there is a material  default, including either an actual

2

or an anticipatory default, to be determined in the reasonable, good faith discretion of the Sureties or a default under the Plan or other Definitive Documents.  To the extent any of the Reorganized Coal Side Debtors is not a signatory to any of the Existing Indemnity Agreements, the entry of such Reorganized Coal Side Debtors into this Agreement shall constitute a valid and binding agreement of such Reorganized Coal Side Debtors to be bound by and perform under each of the Existing Indemnity Agreements.

1.6    **Waiver of Rights of Discharge.**  Unless and until this Agreement is terminated pursuant to Section 4.2, each of the Sureties agrees to forbear from requesting discharge of the Surety from any Bond or Bonds and any liability by reason thereof and to forbear from cancelling, revoking, reducing, terminating or failing to renew any bonds issued pursuant to the Existing Indemnity Agreements except upon the written request of any of the Reorganized Coal Side Debtors.

1.7    **Collateral.**  Notwithstanding any provision in the Existing Indemnity Agreements to the contrary, unless and until this Agreement is terminated pursuant to Section 4.2, the collateral held by the Sureties as of the date hereof, as governed by the Reclamation Sinking Fund Agreement, is the only collateral securing the obligations of the Reorganized Coal Side Debtors under the Bonds, the Existing Indemnity Agreements, the Plan, and the Definitive Documents. Unless and until this Agreement is terminated pursuant to Section 4.2, each of the Sureties agrees to forbear from requiring the Reorganized Coal Side Debtors to assign, transfer or set over to the Sureties any additional collateral.

## ARTICLE II.
## PREMIUMS

2.1    **Pre-Effective Date Premiums.**  Outstanding unpaid annual surety premiums due in advance under the Existing Indemnity Agreements before the Effective Date for the Bonds, other than the Bonds issued for Black Butte, shall be calculated at the respective premium rate effective at the Petition Date (unamended by this Agreement) and pro-rated based on the number of days for the period beginning on the date such premium to be paid in advance was due under the applicable Existing Indemnity Agreement and ending on the Effective Date (the prorated premium with respect to each Surety, the "Pre-Effective Date Premium").  Reorganized KCP and Reorganized Decker, as applicable, shall pay each of the Sureties the Pre-Effective Date Premium due to it immediately upon release of such funds from the Reclamation Sinking Fund pursuant to the Reclamation Sinking Fund Agreement. The premiums for Westchester shall not be paid until Westchester releases collateral after the Phase 1 Bond Release.

2.2    **Post-Effective Date Premiums.**  Annual surety premiums due in advance under the Existing Indemnity Agreement as amended by this Agreement for the Bonds shall cover each year starting on the date hereof and ending on the day immediately preceding the anniversary of the date hereof (each annual premium with respect to each Surety, the "Post-Effective Date Premium").  The Post-Effective Date Premium shall be at a rate of 0.64% of the aggregate penal sum of all Bonds issued by such Surety other than Bonds such Surety has issued for Black Butte. The Post-Effective Date Premium shall be at a rate of 0.62% of the aggregate penal sum of all Bonds issued by such Surety for the Bonds such Surety has issued for Black Butte.

3

2.3     **Effect on Existing Premium Rates.**  The provisions of <u>Sections 2.1</u> and <u>2.2</u> supersede, replace and amend any agreement to pay surety premiums to the Sureties set forth in the Existing Indemnity Agreements or otherwise.

## ARTICLE III.
## MODIFICATION IN PENAL AMOUNTS

3.1     **Reduction in Penal Amounts.**  The Reorganized Coal Side Debtors will periodically request from Montana approval for a reduction in the penal amounts of the applicable Bonds in the amount and as to such Bonds that Reorganized Coal Side Debtors reasonably and in good faith determine, in consultation with the Sureties, are eligible for bond release. The parties hereto understand that any reductions in the penal amounts of the applicable Bonds shall be determined by the applicable Reclamation Governmental Authorities in accordance with applicable non-bankruptcy law.

## ARTICLE IV.
## TERMINATION; EXPENSES

4.1     **Termination of Existing Indemnity Agreements, as Amended.**  This Agreement and Existing Indemnity Agreements shall terminate upon the date of release of all of the Bonds securing the reclamation obligations of the Reorganized Coal Side Debtors.

4.2     **Termination of this Agreement.**  This Agreement and its effect as an amendment to the Existing Indemnity Agreements shall terminate at such time as a claim is made against one or more of the Bonds issued by a Surety by an obligee of the Bonds.  In such event, the Existing Indemnity Agreements shall be deemed unamended by this Agreement as of such date of termination.  In the event of termination of this Agreement under this <u>Section 4.2</u>, the Sureties shall also have any rights, powers and remedies which the Surety may have or acquire against the Reorganized Coal Side Debtors available by operation of law or otherwise.

4.3     **Expenses.**  As between the Sureties and the Reclamation Trust Entity, all costs and expenses, including fees and disbursements of counsel, financial advisors, and accountants, incurred by such party in connection with Chapter 11 Cases, this Agreement and the other Definitive Documents ("<u>Costs and Expenses</u>") shall be paid by the party incurring such Costs and Expenses.  The Sureties agree to forbear from seeking reimbursement of its Costs and Expenses from the Reorganized Coal Side Debtors under the Existing Indemnity Agreements unless and until this Agreement is terminated under Section 4.2.  In the event that this Agreement is terminated under Section 4.1, the Sureties shall not seek reimbursement of its Costs and Expenses from the Reorganized Coal Side Debtors under the Existing Indemnity Agreements or otherwise.

## ARTICLE V.
## MISCELLANEOUS PROVISIONS

5.1     **Amendments.**  No amendment of any provision of this Agreement is to be valid and binding unless it is in writing and signed by the parties or, in the case of a waiver, by the party against whom the waiver is to be effective.

4828-4207-4588.v12

5.2     **Waiver.**  No failure of any party to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

5.3     **Cumulative Rights and Remedies.**  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan, the Confirmation Order and Section 4.2.

5.4     **Relationship to the Plan.**  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and, to the extent that the provisions of this Agreement are otherwise non-determinative, is subject to the provisions of the Plan and the Confirmation Order, which are attached as Exhibit A and Exhibit B, respectively, to the Reclamation Trust Agreement.  If any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.  If any provision of the Plan is found to be inconsistent with a provision of the Confirmation Order, the Confirmation Order shall control.

5.5     **Applicable Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

5.6     **Retention of Jurisdiction.**  Retention of jurisdiction shall be as set forth in the Plan and/or the Confirmation Order.

5.7     **Severability.**  In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by any court of proper jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

5.8     **Limitation of Benefits.**  Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any Person other than the parties hereto and the Reclamation Governmental Authorities any rights or remedies under or by reason of this Agreement.  Nothing contained herein shall modify any of the Reclamation Governmental Authorities' rights under any Bonds issued by the Sureties, and nothing contained herein shall limit the rights of any Reclamation Governmental Authorities with respect to the Reclamation Liabilities of any Entity.

5.9     **Notices.**  Except as provided in Section 5.6 of this Agreement, all notices, requests, demands, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or by facsimile with an electromagnetic report of delivery or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, to the following addresses:

5

a)      If to the Reorganized Coal Side Debtors or Lighthouse Reclamation Trust, to:

Lighthouse Resources Inc.
10980 South Jordan Gateway
South Jordan, UT 84095
Attention: Tay Tonozzi (t.tonozzi@lhr-inc.com)

with a copy (which shall not constitute notice) to:

Lighthouse Resources Inc.
10980 South Jordan Gateway
South Jordan, UT 84095
Attention: Darin Adlard (d.adlard@lhr-inc.com)

b)      If to Zurich, to:

Zurich American Insurance Company
600 Red Brook Blvd, Suite 600
Owings Mills, MD 21117
Attn:    Brian Hodges, Head of Commercial Surety
        (brian.hodges@zurichna.com)

With a copy (which shall not constitute notice) to:

Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, New Jersey  07052
Attn:    Armen Shahinian, Esq. (ashahinian@csglaw.com)
        Scott Zuber, Esq. (szuber@csglaw.com)

c)      If to Atlantic, to:

Atlantic Specialty Insurance Company
One State Street Plaza, 31st Floor
New York, NY 10004
Attn.:   Terry Dahl (TDahl@intactinsurance.com)

With a copy (which shall not constitute notice) to:

Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
10 S. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Attn.:   John E. Sebastian (jsebastian@watttieder.com)
        Lauren E. Rankins (lrankins@watttieder.com)

6

d)        If to Westchester, to:

Westchester Fire Insurance Company
150 Allen Road, Suite 101
Basking Ridge, New Jersey 07920
Attn:    Derek A. Popeil, Esq., Assistant Vice President,
Surety Claims Manager
        (dpopeil@chubb.com)

With a copy (which shall not constitute notice) to:

Manier & Herod, PC
1201 Demonbreun St., Suite 900
Nashville, TN  37203
Attn:    Michael E. Collins (mcollins@manierherod.com)

The parties may designate in writing from time to time other and additional places to which notices may be sent.

5.10    **Further Assurances.** From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

5.11    **Integration.**  The Existing Indemnity Agreements, as amended by this Agreement, the Reclamation Trust Agreement, the Reclamation Sinking Fund Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants, or obligations among them except as set forth herein, in the Plan and in the Confirmation Order.  The Existing Indemnity Agreements, as amended by this Agreement, together with the Reclamation Plans, the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise provided in the Existing Indemnity Agreements, as amended by this Agreement, the Reclamation Trust Agreement, the Reclamation Sinking Fund Agreement, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.

5.12    **Interpretation.**  The enumeration and Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations.  The words herein, hereby, and hereunder and words with similar import, refer to this Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise.

7

5.13    **Counterparts.** This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of this Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart.

*[Remainder of Page Left Intentionally Blank]*

4828-4207-4588.v12

IN WITNESS WHEREOF, the parties have caused this Reclamation Trust Entity Bonding Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

**REORGANIZED COAL SIDE DEBTORS:**

LIGHTHOUSE RESOURCES INC.
LHR COAL, LLC
KCP, INC.
BIG HORN COAL COMPANY
ROSEBUD COAL SALES COMPANY
KCP PROPERTIES, INC.
DECKER COAL COMPANY, LLC
MONTANA ROYALTY HOLDINGS, LLC

By:    LIGHTHOUSE RESOURCES INC., as the Reclamation Trust Entity Representative

By:_____

Name: Robert Novak

Title: Chief Restructuring Officer

**LIGHTHOUSE RECLAMATION TRUST**

By:    LIGHTHOUSE RESOURCES INC., as the Reclamation Trust Entity Representative

By:_____

Name: Robert Novak

Title: Chief Restructuring Officer

[SIGNATURE PAGES CONTINUE ON FOLLOWING PAGE]

*Signature Page to Reclamation Trust Entity Bonding Agreement*

**SURETIES:**

**ZURICH AMERICAN INSURANCE COMPANY**

By:_____
Name: Michelle Randall, Esq.
Title:  Vice President – Surety Risk Solutions


**ATLANTIC SPECIALTY INSURANCE
COMPANY**

By:_____

Name: _____

Title:  _____


**WESTCHESTER FIRE INSURANCE COMPANY**

By:_____
Name: Derek A. Popeil
Title:   Assistant Vice President, Surety Claims
         Manager

*Signature Page to Reclamation Trust Entity Bonding Agreement*

**SURETIES:**

ZURICH AMERICAN INSURANCE COMPANY

By:_____
Name:  Michelle Randall, Esq.
Title:    Vice President – Surety Risk Solutions


ATLANTIC SPECIALTY INSURANCE
COMPANY

By:_____

Name: _____
Terry Dahl

Title: _____
Senior Vice President


WESTCHESTER FIRE INSURANCE COMPANY

By:_____
Name:  Michael E. Collins
Title:    Legal Counsel


*Signature Page to Reclamation Trust Entity Bonding Agreement*

**SURETIES:**

ZURICH AMERICAN INSURANCE COMPANY

By:_____
Name: Michelle Randall, Esq.
Title:   Vice President – Surety Risk Solutions


ATLANTIC SPECIALTY INSURANCE
COMPANY

By:_____

Name: _____

Title: _____


WESTCHESTER FIRE INSURANCE COMPANY
By:_____
Name: Derek A. Popell
Title:   Assistant Vice President, Surety Claims
         Manager

*Signature Page to Reclamation Trust Entity Bonding Agreement*

## Exhibit A

## Existing Indemnity Agreements

1.      Agreement of Indemnity dated June 11, 2014 ("Westchester Indemnity Agreement") by and between Westchester, as Surety, and Ambre Energy Limited, Ambre Energy North America, Inc. (n/k/a Lighthouse Resources Inc.), Decker Coal Company, Black Butte Coal Company, and KCP, Inc. (collectively, the "Westchester Indemnitors").

2.      Amended and Restated General Agreement of Indemnity dated September 18, 2015 ("Zurich Indemnity Agreement") by and between Zurich, as Surety, and Lighthouse Resources Inc., LHR Coal, LLC, LHR Infrastructure, LLC, LHR Coal Marketing, LLC (n/k/a Lighthouse Products, LLC), Decker Coal Company, LLC, Black Butte Coal Company, Rosebud Coal Company, Big Horn Coal Company, KCP, Inc., KCP Properties, Inc., and Decker Holding Co. LLC, referred to therein as Continuing Indemnitors and New Indemnitors (collectively, the "Zurich Indemnitors").

3.      General Indemnity Agreement dated June 12, 2014 ("2014 Atlantic Indemnity Agreement") by and between Atlantic, as Surety, and Ambre Energy North America, Inc. (n/k/a Lighthouse Resources Inc.), Ambre Energy Limited (Australia), AE Minerals Pty Ltd, AE Coal LLC (n/k/a LHR Coal, LLC), AE Infrastructure LLC (n/k/a LHR Infrastructure, LLC), AE Coal Marketing LLC (n/k/a Lighthouse Products, LLC), AE Alternative Fuels LLC, AE Wind River LLC, Decker Coal Company, Black Butte Coal Company, Rosebud Coal Sales Company, and Big Horn Coal Company (collectively, the "Original Atlantic Indemnitors").

4.      General Indemnity Agreement dated November 10, 2016 (such agreement together with the 2014 Atlantic Indemnity Agreement, the "Atlantic Indemnity Agreement") by and between Atlantic, as Surety, and Lighthouse Resources Inc., LHR Coal, LLC, LHR Infrastructure, LLC, Lighthouse Products, LLC, KCP, Inc., Big Horn Coal Company, Rosebud Coal Sales Company, KCP Properties, Inc., Decker Holding Co., LLC, Decker Coal Company, LLC, and Montana Royalty Holdings, LLC (such parties together with the Original Atlantic Indemnitors, the "Atlantic Indemnitors"; and the Atlantic Indemnitors together with the Zurich Indemnitors and the Westchester Indemnitors, the "Original Indemnitors").

*Exhibit A – Reclamation Trust Entity Bonding Agreement*

4828-4207-4588.v12

## Exhibit B

## Bonds

| Bond Number | Principal | Obligee* | Description | Bond Amount | Mine Name | Surety |
|---|---|---|---|---|---|---|
| **BIG HORN** | | | | | | |
| 09062356 | Big Horn Coal Company | State of Wyoming, Department of Environmental Quality, Land Quality Division and the United States - Office of Surface Mining | Reclamation Coal Bond / Permit No. 213-T7 | $760,000.00 | Big Horn | Zurich |
| **BLACK BUTTE** | | | | | | |
| 800041084 | Black Butte Coal Company | United States Department of the Interior: Bureau of Land Management, Wyoming State Office | Bond Under License to Explore for Coal Deposits / Serial Numbers: WYW186226 | $15,000.00 | Black Butte | Atlantic |
| 09062366 | Black Butte Coal Company | State of Wyoming, Department of Environmental Quality, Land Quality Division and the United States - Office of Surface Mining | Reclamation Coal Bond / Permit No. 96CN | $13,050.00 | Black Butte | Zurich |
| 09062354 | Black Butte Coal Company | State of Wyoming, Department of Environmental Quality, Land Quality Division and the United States - Office of Surface Mining | Reclamation Coal Bond / Permit No. 520-T8 | $2,292,500.00 | Black Butte | Zurich |
| 09062351 | Black Butte Coal Company, a joint venture of KCP, Inc. and Bitter Creek Coal Company | State of Wyoming, Department of Environmental Quality, Land Quality Division | Reclamation Coal Bond / Permit No. 467-T7 | $49,698,463.50 | Black Butte | Zurich |
| 09062375 | Black Butte Coal Company | United States Department of the Interior: Bureau of Land Management, Wyoming State Office | Reclamation Coal Lease Bond / Permit No. WYW 160394 | $83,800.00 | Black Butte | Zurich |
| 09062362 | Black Butte Coal Company | United States Department of the Interior: Bureau of Land Management, Wyoming State Office | Reclamation Coal Lease Bond / Permit No. WYW006266 | $491,000.00 | Black Butte | Zurich |
| 09062363 | Rosebud Coal Sales Company | United States Department of the Interior: Bureau of Land Management, Wyoming State Office | Reclamation Coal Lease Bond / Permit No. WYW23411 | $5,000.00 | Black Butte | Zurich |
| 9277283 | Black Butte Coal Company | United States Department of the Interior: Bureau of Land Management, Wyoming State Office | Bond Under Lease for Mining Deposits / Serial Numbers: WYW6266, WYW23411 & WYW160394 | $347,600.00 | Black Butte | Zurich |
| **DECKER OPENCUT PERMIT** | | | | | | |
| 09062368 | Decker Coal Company | State of Montana Department of Environmental Quality Opencut Mining Program | Opencut Mining Permit Bond / Permit No. 23 | $7,470.00 | Decker Opencut Mine | Zurich |
| **EAST DECKER** | | | | | | |
| 800034462 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality, and the United States of America, acting through the Department of the Interior, Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1983007 | $15,000,000.00 | East Decker | Atlantic |
| 800010582 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1983007 | $15,000,000.00 | East Decker | Atlantic |
| 9235841 | Decker Coal Company, LLC | State of Montana, Department of Natural Resources and Conservation | Reclamation Coal Lease Bond / Permit No. C-1096-17 | $10,000.00 | East Decker | Zurich |
| 9235840 | Decker Coal Company, LLC | State of Montana, Department of Natural Resources and Conservation | Reclamation Coal Lease Bond / Permit No. C-1095-17 | $10,000.00 | East Decker | Zurich |
| 9215080 | Decker Coal Company, LLC | State of Montana, Department of Natural Resources and Conservation | Coal Mining Lease C-1089-16 | $10,000.00 | East Decker | Zurich |
| 9215079 | Decker Coal Company, LLC | State of Montana, Department of Natural Resources and Conservation | Coal Mining Lease C-1090-16 | $10,000.00 | East Decker | Zurich |
| 9261707 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1983007 | $16,026,609.00 | East Decker | Zurich |

*Exhibit B – Reclamation Trust Entity Bonding Agreement – Page 1*

4828-4207-4588.v12

| | | | | | | |
|---|---|---|---|---|---|---|
| 09062353 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1983007 | $34,273,391.00 | East Decker | Zurich |
| 09174860 | Decker Coal Company | State of Montana, Department of Natural Resources and Conservation | Reclamation Bond - Coal Mining Lease C-1086-15 | $10,000.00 | East Decker | Zurich |
| 09174861 | Decker Coal Company | State of Montana, Department of Natural Resources and Conservation | Reclamation Bond - Coal Mining Lease C-1087-15 | $10,000.00 | East Decker | Zurich |
| 09062373 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101101 | $5,000.00 | West Decker | Zurich |
| **WEST DECKER** | | | | | | |
| 09062373 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101101 | $5,000.00 | West Decker | Zurich |
| 09062371 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101099 | $5,000.00 | West Decker | Zurich |
| K08898297 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. LMU MTM-83088 | $456,500.00 | West Decker | Westchester |
| K08898339 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1987001C | $3,719,818.50 | West Decker | Westchester |
| 09145459 | Decker Coal Company | United States Department of Labor: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Lease No. MTM 107327 | $5,000.00 | West Decker | Zurich |
| 09122204 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Coal and Uranium Reclamation Bond - Permit No. X2013340 | $44,824.00 | West Decker | Zurich |
| 9261706 | Decker Coal Company LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1987001C | $5,433,754.00 | West Decker | Zurich |
| 9261709 | Decker Coal Company LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1987001C | $5,000,000.00 | West Decker | Zurich |
| 09062357 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Bond / Permit No. LMU MTM-83088 | $299,535.00 | West Decker | Zurich |
| 09062370 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101098 | $5,000.00 | West Decker | Zurich |
| 09062372 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101100 | $5,000.00 | West Decker | Zurich |
| 09062387 | Decker Coal Company | State of Montana, Department of Natural Resources and Conservation | Reclamation Coal Lease Bond / Permit No. C-1079-11 | $1,600.00 | West Decker | Zurich |
| 09062352 | Decker Coal Company, LLC | State of Montana, acting through the Department of Environmental Quality and the Office of Surface Mining Reclamation and Enforcement | Reclamation Coal Bond / Permit No. C1987001C | $31,946,427.50 | West Decker | Zurich |
| 09062377 | Decker Coal Company, LLC | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. M 54716 | $5,000.00 | West Decker | Zurich |
| 09062378 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. 06770 | $5,000.00 | West Decker | Zurich |
| 09062369 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101097 | $5,000.00 | West Decker | Zurich |
| 09093715 | Decker Coal Company | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Lease No. 105019 | $5,000.00 | West Decker | Zurich |

*Exhibit B – Reclamation Trust Entity Bonding Agreement – Page 2*

| 09200571 | Decker Coal Company, LLC | United States Department of the Interior: Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM107885 | $5,000.00 | West Decker | Zurich |

*This column is not intended to be substantive and is solely for descriptive purposes and does not limit the identification of the actual "obligees" under any of the Bonds.

*Exhibit B – Reclamation Trust Entity Bonding Agreement – Page 3*

# EXHIBIT E

## TOLLING AGREEMENT

THIS AGREEMENT is hereinafter referred to as the "Agreement", is made and entered into by and between Atlantic Specialty Insurance Company ("ASIC"), Westchester Fire Insurance Company ("Westchester"), Zurich American Insurance Company ("Zurich") (collectively referred to herein as the "Sureties") and the Black Butte Coal Company ("Black Butte") [The Sureties and Black Butte shall be collectively referred to as the "Parties"], the day and year hereinafter set forth.

### Recitals

WHEREAS, Black Butte is a joint venture owned 50% by KCP, Inc., a Debtor as fully described below, and 50% by Bitter Creek Coal Company, a subsidiary of Anadarko Petroleum Corporation (a subsidiary of Occidental Petroleum). Black Butte operates an open cut (surface) mine in the Green River Basin, located in Sweetwater County, Wyoming.

WHEREAS, at the request of Black Butte, ASIC, as surety, issued license surety bond no. 800041084, on behalf of Black Butte, as Principal, and for the benefit of the United States of America, as Obligee, in the penal sum of $15,000.00, guaranteeing its performance in complying with all applicable laws in exploring coal deposits on or under land mentioned in license no. WYW186226.

WHEREAS, at the request of Decker Coal Company, LLC ("Decker Coal"), a Debtor as fully described below, ASIC, as surety, issued reclamation bond nos. 800034462 (penal sum of $15,000,000) and 800010582 (penal sum of $15,000,000) on behalf of Decker Coal, as Principal, and for the benefit of the State of Montana and the United States of America, as Obligees, guaranteeing Decker Coal's performance obligations under Federal and local laws. Collectively, ASIC's surety bond nos. 800041084, 800034462 and 800010582 shall be referred to herein as the "ASIC Bonds."

WHEREAS, at the request of Decker Coal, Westchester, as surety, issued reclamation coal lease bond no. K08898297 in the penal sum of $456,000.00 on behalf of Decker Coal, as Principal, and for the benefit of the Bureau of Land Management, Montana State Office, as Obligee, guaranteeing Decker Coal's performance obligations under Federal and local laws.

WHEREAS, at the request of Decker Coal, Westchester, as surety, issued reclamation coal bond no. K08898339 in the penal sum of $3,719,818.50 on behalf of Decker Coal, as Principal, and for the benefit of the State of Montana Department of Environment Quality, Industrial and Minerals, as Obligee, guaranteeing Decker Coal's performance obligations under Federal and local laws. Collectively, Westchester's surety bond nos. K08898297 and K08898339 shall be referred to here as the "Westchester Bonds."

WHEREAS, at the request of Black Butte, Decker Coal and certain other related entities, Zurich, as surety, issued the following reclamation bonds, lease bonds, mining permit bonds, and lease for mining deposit bonds, among other surety bonds, on behalf of Black Butte, Decker Coal and such other related entities, guaranteeing Black Butte's among other such related entities' performance obligations under Federal and local laws:

| Bond Number | Principal | Obligee | Description | Bond Amount |
|---|---|---|---|---|
| 09145459 | Decker Coal Company | Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Lease No. MTM 107372 | $5,000.00 |
| 09093733 | Ambre Energy North America, Inc. | Office of Workers Compensation Programs, Division of Coal Mine Workers Compensation | Self-Insurer Black Lung Bond | $1,000,000.00 |
| 9235841 | Decker Coal Company, LLC | State of Montana, Department of Natural Resources and Conservation | Reclamation Coal Lease Bond / Permit No. C-1096-17 | $10,000.00 |
| 9235840 | Decker Coal Company, LLC | State of Montana, Department of Natural Resources and Conservation | Reclamation Coal Lease Bond / Permit No. C-1095-17 | $10,000.00 |
| 09122204 | Decker Coal Company, LLC | State of Montana Department of Environmental Quality, Industrial and Minerals Bureau | Coal and Uranium Reclamation Bond - Permit No. X2013340 | $44,824.00 |
| 9215080 | Decker Coal Company, LLC | State of Montana, Department of Natural Resources and Conservation | Coal Mining Lease C-1089-16 | $10,000.00 |
| 9215079 | Decker Coal Company, LLC | State of Montana, Department of Natural Resources and Conservation | Coal Mining Lease C-1090-16 | $10,000.00 |
| 9261706 | Decker Coal Company LLC | State of Montana Department of Environmental Quality, Industrial and Minerals Bureau | Reclamation Coal Bond / Permit No. C1987001C | $5,433,754.00 |
| 9261709 | Decker Coal Company | State of Montana Department of Environmental | Reclamation Coal Bond / Permit No. C1987001C | $5,000,000.00 |

2

4835-5918-0769.v1-3/22/21

| | | | | |
|---|---|---|---|---|
| | LLC | Quality, Industrial and Minerals Bureau | | |
| 9261707 | Decker Coal Company, LLC | State of Montana Department of Environmental Quality, Industrial and Minerals Bureau | Reclamation Coal Bond / Permit No. C1983007 | $16,026,609.00 |
| 09062357 | Decker Coal Company | Bureau of Land Management, Montana State Office | Reclamation Coal Bond / Permit No. LMU MTM-83088 | $299,535.00 |
| 09062370 | Decker Coal Company | Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101098 | $5,000.00 |
| 09062353 | Decker Coal Company, LLC | State of Montana Department of Environmental Quality, Industrial and Minerals Bureau | Reclamation Coal Bond / Permit No. C1983007 | $34,273,391.00 |
| 09062366 | Black Butte Coal Company | State of Wyoming, Department of Environmental Quality, Land Quality Division | Reclamation Coal Bond / Permit No. 96CN | $13,050.00 |
| 09062372 | Decker Coal Company | Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101100 | $5,000.00 |
| 09062387 | Decker Coal Company | State of Montana, Department of Natural Resources and Conservation | Reclamation Coal Lease Bond / Permit No. C-1079-11 | $1,600.00 |
| 09062352 | Decker Coal Company, LLC | State of Montana Department of Environmental Quality, Industrial and Minerals Bureau | Reclamation Coal Bond / Permit No. C1987001C | $31,946,427.50 |
| 09062377 | Decker Coal Company, LLC | Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. M 54716 | $5,000.00 |

3

4835-5918-0769.v1-3/22/21

| 09062351 | Black Butte Coal Company, a joint venture of KCP, Inc. and Bitter Creek Coal Company | State of Wyoming, Department of Environmental Quality, Land Quality Division | Reclamation Coal Bond / Permit No. 467-T7 | $49,698,463.50 |
|---|---|---|---|---|
| 09062356 | Big Horn Coal Company | State of Wyoming, Department of Environmental Quality, Land Quality Division | Reclamation Coal Bond / Permit No. 213-T7 | $760,000.00 |
| 09062378 | Decker Coal Company | Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. 06770 | $5,000.00 |
| 09062381 | Decker Coal Company | State of Montana, Department of Natural Resources and Conservation | Reclamation Coal Lease Bond / Permit No. C-1085-13 | $2,000.00 |
| 09062375 | Black Butte Coal Company | Bureau of Land Management, Wyoming State Office | Reclamation Coal Lease Bond / Permit No. WYW 160394 | $83,800.00 |
| 09062354 | Black Butte Coal Company | State of Wyoming, Department of Environmental Quality, Land Quality Division | Reclamation Coal Bond / Permit No. 520-T8 | $2,292,500.00 |
| 09062371 | Decker Coal Company | Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101099 | $5,000.00 |
| 09062373 | Decker Coal Company | Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101101 | $5,000.00 |
| 09062369 | Decker Coal Company | Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM 101097 | $5,000.00 |
| 09062362 | Black Butte Coal Company | Bureau of Land Management, Wyoming State Office | Reclamation Coal Lease Bond / Permit No. WYW006266 | $491,000.00 |

4

4835-5918-0769.v1-3/22/21

| 09062363 | Rosebud Coal Sales Company | Bureau of Land Management, Wyoming State Office | Reclamation Coal Lease Bond / Permit No. WYW23411 | $5,000.00 |
|---|---|---|---|---|
| 09145495 | Millennium Bulk Terminals Longview LLC | State of Washington, Department of Transportation | WA DOT Individual Bond for Agreement No. U1867 | $10,000.00 |
| 09062368 | Decker Coal Company | State of Montana Department of Environmental Quality Opencut Mining Program | Opencut Mining Permit Bond / Permit No. 23 | $7,470.00 |
| 09093715 | Decker Coal Company | Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Lease No. 105019 | $5,000.00 |
| 09200571 | Decker Coal Company, LLC | Bureau of Land Management, Montana State Office | Reclamation Coal Lease Bond / Permit No. MTM107885 | $5,000.00 |
| 09174860 | Decker Coal Company | State of Montana, Department of Natural Resources and Conservation, Trust Land Management Division | Reclamation Bond - Coal Mining Lease C-1086-15 | $10,000.00 |
| 09174861 | Decker Coal Company | State of Montana, Department of Natural Resources and Conservation, Trust Land Management Division | Reclamation Bond - Coal Mining Lease C-1087-15 | $10,000.00 |
| 9277283 | Black Butte Coal Company | Bureau of Land Management, Wyoming State Office | Bond Under Lease for Mining Deposits / Serial Numbers: WYW6266, WYW23411 & WYW160394 | $347,600.00 |

The above-mentioned surety bonds issued by Zurich shall be referred to as the "Zurich Bonds." Collectively, the ASIC Bonds, Westchester Bonds and Zurich Bonds shall be referred to herein as the "Bonds."

5

4835-5918-0769.v1-3/22/21

WHEREAS, in consideration for ASIC extending surety credit through the issuance of the Bonds, Black Butte and others, namely, Lighthouse Resources, Inc., Ambre Energy North America, Inc., Ambre Energy Limited (Australia), AE Minerals Pty Ltd., AE Coal, LLC, AE Infrastructure, LLC, AE Coal Marketing LLC, AE Alternative Fuels, LLC, AE Wind River, LLC, Decker Coal Company, Rosebud Coal Company, and Big Horn Coal Company (collectively referred to as "ASIC Indemnitors"), entered into the General Indemnity Agreement ("ASIC Indemnity Agreement"), wherein Black Butte and the ASIC Indemnitors, jointly and severally, agreed to exonerate, hold harmless, indemnify, and keep indemnified ASIC from any and all losses, fees, costs and expenses of any kind or nature that ASIC incurs as a consequence of issuing the ASIC Bonds, among other things, as more fully detailed in the ASIC Indemnity Agreement.

WHEREAS, in consideration for Westchester extending surety credit through the issuance of the Westchester Bonds, Black Butte and others, namely, Lighthouse Resources, Inc., LHR Coal, LLC, LHR Infrastructure, KCP, Inc., Decker Coal (collectively referred to as "Westchester Indemnitors"), entered into the Agreement of Indemnity ("Westchester Indemnity Agreement"), wherein Black Butte and the Westchester Indemnitors, jointly and severally, agreed to indemnify and save harmless Westchester from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses that Westchester incurs as a consequence of issuing the Westchester Bonds, among other things, as more fully detailed in the Westchester Indemnity Agreement.

WHEREAS, in consideration for Zurich extending surety credit through the issuance of the Zurich Bonds, Black Butte and others, namely, Lighthouse Resources, Inc., LHR Coal, LLC, LHR Infrastructure, LLC f/k/a AE Infrastructure, LLC, LHR Coal Marketing, LLC f/k/a AE Coal Marketing, LLC, Decker Coal, Rosebud Coal Company, Big Horn Coal Company, KCP, Inc., KCP Properties, Inc., Decker Holding Co., LLC (collectively referred to as "Zurich Indemnitors"), entered into the Amended and Restated General Agreement of Indemnity ("Zurich Indemnity Agreement"), wherein Black Butte and the Zurich Indemnitors, jointly and severally, agreed to indemnify Zurich from and against any and all liability, loss, costs, damages, attorneys' fees and expenses that Zurich incurs as a consequence of issuing the Zurich Bonds, among other things, as more fully detailed in the Zurich Indemnity Agreement. Collectively, the ASIC Indemnity Agreement, Westchester Indemnity Agreement and the Zurich Indemnity Agreement shall be referred to herein as the "Indemnity Agreements" and further, collectively, the ASIC Indemnitors, Westchester Indemnitors and the Zurich Indemnitors shall be referred to herein as the "Indemnitors."

WHEREAS, following issuance of the Bonds, the Sureties received claims on the Bonds from certain reclamation claimants and Obligees arising out of or related to legal obligations or duties of the Debtors to perform or complete reclamation with respect to property owned, leased, used or impacted by any of them in the course of their operations ("Bond Claims").

WHEREAS, pursuant to the terms of the Indemnity Agreements, the Debtors posted, pledged, or deposited collateral with the Sureties in the form of bonds, letters of credit, guarantees in connection with the Bond Claims. The Debtors have deposited such collateral security to the Sureties in the aggregate total of $62,264,847.00, with ASIC holding the sum of

6

$13,125,000.00, Westchester holding $1,921,107.00 and Zurich holding $47,218,740.00 ("Collateral").

WHEREAS, on or about December 3, 2020, certain Indemnitors, including Lighthouse Resources, Inc., LHR Coal, LLC, KCP, Inc., Big Horn Coal Company, Rosebud Coal Sales Company, KCP Properties, Inc., Decker Holding Co., LLC, Decker Coal Company, LLC, Montana Royalty Holdings, LLC, LHR Infrastructure, LLC, Millennium Bulk Terminals-Longview, LLC, Barlow Point Land Company, LLC, Columbia Land Co., LLC, and Gulf States Bulk Terminal, LLC, (collectively, the "Debtors") declared Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware, with the jointly administered Case No. 20-1356 (JTD) ("Chapter 11 Proceedings").

WHEREAS, the Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

WHEREAS, at the time of commencement of the Chapter 11 Proceedings, the Debtors had liabilities to certain government entities for reclamation arising out of or related to certain legal obligations or duties of the Debtors to perform or complete reclamation with respect to any property owned, leased, used, or impacted by any of them in the course of their operations.

WHEREAS, as part of the Chapter 11 Proceedings, the Debtors seek to maximize and preserve the value of the Debtors' businesses pending the completion of certain asset sales and the consummation of a plan to accomplish an orderly liquidation, reclamation, remediation and wind-down process, and to satisfy payroll obligations and other working capital and general corporate purposes of the Debtors.

WHEREAS, as part of the Chapter 11 Proceedings, the Debtors intend to fulfill their obligations under the Surface Mining Control and Reclamation Act, Clean Water Act, the Montana Surface and Underground Mining Reclamation Act, or similar state law, for the reclamation with respect to any property owned, leased, used or impacted by (i) Decker Holding Company, LLC, Decker Coal Company, LLC and Montana Royalty Holdings, LLC in the course of their operations commonly referred to the Decker Mine; (ii) Big Horn Coal Company; and (iii) Black Butte.

WHEREAS, the Sureties had, have, or may have the right to demand indemnity for collateral, exoneration and reimbursement from Black Butte pursuant to the terms of the Indemnity Agreements (the "Claims").

WHEREAS, because of the applicable statute of limitations requires litigation related to the Claims on a date certain, in order to avoid litigation, under a full reservation of rights, the Parties hereby agree to toll the suit limitation period as set forth in this Agreement.

## Terms

NOW, THEREFORE, for and in consideration of the mutual covenants, promises, and for valuable and sufficient consideration, the Parties agree as follows:

4835-5918-0769.v1-3/22/21

1.      The recitals are incorporated by reference as if fully set forth herein.

2.      Black Butte consents to the Sureties releasing the respective Collateral each are holding pursuant to the First Amended Joint Plan of Debtors Under Chapter 11 of the Bankruptcy Code, as amended [Chapter 11 Proceedings, ECF No. 304] (together with any amendments thereof, exhibits or other documents attached thereto or supplements thereto, the "Plan"), and the Definitive Documents (as defined in the Plan) provided for thereunder.

3.      The period between December 3, 2020 and the earlier of a) December 3, 2030; or b) 365 days after the date on which the Sureties are notified by Black Butte in writing that any part of the Plan is terminated, breached or found to be unenforceable, shall not be included in determining the applicability of any statutes of limitations, repose, laches or any other defense based on the lapse of time assertable in any action, arbitration, or other proceeding commenced by any Party to this Agreement for the Claims and all defenses thereto in all of which Claims have been and shall continue to be tolled from December 3, 2020 through and including the earlier of: a) December 3, 2030; or b) 365 days after the date on which the Sureties are notified by Black Butte in writing that any part of the Plan is terminated, breached or found to be unenforceable.

4.      By entering into this Agreement, all Parties reserve their respective rights and defenses under the Indemnity Agreements, the Bonds, the applicable agreements and governing law.  To the extent that the Sureties had and have certain rights which exist or existed on or prior to the date of execution of this Agreement and/or after the date of expiration of this Agreement, nothing herein waives and releases any and all time periods which may have already expired under the Indemnity Agreements, the Bonds, the applicable agreements and governing law. Nothing herein shall be construed as a waiver or release of any claim or defense that any Party may have against the other. Further, nothing herein shall be construed as an admission of fact or liability, nor shall anything herein waive, release, impact, alter or otherwise any or all claims or defenses which either Party may have, or which may expire but for this Agreement, against one another. All such rights and defenses having been expressly reserved by the Parties under this Agreement.

5.      This Agreement shall be effective from December 3, 2020. This Agreement may be executed in multiple counterparts, each of which, when assembled to include an original signature for each party contemplated to sign this Agreement, will constitute a complete and fully executed original.  All such fully executed original counterparts will collectively constitute a single agreement.  Delivery of this Agreement may be accomplished by e-mail of a PDF signed agreement ("PDF"). If PDF delivery is utilized, the original document shall be promptly executed and delivered, if requested.

6.      The undersigned representatives of the Parties represent and warrant that they have the power and authority to enter into and perform the terms and conditions of this Agreement, and to bind the Parties on whose behalf they are signing this Agreement.

7.      This Agreement shall inure to the benefit of and be binding upon the Parties hereto and all their successors and assigns.

8

8.	This Agreement may be terminated by any Party only upon 60 days written notice to all other Parties.  Notice of termination or any other notice to be served hereunder shall be effective when delivered via e-mail to the following:

a)	If to Atlantic, to:

> Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
> Attn:   John E. Sebastian
> 10 S. Wacker, Suite 1100
> Chicago, Illinois 60606
> jsebastian@watttieder.com

b)	If to Westchester, to:

> Manier & Herod, P.C.
> Attn:   Michael Collins
> 1201 Demonbreun Street, Suite 900
> Nashville, Tennessee 37203
> mcollins@manierherod.com

c)	If to Zurich, to:

> Chiesa, Shahinian & Giantomasi, PC
> Attn:   Scott A. Zuber
> One Boland Drive
> West Orange, New Jersey 07052
> szuber@csglaw.com

d)	If to Black Butte, to:

> Potter, Anderson & Corroon, LLP
> Attn:   L. Katherine Good
>              Aaron H. Stulman
> 1313 N. Market Street, 6th Floor
> Wilmington, DE 19801
> kgood@potteranderson.com
> astulman@potteranderson.com
>
> Jackson Kelly, PLLC
> Attn:   Mary Elisabeth Naumann
>              Chacey Malhouitre
>              Elizabeth Amandus Baker
> 100 West Main Street, Suite 700
> Lexington, KY 40507
> mnaumann@jacksonkelly.com

4835-5918-0769.v1-3/22/21

chacey.malhouitre@jacksonkelly.com
Elizabeth.baker@jacksonkelly.com

Bitter Creek Coal Company
c/o McCarter & English, LLP
Attn:   Kate R. Buck
           Shannon D. Humiston
405 N. King St., 8th Fl.
Wilmington, DE  19801
kbuck@mccarter.com
shumiston@mccarter.com

9.      This Agreement shall be governed by, enforced under, and constructed in accordance with the laws of the State of New York.

10.     The Parties declare that this Agreement has been mutually negotiated and drafted and shall not be construed against any Party to this Agreement.

IN WITNESS WHEREOF, this Agreement has been executed in counter parts, on this 7th day of April, 2021.

[Signature on Following Page]

10

**Atlantic Specialty Insurance Company**

By:_____ *Terry Dahl*

Its:_____ Senior Vice President

Witness or Notary

_____

**Westchester Fire Insurance Company**

By:_____

Its: _____

Witness or Notary

_____

**Zurich American Insurance Company**

By:_____

Its:_____

Witness or Notary

_____

**Black Butte Coal Company**

By: KCP, Inc., Its Co-Venturer
        and Manager
By: _____
Its: _____

Witness or Notary

_____

[Signature Page to Tolling Agreement]

**Atlantic Specialty Insurance Company**

By:_____

Its:_____

Witness or Notary

_____

**Westchester Fire Insurance Company**

By:_____

Its:_____

Witness or Notary

_____

**Zurich American Insurance Company**

By: *Michelle Ronalill*

Its: V.P. - Surety Risk Solutions

Witness or Notary

*Gary Tralm*

**Black Butte Coal Company**

By: KCP, Inc., Its Co-Venturer
    and Manager

By: _____
Its: _____

Witness or Notary

_____

[Signature Page to Tolling Agreement]

**Atlantic Specialty Insurance Company**

By:_____

Its:_____

Witness or Notary

_____


**Westchester Fire Insurance Company**

By: _____

Its: AVP, Surety Claim Manager

Witness or Notary

_____ 2479877


**Zurich American Insurance Company**

By:_____

Its:_____

Witness or Notary

_____


**Black Butte Coal Company**

By: KCP, Inc., Its Co-Venturer
      and Manager
By: _____
Its: _____

Witness or Notary

_____


[Signature Page to Tolling Agreement]

**Atlantic Specialty Insurance Company**

By:_____

Its:_____

Witness or Notary

_____

**Westchester Fire Insurance Company**

By:_____

Its: _____

Witness or Notary

_____

**Zurich American Insurance Company**

By:_____

Its:_____

Witness or Notary

_____

**Black Butte Coal Company**

By: KCP, Inc., Its Co-Venturer and Manager

By: _____

Its: COO

Witness or Notary

_____

[Signature Page to Tolling Agreement]

# EXHIBIT F

**From:**
**To:**
**Subject:**
**Date:**
**Attachments:**





**From:** Michael Ricci <Michael.Ricci@respec.com>
**Sent:** Thursday, May 1, 2025 1:40 PM
**To:** Chris Edwards <chris.edwards@zurichna.com>; Marc Domres <marc.domres@zurichna.com>; John Sebastian <jsebastian@watttieder.com>; Tavaglione, Brielle M. <BTavaglione@intactinsurance.com>
**Subject:** Re: Emergency BOD Meeting

==~>>>Alert: This is an external email, USE CAUTION when opening attachments and links.<<<~==

All,

Clearly, Intact and Zurich have different positions on the plan that will be presented today. After Tay's presentation of the plan, I will vote what I believe is the best interest of the trust. I will be voting against the wishes of one of the sureties. I will make it clear that my vote is as a board member, not a representative of the sureties; and that it is contrary to at least one of sureties.

Mike



**Michael Ricci**
✉ Michael.Ricci@respec.com
📱 859-361-4540

---

**From:** Michael Ricci <Michael.Ricci@respec.com>

**Sent:** Thursday, May 1, 2025 11:43 AM
**To:** Chris Edwards <chris.edwards@zurichna.com>; Marc Domres
<marc.domres@zurichna.com>; John Sebastian <jsebastian@watttieder.com>; Tavaglione,
Brielle M. <BTavaglione@intactinsurance.com>
**Subject:** Re: Emergency BOD Meeting

All,

Please find attached the documents related to today's emergency Board meeting.

Mike



**Michael Ricci**

✉ Michael.Ricci@respec.com

☐ 859-361-4540

---

**From:** Michael Ricci <Michael.Ricci@respec.com>
**Sent:** Tuesday, April 29, 2025 2:59 PM
**To:** Chris Edwards <chris.edwards@zurichna.com>; Marc Domres
<marc.domres@zurichna.com>; John Sebastian <jsebastian@watttieder.com>; Tavaglione,
Brielle M. <BTavaglione@intactinsurance.com>
**Subject:** Fw: Emergency BOD Meeting

All,

I am forwarding an email I received from Tay Tonozzi today.  In response to his request,
we now have an emergency board meeting scheduled for May 1 at 3:00 pm eastern.

I spoke with Tay on 03/27 to get an update on Black Butte and Decker.  Our
conversation was regarding the operational and reclamation status and issues of both
mines.  He shared with me that he was talking with Zurich to find possible funding
solutions, but he did not share any details.  I do not know what the proposed plan is at
this time.

Mike



**Michael Ricci**

✉ Michael.Ricci@respec.com

☐ 859-361-4540

**From:** Tay Tonozzi <t.tonozzi@lhr-inc.com>
**Sent:** Tuesday, April 29, 2025 11:43 AM
**To:** Gilbert Nathan <gil@jacksonsquareadvisors.com>; Jeremy Stillings <jstillings@gmail.com>; Jason McCoy <jmccoy@iron-properties.com>; Michael Ricci <Michael.ricci@respec.com>; Peter Hurwitz <ph@dundon.com>
**Cc:** Blythe Mason <b.mason@lhr-inc.com>; Jason Russell <j.russell@aecoal.com>
**Subject:** Emergency BOD Meeting

Gentlemen,

Sorry for the late request, but I need to have board meeting this week to discuss and approve a new mine plan along with a funding advance agreement.  Currently Jackson Kelly and the Zurich attorneys are working out the details of the funding advance agreement to ensure that we comply with the trust documents, we expect to have the document completed today or tomorrow.  I plan to send the new budget plan and the funding advance agreement to you no later than tomorrow night.  Could I ask for your **availability this Thursday (May 1<u>st</u>) or Friday (May 2<u>nd</u>)** to have a review, answer session and vote on the documents?  We have exhausted all the available funds at Decker and need this agreement, along with the new budget plan, to continue reclamation efforts at the operation.  Once again, sorry for the late notice and I appreciate your attention in this matter.  Please feel free to contact me if you have any conflicts or questions prior to the meeting.  Once I have everyone's available dates and times, I will send a team's invite.

Thank you,

Tay



**Tay Tonozzi**
**President and CEO**
O 801.539.3821
t.tonozzi@lhr-inc.com
10980 South Jordan Gateway  |  South Jordan, UT 84095

Confidentiality Notice: This E-mail and any attachments is covered by the Electronic Communications Privacy Act, 18 U.S.C. & 2510-2524, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby

notified that any retention, dissemination, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, and permanently delete the original and destroy any copy, including printed copies of this email and any attachments thereto.

# EXHIBIT G

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| LIGHTHOUSE RESOURCES INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 20-13056 (CTG) |
| | ) | |
| | ) | |
| | ) | |
| LIGHTHOUSE RESOURCES INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ATLANTIC SPECIALTY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | Adv. Proc. No. 24-50144 (CTG) |
| Defendant. | ) | |

**DECLARATION OF BRIAN C. PADOVE PURSUANT TO RULE 56(d) OF THE
FEDERAL RULES OF CIVIL PROCEDURE IN SUPPORT OF ATLANTIC
SPECIALTY INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO
LIGHTHOUSE RESOURCES, INC.'S MOTION FOR SUMMARY JUDGMENT
AS TO LIABILITY**

I, BRIAN C. PADOVE, declare as follows:

1.     I am a partner with the law firm of Watt, Tieder, Hoffar & Fitzgerald, L.L.P. ("Watt Tieder"), one of the attorneys of record for Defendant Atlantic Specialty Insurance Company ("Atlantic") in the above captioned matter. I submit this declaration pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7056, in support of Atlantic's Motion Pursuant To Rule 56(D) To Defer Consideration Of Lighthouse's Motion For Summary Judgment As To Liability (the "Motion" or "Atlantic's Motion")(Lighthouse's Motion for Summary Judgment referred to herein as "Lighthouse's Motion"). I have personal knowledge

1

21034850.1

of the matters set forth herein, except where stated on information and belief, and if called as a witness I could and would testify competently thereto.

2. As of 5:00 p.m. eastern of February 18, 2026, (a) discovery in this matter remains incomplete, (b) no depositions of fact witnesses have been taken, (c) no depositions have been noticed, and (d) there exists no current scheduling order in this matter establishing fact discovery deadlines.

3. Lighthouse's Motion seeks summary judgment against Atlantic based on, among other things, (a) the assertion that approval of the Reclamation Trust Entity budget by the Board bound Atlantic as a matter of law; (b) the assertion that Atlantic materially breached the Sinking Fund Agreement prior to terminating the Tolling Agreement; and (c) the assertion that Lighthouse is entitled to declaratory relief regarding the Tolling Agreement and Atlantic's future funding obligations.[1]

4. Atlantic cannot present facts essential to further justify its opposition to the Motion, including but not limited to, the key issues referenced in the paragraph above, without further discovery on these material issues further detailed below.

A. **Authority and Agency of Michael Ricci (or other Surety-appointed Board Members)**

5. Lighthouse's Motion depends heavily on the premise that Michael Ricci, the surety-appointed member of the Reclamation Trust Entity Board, acted as Atlantic's representative and possessed authority to bind Atlantic through his Board votes.

6. Atlantic disputes that Mr. Ricci possessed authority to bind Atlantic, waive Atlantic's contractual rights, or act as Atlantic's agent.

---

[1] Capitalized terms used herein, to the extent not defined herein, shall have the meaning set forth in Atlantic's Rule 56(D) Motion.

21034850.1

7.    To date, no deposition of Mr. Ricci has been taken.

8.    Atlantic requires discovery, including depositions of Mr. Ricci and other relevant Lighthouse fact witnesses, to determine: (a) the scope of Mr. Ricci's authority, if any, to act on behalf of Atlantic; (b) whether Lighthouse understood or believed Mr. Ricci had authority to bind Atlantic contractually; (c) the communications and instructions, if any, between Mr. Ricci and any Lighthouse representative or others, concerning Board votes; (d) whether Mr. Ricci acted independently of Atlantic in casting Board votes; (e) to whom Mr. Ricci's duty, as a Board member, was owed; and (f) whether any agency relationship existed between Mr. Ricci and Atlantic.

9.    The existing documentary record demonstrates that Mr. Ricci's authority is disputed, but without deposition testimony, Atlantic cannot present additional facts essential to resolve that dispute.

10.    These information and facts sought are material because Lighthouse's theory of breach relies on, among other things, the premise that Board approval conclusively bound Atlantic. The scope of Mr. Ricci's authority is relevant to Lighthouse's contention that Board approval bound Atlantic and thus, if Mr. Ricci lacked authority to bind Atlantic or act as Atlantic's agent, then board approval may not establish breach as a matter of law.

**B.    Interplay Among GIA and the Operative Agreements**

11.    Lighthouse argues that Atlantic's General Indemnity Agreement ("GIA") was effectively extinguished or rendered unenforceable by the later Operative Agreements.

12.    Atlantic disputes that the GIA was nullified and asserts the parties intended the GIA to remain in force, subject to the terms of the various Operative Agreements.

3

21034850.1

13.     No depositions have been taken of individuals involved in negotiating or enforcing the Operative Agreements.

14.     Atlantic requires discovery to determine: (a) how the parties understood and applied the discretion and termination provisions of the GIA and Operative Agreements in practice, including how those provisions were implemented following execution of the Operative Agreements; (b) the intended scope of the "reasonable good faith discretion" language found within the Operative Agreements; (c) how the parties understood the interaction between the GIA and the various Operative Agreements; and (d) whether the parties intended termination rights under the Tolling Agreement to remain available to the sureties under certain circumstances, and what those circumstances were.

15.     These information and facts  sought relate to Lighthouse's position regarding discretion and termination which are material. Evidence regarding contractual intent and the scope of discretion would directly bear on whether breach and termination issues can be resolved as a matter of law.

**C.  Materiality of Any Alleged Breach**

16.     Lighthouse contends that Atlantic materially breached the Sinking Fund Agreement.

17.     Whether a breach is "material" is generally a fact-intensive inquiry that depends on the extent of non-performance, the parties' expectations, and the contractual allocation of risk.

18.     No depositions have been taken regarding: (a) the practical impact of Atlantic's alleged non-payment; (b) Lighthouse's performance under the Operative Agreements; and (c) the parties' expectations concerning performance and funding structure.

4

21034850.1

19.     These facts are material because if the alleged breach was not material, Lighthouse's theory that Atlantic forfeited contractual rights – including termination of the Tolling Agreement – fails.

**D.  Conclusion**

20.     The discovery identified above is directly relevant and material to the liability issues raised in Lighthouse's Motion.

21.     Without this discovery, Atlantic cannot present further facts essential to justify its opposition.

22.     Atlantic has acted diligently in pursuing discovery. Initial written discovery has been served and responses exchanged. However, due to the unsettled pleadings and absence of a scheduling order, depositions have not yet been taken. Atlantic seeks to comprehensively complete discovery on the matters at issue in this lawsuit including the matters identified above.

23.     The facts and information identified and described above is necessary for Atlantic to present facts essential to justify its opposition pursuant to Rule 56(d) of the Federal Rules of Civil Procedure and which may, if developed through discovery, preclude summary judgment on liability.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: <u>February 18, 2026</u>                    Respectfully Submitted

By: <u>*/s/ Brian C. Padove*</u>
      Brian C. Padove,
      Counsel for Atlantic Specialty
      Insurance Company
      (admitted *pro hac vice*)

21034850.1