**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LIGHTHOUSE RESOURCES INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 20-13056 (CTG) |
| LIGHTHOUSE RESOURCES INC.,<br><br>Plaintiff,<br>v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | Adv. Proc. No. 24-50144 (CTG)<br><br><br>**Re: Adv. Docket No. 134, 148** |

**PLAINTIFF'S REPLY IN FUTHER SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGEMENT**

April 27, 2026
Wilmington, Delaware

L. Katherine Good (No 5101)
Jesse L. Noa (No. 5973)
James R. Risener III (No. 7334)
Hannah L. Paxton (No. 7096)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE  19801
Telephone: (302) 984-6000
Email:  kgood@potteranderson.com
         jnoa@potteranderson.com
         jrisener@potteranderson.com
         hpaxton@potteranderson.com

*Counsel for Lighthouse Resources Inc.*

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Lighthouse Resources Inc. (4713), The location of the Debtor's service address in this chapter 11 case is 10980 South Jordan Gateway, South Jordan, Utah 84095.

**TABLE OF CONTENTS**

**Page(s)**

ARGUMENT ............................................................................................................................ 3

    A.  Atlantic's waived arguments ...................................................................................... 3

    B.  Atlantic's evidentiary objections are irrelevant and meritless. ......................................... 3

    C.  The scope of Mr. Ricci's authority is a red herring. ........................................................ 5

    D.  Atlantic's breach of the Sinking Fund Agreement was material and precluded terminating the Tolling Agreement. ................................................................................................ 6

        a.    The General Indemnity Agreement is not in dispute. ................................................ 6

        b.    The Sinking Fund Agreement has been materially breached and the Tolling Agreement could not have been terminated. .............................................................. 7

    E.  Atlantic's manufactured ambiguity arguments fail ...................................................... 9

    F.  The Sinking Fund Agreement is enforceable .............................................................. 10

    G.  Atlantic's rejected Defenses do not preclude summary judgment ................................... 11

CONCLUSION ..................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*ARC DBPPROP001, LLC v. Easton Buffet LLC*,
2019 WL 4645133 (E.D. Pa. Sept. 24, 2019), *aff'd*,
842 F. App'x 772 (3d Cir. 2021) ...................................................................................7

*Doe v. Schuylkill Cnty. Courthouse*,
2022 WL 1424983 (M.D. Pa. May 5, 2022) ...................................................................4

*Dole Fresh Fruit Co. v. Delaware Cold Storage, Inc.*,
961 F. Supp. 676 (D. Del. 1997)......................................................................................3

*Estes Exp. Lines, Inc. v. Macy's Corp. Servs.*,
2010 WL 398749 (D.N.J. Jan. 28, 2010) ........................................................................4

*Fiorentini v. William Penn Sch. Dist.*,
665 F. App'x 229 (3d Cir. 2016) ................................................................................6, 10

*In re Fleming Companies, Inc.*,
316 B.R. 809 (D. Del. 2004)............................................................................................4

*Franklin Mills Associates, L.P. v. Nationwide Life Ins. Co.*,
836 F. Supp. 2d 238 (E.D. Pa. 2011) ........................................................................... 7-8

*Lexington Ins. Co. v. W. Pennsylvania Hosp.*,
423 F.3d 318 (3d Cir. 2005)............................................................................................4

*Pietryka v. United States*,
2025 WL 1416290 (M.D. Pa. May 15, 2025)................................................................11

*Prime Victor Int'l Ltd. v. Simulacra Corp.*,
682 F. Supp. 3d 428 (D. Del. 2023), *appeal dismissed sub nom.*
*Prime Victor Int'l Ltd. v. Simulacra Corp.*, 2024 WL 958377 (3d Cir. Jan. 12, 2024)......... 8-9

*Spinal Generations, LLC v. Depuy Synthes, Inc*,
2025 WL 4592279 (D. Del. Nov. 26, 2025) ....................................................................3

*Williams v. Tri-Cnty. Growers, Inc.*,
747 F.2d 121 (3d Cir. 1984)............................................................................................4

*Young v. Pleasant Valley Sch. Dist.*,
601 F. App'x 132 (3d Cir. 2015) ...................................................................................12

**RULES**

FED. R. EVID. 801(d)(2) ................................................................................................................4

To grant Lighthouse's[1] Motion, this Court need only review the plain, unambiguous terms of the parties' agreements, accept Atlantic's own admissions, and adhere to its prior rulings in this action.  Having no basis to oppose liability, Atlantic's Response Brief in Opposition to Lighthouse Resources Inc.'s Motion for Summary Judgment as to Liability ("RB" or "Opposition") attempts to manufacture issues, argues ambiguity where the Court has already found none, and speculates as to factual issues that are either irrelevant or non-existent.  As set forth in Lighthouse's opening brief ("OB" or "Opening Brief"), Atlantic's liability was, in essence, already decided when this Court dismissed Atlantic's counterclaims and denied Atlantic's motion to amend its dismissed counterclaims as futile.  Indeed, Atlantic has explicitly admitted as much to this Court in its request for certification of an interlocutory appeal.[2]  The time is ripe to decide Atlantic's liability and promptly move this action forward to limited discovery and trial on damages.

Having admitted to this Court and the District Court that it has no defenses and previously arguing before this Court that it cannot oppose summary judgment absent irrelevant discovery, it is unsurprising that each of Atlantic's arguments in opposition lack merit.  *First*, Atlantic's evidentiary objections present a manufactured issue which do not preclude granting summary judgment in Lighthouse's favor.  The documents cited in the Opening Brief are capable of being reduced to admissible evidence at trial, satisfying the standard for admissibility at the summary judgment stage.  *Second*, Michael Ricci's status as a Lighthouse Board member is irrelevant to liability at this stage because Atlantic's excuses for non-performance were rejected.  The Sinking Fund Agreement provides that Atlantic **shall** release its Pro Rata Share of collateral into the

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Complaint or Motion.

[2] Adv. D.I. 140 at 12 ("[a]s it stands, Atlantic has no claims against Lighthouse, and Atlantic's affirmative defense are substantially tied to its proposed amended counterclaim.").

Sinking Fund upon the approval of a yearly budget by the Lighthouse Board. Nothing further is required, and the budgets for both 2024 and 2025 were unanimously approved. Atlantic's manufactured dispute over the scope of Mr. Ricci's authority does not alter the plain, unambiguous contractual provision mandating Atlantic's performance upon approval of a yearly budget. This invented dispute over authority is particularly incredulous given Atlantic's admissions to having paid its Pro Rata Share pursuant to the budget in 2022 and 2023—and only having failed to do so now as a result of its perceived issues with the reclamation progress. *Third*, by failing to pay its Pro Rata Share into the Sinking Fund for 2024 and 2025, Atlantic has materially breached the Sinking Fund Agreement. Atlantic's core obligation under that agreement is to pay its Pro Rata Share. Failure to do so can only be a material breach. Regardless, a dispute over the materiality of a breach necessarily concedes that a breach has occurred. *Fourth*, Atlantic's grab bag of ambiguity arguments fail. This Court has already held that the parties' agreements are unambiguous, and Atlantic's misapprehension of Lighthouse's arguments in favor of summary judgment and attempts to throw different agreements than what are at issue into the dispute do not create ambiguity. *Fifth*, Atlantic cannot now, in the eleventh hour, manufacture a dispute over whether the Sinking Fund Agreement was supported by consideration. Atlantic has maintained throughout this litigation that the agreement is enforceable (seeking itself to enforce its terms in its failed counterclaims), the terms of the agreement itself demonstrate that it was supported by consideration, and Atlantic's reversal of course now is unfounded and lacks credibility. *Sixth*, this Court's prior rulings are not being grafted onto Lighthouse's Motion to defeat Atlantic's Defenses. The Court's rulings dismissing Atlantic's counterclaims and denying its motion to amend the dismissed counterclaims remain in full force and apply here. Other than Atlantic's damages Defenses, which need not be addressed to grant the Motion, the Court's rulings dismissing

Atlantic's counterclaims and denying its motion to amend the counterclaims render Atlantic's Defenses legally insufficient. Atlantic cannot escape the law of the case, which defeats the Defenses wholesale.

## ARGUMENT

### A. Atlantic's waived arguments

As a threshold matter, Atlantic's Opposition fails to respond to two arguments in Lighthouse's Opening Brief. Specifically, (i) Lighthouse's contention that another surety's payment of the remainder of its collateral now obligations Atlantic to pay 100% of the East Decker yearly budget going forward until Atlantic's collateral is exhausted; and (ii) that Atlantic's Defense of unclean hands is not applicable to Lighthouse's claims, because it does not seek equitable relief, but instead enforcement of Atlantic's unambiguous contractual obligations and the accompanying legal relief. Atlantic's failure to address these two arguments waives any opposition to them, and therefore, summary judgment may be granted. *See Spinal Generations, LLC v. Depuy Synthes, Inc*, 2025 WL 4592279, at *1 (D. Del. Nov. 26, 2025) ("Spinal did not make this argument in its opposition to Defendants' summary judgment motion and therefore waived it.").

### B. Atlantic's evidentiary objections are irrelevant and meritless.

Atlantic's attempt to escape liability through irrelevant evidentiary objections must be rejected as contrary to well-settled Third Circuit case law. Neither Atlantic's authentication nor hearsay objections preclude this Court from granting Lighthouse's Motion. "In the Third Circuit, hearsay testimony may be considered by a court on summary judgment if the testimony is 'capable of being admissible at trial.'" *Dole Fresh Fruit Co. v. Delaware Cold Storage, Inc.*, 961 F. Supp. 676, 678 n.4 (D. Del. 1997) (quoting *Stelwagon Manufacturing Co. v. Tarmac Roofing Systems, Inc.*, 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)). The same is true of authentication. *See Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 329 n.6 (3d Cir. 2005).

3

The exhibits attached to Lighthouse's Motion are capable of being admissible at trial.[3] *First*, Atlantic's objection on authenticity and hearsay grounds to *its own documents* produced in discovery lacks credibility and need not be countenanced by this Court. *See Estes Exp. Lines, Inc. v. Macy's Corp. Servs.*, 2010 WL 398749, at *5 (D.N.J. Jan. 28, 2010) ("'Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent.' Accordingly, courts have warned litigants such as Plaintiff that '[i]t is disingenuous and wasteful' to object to one's own documents based upon personal knowledge or authentication.") (internal citations omitted). *Second*, as demonstrated in the declaration of Tay Tonozzi filed contemporaneously herewith, each of Lighthouse's exhibits that Atlantic objects to (i) are capable of being authenticated by document custodian Tay Tonozzi and (ii) are admissible under the business records exception.[4]  *Third*, all email communications sent by Atlantic and its agents, or by intervenor Zurich North America or its agents, qualify as statements of party-opponents.  *See* Fed. R. Evid. 801(d)(2); *see also Williams v. Tri-Cnty. Growers, Inc.*, 747 F.2d 121, 132 n.22 (3d Cir. 1984) ("The court did not address plaintiffs' contention that the report was an admission by a party-opponent and, therefore, was not hearsay.").

---

[3]  Atlantic's Opposition argues that Lighthouse is precluded from responding to its evidentiary objections because these issues were not addressed in Lighthouse's Opening Brief.  Lighthouse was not obligated to divine Atlantic's arguments in opposition to the Motion and address them in its Opening Brief.  The arguments set forth herein respond to Atlantic's Opposition and can be considered by this Court.  *See, e.g.*, *Doe v. Schuylkill Cnty. Courthouse*, 2022 WL 1424983, at *1 n.3 (M.D. Pa. May 5, 2022) (allowing arguments presented "***in response to the plaintiffs' opposition brief***.") (emphasis added); *In re Fleming Companies, Inc.*, 316 B.R. 809, 815 n.3 (D. Del. 2004) (denying motion to strike reply brief where "everything in plaintiffs' reply memorandum is either in the original brief ***or in response to defendants' arguments in opposition of plaintiffs' motion***.") (emphasis added).

[4] Notably, Atlantic largely does not dispute the substance of the documents.  Instead, Atlantic seems to imply more discovery is needed to authenticate records and determine if the business record exception to hearsay applies— as such, this is little more than a repackaging of Atlantic's failed Rule 56(d) application and should be rejected.

Accordingly, none of Atlantic's preliminary evidentiary objections are relevant to this Court's summary judgment analysis.

## C. The scope of Mr. Ricci's authority is a red herring.

Atlantic's Opposition maintains that there is a material factual dispute over the scope of Mr. Ricci's authority as the surety Lighthouse Board representative. As stated in Lighthouse's Opening Brief, this entire argument is a red herring because the relevant contractual provisions control on this issue.[5] This Court has already held that the plain, unambiguous terms of Section 2.3(a) of the Sinking Fund Agreement require that upon approval of a yearly budget, Atlantic is *required* to release its Pro Rata Share of collateral into the Sinking Fund. *See* OB, Ex. 1 at 11:14-15 ("These provisions contemplate that once the board approves a budget, the collateral is to be released."); *see also id.* at Ex. 2 at 13 ("These provisions require, on the board's approval of a budget, Atlantic Specialty to release collateral."). Because the Lighthouse Board meeting minutes demonstrate that budgets for the 2024 and 2025 funding years were unanimously approved (*see* OB, Exs. 22-23), the Court need go no further and can grant summary judgment in Lighthouse's favor.

Even if Atlantic were correct regarding the scope of Mr. Ricci's authority, there is no contractual language tethering the Board's yearly budget approval to Atlantic's own separate approval. Nor does Atlantic cite to any other authority, in the Plan or otherwise, mandating that this approval be obtained. Rather, Atlantic again appears to be trying to invent contractual rights it did not previously bargain for—here, a unilateral post-Board approval veto right on the budget.

---

[5] Lighthouse did not "relegate" this issue to a footnote, but rather, pointed out to the Court in its Opening Brief that the contractual provisions control here. *See* OB, 16 n.5. Although the terms of the parties' agreements solidify Atlantic's liability, Atlantic's disingenuous attempt to create a factual dispute over the scope of Mr. Ricci's role lacks credibility in light of the documents attached as exhibits to Lighthouse's Opening Brief, which demonstrate that Mr. Ricci was in fact acting as an agent of Atlantic. *See id.* at Exs. 4-20. Nonetheless, the Court need not reach this issue to grant the Motion.

Thus, whether Atlantic disagrees with Mr. Ricci's affirmative votes on the 2024 and 2025 budgets is of no moment.  These budgets were unanimously approved per the 2024 and 2025 budget meeting Board minutes (*see* OB, Exs. 22-23), and per Section 2.3 of the Sinking Fund Agreement, Atlantic's Pro Rata Share for 2024 and 2025 was due for release.  There is no dispute that Atlantic did not do so.  *See, e.g.*, Adv. D.I. 28 (Atlantic's Opposition to Lighthouse's Motion to Dismiss Counterclaim) ("…Atlantic has ceased providing any additional funding for Lighthouse's reclamation."); Adv. D.I. 19 (Atlantic Third-Party Compl., ¶ 24) ("Pursuant to these agreements and the Plan, ***Atlantic is required to release its collateral on annual basis*** (in proportion to the total collateral held between Atlantic and another surety, Zurich) to fund the Reclamation Sinking Fund.") (emphasis added). Summary judgment on Atlantic's liability is therefore warranted.

**D. Atlantic's breach of the Sinking Fund Agreement was material and precluded terminating the Tolling Agreement.**

**a.   The General Indemnity Agreement is not in dispute.**

Misstating Lighthouse's argument entirely, Atlantic's Opposition asserts that Lighthouse's Motion creates a material factual dispute because Lighthouse now argues that the General Indemnity Agreement has been somehow rendered ineffective.  Atlantic's assertion is incorrect. Other than generally claiming that the interplay of the General Indemnity Agreement and Bonding Agreement somehow creates ambiguity and a factual dispute, Atlantic in no way explains why this precludes Lighthouse's Motion.   Conclusory assertions alone are immaterial when resisting summary judgment. *See Fiorentini v. William Penn Sch. Dist.*, 665 F. App'x 229, 233 (3d Cir. 2016) (quoting *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016)) ("'The non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment.'").  As explained in Lighthouse's Opening Brief, Section 3 of the General Indemnity Agreement serves as a mechanism for Atlantic to demand collateral from parties bound by that

agreement.  *See* OB, 9; *see also id*. at Ex. 26.  Section 3 does *not* authorize Atlantic to withhold collateral that it already holds and that has already been earmarked for the Sinking Fund.  *See id.* Atlantic's ability to demand collateral under the General Indemnity Agreement is limited by the Bonding Agreement.  *See id.* at Ex. 27.  Neither Lighthouse's Motion nor its Complaint implicates nor relies upon these two agreements.

Stated another way, Atlantic's invention of interpretation disputes is irrelevant to the Motion.  With the dismissal of Atlantic's counterclaims and third-party complaint, the terms of the General Indemnity Agreement and Bonding Agreement are not currently in dispute.  Atlantic cannot rely upon these agreements as grounds to evade summary judgment.

### b. The Sinking Fund Agreement has been materially breached and the Tolling Agreement could not have been terminated.

Atlantic's arguments regarding materiality are irrelevant to Lighthouse's Motion.  Indeed, materiality discussions concede a breach occurred, and therefore concede Atlantic's liability.  In any event, Atlantic's breaches of the Sinking Fund Agreement are facially material.  As set forth in the Opening Brief, when a party breaches the payment obligations in an enforceable agreement, that agreement has been materially breached.  *See, e.g.*, *ARC DBPPROP001, LLC v. Easton Buffet LLC*, 2019 WL 4645133 (E.D. Pa. Sept. 24, 2019), *aff'd*, 842 F. App'x 772 (3d Cir. 2021) (granting motion for summary judgment in plaintiff's favor on all claims where the court found that an enforceable contract was breached by defendant's non-payment and non-fulfillment of obligations); *Franklin Mills Associates, L.P. v. Nationwide Life Ins. Co.*, 836 F. Supp. 2d 238, 250 (E.D. Pa. 2011) (granting motion for summary judgment as to liability in plaintiff's favor where the court found that defendant was liable for paying certain amounts due to plaintiff under an enforceable agreement).  And when agreements are interrelated, that prior material breach precludes enforcement of other related agreements.  *See, e.g.*, Adv. D.I. 122 (Atlantic's Answer to

First Amended and Supplemented Complaint), ¶ 85 (admitting Lighthouse's allegation that "The Tolling Agreement is one in a series of agreements executed with the consummation of Lighthouse's bankruptcy Plan. One such related agreement is the Sinking Fund Agreement."); Adv. D.I. 57 (Atlantic's Answering Brief in Opposition to Third-Party Defendant's Motion to Dismiss Third-Party Complaint), at 12 (including the Tolling Agreement in the definition of "Operative Agreements" along with, among others, the Plan, Sinking Fund Agreement, Trust Agreement, and Bonding Agreement).  Such is the case here.

Atlantic's feigned confusion regarding what is or is not a material breach is simply not credible and does not defeat summary judgment.  It is apparent from the four corners of the Sinking Fund Agreement that funding the sinking fund is the primary purpose of that agreement.  Absent the sureties' release of collateral into the Sinking Fund, the reclamation projects that are central to the Plan cannot be funded.  Failing to provide this funding defeats the entire purpose of the Sinking Fund Agreement.  Atlantic has not released its Pro Rata Share of collateral for 2024 and 2025 into the Sinking Fund, and plainly has no intention of doing so absent this Court's intervention.  This is a material breach of the Sinking Fund Agreement.

Thus, because the Sinking Fund Agreement is intertwined with the Tolling Agreement, Atlantic's prior material breach of the former precludes its termination of the latter.  *See Prime Victor Int'l Ltd. v. Simulacra Corp.*, 682 F. Supp. 3d 428, 446-47 (D. Del. 2023), *appeal dismissed sub nom. Prime Victor Int'l Ltd. v. Simulacra Corp.*, 2024 WL 958377 (3d Cir. Jan. 12, 2024) ("Under Delaware law, '[a] party who first commits a material breach of a contract cannot enforce the contract going forward.' And a '[m]aterial breach acts as a termination of the contract going forward, abrogating any further obligations to perform by the non-breaching party.'") (citation

omitted).   Because Atlantic was in material breach of the Sinking Fund Agreement when it purported to terminate the Tolling Agreement, that termination was ineffective.

**E.   Atlantic's manufactured ambiguity arguments fail.**

Atlantic's Opposition posits that "the Court's prior holdings do not resolve the distinct question presented on summary judgment: whether the Operative Agreements, read together, are ambiguous as to the scope and conditions of Atlantic's obligation to release collateral."  RB, 21. But this is not the question presented on summary judgment, and the Court has already held that the Sinking Fund Agreement requires what Lighthouse demands.

As explained herein, Lighthouse's Motion is premised upon Atlantic's contractual obligation, under Section 2.3 of the Sinking Fund Agreement, to release its Pro Rata Share of collateral pursuant to a Board-approved yearly budget.  The record demonstrates that all conditions precedent to Atlantic releasing its Pro Rata Share for 2024 and 2025 have been met.  The 2024 and 2025 Lighthouse Board meeting minutes demonstrate that the 2023 and 2024 funding year budgets were unanimously approved.  *See* OB, Exs. 22-23.  Indeed, Atlantic has *admitted* that the Board approved the budget for the 2024 funding year in response to Lighthouse's request for admission. *See* Atlantic's Response to RFA No. 6, Exhibit 30[6] ("ASIC admits only that ***the Board approved the 2024 Budget***.") (emphasis added); *see also* Atlantic's Third Party Compl., Adv. D.I. 19, ¶ 24 (admitting that Atlantic must fund pursuant to its Pro Rata Share).   Budgetary approval automatically triggers Atlantic's obligations under Section 2.3 of the Sinking Fund Agreement, which unambiguously states that Atlantic, as a surety, "***shall*** release collateral held . . . into the Reclamation Sinking Fund in an amount that correlates to the amount of the budgeted expenses

---

[6] Unless otherwise noted herein, citations to "Exhibit" or "Ex." shall refer to the exhibits attached to the Transmittal Declaration of Jesse L. Noa, filed contemporaneously with this reply.

***set forth in the Reclamation Trust Entity Budget*…*"  OB, Ex. 21, § 2.3.  This Court has already agreed with Lighthouse's interpretation.  *See id.* at Ex. 1 at 11:14-15 ("These provisions contemplate that once the board approves a budget, the collateral is to be released."); *see also id.* at Ex. 2 at 13 ("These provisions require, on the board's approval of a budget, Atlantic Specialty to release collateral.").

Nothing in the other agreements or any purported "interplay" that Atlantic vaguely points to in its Opposition changes this simple reality.  As explained herein, the General Indemnity Agreement and Bonding Agreement are not at issue in Lighthouse's Motion.  All that's required to grant summary judgment on Atlantic's liability is a determination that Atlantic has breached the Sinking Fund Agreement by its failure to release its 2024 and 2025 Pro Rata Shares.  Atlantic cannot defeat summary judgment by speculating about ambiguity it contends was created by its lack of justification for its breaches.  *See Fiorentini*, 665 F. App'x at 233 (quoting *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016)) ("'The non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment.'").  The Opposition includes no documents or hard facts that refute the simple truth that Atlantic is in breach.  Accordingly, Atlantic's ambiguity arguments are both irrelevant and meritless and do not preclude granting Lighthouse's Motion.

### F.  The Sinking Fund Agreement is enforceable.

Despite expressly pleading in this action in its now-dismissed counterclaims that the Sinking Fund Agreement is "a binding and enforceable agreement between Lighthouse and Atlantic" (Adv. D.I. 18, ¶ 66), Atlantic's Opposition now argues that the agreement may not have been supported by consideration.  Not so.  Although Lighthouse has argued in this action—and this Court agrees—that the Sinking Fund Agreement imposes no conditions on Atlantic's release of its Pro Rata Share (*see* OB, Ex. 1 at 11:16-19), this does not mean that Lighthouse is not

obligated to do *anything* under the Sinking Fund Agreement.  Rather, the Sinking Fund Agreement details the ways in which Lighthouse, as the Reclamation Trust Entity Representative, is obligated to allocate and obtain funding for the Sinking Fund.  *See generally id.* at Ex. 21.  Moreover, the Sinking Fund Agreement explicitly states that the agreement is supported by sufficient consideration.  *See id.* ("… pursuant to the Reclamation Trust Agreement, the Plan and the Confirmation Order, in consideration of the promises, and mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows…").

In sum, Atlantic cannot back out of its own prior judicial admissions to now claim the Sinking Fund Agreement is not supported by consideration solely because the obligations it wishes were enshrined in the agreement do not exist and it wishes to avoid liability for its breaches.  Atlantic's consideration argument is wholly without merit and must be rejected.

### G.  Atlantic's rejected Defenses do not preclude summary judgment.

As set forth in the Opening Brief, Atlantic's Defenses fall into three categories.  Because the Court's prior rulings in this action foreclose the majority of Atlantic's Defenses as a matter of law, they are appropriately discarded at the summary judgment stage.  *See Pietryka v. United States*, 2025 WL 1416290, at *3 n.1 (M.D. Pa. May 15, 2025) ("…upon completion of discovery, Plaintiffs may seek summary judgment as to the affirmative defenses they claim are legally or factually insufficient.").  That is precisely what Lighthouse has done here, and as the court noted in *Pietryka*, moving to strike prior to summary judgment would have, in fact, been procedurally improper.  *See id.*

Atlantic's Defenses that are entirely foreclosed by this Court's prior rulings and are therefore legally insufficient and can be rejected.  *See* OB, 20-22.  Atlantic's Opposition does not meaningfully grapple with these insufficiencies, concluding without support that "Affirmative

11

defenses stand in a different procedural posture than counterclaims, and the Court has made no findings on the merits of" the Defenses.  RB, 23.  This of course contradicts Atlantic's representations to this Court and should be ignored.  Adv. D.I. 140 at 12 ("[a]s it stands, Atlantic has no claims against Lighthouse, and Atlantic's affirmative defense are substantially tied to its proposed amended counterclaim" and noting that failure of an appeal "has serious consequences in light of Lighthouse's recent filings of a motion for summary judgment . . . .").

Regardless of the procedural posture upon which the decisions were made, this Court's prior rulings are the law of the case, and this Court's reasoning therefore applies to any subsequent questions on the same issues moving forward.  *See Young v. Pleasant Valley Sch. Dist.*, 601 F. App'x 132, 135 n.2 (3d Cir. 2015) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)) ("'As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'").  Atlantic cannot reanimate its dismissed counterclaims under the auspices of litigating its Defenses, and the Defenses do not preclude granting Lighthouse's Motion

As to the remaining Defenses that touch upon damages, Lighthouse does not dispute that these need not be addressed at this stage.  By including these Defenses in the Opening Brief, Lighthouse merely demonstrates that if the Court wished to dispose of these Defenses at this stage, it could readily do so.  *See* OB, 23.  Nonetheless, Lighthouse agrees that this Motion relates only to Atlantic's liability, and not to Atlantic's yet to be calculated damages.

## **CONCLUSION**

Lighthouse respectfully requests that the Court grant Lighthouse's Summary Judgment Motion and grant such other and further relief as the Court deems just and proper.

12

Dated: April 27, 2026
      Wilmington, Delaware

Respectfully submitted,

*/s/ Jesse L. Noa*
L. Katherine Good (No. 5101)
Jesse L. Noa (No. 5973)
James R. Risener III (No. 7334)
Hannah L. Paxton (No. 7096)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE  19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email:  kgood@potteranderson.com
       jnoa@potteranderson.com
       jrisener@potteranderson.com
       hpaxton@potteranderson.com

*Counsel for Lighthouse Resources Inc.*

13